KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
Marc E. Kasowitz (MK 2597)
Daniel R. Benson (DB 6587)
Mark P. Ressler (MR 4985)
Maria Gorecki (MG 3205)
Rachel E. Lubert (RL 1563)
1633 Broadway
New York, New York 10019
Phone: (212) 506-1700
Fax:   (212) 506-1800

08 CV 00128

Attorneys for Plaintiffs
Missy Chase Lapine and The Sneaky Chef, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
                                    :
MISSY CHASE LAPINE and THE SNEAKY   :    COMPLAINT
CHEF, INC.,                         :
                                    :
            Plaintiffs,             :    Jury Trial Demanded
                                    :
      - against -                   :
                                    :
JESSICA SEINFELD and JERRY SEINFELD,·:
                                    :
            Defendants.             :
                                    :
------------------------------------x

Plaintiffs Missy Chase Lapine and The Sneaky Chef, Inc., by their attorneys Kasowitz,

Benson, Torres & Friedman LLP, for their complaint against defendants Jessica Seinfeld and

Jerry Seinfeld, allege as follows:

## PRELIMINARY STATEMENT

1.      This action for copyright and trademark infringement and defamation arises from

conduct that gives new meaning to the terms "arrogance" and "greed." In April 2007, plaintiff

Missy Chase Lapine, based on years of research, published The Sneaky Chef: Simple Strategies

for Hiding Healthy Foods in Kids' Favorite Meals (the "Book" or "The Sneaky Chef"). The Sneaky Chef achieved immediate critical acclaim and commercial success for its unique and innovative approach to improving children's eating habits by, among other things, camouflaging purees of carefully selected fruits and vegetables (like spinach and sweet potato) as ingredients in unhealthy foods desired by children, like cheeseburgers, grilled cheese sandwiches and brownies.

2.      Six months later, defendant Jessica Seinfeld published Deceptively Delicious: Simple Secrets to Getting Your Kids Eating Good Food (the "Infringing Work" or "Deceptively Delicious"), which brazenly plagiarized The Sneaky Chef, even misappropriating the Book's trademark, a caricature of a winking chef holding a finger to her lips (as if to say "shhh") and hiding carrots behind her back. Fueled by a massive, celebrity-driven marketing campaign, Jessica Seinfeld's book became a commercial success, climbing to the top of The New York Times best seller list. That success, however, was accompanied by accusations on the Internet and in the media that, based on the striking and substantial similarities between the two books, Jessica Seinfeld had plagiarized The Sneaky Chef.

3.      Seeking to deflect those accusations, and apparently not content that his wife had unlawfully misappropriated Lapine's book, Jerry Seinfeld, Jessica's husband, embarked on a national media campaign of malicious defamation against Lapine. On the Late Night With David Letterman show, Jerry Seinfeld stated, among other things, that his wife's book came out "at the same time" as Lapine's; that his wife "never saw" or "read" Lapine's book before hers was published; that Lapine was a "wacko" celebrity stalker who, like the infamous stalkers who had terrorized David Letterman and his family, "waited in the woodwork" to "spring out" and attack his wife with plagiarism charges; and that Lapine was an "angry and hysterical" woman who posed a potentially violent threat ("assassin") to the Seinfelds. Likewise, on E! News,

2

Seinfeld referred repeatedly to Lapine as a "nut job" who had "come[] out of the woodwork" to attack his wife with false accusations of plagiarism.

4.    All of Jerry Seinfeld's statements were false. Jessica Seinfeld's book came out six months after Lapine's; Jessica Seinfeld saw and read the Book before hers was published; Lapine does not suffer from any mental infirmity; she is not a celebrity stalker; she is not a violent or dangerous person; she did not and does not engage in extortion; she is not a liar; she did not, until the filing of this complaint, make any specific accusations against Jessica Seinfeld (although she had more than ample grounds to do so); she did not fabricate accusations against Jessica Seinfeld to gain media attention, enrich herself or harass the Seinfelds; and she was not lying in wait for an opportunity to become embroiled in a controversy with any celebrity -- much less the Seinfelds.

5.    Jessica Seinfeld's brazen plagiarism of Lapine's book constitutes copyright and trademark infringement under federal and New York law. Jerry Seinfeld's malicious, nationally-televised attack on Lapine constitutes slander under New York law. Jerry Seinfeld is an enormously wealthy and well-known comedian, and Jessica Seinfeld is his wife, but that does not give them license to slander and plagiarize. Accordingly, Lapine brings this action to recover compensatory and punitive damages.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b) and 15 U.S.C. § 1121, as well as the doctrine of pendent jurisdiction.

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the claims arise, and defendants reside, in this district.

## THE PARTIES

8.      Plaintiff Missy Chase Lapine is a citizen of the State of New York and resides in Irvington, New York.

9.      Plaintiff The Sneaky Chef, Inc. is a corporation organized and existing under the law of the State of New York, with its principal place of business in Irvington, New York.

10.     Defendant Jessica Seinfeld is a citizen of the State of New York and resides in New York, New York.

11.     Defendant Jerry Seinfeld is a citizen of the State of New York and resides in New York, New York. Jerry Seinfeld is an enormously wealthy and well-known comedian. From 1990 to 1998, he was the star of Seinfeld, one of the most popular programs in television history. He is married to defendant Jessica Seinfeld.

## FACTS

### Lapine Conceives of, Researches and Creates the Book

12.     Lapine's professional work has focused on food, nutrition and health. She is the former publisher of Eating Well magazine and, before that, worked at Gourmet magazine. Lapine is certified in the master techniques of healthy cooking and was trained in classical cooking techniques by the Institute of Culinary Education. Lapine serves on the Culinary Arts Faculty of The New School in New York City; is a collaborator with the Alliance for a Healthier Generation, a partnership between the American Heart Association and the William J. Clinton Foundation devoted to helping schools serve healthier lunches; and serves on the Children's Advisory Council of Morgan Stanley Children's Hospital of New York-Presbyterian, where The Sneaky Chef nutrition techniques are used with pediatric patients.

4

13.     In or about 2002, Lapine began researching methods for getting children to eat healthier foods. Lapine conducted numerous taste tests, focus groups and interviews, and consulted extensively with leading nutritionists, pediatricians and chefs. Her research resulted in an innovative solution: camouflage healthy foods so that children will eat them without realizing or objecting. Lapine developed original methods for combining ingredients, including specially-selected purees of vegetables that children typically resist, such as spinach or cauliflower, with dishes that children typically crave, such as brownies, pizza and pancakes.

14.     Lapine then prepared a manuscript of the Book that set forth Lapine's views on nutrition, child-rearing and American eating habits, as well as her explanation of the purees and how to put her methods to use.

15.     On or about February 6, 2006, Lapine sent a 139-page book proposal, which included extensive chapters from the Book manuscript, to HarperCollins Publishers, LLC ("HarperCollins"). Four days later, a representative from William Morrow, an imprint of HarperCollins, sent Lapine a letter rejecting the proposal. In or about early May 2006, Lapine, through her literary agent, again submitted to HarperCollins her book proposal, again including extensive chapters from the Book manuscript. On May 24, 2006, HarperCollins rejected Lapine's second proposal, stating that "the children's food segment of the market is a tough one to navigate during a particularly tough time in the cookbook category in general. The influence of the food network and the availability of recipes online have really hurt this area. I'm sorry to say we'll be passing . . ."

Lapine Publishes the Book and Obtains
Copyright and Trademark Protection

16.    In or about June 2006, Perseus Books Group ("Perseus"), another book publisher,

accepted Lapine's proposal for the Book. On or about August 1, 2006, Lapine and Perseus

entered into a contract for publication of the Book. On or about April 2, 2007, Perseus, through

its Running Press imprint, released the Book. The reviews were extremely positive, with the

culinary press and general media lauding Lapine's revolutionary approach to disguising healthy

foods inside children's favorite dishes. Within three weeks of publication, the Book became a

New York Times best seller.

17.    Lapine also has filed applications with the United States Copyright Office for

copyright registration of the Book, and The Sneaky Chef, Inc. has filed applications with the

United States Patent and Trademark Office for trademark registration of the word trademark

"Sneaky Chef" and the image trademark that appears on and in the Book and on plaintiffs' Web

site. The Sneaky Chef, Inc. is the co-owner with Lapine of all rights to the trademarks and is

engaged, together with Lapine, in developing and marketing books, DVDs and other products

that are based on Lapine's methods and concepts and utilize the trademarks.

18.    As part of a campaign to market and promote the Book, Lapine appeared on the

Today Show, Fox and Friends and numerous other television programs; appeared on numerous

national and local radio programs; was featured in national magazines such as Parenting and

Women's Day and in numerous newspapers; and did a book tour throughout the country, which

included bookstore and supermarket appearances and signings.

Jessica Seinfeld Copies the Book, Notwithstanding a
Cease And Desist Demand from Lapine and Her Publisher

19. In or about May 2007, while promoting and marketing the Book, Lapine learned that Jessica Seinfeld and her publisher, HarperCollins, were planning to publish the Infringing Work. In an eight-page promotional brochure for the Infringing Work she received, Lapine observed blatant similarities between the Infringing Work, including, among other things, its cover design and content, and the Book. Lapine immediately brought these similarities to the attention of her publisher.

20. On or about July 9, 2007, seeking to prevent any violation of Lapine's rights, Running Press brought to the attention of Jessica Seinfeld's publisher the blatant similarities between the Book and the plans for the Infringing Work (including the cover art, the subtitles, the organization and the overall look and feel).

21. On or about July 31, 2007, Jessica Seinfeld's publisher sent Running Press a letter denying that Jessica Seinfeld copied, or was even influenced by, the Book, asserting that the Infringing Work was "entirely original to" Jessica Seinfeld, and stating that "we do not believe it necessary or appropriate to make any changes to the design or content of [the Infringing Work]."

22. The Infringing Work was published in October 2007, with only minor and insignificant modifications to the cover art and subtitle -- the cover design of the Infringing Work was slightly altered by moving the pictured carrots from their original position (held in the female chef's hand behind her back, exactly where the chef in The Sneaky Chef trademark holds her carrots) to a cutting board behind her back, and the Infringing Work's subtitle was slightly changed from "Sneaky Secrets to Get Your Kids Eating Good Food" to "Simple Secrets to Get Your Kids Eating Good Food."

7

Jessica Seinfeld Infringed Lapine's Copyright

23.     In writing and publishing the Infringing Work -- which, in its content, artwork and overall look and feel, is substantially similar to the Book -- Jessica Seinfeld blatantly and willfully misappropriated the Book's original concept, expression, methodology, organization, structure, design, styling and look and feel.

24.     Jessica Seinfeld's infringement consists of copying Lapine's copyrighted original expression, philosophy, premise, approach, explanations, discussions, reflections, organization, methodology and overall look and feel, including (without limitation) the following respects:

(a)     Both the Book and the Infringing Work contain introductions written by doctors calling attention to the growing problem of obesity in American children and the difficulties inherent in providing sound nutrition to resistant children, and praising the author for creative, clever and convenient solutions for parents.

(b)     Both the Book and the Infringing Work state that children need to feel a semblance of control over what they eat, while calling attention to the connection between good nutrition and how children behave and achieve. Both works discuss the dangers of too much sugar in a child's diet (e.g., the sugar high and ensuing crash). Both works address these issues by recommending camouflaging carefully-selected pureed healthy foods inside children's favorite foods.

(c)     Both the Book and the Infringing Work begin with the author's personal anecdote of mealtime struggles with her own picky eaters. In fact, both works include a story about how one of the author's children is a picky eater who influenced a non-picky sibling to dislike food. Specifically, within that anecdote:

8

- the Book describes "*begging*, pleading, threatening, and bribing," as well as "*coercing kids to eat* what's on their plates."

- the Infringing Work describes "*begging* my kids to eat vegetables," as well as "*coerc[ing] them to eat* food they found disgusting."

(d)  Both the Book and the Infringing Work explain that the author is not a professional chef, just a mother who desires to have peace at the dinner table and to feed her children nutritious food. Both works discuss how the author overcame the guilt of tricking her kids into eating healthy food.

- The Book states that "this method has brought *peace to our family table*," that "[i]n many families, the dinner table becomes a battleground and meal time is a *power struggle*," and that "I couldn't use logic, but I couldn't afford to *give up* either."

- The Infringing Work states: "I just wanted a little *peace around the dinner table*," and continues, "I want my kids to associate food and mealtimes with happiness and conversations, not *power struggles* and strife." The Infringing Work acknowledges, "[W]e just want to *give up*."

(e)  Both the Book and the Infringing work characterize the author's solution as an "*epiphany*" and state the benefits that accompany nutritional camouflage.

- The Book explains: "There are many *foods that kids won't go near* in their virgin condition, but after ten seconds in the blender, those same

9

broccoli stalks they made a face at yesterday are now eaten without a fight."

- The Infringing Work explains: "I have become an expert at hiding vegetables purees and other healthful additional - *foods my kids wouldn't touch* otherwise - in all of their favorite dishes."

- As an example, both the Book and the Infringing Work advocate allowing children to put *sprinkles* on their food to enhance its appeal.

(f)    Both the Book and the Infringing Work discuss how the author succeeded in hiding "good-for-you" foods in the dishes that kids naturally love, and how the author's family is now happier.

- The Book states: "It got our *whole family* eating together in peace."

- The Infringing states: "[T]he *whole family* is happier and we can finally enjoy mealtimes again."

(g)    Both the Book and the Infringing Work address arguments against "sneaking" vegetables into children's dishes and then systematically refute each one.

- The Book likens the practice to a form of "*loving deceit.*"

- The Infringing Work likens the practice to a form of "*[l]oving [d]eception.*"

(h)    Both the Book and the Infringing Work state that forbidden foods are more alluring to children and suggest that, for that reason, foods such as candy should not be forbidden.

(i)     Both the Book and the Infringing Work provide explanatory passages at the beginning of the work regarding nutrition and directions for the creation and use of the purees, with the latter portion of the work discussing the use of the purees.

(j)     The Book, on its cover, spine and first page, uses the caricature of a chef, winking, holding a finger to her lips as if saying "shhh" and hiding carrots behind her back, as well as repeatedly using a drawing of a carrot wearing sunglasses making the same "shhh" gesture. In a substantially similar way, the cover of the Infringing Work uses a caricature of Jessica Seinfeld as a chef, winking, with carrots on a cutting board behind her back, as well as repeatedly using, including on its spine, first page and insert, a drawing of Jessica Seinfeld holding a finger to her lips as if saying "shhh."

(k)     The subtitle of the Book, "Simple Strategies for Hiding Healthy Foods in Kids' Favorite Meals," is substantially similar to the subtitle of the Infringing Work, "Simple Secrets to Get your Kids Eating Good Food."

(l)     In both the Book and the Infringing Work, each recipe is printed on a page with a border around the text. In the Book, the border is a straight-line box; in the Infringing Work, the border is a wavy-line box.

(m)     Both the Book and the Infringing Work use line-drawn, cartoon graphics, except when showing dishes made according to recipes, they use full-color photographs.

(n)     Both the Book and the Infringing Work include icons with each recipe. The Book uses icons that represent the particular sneaky method used; the Infringing Work uses icons that represent the particular fruits and vegetables used.

(o)     Both the Book and the Infringing Work, in setting forth the use of purees, use a different font color for purees from the color used for the other ingredients.

(p)     Both the Book and the Infringing Work suggest the same approach to cooking healthy food for children -- get the right tools (e.g., a small food processor), get the "*staple*" foods, make the vegetable and fruit purees once a week and refrigerate or freeze them, and then, at meal time, make the recipes using the purees to inject healthy foods into the dishes.

(q)     Both the Book and the Infringing Work next set forth the staples of a well-stocked kitchen, including a list of which foods children will most often and least often eat without a fight.

(r)     Both the Book and the Infringing Work recommend *steaming* the vegetables, pureeing them in a *food processor*, *packaging* them in *1/4 cup baggies*, and then *freezing* them for later use.

- The Book states: "[Y]ou will find the Make-Ahead . . . are your best friends . . . once you have these purees and blends in your refrigerator or freezer, *simply grab a spoonful and mix it into the recipes as called for*." The Book claims that with respect to ". . . the scratch recipes, you'll spend *less than thirty minutes* for each one."

- The Infringing Work states: "You will quickly learn to prepare, cook, puree, and portion the purees. Then the *purees will be available to use when they're called for*, just like any other ingredient in my recipes."

12

The Infringing Work claims that ". . . the recipes . . . are doable in *thirty minutes or less* . . ."

(s)    Both the Book and the Infringing Work talk about "*sneak*[ing]" the purees into typical kid food to remove "stress." The Book calls this being "*sneaky*," and the Infringing Work refers to it as the "*sneak it in*" technique.

- The Book states: "*[P]arental control* does not have to come in the form of a *constant battle*."

- The Infringing Work states: "It empowers you to exert some legitimate *control* over what your children eat, without inviting the *usual fights*."

(t)    Both the Book and the Infringing Work also provide suggestions for and explanations of how purees can be incorporated into pre-packaged, store-bought foods.

(u)    Both the Book and the Infringing Work implore the reader to enthusiastically test the purees and recipes.

- The Book states, "[L]et's put these clever methods into *action*"

- The Infringing Work states, "[Y]ou're *ready for action*."

(v)    Both the Book and the Infringing Work suggest adding the same specific fruit or vegetable puree to the same dishes, as set forth below:

| Children's Dish | Hidden Puree Used in the Book | Hidden Puree Used in the Infringing Work |
|---|---|---|
| Chocolate Pudding | Avocado | Avocado |

13

| | | |
|---|---|---|
| Chocolate Chip Cookies | White Bean | White Bean |
| Brownies | Spinach | Spinach |
| Grilled Cheese | Sweet Potato | Sweet Potato |
| French Toast | Sweet Potato/Carrot | Sweet Potato/Carrot |
| Mac 'n Cheese | Cauliflower | Cauliflower |
| Meat Sauce/Bolognese | Sweet Potato | Sweet Potato |
| Twice-Baked Potatoes | Cauliflower | Cauliflower |
| Chicken Tenders | Sweet Potato | Sweet Potato |
| Peanut Butter and Jelly Muffins | Carrot | Carrot |
| Green Eggs | Spinach | Spinach |

To Deflect Attention From His Wife's Infringement,
Jerry Seinfeld Defames Lapine on National Television

    25.    Upon release of the Infringing Work in early October 2007, Jessica Seinfeld launched a national promotional campaign, appearing on such popular television programs as The Oprah Winfrey Show and Live with Regis and Kelly. The Infringing Work received favorable reviews and became a best seller.

    26.    In light of the substantial similarity between the Book and the Infringing Work, within weeks of publication of the Infringing Work, numerous statements were made on the Internet and in print and television media that Jessica Seinfeld had plagiarized the Book.

    27.    On October 29, 2007, to deflect attention from the mounting public accusations of plagiarism against his wife, defendant Jerry Seinfeld used an appearance on the immensely

popular CBS television program, Late Show With David Letterman, to launch a malicious, premeditated and knowingly false and defamatory attack, uttering egregiously false and reprehensible statements about Lapine.

28.      In that appearance, Jerry Seinfeld stated that Lapine was a mentally unbalanced celebrity stalker who falsely concocted accusations of plagiarism to thrust herself into the limelight and harass the Seinfelds. Jerry Seinfeld stated that Lapine was an "angry" and "hysterical" "wacko" who had been "waiting in the woodwork" to "spring out" and "go wacko" on the Seinfelds. Seinfeld stated that Lapine was similar to the "wackos" who had victimized Letterman in two widely publicized and harrowing episodes several years ago. To bring home the point that Lapine was a mentally unhinged stalker of the Seinfelds, Jerry Seinfeld further suggested that Lapine could be an "assassin."

29.      Seinfeld's slanderous attack on Lapine included, among others, the following statements uttered before a national television audience.

Q. David Letterman: And speaking of mother, the mother of your child, uh, children, your wife, big cookbook, congratulations on the cookbook.

Jerry Seinfeld: Thank you very much, yes, my wife has a very big cookbook, but --

Letterman: What's the name of the cookbook?

Seinfeld: -- the cookbook is called, uh, *Deceptively Delicious*, but there is a cookbook controversy, now you know --

Letterman: What do you mean?

Seinfeld: -- I don't like to come on the show without some controversy brewing, where I can inject myself --

* * *

Seinfeld:  .... So, um, now my wife likes to cook, so she comes up with this thing where she's pureeing vegetables and she's putting them in the kid's food, and the kids, so they get like better nutrition, and she's doing this and then her friends start doing it, and then she has two sisters and they have kids, and they start doing it. So they're passing all these recipes around. So somebody says to her, you should put these recipes into a cookbook, make a cookbook.

Letterman: Right. Excellent idea.

Seinfeld: Because it's healthy and we, the fat kids and the obesity, and it's a positive, positive thing.

Letterman: It's a serious problem. Sure.

Seinfeld: So she makes the cookbook, everybody is happy, it does well, seemingly an innocent sequence of events.

Letterman: Mmm.

Seinfeld: *Now you know, having a career in show business, one of the fun facts of celebrity life is, wackos will wait in the woodwork to pop out at certain moments of your life to inject a little adrenalin into your life experience.*

Letterman: Yes, just a little tap to get your attention.

Seinfeld: *Yes, I have wackos, you have had wackos. I believe your wackos are very well documented.*

Letterman: Heh, yeah. Uh, yes. That's one good thing. You got all the paperwork.

Seinfeld: *Now, if you're any good as a woodwork wacko, you are patient. You wait. You pick your moment and then you spring out and go wacko. So, there's another woman who had another cookbook. And it was a similar kind of thing with the food, and the vegetables in the food, and uh, my wife never saw the book, read the book, used the book.*

Letterman: Knew nothing about it.

Seinfeld: Didn't know anything about it. *But the books came out at the same time.*

Letterman: Mm hmm.

Seinfeld: *So this woman says, "I sense this could be my wacko moment."*

Letterman: Ahhh. Oh.

Seinfeld: *So she comes out and she says, and she accuses my wife, she says, you stole my mushed-up carrots. You can't put mushed-up carrots in a casserole, I put mushed-up carrots in the casserole. It's vegetable plagiarism.*

Letterman: It's ridiculous.

\* \* \*

Letterman: . . . . And what does this woman think, that she's the first one to prepare and eat food?

Seinfeld: *I, I guess so. And I'm more upset, we're sorry that she is, you know, angry and hysterical, and because she's a three-name woman, which is what concerns me. She has three names.*

Letterman: Oh, mmm.

Seinfeld: *And you know, if you read history, many of the three-name people do become assassins.*

Letterman: Yeah, yeah. Now, um --

Seinfeld: *Mark David Chapman. And you know, James Earl Ray. So, that's my concern.*

30. Jerry Seinfeld's statements on the Letterman program stated, expressly and by inference, implication and insinuation, that Lapine is a mentally unhinged celebrity stalker who poses a potentially violent threat to the Seinfelds, and that she falsely concocted accusations of plagiarism against Jessica Seinfeld. A reasonable person watching Jerry Seinfeld on the Letterman program necessarily would conclude that Jerry Seinfeld had imputed to Lapine mental illness and potentially violent or, at a minimum, hostile, tendencies, proclivities and activities.

17

31.    For example, when Jerry Seinfeld told Letterman, "*I have wackos, you have had wackos. I believe your wackos are very well documented*," Seinfeld was referring to two stalking episodes involving Letterman that received extensive national press coverage. One such episode, which occurred in the late 1990s, involved Margaret Mary Ray, a woman diagnosed with schizophrenia who repeatedly broke into Letterman's home. The other widely-publicized episode involved a 2005 plot to kidnap Letterman's infant son and hold him hostage for a $5 million ransom.

32.    On the same day he appeared on Late Show With David Letterman, Jerry Seinfeld also appeared on E! News, broadcast on the E! network. Seinfeld used his appearance on that program again to make outrageously false statements about Lapine's mental health, stating that she was a "nutjob" who had seized upon the cookbook controversy to extort money from the Seinfelds:

Host: Your wife has done such great philanthropy work over the years, especially with children. There's lots of controversy now around her book. Is she unfairly being criticized? That's right. Yeah, exactly. And what does this woman think, that she's the first one to prepare and eat food?

Seinfeld: *As a celebrity, I enjoy the fact that whenever you do something; some nut job comes out of the woodwork and gets hysterical. I know the truth that nothing ever happened. I don't know if you know the story about the guy I went to college with who claimed I stole the whole TV series from him, and he sued me for 100 million dollars. So this woman is another kind of nut. You know, she thinks she invented vegetables. And she's accusing my wife of stealing her mashed-up carrots.*

33.    Jerry Seinfeld's statements on the E! News program stated, expressly and by inference, implication and insinuation, that Lapine is a mentally unhinged celebrity stalker who seized upon the cookbook controversy to concoct false accusations of copying to extort money from the Seinfelds. A reasonable person watching Jerry Seinfeld on E! News necessarily would

18

conclude that he, directly and by implication, had imputed to Lapine mental illness and a tendency and proclivity to lie and extort.

34.     The statements uttered by Jerry Seinfeld about Lapine, as described above, are entirely false. Lapine does not suffer from any mental infirmity; she is not a celebrity stalker; she is not a violent or dangerous person; she did not and does not engage in extortion; she is not a liar; she did not, until the filing of this complaint, make any specific accusations against Jessica Seinfeld (although she had more than ample grounds to do so); she did not fabricate accusations against Jessica Seinfeld to gain media attention, enrich herself or harass the Seinfelds; and she was not lying in wait for an opportunity to become embroiled in a controversy with any celebrity -- much less the Seinfelds.

35.     Lapine is not a public figure, but even if Lapine were to be considered a public figure for the purposes of her defamation cause of action, Jerry Seinfeld knew or recklessly disregarded that his defamatory statements about Lapine were false.

36.     Jerry Seinfeld's defamatory statements about Lapine have caused and are continuing to cause Lapine severe damage.

First Claim for Relief
On Behalf of Plaintiff Missy Chase Lapine

(Copyright Infringement under 17 U.S.C. §§ 101 et seq. --
Against Defendant Jessica Seinfeld)

37.    Plaintiff Missy Chase Lapine repeats and realleges the allegations of paragraphs 1 through 36.

38.    The Book contains a substantial amount of material wholly original with Lapine and copyrightable subject matter under the laws of the United States. The expression, presentation, arrangement, structure and organization of the Book's content, as well as the Book's explanations, descriptions, phrases, philosophies, recipes, "sneaky tips," methods, solutions, premise, styling and designs were the result of Lapine's original, creative and independent authorial judgment. The Book's components are expressed by Lapine in a sequence, order, arrangement, organization and structure selected by, and original to, Lapine.

39.    Since February 2006, Lapine has been, and is, the sole proprietor of all right, title, and interest in and to the copyright in the Book.

40.    At all times relevant hereto, all copies of the Book made by Lapine or under her authority or license in the United States and elsewhere have been printed in strict conformity with the Copyright Act of the United States and all other laws governing copyright in the areas where the Book has been published.

41.    Lapine has conveyed no copyright interest in the Book or any edition thereof to HarperCollins or Jessica Seinfeld.

42.    Defendant Jessica Seinfeld incorporated Lapine's original expression,

arrangement, presentation, structure, methods, phrases, philosophies, designs, styling,

descriptions, organization, structure, premise, and recipes, incorporating significant elements of

the Book's copyrightable, original expression into the Infringing Work.

43.    As a result of defendant Jessica Seinfeld's infringement of Lapine's copyright, the

Infringing Work and the Book, are substantially similar.

44.    Jessica Seinfeld has earned revenues from producing, promoting, distributing and

otherwise exploiting the Infringing Work.

45.    Jessica Seinfeld, with knowledge of Lapine's ownership of the copyright in the

Book, willfully infringed Lapine's rights by producing, promoting, distributing and otherwise

exploiting the Infringing Work.

46.    As a direct and proximate result of Jessica Seinfeld's conduct, Lapine has been

damaged in an amount to be determined at trial.

## Second Claim for Relief
## On Behalf of Both Plaintiffs

(Trademark Infringement under Lanham Act §§ 32 and 43(a) --
Against Defendant Jessica Seinfeld)

47.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 36.

48.    Plaintiffs are the sole proprietors of all right, title and interest in The Sneaky Chef

word and image trademarks.

49.    Lapine first used The Sneaky Chef word and image trademarks in commerce in

connection with her business in or about February 2007. The image trademark contains a line-

drawn caricature image of a female chef winking, holding a finger to her lips as if to say "shhh," and hiding carrots behind her back.

50. Subsequently, Lapine initiated the registration process for both the "Sneaky Chef" word trademark and the above-described image trademark. On December 25, 2007, the United States Patent and Trademark office issued Lapine Registration No. 3360525 related to the word trademark. Additional registration applications: Serial No. 77315353, as related to the word trademark, and Serial Nos. 77254965 and 77336128, as related to the image trademark, are pending.

51. By virtue of the Book's sales and promotion, as well as the distinctive appearance and nature of The Sneaky Chef word and image trademarks, the trademarks have acquired a secondary meaning attributable to plaintiffs. Lapine's education, expertise and years of effort in improving the diets and health of American children and the culinary arts have contributed to the credibility and goodwill fostered in the trademarks.

52. Jessica Seinfeld (who has no education, expertise or experience concerning children's nutrition or culinary arts) has, in bad faith, adopted a confusingly similar mark, making use, on the Infringing Work's cover, of a line-drawn caricature of a female chef preparing food, winking, while hiding carrots behind her back. An additional image appears on the spine of the Infringing Work and on Jessica Seinfeld's Web site containing a line-drawn image of a female holding a finger to her lips as if to say "shhh."

53. The above-described elements of the Infringing Work are designed and conceived to mislead the public into associating the Infringing Work with the Book, and are likely to cause consumer confusion, initial interest confusion, mistake and deception of the public as to the

identity and origin of plaintiffs' goods, and as to any affiliation or relationship between the two works and parties, causing irreparable harm to plaintiffs.

54.     The Infringing Work has been advertised, sold and distributed in interstate commerce.

55.     As a direct and proximate result of Jessica Seinfeld's conduct, plaintiffs have been damaged in an amount to be determined at trial.

### Third Claim for Relief
### On Behalf of Both Plaintiffs

(Trademark Infringement under N.Y. Gen. Bus. Law § 360-k --
Against Defendant Jessica Seinfeld)

56.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 36 and 48 through 53.

57.     Jessica Seinfeld has used and continues to use, without plaintiffs' consent, a colorable imitation of The Sneaky Chef trademark in connection with the sale, distribution, offering for sale, or advertising of the Infringing Work.

58.     Jessica Seinfeld's improper and bad-faith use of a confusingly similar mark is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services.

59.     Jessica Seinfeld intended to cause confusion or mistake or to deceive as to the source of origin of such goods or services.

60.     As a direct and proximate result of Jessica Seinfeld's conduct, plaintiffs have been damaged in an amount to be determined at trial.

### Fourth Claim for Relief
### On Behalf of Both Plaintiffs

(Injury to Business Reputation under N.Y. Gen. Bus. Law § 360-l --
Against Defendant Jessica Seinfeld)

61.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 36, 48
through 53 and 57 through 59.

62.     Jessica Seinfeld's use of a confusingly similar trademark injures and creates a
likelihood of injury to plaintiffs' business reputation because persons encountering Jessica
Seinfeld and her products and services will believe that Jessica Seinfeld is affiliated with or
related to or has the approval of plaintiffs.

63.     Any adverse reaction by the public to Jessica Seinfeld and the quality of her
products and the nature of her business will injure the business reputation of plaintiffs and the
goodwill that they enjoy in connection with The Sneaky Chef trademark, goods and services.

64.     As a direct and proximate result of Jessica Seinfeld's conduct, plaintiffs have
been damaged in an amount to be determined at trial.

### Fifth Claim for Relief
### On Behalf of Plaintiff Missy Chase Lapine

(Slander and Slander Per Se --
Against Defendant Jerry Seinfeld)

65.     Plaintiff Missy Chase Lapine repeats and realleges the allegations of paragraphs 1
through 36.

66.     Jerry Seinfeld's false statements about Lapine constitute slander and/or slander
per se.

24

67.    Jerry Seinfeld's false and defamatory statements were made with malice, as such statements were made by Jerry Seinfeld with knowledge of their falsity or with reckless disregard for their falsity.

68.    As a proximate result of Jerry Seinfeld's false and defamatory statements, Lapine has suffered injury, including pecuniary loss, in an amount to be determined at trial.

69.    Because Jerry Seinfeld's made his false and defamatory statements described above knowingly, willfully, maliciously and in conscious disregard of Lapine's rights, Lapine is entitled to an award of punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that judgment be entered:

(1)    On the First Claim for Relief, against defendant Jessica Seinfeld and in favor of Plaintiff Missy Chase Lapine:

(a)    awarding, pursuant to 17 U.S.C. § 504(b), actual damages and disgorgement of all profits attributable to the Infringing Work, including, but not limited to, all profits from (i) distributing the Infringing Work for domestic and international release; and (ii) otherwise exploiting the Infringing Work through licensing, merchandising or other means; and

(b)    awarding, pursuant to 17 U.S.C. § 504(c), statutory damages;

(2)    On the Second Claim for Relief, against defendant Jessica Seinfeld and in favor of plaintiff Missy Chase Lapine and The Sneaky Chef, Inc., awarding, pursuant to § 35 of the

25

Lanham Act, 15 U.S.C §§ 1117(a) damages, as well as disgorgement of all profits attributable to the Infringing Work, including, but not limited to, all profits from (i) distributing the Infringing Work for domestic and international release; and (ii) otherwise exploiting the Infringing Work through licensing, merchandising or other means;

(3)     On the Third Claim for Relief, against defendant Jessica Seinfeld and in favor of plaintiffs Missy Chase Lapine and The Sneaky Chef, Inc., awarding, pursuant to N.Y Gen. Bus. Law § 360-m, actual damages and disgorgement of all profits attributable to the Infringing Work, including, but not limited to, all profits from (i) distributing the Infringing Work for domestic and international release; and (ii) otherwise exploiting the Infringing Work through licensing, merchandising or other means; as well as multiple damages in the amount of three times the damages suffered by plaintiffs, pursuant to N.Y Gen. Bus. Law § 360-m;

(4)     On the Fourth Claim for Relief, against defendant Jessica Seinfeld and in favor of plaintiffs Missy Chase Lapine and The Sneaky Chef, Inc., awarding, pursuant to N.Y Gen. Bus. Law § 360-m, actual damages and disgorgement of all profits attributable to the Infringing Work, including, but not limited to, all profits from (i) distributing the Infringing Work for domestic and international release; and (ii) otherwise exploiting the Infringing Work through licensing, merchandising or other means; as well as multiple damages in the amount of three times the damages suffered by plaintiffs, pursuant to N.Y Gen. Bus. Law § 360-m;

(5)     On the Fifth Claim for Relief, against defendant Jerry Seinfeld and in favor of plaintiff Missy Chase Lapine, awarding compensatory and punitive damages in amounts to be determined at trial;

(6)     Awarding plaintiffs their costs, expenses, interest and reasonable attorneys' fees;

(7)    Granting such other and further relief as this Court deems just and proper.

Dated: January 7, 2008
       New York, New York

KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP

By: _____

Marc E. Kasowitz (MK 2597)
  mkasowitz@kasowitz.com
Daniel R. Benson (DB 6587)
  dbenson@kasowitz.com
Mark P. Ressler (MR 4985)
  mressler@kasowitz.com
Maria Gorecki (MG 3205)
  mgorecki@kasowitz.com
Rachel E. Lubert (RL 1563)
  rlubert@kasowitz.com

1633 Broadway
New York, NY 10019
Phone: (212) 506-1700
Fax:    (212) 506-1800

Attorneys for Plaintiffs
Missy Chase Lapine and The Sneaky Chef, Inc.