Howard B. Miller, Esq. (Admitted *Pro Hac Vice*)
Amanda L. McClintock, Esq. (Admitted *Pro Hac Vice*)
Joseph C. Gjonola, Esq. (Admitted *Pro Hac Vice*)
GIRARDI | KEESE
1126 Wilshire Boulevard
Los Angeles, CA 90017
Tel. (213) 977-0211
Fax (213) 481-1554

Christopher A. Seeger, Esq.
David R. Buchanan, Esq.
SEEGER WEISS LLP
One William Street
New York, NY 10004
Tel. (212) 584-0700
Fax. (212) 584-099

Attorneys for Plaintiffs Missy Chase Lapine and
The Sneaky Chef, Inc.



APR 18 2008
U.S.D.C. S.D. N.Y.
CASHIERS

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

MISSY CHASE LAPINE, and THE SNEAKY
CHEF, Inc.,

        Plaintiffs,

        v.

JESSICA SEINFELD, JERRY SEINFELD,
HARPERCOLLINS PUBLISHERS, INC., and
DEPARTURE PRODUCTIONS, LLC,

        Defendants.

------------------------------------------------------- x

  :  ECF CASE

  :  Civil Action No.: 08-CV-00128 (LTS)

  :  **FIRST AMENDED COMPLAINT**

  :  **Jury Trial Demanded**

Plaintiffs Missy Chase Lapine and The Sneaky Chef, Inc., in this first

amended complaint against defendants Jessica Seinfeld and Jerry Seinfeld,

1

add defendants HarperCollins and Departure Productions, and allege as
follows:

## **PRELIMINARY STATEMENT**

1.      This action is for copyright infringement , trademark infringement,
unfair competition, injury to business reputation, breach of contract, and
defamation.  In April 2007, plaintiff Missy Chase Lapine ("Lapine"), based
on years of research, published The Sneaky Chef: Simple Strategies for
Hiding Healthy Foods in Kids' Favorite Meals (the "Book" or "The Sneaky
Chef").  The Sneaky Chef achieved immediate critical acclaim and
commercial success for its unique and innovative approach to improving
children's eating habits by, among other things, camouflaging purees of
carefully selected fruits and vegetables (like spinach and sweet potato) as
ingredients in unhealthy or less healthy food desired by children, like
cheeseburgers, grilled cheese sandwiches and brownies.

2.      Prior to securing her book with publisher Running Press, an
imprint of Perseus Books Group ("Perseus"), Lapine twice submitted
substantial parts of her manuscript to HarperCollins Publishers
("HarperCollins") for consideration.  HarperCollins read and retained
possession of her submissions. HarperCollins turned down the opportunity
to publish Lapine's book on both occasions.

3.    In October 2007, six months after Lapine's Book was published, defendant HarperCollins and defendant Jessica Seinfeld published and authored Deceptively Delicious: Simple Secrets to Getting Your Kids Eating Good Food (the "Infringing Work" or "Deceptively Delicious"), which brazenly plagiarized The Sneaky Chef, and misappropriated the Book's trademark – a caricature of a winking chef holding a finger to her lips (as if to say "shhh") and hiding carrots behind her back.  Defendant Departure Productions, LLC ("Departure"), claims copyright in the Infringing Work. Fueled by a massive, celebrity-driven marketing campaign, Jessica Seinfeld's book became a commercial success, climbing to the top of The New York Times best seller list.

4.    Jessica Seinfeld's success was accompanied by accusations on the Internet and in the media that, based on the striking and substantial similarities between the two books, Jessica Seinfeld had plagiarized The Sneaky Chef.

5.    Seeking to deflect those accusations, and apparently not content that his wife had misappropriated Lapine's book, defendant Jerry Seinfeld, Jessica's husband, embarked on a national media campaign of malicious defamation against Lapine.  On the Late Show With David Letterman , Jerry Seinfeld stated, among other things, that his wife's book came out "at the

3

same time" as Lapine's; that his wife "never saw" or "read" Lapine's book before hers was published; that Lapine was a "wacko" celebrity stalker who, like the infamous stalkers who had terrorized David Letterman and his family, "waited in the woodwork" to "spring out" and attack his wife; and that Lapine was an "angry and hysterical" woman who posed a potentially violent threat ("assassin") to the Seinfelds. Likewise, on E! News, Seinfeld referred repeatedly to Lapine as a "nut job" who had "come[] out of the woodwork" to attack his wife with false accusations of plagiarism.

6.    All of Jerry Seinfeld's statements were false and made recklessly and with malice. Jessica Seinfeld's book came out six months after Lapine's; Jessica Seinfeld saw and read t Lapine's Book before Jessica Seinfeld's was published; Lapine does not suffer from any mental infirmity; she is not a celebrity stalker; she is not a violent or dangerous person; she did not and does not engage in extortion; she is not a liar; she did not, until the filing of this complaint, make any specific accusations against Jessica Seinfeld; she did not fabricate accusations against Jessica Seinfeld to gain media attention, enrich herself or harass the Seinfelds; and she was not lying in wait for an opportunity to become embroiled in a controversy with any celebrity, including the Seinfelds.

4

7.    Defendants Jessica Seinfelds, HarparCollins and Departures' conduct violates federal and New York law. Jerry Seinfeld's malicious, nationally televised attack on Lapine constitutes slander under New York law.

8.    Jessica Seinfeld plagiarized plaintiff's Book and infringed Lapine's trademark. HarperCollins seized Lapine's property as embodied in her manuscript, and used her work in publishing Seinfeld's infringing work, all in violation of state and federal law. HarperCollins currently publishes the Infringing work. Departure Productions LLC, according to the Infringing Work's copyright page, owns the copyright in the Infringing Work. Accordingly, Lapine brings this action to recover compensatory and punitive damages.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b) and 15 U.S.C. § 1121, as well as the doctrine of pendent jurisdiction.

10.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the claims arise, and defendants reside, in this district.

## THE PARTIES

11.    Plaintiff Missy Chase Lapine is a citizen of the State of New York and resides in Irvington, New York.

12.    Plaintiff The Sneaky Chef, Inc. is a corporation organized and existing under the law of the State of New York, with its principal place of business in Irvington, New York.

13.    Defendant Jessica Seinfeld is a citizen of the State of New York and resides in New York, New York.

14.    Defendant Jerry Seinfeld is a citizen of the State of New York and resides in New York, New York. Jerry Seinfeld is an enormously wealthy and well-known actor. From 1990 to 1998, he was the star of *Seinfeld*, one of the most popular programs in television history. He is married to defendant Jessica Seinfeld.

15.    Defendant HarperCollins Publishers, Inc. is a corporation organized and existing under the law of the State of Delaware, with its principal place of business in New York, New York.

16.    Defendant Departure Productions, LLC is a limited liability company organized and existing under the law of the State of New York, with its principal place of business in New York, New York. Departure claims copyright in the Infringing Work.

6

## FACTS

Lapine Conceives of, Researches and Creates the Book

17.    Lapine's professional work has focused on food, nutrition and health. She is the former publisher of Eating Well magazine and, before that, worked at Gourmet magazine. Lapine is certified in the master techniques of healthy cooking and was trained in classical cooking techniques by the Institute of Culinary Education. Lapine serves on the Culinary Arts Faculty of The New School in New York City; is a collaborator with the Alliance for a Healthier Generation, a partnership between the American Heart Association and the William J. Clinton Foundation devoted to helping schools serve healthier lunches; and serves on the Children's Advisory Council of Morgan Stanley Children's Hospital of New York-Presbyterian, where The Sneaky Chef nutrition techniques are used with pediatric patients.

18.    In or about 2002, Lapine began researching methods for getting children to eat healthier foods. Spending her energy, time, and money, Lapine conducted numerous taste tests, focus groups and interviews, and consulted extensively with leading nutritionists, pediatricians and chefs. Her research resulted in an innovative solution: camouflage healthy foods so that children will eat them without realizing or objecting.

7

19.    Through her own ingenuity, effort, and expense Lapine developed original methods for combining ingredients, including specially selected purees of vegetables that children typically resist, such as spinach or cauliflower, with dishes that children typically crave, such as brownies, pizza and pancakes.

20.    Lapine then prepared a manuscript of the Book that set forth Lapine's views on nutrition, child-rearing and American eating habits, as well as her explanation of the purees and how to put her methods to use.

21.    On or about February 6, 2006, Lapine sent a 139-page book proposal, which included extensive chapters from the Book manuscript, to HarperCollins. Four days later, a representative from William Morrow, an imprint of HarperCollins, sent Lapine a letter rejecting the proposal. In or about early May 2006, Lapine, through her literary agent, again submitted to HarperCollins her book proposal, again including extensive chapters from the Book manuscript. On May 24, 2006, HarperCollins rejected Lapine's second proposal, stating that "the children's food segment of the market is a tough one to navigate during a particularly tough time in the cookbook category in general. The influence of the food network and the availability of recipes online have really hurt this area. I'm sorry to say we'll be passing

. . ." HarperCollins retained possession of the material submitted by

Lapine.

Lapine Publishes the Book and Obtains Copyright and Trademark Protection

22.    In or about June 2006, Perseus, another book publisher, accepted

Lapine's proposal for the Book. On or about August 1, 2006, Lapine and

Perseus entered into a contract for publication of the Book.

23.    On or about April 2, 2007, Perseus, through its Running Press

imprint, released the Book. The reviews were extremely positive, with the

culinary press and general media lauding Lapine's revolutionary approach to

disguising healthy foods inside children's favorite dishes. Within three

weeks of publication, the Book became a New York Times best seller.

24.    The Sneaky Chef, Inc. filed applications with the United States

Patent and Trademark Office for trademark registration of the word

trademark "Sneaky Chef" and the image trademark that appears on and in

the Book and on plaintiffs' Web site. The Sneaky Chef, Inc. is the co-owner

with Lapine of all rights to the trademarks and is engaged, together with

Lapine, in developing and marketing books, DVDs and other products that

are based on Lapine's methods and concepts and utilize the trademarks.

25.    As part of a campaign to market and promote the Book, Lapine

appeared on the Today Show, Fox and Friends and numerous other

television programs; appeared on numerous national and local radio programs; was featured in national magazines such as Parenting and Women's Day and in numerous newspapers; and did a book tour throughout the country, which included bookstore and supermarket appearances and signings.

26.    During this book tour and marketing campaign, "The Sneaky Chef", and "shooshing" chef drawing, trademarks became well known and famous. The public began to associate those trademarks with Lapine's ideas and work embodied in her Book. Word of mouth began to spread about Lapine's book and technique. The trademarks, helped people identify Lapine's work.

Jessica Seinfeld Copies the Book, Notwithstanding a Cease And Desist Demand from Lapine and Her Publisher

27.    In or about May 2007, while promoting and marketing the Book, Lapine learned that Jessica Seinfeld and her publisher, HarperCollins, were planning to publish the Infringing Work. In an eight-page promotional brochure for the Infringing Work she received, Lapine observed blatant similarities between the Infringing Work and her Book, including, among other things, its cover design and content. Lapine immediately brought these similarities to the attention of her publisher.

28.    On or about July 9, 2007, seeking to prevent any violation of Lapine's rights, Running Press brought to the attention of Jessica Seinfeld's publisher the blatant similarities between the Book and the plans for the Infringing Work (including the cover art, the subtitles, the organization and the overall look and feel).

29.    On or about July 31, 2007, Jessica Seinfeld's publisher sent Running Press a letter denying that Jessica Seinfeld copied, or was even influenced by, the Book, asserting that the Infringing Work was "entirely original to" Jessica Seinfeld, and stating that "we do not believe it necessary or appropriate to make any changes to the design or content of [the Infringing Work]."

Jessica Seinfeld Infringed Lapine's Copyright

30.    In October 2007, defendants infringed plaintiffs' copyright by publishing and selling the Infringing Work which was copied from plaintiffs' Book.

31.    As compared with its promotional flyer, the Infringing Work was published with only minor and insignificant modifications to the cover art and subtitle - the cover design of the Infringing Work was slightly altered by moving the pictured carrots from their original position (held in the female chef's hand behind her back, exactly where the chef in The Sneaky Chef

11

trademark holds her carrots) to a cutting board behind her back, and the Infringing Work's subtitle was slightly changed from "Sneaky Secrets to Get Your Kids Eating Good Food" to "Simple Secrets to Get Your Kids Eating Good Food."

32.    In writing and publishing the Infringing Work - which, in its content, artwork and overall look and feel, is substantially similar to the Book - defendants blatantly and willfully copied the Book's original concept, expression, methodology, organization, structure, design, styling and look and feel. Defendants misappropriated Lapine's property as manifest throughout the Book manuscript and its recipes. Defendants also infringed Lapine's trademark. Defendants also represent that Lapine's protected expression and property originated with Seinfeld.

33.    Defendants' infringement consists of copying Lapine's protected original expression, philosophy, premise, approach, explanations, discussions, reflections, organization, methodology and overall look and feel, including (without limitation) the following respects:

(a) Both the Book and the Infringing Work contain introductions written by doctors calling attention to the growing problem of obesity in American children and the difficulties inherent in

12

providing sound nutrition to resistant children, and praising the
author for creative, clever and convenient solutions for parents.

(b) Both the Book and the Infringing Work state that children need
to feel a semblance of control over what they eat, while calling
attention to the connection between good nutrition and how
children behave and achieve. Both works discuss the dangers of
too much sugar in a child's diet (e.g., the sugar high and
ensuing crash). Both works address these issues by
recommending camouflaging carefully-selected pureed healthy
foods inside children's favorite foods.

(c) Both the Book and the Infringing Work begin with the author's
personal anecdote of mealtime struggles with her own picky
eaters. In fact, both works include a story about how one of the
author's children is a picky eater who influenced a non-picky
sibling to dislike food. Specifically, within that anecdote:

• the Book describes "***begging***, pleading,

threatening, and bribing," as well as "***coercing***

***kids to eat*** what's on their plates."

13

• the Infringing Work describes "***begging*** my kids

to eat vegetables," as well as "***coerc[ing] them to***

***eat*** food they found disgusting."

(d) Both the Book and the Infringing Work explain that the author

is not a professional chef, just a mother who desires to have

peace at the dinner table and to feed her children nutritious

food. Both works discuss how the author overcame the guilt of

tricking her kids into eating healthy food.

• The Book states that "this method has brought

***peace to our family table,***" that "[i]n many

families, the dinner table becomes a battleground

and meal time is a ***power struggle***," and that "I

couldn't use logic, but I couldn't afford to ***give up***

either."

• The Infringing Work states: "I just wanted a little

***peace around the dinner table***," and continues, "I

want my kids to associate food and mealtimes with

happiness and conversations, not ***power struggles***

and strife." The Infringing Work acknowledges,

"[W]e just want to ***give up***."

14

(e) Both the Book and the Infringing Work characterize the author's solution as an "*epiphany*" and state the benefits that accompany nutritional camouflage.

• The Book explains: "There are many *foods that kids won't go near* in their virgin condition, but after ten seconds in the blender, those same broccoli stalks they made a face at yesterday are now eaten without a fight."

• The Infringing Work explains: "I have become an expert at hiding vegetables purees and other healthful additional - *foods my kids wouldn't touch* otherwise - in all of their favorite dishes."

• As an example, both the Book and the Infringing Work advocate allowing children to put *sprinkles* on their food to enhance its appeal.

(f) Both the Book and the Infringing Work discuss how the author succeeded in hiding "good-for-you" foods in the dishes that kids naturally love, and how the author's family is now happier.

• The Book states: "It got our *whole family* eating together in peace."

• The Infringing states: "[T]he **whole family** is happier and we can finally enjoy mealtimes again."

(g) Both the Book and the Infringing Work address arguments against "sneaking" vegetables into children's dishes and then systematically refute each one.

• The Book likens the practice to a form of "**loving deceit.**"

• The Infringing Work likens the practice to a form of "**[l]oving [d]eception.**"

(h) Both the Book and the Infringing Work state that forbidden foods are more alluring to children and suggest that, for that reason, foods such as candy should not be forbidden.

(i) Both the Book and the Infringing Work provide explanatory passages at the beginning of the work regarding nutrition and directions for the creation and use of the purees, with the latter portion of the work discussing the use of the purees.

(j) The Book, on its cover, spine and first page, uses the caricature of a chef, winking, holding a finger to her lips as if saying "shhh" and hiding carrots behind her back, as well as repeatedly using a drawing of a carrot wearing sunglasses

16

making the same "shhh" gesture. In a substantially similar way, the cover of the Infringing Work uses a caricature of Jessica Seinfeld as a chef, winking, with carrots on a cutting board behind her back, as well as repeatedly using, including on its spine, first page and insert, a drawing of Jessica Seinfeld holding a finger to her lips as if saying "shhh."

(k) The subtitle of the Book, "Simple Strategies for Hiding Healthy Foods in Kids' Favorite Meals," is substantially similar to the subtitle of the Infringing Work, "Simple Secrets to Get your Kids Eating Good Food."

(l) In both the Book and the Infringing Work, each recipe is printed on a page with a border around the text. In the Book, the border is a straight-line box; in the Infringing Work, the border is a wavy-line box.

(m)     Both the Book and the Infringing Work use line-drawn, cartoon graphics, except when showing dishes made according to recipes, they use full-color photographs.

(n)  Both the Book and the Infringing Work include icons with each recipe. The Book uses icons that represent the particular

sneaky method used; the Infringing Work uses icons that represent the particular fruits and vegetables used.

(o) Both the Book and the Infringing Work, in setting forth the use of purees, use a different font color for purees from the color used for the other ingredients.

(p) Both the Book and the Infringing Work suggest the same approach to cooking healthy food for children -- get the right tools (e.g., a small food processor), get the *"staple"* foods, make the vegetable and fruit purees once a week and refrigerate or freeze them, and then, at meal time, make the recipes using the purees to inject healthy foods into the dishes.

(q) Both the Book and the Infringing Work next set forth the staples of a well-stocked kitchen, including a list of which foods children will most often and least often eat without a fight.

(r) Both the Book and the Infringing Work recommend *steaming* the vegetables, pureeing them in a *food processor, packaging* them in *1/4 cup baggies*, and then *freezing* them for later use.

• The Book states: "[Y]ou will find the Make-Ahead . . . are your best friends . . . once you have

these purees and blends in your refrigerator or freezer, *simply grab a spoonful and mix it into the recipes as called for*." The Book claims that with respect to ". . . the scratch recipes, you'll spend *less than thirty minutes* for each one."

• The Infringing Work states: "You will quickly learn to prepare, cook, puree, and portion the purees. Then the *purees will be available to use when they're called for*, just like any other ingredient in my recipes." The Infringing Work claims that ". . . the recipes . . . are doable in *thirty minutes or less* . . ."

(s) Both the Book and the Infringing Work talk about "*sneak*[ing]" the purees into typical kid food to remove "stress." The Book calls this being "*sneaky*," and the Infringing Work refers to it as the "*sneak it in*" technique.

• The Book states: "*[P]arental control* does not have to come in the form of a *constant battle*."

- The Infringing Work states: "It empowers you to exert some legitimate *control* over what your children eat, without inviting the *usual fights*."

(t) Both the Book and the Infringing Work also provide suggestions for and explanations of how purees can be incorporated into pre-packaged, store-bought foods.

(u) Both the Book and the Infringing Work implore the reader to enthusiastically test the purees and recipes.

- The Book states, "[L]et's put these clever methods into *action*"

- The Infringing Work states, "[Y]ou're *ready for action*."

(v) Both the Book and the Infringing Work suggest adding the same specific fruit or vegetable puree to the same dishes, as set forth below:

| Children's Dish | Hidden Puree Used in the Book | Hidden Puree Used in the Infringing Work |
|---|---|---|
| Chocolate Pudding | Avocado | Avocado |
| Chocolate Chip Cookies | White Bean | White Bean |
| Brownies | Spinach | Spinach |
| Grilled Cheese | Sweet Potato | Sweet Potato |

| | | |
|---|---|---|
| French Toast | Sweet Potato/Carrot | Sweet Potato/Carrot |
| Mac 'n Cheese | Cauliflower | Cauliflower |
| Meat Sauce/Bolognese | Sweet Potato | Sweet Potato |
| Twice-Baked Potatoes | Cauliflower | Cauliflower |
| Chicken Tenders | Sweet Potato | Sweet Potato |
| Peanut Butter and Jelly Muffins | Carrot | Carrot |
| Green Eggs | Spinach | Spinach |

### To Deflect Attention From His Wife's Infringement, Jerry Seinfeld Defames Lapine on National Television

34.    Upon release of the Infringing Work in early October 2007, Jessica Seinfeld launched a national promotional campaign, appearing on such popular television programs as The Oprah Winfrey Show and Live with Regis and Kelly. The Infringing Work received favorable reviews and became a best seller.

35.    In light of the substantial similarity between the Book and the Infringing Work, within weeks of publication of the Infringing Work, numerous statements were made on the Internet and in print and television media that Jessica Seinfeld had plagiarized the Book.

36.    On October 29, 2007, to deflect attention from the mounting public accusations of plagiarism against his wife, defendant Jerry Seinfeld used an appearance on the immensely popular CBS television program, Late Show With David Letterman, to launch a malicious, premeditated and knowingly false and defamatory attack, uttering egregiously false and reprehensible statements about Lapine.

37.    In that appearance, Jerry Seinfeld stated that Lapine was a mentally unbalanced celebrity stalker who falsely concocted accusations of plagiarism to thrust herself into the limelight and harass the Seinfelds. Jerry Seinfeld stated that Lapine was an "angry" and "hysterical" "wacko" who had been "waiting in the woodwork" to "spring out" and "go wacko" on the Seinfelds. Seinfeld stated that Lapine was similar to the "wackos" who had victimized Letterman in two widely publicized and harrowing episodes several years ago. To bring home the point that Lapine was a mentally unhinged stalker of the Seinfelds, Jerry Seinfeld further suggested that Lapine could be an "assassin."

38.    Seinfeld's slanderous attack on Lapine included, among others, the following statements uttered before a national television audience.

**David Letterman**: And speaking of mother, the mother of your child, uh, children, your wife, big cookbook, congratulations on the cookbook.

22

**Jerry Seinfeld**: Thank you very much, yes, my wife has a very big cookbook, but -

**Letterman**: What's the name of the cookbook?

**Seinfeld**: -- the cookbook is called, uh, *Deceptively Delicious*, but there is cookbook controversy, now you know…

**Letterman**: What do you mean?

**Seinfeld**: -- I don't like to come on the show without some controversy brewing, where I can inject myself --

\* \* \* \* \*

**Seinfeld**: . . . . So, um, now my wife likes to cook, so she comes up with this thing where she's pureeing vegetables and she's putting them in the kid's food, and the kids, so they get like better nutrition, and she's doing this and then her friends start doing it, and then she has two sisters and they have kids, and they start doing it.  So they're passing all these recipes around. So somebody says to her, you should put these recipes into a cookbook, make a cookbook.

**Letterman**: Right. Excellent idea.

**Seinfeld**: Because it's healthy and we, the fat kids and the obesity, and it's positive, positive thing.

**Letterman**: It's a serious problem. Sure.

23

**Seinfeld**: So she makes the cookbook, everybody is happy, it does well, seemingly an innocent sequence of events.

**Letterman**: Mmm.

**Seinfeld**: *Now you know, having a career in show business, one of the fun facts of celebrity life is, wackos will wait in the woodwork to pop out at certain moments of your life to inject a little adrenalin into your life experience.*

**Letterman**: Yes, just a little tap to get your attention.

**Seinfeld**: *Yes, I have wackos, you have had wackos. I believe your wackos are very well documented.*

**Letterman**: Heh, yeah. Uh, yes. That's one good thing. You got all the paperwork.

**Seinfeld**: *Now, if you're any good as a woodwork wacko, you are patient. You wait. You pick your moment and then you spring out and go wacko. So, there's another woman who had another cookbook. And it was a similar kind of thing with the food, and the vegetables in the food, and uh, my wife never saw the book, read the book, used the book.*

**Letterman**: Knew nothing about it.

**Seinfeld**: Didn't know anything about it. *But the books came out at the same time.*

24

**Letterman**: Mm hmm.

**Seinfeld**: *So this woman says, "I sense this could be my wacko moment."*

**Letterman**: Ahhh. Oh.

**Seinfeld**: *So she comes out and she says, and she accuses my wife, she says, you stole my mushed-up carrots. You can't put mushed-up carrots in a casserole, I put mushed-up carrots in the casserole. It's vegetable plagiarism.*

**Letterman**: It's ridiculous.

***** *

**Letterman**: . . . . And what does this woman think, that she's the first one to prepare and eat food?

**Seinfeld**: *I, I guess so. And I'm more upset, we're sorry that she is, you know, angry and hysterical, and because she's a three-name woman, which is what concerns me. She has three names.*

**Letterman**: Oh, mmm.

**Seinfeld**: *And you know, if you read history, many of the three-name people do become assassins.*

**Letterman**: Yeah, yeah. Now, um --

**Seinfeld**: *Mark David Chapman. And you know, James Earl Ray. So, that's my concern.*

25

39.    Jerry Seinfeld's statements on the Letterman program stated, expressly and by inference, implication and insinuation, that Lapine is a mentally unhinged celebrity stalker who poses a potentially violent threat to the Seinfelds, and that she falsely concocted accusations of plagiarism against Jessica Seinfeld.  A reasonable person watching Jerry Seinfeld on the Letterman program necessarily would conclude that Jerry Seinfeld had imputed to Lapine mental illness and potentially violent or, at a minimum, hostile, tendencies, proclivities and activities.

40.    For example, when Jerry Seinfeld told Letterman, *"I have wackos, you have had wackos. I believe your wackos are very well documented,"* Seinfeld was referring to two stalking episodes involving Letterman that received extensive national press coverage. One such episode, which occurred in the late 1990s, involved Margaret Mary Ray, a woman diagnosed with schizophrenia who repeatedly broke into Letterman's home. The other widely-publicized episode involved a 2005 plot to kidnap Letterman's infant son and hold him hostage for a $5 million ransom.

41.    On the same day he appeared on Late Show With David Letterman, Jerry Seinfeld also appeared on E! News, broadcast on the E! network.  Seinfeld used his appearance on that program again to make outrageously false statements about Lapine's mental health, stating that she

26

was a "nutjob" who had seized upon the cookbook controversy to extort money from the Seinfelds:

**Host**: Your wife has done such great philanthropy work over the years, especially with children. There's lots of controversy now around her book. Is she unfairly being criticized? That's right. Yeah, exactly. And what does this woman think, that she's the first one to prepare and eat food?

**Seinfeld**: *As a celebrity, I enjoy the fact that whenever you do something; some nut job comes out of the woodwork and gets hysterical. I know the truth that nothing ever happened. I don't know if you know the story about the guy I went to college with who claimed I stole the whole TV series from him, and he sued me for 100 million dollars. So this woman is another kind of nut. You know, she thinks she invented vegetables. And she's accusing my wife of stealing her mashed-up carrots.*

42.    Jerry Seinfeld's statements on the E! News program stated, expressly and by inference, implication and insinuation, that Lapine is a mentally unhinged celebrity stalker who seized upon the cookbook controversy to concoct false accusations of copying to extort money from the Seinfelds. A reasonable person watching Jerry Seinfeld on E! News necessarily would conclude that he, directly and by implication, had imputed to Lapine mental illness and a tendency and proclivity to lie and extort.

43.    In both television appearances Jerry Seinfeld's statements were offered as facts or implied facts known to him - someone close to his wife's book controversy who has *insider* information.

44.    The statements uttered by Jerry Seinfeld about Lapine, as described above, are entirely false.  Lapine does not suffer from any mental infirmity; she is not a celebrity stalker; she is not a violent or dangerous person; she did not and does not engage in extortion; she is not a liar; she did not, until the filing of this complaint, make any specific accusations against Jessica Seinfeld (although she had more than ample grounds to do so); she did not fabricate accusations against Jessica Seinfeld to gain media attention, enrich herself or harass the Seinfelds; and she was not lying in wait for an opportunity to become embroiled in a controversy with any celebrity -- much less the Seinfelds.

45.    Lapine is not a public figure, but even if Lapine were to be considered a public figure for the purposes of her defamation cause of action, Jerry Seinfeld knew that his defamatory statements about Lapine were false, and made with malice, or reckless disregarded of the truth.

46.    Jerry Seinfeld's defamatory statements about Lapine have caused and are continuing to cause Lapine severe damage.

## First Claim for Relief

## On Behalf of Plaintiff Missy Chase Lapine

(Copyright Infringement under 17 U.S.C. §§ 101 et seq. --Against

Defendants Jessica Seinfeld, HarperCollins, and Departure)

47.    Plaintiff Missy Chase Lapine repeats and realleges the allegations

of paragraphs 1 through 46.

48.    The Book contains a substantial amount of protected material

wholly original with Lapine and copyrightable subject matter under the laws

of the United States.  The expression, presentation, arrangement, structure

and organization of the Book's content, as well as the Book's explanations,

descriptions, phrases, philosophies, recipes, "sneaky tips," methods,

solutions, premise, styling and designs were the result of Lapine's original,

creative and independent authorial judgment.  The Book's components are

expressed by Lapine in a sequence, order, arrangement, organization and

structure selected by, and original to, Lapine.

49.    Since February 2006, Lapine has been, and is, the sole proprietor

of all right, title, and interest in and to the copyright in the Book.

50.    At all times relevant hereto, all copies of the Book made by Lapine

or under her authority or license in the United States and elsewhere have

been printed in strict conformity with the Copyright Act of the United States

and all other laws governing copyright in the areas where the Book has been published.

51.    Lapine has conveyed no copyright interest in the Book or any edition thereof to HarperCollins, Jessica Seinfeld, or Departure.

52.    Defendant Jessica Seinfeld incorporated Lapine's original expression, arrangement, presentation, structure, methods, phrases, philosophies, designs, styling, descriptions, organization, structure, premise, and recipes, incorporating significant elements of the Book's copyrightable, protected, original expression into the Infringing Work.

53.    As a result of defendant Jessica Seinfeld's infringement of Lapine's copyright, the Infringing Work and the Book, are substantially similar.

54.    Defendants, with knowledge of Lapine's ownership of the copyright in the Book, willfully infringed Lapine's rights by producing, promoting, distributing and otherwise exploiting the Infringing Work.

55.    Departure claims Copyright in the Infringing Work, and HarperCollins is the publisher of the Infringing Work.  Defendants have earned revenues from producing, promoting, distributing and otherwise exploiting the Infringing Work.

56.    As a direct and proximate result of Defendants' conduct, Lapine

has been damaged in an amount to be determined at trial.

### Second Claim for Relief

### On Behalf of Missy Chase Lapine and The Sneaky Chef

(Trademark Infringement under Lanham Act §§ 32 and 43(a) --Against

Defendants Jessica Seinfeld, Departure, and HarperCollins)

57.    Plaintiffs repeat and reallege the allegations of paragraphs 1

through 56.

58.    Plaintiffs are the sole proprietors of all right, title and interest in

The Sneaky Chef word and image trademarks.

59.    Lapine first used The Sneaky Chef word and image trademarks in

commerce in connection with her business in or about February 2007.  The

image trademark contains a line drawn caricature image of a female chef

winking, holding a finger to her lips as if to say "shhh" , and hiding carrots

behind her back.

60.    Subsequently, Lapine initiated the registration process for both the

"Sneaky Chef" word trademark and the above-described image trademark.

On December 25, 2007, the United States Patent and Trademark office

issued Lapine Registration No. 3360525 related to the word trademark.

Additional registration applications: Serial No. 77315353, as related to the

word trademark, and Serial Nos. 77254965 and 77336128, as related to the image trademark, are pending.

61.    By virtue of the Book's sales and promotion, as well as the distinctive appearance and nature of The Sneaky Chef word and image trademarks, the trademarks have acquired a secondary meaning attributable to plaintiffs. Lapine's education, expertise and years of effort in improving the diets and health of American children and the culinary arts have contributed to the credibility and goodwill fostered in the trademarks.

62.    Jessica Seinfeld (who has no education, expertise or experience concerning children's nutrition or culinary arts) and the codefendants have, in bad faith, adopted a confusingly similar mark, making use, on the Infringing Work's cover, of a line-drawn caricature of a female chef preparing food, winking, while hiding carrots behind her back. An additional image appears on the spine of the Infringing Work and on Jessica Seinfeld's Web site containing a line-drawn image of a female holding a finger to her lips as if to say "shhh."

63.    The above-described elements of the Infringing Work are designed and conceived to mislead the public into associating the Infringing Work with the Book, and are likely to cause consumer confusion, initial interest confusion, mistake and deception of the public as to the identity and origin

of plaintiffs' goods, and as to any affiliation or relationship between the two

works and parties, causing irreparable harm to plaintiffs.

64.    The Infringing Work has been advertised, sold and distributed in

interstate commerce.

65.    As a direct and proximate result of Defendants' conduct, plaintiffs

have been damaged in an amount to be determined at trial

### Third Claim for Relief

### On Behalf of Missy Chase Lapine

(Unfair Competition under Lanham Act § 43(a) --Against Defendants

Jessica Seinfeld, HarperCollins, and Departure)

66.    Missy Chase Lapine repeats and realleges the allegations of

paragraphs 1 through 65.

67.    Through great personal effort, work, expense, and sacrifice, Lapine

researched, cooked, and tested techniques, recipes, and systems to help

parents feed vegetables to their children with the least resistance.  Lapine's

independent effort resulted in the development of techniques, recipes, and

systems that were Lapine's property.

68.    Lapine's years of effort and her resulting property were contained

in the Book manuscript she sent to HarperCollins for review and possible

publication.  Jessica Seinfeld, her employees, agents, or representatives,

misappropriated Lapine's property for use, in whole or in part, in the
Infringing Work. Lapine's property is manifest throughout the Infringing
Work.

69.    In addition, Lapine's Book contains a substantial amount of
protected material wholly original with Lapine; copyrightable subject matter
under the laws of the United States. The expression, presentation,
arrangement, structure and organization of the Book's content, as well as the
Book's explanations, descriptions, phrases, philosophies, recipes, "sneaky
tips," methods, solutions, premise, styling and designs were the result of
Lapine's original, creative and independent authorial judgment. The Book's
components are expressed by Lapine in a sequence, order, arrangement,
organization and structure selected by, and original to, Lapine.

70.    Since February 2006, Lapine has been, and is, the sole proprietor
of all right, title, and interest in and to the copyright in the Book.

71.    At all times relevant hereto, all copies of the Book made by Lapine
or under her authority or license in the United States and elsewhere have
been printed in strict conformity with the Copyright Act of the United States
and all other laws governing copyright in the areas where the Book has been
published.

72.    Lapine has conveyed no copyright interest in the Book or any edition thereof to HarperCollins, Departure, or Jessica Seinfeld.

73.    Defendants incorporated Lapine's original expression, arrangement, presentation, structure, methods, phrases, philosophies, designs, styling, descriptions, organization, structure, premise, and recipes, incorporating significant elements of the Book's copyrightable, protected, original expression into the Infringing Work.

74.    Therefore, the following representations, made by defendants Jessica Seinfeld, HarperCollins, or Departure, including their employees, representatives, or agents, constitute misrepresentations of fact, false descriptions of fact, and false designations of origin:

- from page 9 of the Infringing Work, commenting on the content of the Infringing Work, "[Seinfeld] has *done all the work*, and now we can benefit from *her efforts*." (Emphasis added.);

- from the website advertising the Infringing Work, http://www.deceptivelydelicious.com/site/about-the-author.php, "...the idea for my book was my own, and every recipe in the book came from my own experimentation, with my own family, in my own kitchen. And it all started with my own 'eureka' moment."; and

- from the copyright page, "DECEPTIVELY DELICIOUS. Copyright © 2007 Departure Productions, LLC."

75.  Defendants' statements and representations assign the entire credit for the Infringing Work and Lapine's property contained therein, to themselves, and fail to credit Lapine or her Book.

76.  The above described misrepresentations are designed, are conceived, and are likely, to cause confusion, cause mistake, or to deceive as to the origin of the Infringing Work and Lapine's property contained therein.

77.  As a direct and proximate result of defendants' conduct, Lapine has been damaged in an amount to be determined at trial.

## Fourth Claim for Relief

## On Behalf of All Plaintiffs

(Trademark Infringement under N.Y. Gen. Bus. Law § 360-k --Against Defendants Jessica Seinfeld, Departure, and HarperCollins)

78.  Plaintiffs repeat and reallege the allegations of paragraphs 1 through 77.

79.  Defendants have used and continue to use, without plaintiffs' consent, a colorable imitation of The Sneaky Chef trademark in connection with the sale, distribution, offering for sale, or advertising of the Infringing Work.

80.    Defendants' improper and bad-faith use of a confusingly similar mark is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services.

81.    Defendants intended to cause confusion or mistake or to deceive as to the source of origin of such goods or services.

82.    As a direct and proximate result of Defendants' conduct, plaintiffs have been damaged in an amount to be determined at trial.

### Fifth Claim for Relief

**On Behalf of All Plaintiffs**

(Injury to Business Reputation under N.Y. Gen. Bus. Law § 360-l --Against Defendants Jessica Seinfeld, Departure, and HarperCollins)

83.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 82.

84.    Jessica Seinfeld's use of a confusingly similar trademark injures and creates a likelihood of injury to plaintiffs' business reputation because persons encountering Jessica Seinfeld and her products and services will believe that Jessica Seinfeld is affiliated with or related to or has the approval of plaintiffs.

85.    Any adverse reaction by the public to Jessica Seinfeld and the quality of her products and the nature of her business will injure the business

reputation of plaintiffs and the goodwill that they enjoy in connection with The Sneaky Chef trademark, goods and services.

86.     As a direct and proximate result of Jessica Seinfeld's conduct, plaintiffs have been damaged in an amount to be determined at trial.

## Sixth Claim for Relief

### On Behalf of Plaintiff Missy Chase Lapine

(Slander and Slander Per Se --Against Defendant Jerry Seinfeld)

87.     Plaintiff Missy Chase Lapine repeats and realleges the allegations of paragraphs 1 through 86.

88.     Jerry Seinfeld's false statements about Lapine constitute slander and/or slander per se.

89.     Jerry Seinfeld's statements were textually sufficient for a listener to identify Lapine, and only Lapine, as the target of his falsehoods.

90.     Jerry Seinfeld's false and defamatory statements were made with malice, as such statements were made by Jerry Seinfeld with knowledge of their falsity or with reckless disregard for their falsity.

91.     As a proximate result of Jerry Seinfeld's false and defamatory statements, Lapine has suffered injury, including pecuniary loss, in an amount to be determined at trial.

92. Because Jerry Seinfeld's made his false and defamatory statements described above knowingly, willfully, maliciously and in conscious disregard of Lapine's rights, Lapine is entitled to an award of punitive damages in an amount to be determined at trial.

## Seventh Claim for Relief

### On Behalf of Plaintiff Missy Chase Lapine

(Breach of Implied Contract against HarperCollins)

93. Plaintiff Missy Chase Lapine repeats and realleges the allegations of paragraphs 1 through 92.

94. In February and May of 2006, Lapine sent her Book proposal manuscript to HarperCollins for review.

95. Because HarperCollins is a publisher, and Lapine an author, manuscript submission for review and potential publishing created an implied contract, wherein HarperCollins agreed to accept, and did accept, the manuscript for limited purposes, consistent with their respective position. Harper Collins retained possession of the material submitted by Lapine.

96. Given the relative position of the parties (publisher and author) and the circumstances (author submitting manuscript for consideration of publication), Lapine's submission of the Book manuscript, with its original and novel ideas, philosophy, advice, methods, systems, and recipes, was

performed with the understanding and expectation, fully and clearly understood by HarperCollins, that Lapine would be reasonably compensated if HarperCollins made use of the Book manuscript, or Lapine's ideas, recipes, or other matter it contained. It was additionally understood and expected by the parties, that with HarperCollins' acceptance of Lapine's Book manuscript, HarperCollins would treat the Book manuscript and its contents in a manner not inconsistent with their understanding and expectation.

97.    HarperCollins, their employees, agents, or representatives, breached the implied contract by using the original and novel ideas conveyed in the Book manuscript, without compensating Lapine, by including those ideas in the Infringing Work.

98.    HarperCollins, their employees, agents, or representatives, breached the implied contract when they used or allowed the Book manuscript or its contents to serve the writers of the Infringing Work, without compensating Lapine.

99.    HarperCollins, their employees, agents, or representatives, breached the implied contract, and their obligation of good faith and fair dealing that is part of the contract when HarperCollins used the Book manuscript or its contents in a manner or for a purpose inconsistent with the

understanding and expectation of the parties, and, without compensating

Lapine.

100.   Lapine performed all conditions, covenants and promises in

accordance with the terms of the implied contract.

101.   As a direct and proximate result of HarperCollins' conduct, Lapine

has been damaged in an amount to be determined at trial.

## Eighth Claim for Relief

## On Behalf of Plaintiff Missy Chase Lapine

(Misappropriation and Unfair Competition against HarperCollins)

102.   Plaintiff Missy Chase Lapine repeats and realleges the allegations

of paragraphs 1 through 101.

103.   Through great personal effort, work, expense, and sacrifice, Lapine

researched, cooked, and tested techniques, recipes, and systems to help

parents feed vegetables to their children with the least resistance.  Lapine's

independent effort resulted in the development of techniques, recipes, and

systems that were Lapine's property.

104.   Lapine's years of effort and the resulting property were contained

in the Book manuscript she sent to HarperCollins.  In February and May of

2006, Lapine sent her Book manuscript to HarperCollins, for the limited

purpose of review for possible publication.

105.   HarperCollins, its employees, agents, or representatives, misappropriated Lapine's property through its use by codefendants, their employees, agents, or representatives in codefendants' Infringing Work.

106.   The misappropriation occurred within the scope, and through the regular and established channels authors use to secure publication. HarperCollins' misappropriation was done for the purpose of selling Lapine's property themselves, via the Infringing Work, in direct competition with Lapine.

107.   The misappropriation occurred before Lapine was able to reap the economic value of her property in the market place.

108.   As a direct and proximate result of HarperCollins' conduct, Lapine has been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that judgment be entered:

(1) On the First Claim for Relief, against defendants Jessica Seinfeld, Departure, and HarperCollins, and in favor of Plaintiff Missy Chase Lapine:

(a) awarding, pursuant to 17 U.S.C. § 504(b), actual damages and disgorgement of all profits attributable to the Infringing Work, including, but not limited to, all profits from (i) distributing the Infringing Work for

domestic and international release; and (ii) otherwise exploiting the

Infringing Work through licensing, merchandising or other means; and

(b) awarding, pursuant to 17 U.S.C. § 504(c), statutory damages;

(2) On the Second Claim for Relief, against defendants Jessica Seinfeld,

Departure, and HarperCollins, and in favor of plaintiff Missy Chase Lapine

and The Sneaky Chef, Inc., awarding, pursuant to § 35 of the Lanham Act,

15 U.S.C §§ 1117(a) damages, as well as disgorgement of all profits

attributable to the Infringing Work, including, but not limited to, all profits

from (i) distributing the Infringing Work for domestic and international

release; and (ii) otherwise exploiting the Infringing Work through licensing,

merchandising or other means;

(3) On the Third Claim for Relief, against defendants Jessica Seinfeld,

Departure, and HarperCollins, and in favor of plaintiff Missy Chase Lapine

and The Sneaky Chef, Inc., awarding, pursuant to § 35 of the Lanham Act,

15 U.S.C §§ 1117(a) damages, as well as disgorgement of all profits

attributable to the Infringing Work, including, but not limited to, all profits

from (i) distributing the Infringing Work for domestic and international

release; and (ii) otherwise exploiting the Infringing Work through licensing, merchandising or other means;

(4) On the Fourth Claim for Relief, against defendants Jessica Seinfeld, Departure, and HarperCollins, and in favor of plaintiffs Missy Chase Lapine and The Sneaky Chef, Inc., awarding, pursuant to N.Y Gen. Bus. Law § 360-m, actual damages and disgorgement of all profits attributable to the Infringing Work, including, but not limited to, all profits from (i) distributing the Infringing Work for domestic and international release; and (ii) otherwise exploiting the Infringing Work through licensing, merchandising or other means; as well as multiple damages in the amount of three times the damages suffered by plaintiffs, pursuant to N.Y Gen. Bus. Law § 360-m;

(5) On the Fifth Claim for Relief, against defendants Jessica Seinfeld, Departure, and HarperCollins, and in favor of plaintiffs Missy Chase Lapine and The Sneaky Chef, Inc., awarding, pursuant to N.Y Gen. Bus. Law § 360-m, actual damages and disgorgement of all profits attributable to the Infringing Work, including, but not limited to, all profits from (i) distributing the Infringing Work for domestic and international release; and

(ii) otherwise exploiting the Infringing Work through licensing, merchandising or other means; as well as multiple damages in the amount of three times the damages suffered by plaintiffs, pursuant to N.Y Gen. Bus. Law § 360-m;

(6) On the Sixth Claim for Relief, against defendant Jerry Seinfeld and in favor of plaintiff Missy Chase Lapine, awarding compensatory and punitive damages in amounts to be determined at trial;

(7) On the Seventh Claim for Relief, against HarperCollins, and in favor of plaintiff Missy Chase Lapine, awarding contract damages, in an amount proven at trial.

(8) On the Eighth Claim for Relief against defendant HarperCollins, and in favor of Plaintiff Missy Chase Lapine, awarding compensatory and punitive damages according to proof at trial.

(9) Awarding plaintiffs their costs, expenses, interest and reasonable attorneys' fees;

(10) Granting such other and further relief as this Court deems just and

proper.


Dated: April 17, 2008


GIRARDI | KEESE

By: _____

Howard B. Miller
Amanda L. McClintock
Joseph C. Gjonola
1126 Wilshire Boulevard
Los Angeles, CA 90017
Tel. (213) 977-0211
Fax (213) 481-1554
hmiller@girardikeese.com
amcclintock@girardikeese.com
jgjonola@girardikeese.com

SEEGER WEISS LLP
Christopher A. Seeger (CS-4880)
David R. Buchanan (DB- 6368)
One William Street, Suite 10
New York, NY 10004
Tel. (212) 584-0757
Fax. (212) 584-0799
cseeger@seegerweiss.com
dbuchana@seegerweiss.com

## AFFIDAVIT OF SERVICE

J. Daniel Mora, being duly sworn, hereby deposes and says:

I am over the age of eighteen years and not a party to the within action and am

employed by the firm Seeger Weiss LLP, counsel for the plaintiff.

On April 18, 2008 I cause a true and correct copy of the foregoing,

**FIRST AMENDED COMPLAINT**, to be served via U.S. Mail, with proper postage prepaid

on all counsel of record at the following addresses:

> Orin Snyder, Esq.
> Gibson, Dunn, & Crutcher LLP
> 200 Park Avenue
> New York, NY 10166-0193
>
> *Counsel for Defendants Harpercollins Publisher, Inc. and
> Departure Production, LLC*
>
> Richard Dannay, Esq.
> Thomas Kjellberg, Esq.
> COWAN, LIEBOWITZ & LATMAN, P.C.
> 1133 Avenue of the America's
> New York, NY 10036
> Tel. 212-790-9256
> Fax: 212-575-0671
>
> ***Counsel for Defendants Jessica Seinfeld
> and Jerry Seinfeld***

Dated:  April 18, 2008

_____
J. Daniel Mora