GIBSON, DUNN & CRUTCHER LLP
ORIN SNYDER (OS-3122)
THEODORE J. BOUTROUS, JR. (*Pro Hac Vice Pending*)
LAURA BROWNING (LB-9931)
200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
*Attorneys for Defendant Jerry Seinfeld*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |
|---|---|---|
| MISSY CHASE LAPINE and THE SNEAKY CHEF, INC., | x<br>:<br>:<br>: | |
| Plaintiffs, | :<br>:<br>:<br>: | *ORAL ARGUMENT REQUESTED* |
| v. | :<br>: | 08-CV-128 (LTS) (RLE) |
| JESSICA SEINFELD, JERRY SEINFELD, HARPERCOLLINS PUBLISHERS, INC., and DEPARTURE PRODUCTIONS, LLC, | :<br>:<br>:<br>: | |
| Defendants. | :<br>x | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**DEFENDANT JERRY SEINFELD'S MEMORANDUM
OF LAW IN SUPPORT OF HIS MOTION TO DISMISS
THE SIXTH CLAIM OF THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

ALLEGATIONS AND BACKGROUND ................................................................... 5

STANDARD ON THIS MOTION ............................................................................. 9

ARGUMENT ............................................................................................................ 10

I.    THE CHALLENGED STATEMENTS ARE ABSOLUTELY PROTECTED
      UNDER BOTH THE FEDERAL AND NEW YORK CONSTITUTIONS. ................... 11

      A.    The Challenged Statements Are Absolutely Protected Statements Of
            Opinion Under The Federal and New York Constitutions. ................................ 13

            1.    The Humorous And Light-Hearted Context Of The Challenged
                  Statements Belies Any Defamatory Meaning. ........................................... 14

            2.    The Nature Of The Challenged Statements Further Establishes
                  That Mr. Seinfeld Was Merely Expressing Humorous Opinion,
                  Not Making Statements Of Objective Fact. ............................................... 16

      B.    The Federal and New York Constitutions Also Provide Absolute
            Protection For Rhetorical Hyperbole And Vigorous Epithets Like The
            Challenged Statements. ......................................................................................... 18

II.   THE CLAIM AGAINST MR. SEINFELD SHOULD ALSO BE DISMISSED
      BECAUSE THE CHALLENGED STATEMENTS ARE NOT
      SLANDEROUS PER SE AND LAPINE HAS FAILED TO PLEAD
      SPECIAL DAMAGES ................................................................................................. 23

      A.    The Allegedly Defamatory Statements Are Not Slanderous Per Se. ................... 24

      B.    Lapine's Allegation That She Has Suffered Unspecified Damages In
            An Amount To Be Proven At Trial Does Qualify As Special Damages. .............. 25

CONCLUSION ......................................................................................................... 27

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*600 W. 115th St. Corp. v. Von Gutfeld*,
  80 N.Y.2d 130 (1992) ................................................................................................ 18, 20, 21

*Abdelhamid v. Altria Group, Inc.*,
  515 F. Supp. 2d 384 (S.D.N.Y. 2007) ................................................................................. 10

*Actman v. Kirby, McInerney & Squire, LLP*,
  464 F.3d 328 (2d Cir. 2006) ................................................................................................ 10

*Ali v. Playgirl, Inc.*,
  447 F. Supp. 723 (S.D.N.Y. 1978) ......................................................................................... 5

*Aronson v. Wiersma*,
  65 N.Y.2d 592 (1985) ..................................................................................................... 24, 25

*B.V.D. Licensing Corp. v. Body Action Design*,
  846 F.2d 727 (Fed. Cir. 1988) ............................................................................................... 5

*Baxter v. State of Tenn. Dep't of Corr.*,
  831 F.2d 293, 1987 WL 44459 (6th Cir. 1987) ................................................................... 22

*Bell Atl. Corp. v. Twombly*,
  127 S. Ct. 1955 (2007) ......................................................................................................... 10

*Berman v. Medical Soc. of State of N.Y.*,
  23 A.D.2d 98 (1st Dep't 1965) ............................................................................................. 26

*Blackwell v. Carson*,
  1994 WL 395544 (Cal. App. 2d Dist. Apr. 9, 1994) ....................................................... 7, 16

*Brian v. Richardson*,
  87 N.Y.2d 46 (1995) ........................................................................................... 10, 12, 15, 16

*Brill v. Brenner*,
  308 N.Y.S.2d 218 (Civ. Ct. N.Y. County 1970) ................................................................. 23

*Buttons v. Nat'l Broad. Co., Inc.*,
  858 F. Supp 1025 (C.D. Cal. 1994) .................................................................................. 7, 15

*Cortect Indus. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991) ..................................................................................................... 7

## TABLE OF AUTHORITIES
### [Continued]

Page(s)

*Covino v. Hagemann*,
   627 N.Y.S.2d 894 (Sup. Ct. Richmond Co. 1995) .................................................................. 17

*Dooner v. Keefe, Bruyette & Woods, Inc.*,
   2003 WL 135706 (S.D.N.Y. Jan. 17, 2003) ...................................................................... 24, 26

*Dworin v. Deutsch*,
   2008 WL 508019 (S.D.N.Y. Feb. 22, 2008) ................................................................. 6, 16, 17

*Ferlito v. County of Suffolk*,
   2007 WL 4180670 (S.D.N.Y. Nov. 17, 2007) ....................................................................... 25

*Finkelstein v. Wachtel*,
   2003 WL 1918309 (S.D.N.Y. 2003) ..................................................................................... 18

*Fleming v. Benzaquin*,
   390 Mass. 175 (1983) ........................................................................................................... 23

*G. Ricordi & Co. v. Paramount Pictures, Inc.*,
   92 F. Supp. 537 (S.D.N.Y. 1950) ........................................................................................... 5

*Geary v. Goldstein*,
   1996 WL 447776 (S.D.N.Y. Aug. 8, 1996) ........................................................................... 7

*Greenbelt Cooperative Publishing Ass'n., Inc. v. Bresler*,
   398 U.S. 6 (1970) ............................................................................................................. 19, 20

*Harris v. Hirsh*,
   228 A.D.2d 206 (1st Dep't 1996) ......................................................................................... 24

*Held v. Pokorny*,
   583 F. Supp. 1038 (S.D.N.Y. 1984) ............................................................................... 10, 11

*Hollander v. Cayton*,
   145 A.D.2d 605 (2d Dep't 1998) ......................................................................................... 17

*Horne v. Matthews*,
   1997 WL 598452 (S.D.N.Y. Sept. 25, 1997) ....................................................................... 14

*Huggins v. Povitch*,
   1996 WL 515498 (Sup. Ct. N.Y. Co. Apr. 19, 1996) ........................................................... 21

*Hustler Magazine, Inc. v. Falwell*,
   485 U.S. 46 (1988) ............................................................................................................... 20

# TABLE OF AUTHORITIES
### [Continued]

Page(s)

*Idema v. Wager*,
   120 F. Supp. 2d 361 (S.D.N.Y. 2000) .................................................................................. 25

*Immuno, A.G. v. Moor-Jankowsi*,
   77 N.Y.2d 235 (N.Y. 1991), *cert. denied*, 111 S. Ct. 2261 (1991) ........................ 12, 14, 15, 20

*Indep. Living Aids v. Maxi-Aids, Inc.*,
   981 F. Supp. 124 (E.D.N.Y. 1997) ...................................................................................... 13

*Int'l Audiotext Network, Inc. v. Am Tel. & Tel. Co.*,
   62 F.3d 69 (2d Cir. 1995) ................................................................................................... 7

*Ithaca College v. Yale Daily News Pub. Co., Inc.*,
   85 A.D.2d 817 (3d Dep't 1981) ......................................................................................... 24

*Jaliman v. Selendy*,
   801 N.Y.S.2d 235  (Sup. Ct. Westchester Co. 2005) ........................................................ 26

*James v. Gannet Co.*,
   40 N.Y.2d 415 (N.Y. 1976) ................................................................................................ 8

*Kane v. Comedy Partners*,
   2003 WL 22383387 (S.D.N.Y. Oct. 16, 2003) .................................................................. 17

*Karaduman v. Newsday Inc.*,
   51 N.Y.2d 531 (1980) .......................................................................................................... 4

*Kaye v. Prisma Corp.*,
   172 A.D.2d 287 (1st Dep't 1991) ...................................................................................... 24

*Kersul v. Skulls Angels, Inc.*,
   495 N.Y.S.2d 886 (Sup. Ct. Queens Co. 1985) ........................................................... 24, 26

*Kneivel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ........................................................................................... 16

*Koch v. Goldway*,
   817 F.2d 507 (9th Cir. 1987) ............................................................................................. 22

*Komarov v. Advance Magazine Publishers, Inc.*,
   691 N.Y.S.2d 298 (Sup. Ct. N.Y. Co. 1999) ................................................................... 22

*Lambertini v. Sun Printing & Publ'g Ass'n*,
   111 A.D. 437 (2d Dep't 1906) ........................................................................................... 22

## TABLE OF AUTHORITIES
### [Continued]

Page(s)

*Leeds v. Meltz*,
  85 F.3d 51 (2d Cir. 1996) ................................................................... 10

*Leidholdt v. L.F.P. Inc.*,
  860 F.2d 890 (9th Cir. 1988) ............................................................. 23

*Levin v. McPhee*,
  119 F.3d 189 (2d Cir. 1997) ................................................... 10, 11, 14

*Liberman v. Gelstein*,
  80 N.Y.2d 429 (N.Y. 1992) ................................................................ 25

*Lloyd v. Cardiology & Internal Medicine of Long Island, PLLC*,
  2007 WL 2410853 (Sup. Ct. Nassau Co. Aug. 23, 2007) ................................. 23, 24

*Loughman v. Mahoney*,
  20 Mass. L. Rep. 169, 2005 WL 3489894 (Mass. Super. Ct. Nov. 3, 2005) .......................... 23

*Mann v. Abel*,
  10 N.Y.3d 271 (2008) ................................................... 13, 14, 16

*Mercado v. Shustek*,
  309 A.D.2d 646 (1st Dep't 2003) ........................................... 17

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990) ................................................................ 13, 19

*Minoli v. Evon*,
  1996 WL 288473 (E.D.N.Y. May 24, 1996) ........................................... 26

*Mr. Chow of New York v. Ste. Jour Azur S.A.*,
  759 F.2d 219 (2d Cir. 1985) ............................................... 12, 14, 16

*Myers v. Boston Magazine*,
  380 Mass. 336 (1980) ............................................................ 16

*Newsday, Inc. v. C. L. Peck Contractor, Inc.*,
  87 A.D.2d 326 (1st Dep't 1982) ............................................. 26

*Old Dominion Branch No. 496, National Ass'n of Letter Carriers v. Austin*,
  418 U.S. 264 (1974) ................................................................ 18, 19

*Plonka v. Brown*,
  108 Fed. Appx. 31 (2d Cir. 2004), *cert. denied*, 542 U.S. 1148 (2005) ................... 24

# TABLE OF AUTHORITIES
### [Continued]

Page(s)

*Polish American Immigration Relief Committee, Inc. v. Relax*,
   189 A.D.2d 370 (1st Dept. 1993)....................................................... 13, 23

*Polygram Records, Inc. v. Superior Ct. of Napa County*,
   170 Cal. App. 3d 543 (Cal. App. 1st Dist. 1985)............................... 5, 16

*Ram v. Moritt*, 205 A.D.2d 516 (2d Dep't 1994) ....................................... 20

*Roth v. United Federation of Teachers*,
   787 N.Y.S.2d 603 (Sup. Ct. Kings Co. 2004)....................... 10, 12, 21, 22

*Scholastic, Inc. v. Stouffer*,
   124 F. Supp. 2d 836 (S.D.N.Y. 2000) .................................................. 17

*Sobek v. Quattrochi*,
   2004 WL 2809989 (S.D.N.Y. Dec. 8, 2004) ........................................... 8

*Tel. Sys. Int'l, Inc. v. Cecil*,
   2003 WL 22232908 (S.D.N.Y. Sept. 26, 2003)...................................... 21

*Torain v. Liu*,
   2007 WL 2331073 (S.D.N.Y. Aug. 16, 2007),
   *aff'd*, 2008 WL 2164659 (2d Cir. May 22, 2008) ..................... 10, 12, 14, 22

*United States Steel, LLC v. Tieco, Inc.*,
   261 F.3d 1275 (11th Cir. 2001) ............................................................ 21

*Wanamaker v. VHA, Inc.*,
   19 A.D.3d 1011 (4th Dep't 2005) ........................................................ 22

*Weinstein v. Friedman*,
   1996 WL 137313 (S.D.N.Y. March 26, 1996) ...................................... 10

*Willis v. Home Box Office*,
   2001 WL 1352916 (S.D.N.Y. Nov. 2, 2001)........................................... 5

## Constitutional Provisions

N.Y. Const. art. I, § 8............................................................................ *passim*

U.S. Const. Amend. I ............................................................................. *passim*

## TABLE OF AUTHORITIES
### [Continued]

<u>Page(s)</u>

**Rules**

Fed. R. Civ. P. 12 .................................................................................................... 9

**Other Authorities**

Robert Sack, *Sack on Defamation*, § 2.4.7 (April 2008) ............................................... 19

Robert Sack, *Sack on Defamation*, § 5.5.2.7.1 (April 2008) .................................................. 3, 16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MISSY CHASE LAPINE and THE SNEAKY
CHEF, INC.,

                        Plaintiffs,

        v.

JESSICA SEINFELD, JERRY SEINFELD,      08-CV-128 (LTS) (RLE)
HARPERCOLLINS PUBLISHERS, INC., and
DEPARTURE PRODUCTIONS, LLC,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT JERRY SEINFELD'S MEMORANDUM
## OF LAW IN SUPPORT OF HIS MOTION TO DISMISS
## THE SIXTH CLAIM OF THE FIRST AMENDED COMPLAINT

Defendant Jerry Seinfeld ("Mr. Seinfeld" or "Seinfeld") respectfully submits this

memorandum of law in support of his motion to dismiss the Sixth Claim of the First Amended

Complaint ("Amended Complaint" or "FAC") filed by Missy Chase Lapine and The Sneaky

Chef, Inc. (collectively, "Lapine") for failure to state a claim pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.

### PRELIMINARY STATEMENT

This lawsuit is an affront to the fundamental protections afforded to free speech by the

First Amendment to the United States Constitution and Article 1, Section 8 of the New York

Constitution.  In October 2007, Jessica Seinfeld, a childhood nutrition advocate and wife of well-

known comedian Jerry Seinfeld, released a cookbook of healthy family recipes prepared with

hidden vegetables.  The book quickly shot to number one on the *New York Times* Best-Seller

List.  Lapine, who had published a cookbook focused on "camouflaging" purees of fruits and

vegetables in children's food a few months earlier, immediately made statements to the press challenging the originality of Mrs. Seinfeld's best-selling book.

In late October 2007, Mr. Seinfeld appeared on the *Late Show With David Letterman* ("*Late Show*") and *E! News Live* ("*E! News*") to promote his upcoming film *Bee Movie*.  During these appearances, Seinfeld made jokes about, among other things, his role as a father, his tendency to steal extra newspapers out of the *USA Today* box and the "cookbook controversy" that Lapine had created.  For example, to the laughter of the live audience on the *Late Show*, Seinfeld joked with Mr. Letterman that "one of the fun facts of celebrity life is that wackos will wait in the woodwork to pop out" and humorously observed that "many three-named people do become assassins."

Lapine's Amended Complaint alleges a single claim against Mr. Seinfeld for slander and slander per se based upon his statements on the *Late Show* and *E! News* and seeks unquantified sums of money for the allegedly "severe damage" caused to Lapine by Seinfeld's comic portrayal of the "cookbook controversy" on these programs.[1]  This claim is barred by the First Amendment, Article 1, Section 8 of the New York Constitution and decades of case law protecting statements of opinion and hyperbole from claims of defamation.  As Judge Sack of the U.S. Court of Appeals for the Second Circuit has noted in his leading defamation law treatise,

---

[1] The complaint filed on January 7, 2008, which also alleged multiple claims against Mrs. Seinfeld, was riddled with inaccuracies, including outright misrepresentations about the ingredients in Mrs. Seinfeld's allegedly infringing recipes and fabricated quotations from Lapine's book *The Sneaky Chef*.  *See* Declaration of Orin Snyder dated June 16, 2008 ("Snyder Decl." or "Snyder Declaration") Ex. A ¶ 24.  Although defendants put Lapine on notice of these Rule 11 violations in their Answer, *see* Snyder Decl. Ex. B ¶ 24, Lapine made no effort to correct these inaccuracies when she filed her Amended Complaint.  *See* Snyder Decl. Ex. C ¶ 33.  Simultaneously with this motion, defendants Jessica Seinfeld, HarperCollins and Departure Productions, LLC are moving to dismiss the remaining claims of the Amended Complaint.

"humor is an important medium of legitimate expression and central to the well-being of individuals, society, and their government . . . [and] any effort to control it runs severe risks to free expression as dangerous as those addressed to more 'serious' forms of communication." Robert Sack, *Sack on Defamation*, § 5.5.2.7.1 at 5-111 (April 2008).

The claim against Seinfeld fails as a matter of law and should be dismissed for at least three independent reasons.  <u>First</u>, Seinfeld's statements were quite clearly statements of opinion, which are absolutely privileged and shielded from claims of defamation under both Article I, Section 8 and the First Amendment.  Both the context of the statements – humorous interviews and comedic routines on television shows recognized for their light-hearted tone – and the nature of the language used – loose, hyperbolic, humorous and satirical statements – make clear that no reasonable viewer could have taken Seinfeld's comic banter to be statements of fact.  For example, no reasonable viewer could have thought that Seinfeld really meant that Lapine – the author of children's cookbook emphasizing the use of pureed vegetables – might become an "assassin" simply because she has three names.

<u>Second</u>, Seinfeld's statements qualify for absolute protection under the First Amendment to the United States Constitution and Article 1, Section 8 of the New York Constitution because they are "rhetorical hyperbole" and "vigorous epithets."  The U.S. Supreme Court has repeatedly held that such statements are protected by the First Amendment and cannot give rise to a cause of action for slander.  As the Federal Constitution sets the minimum standard of protection for such statements, and New York law provides even broader protection than the First Amendment, New York law likewise bars Lapine's claims based on Seinfeld's obviously hyperbolic and comedic statements.

Indeed, courts have dismissed defamation claims based on far more virulent statements, made in more serious settings, than the jokes told by Seinfeld in obviously comedic settings.  For example, comparisons of an individual to "Adolf Hitler," "Jeffrey Dahmer," "John Gotti" and "Satan" have all been held to be non-defamatory, as have statements describing an individual as "wacko," a "lunatic," a "nut" or the victim of a "mental breakdown."  The Court should reject Lapine's attempt to reverse decades of case law by asserting that jokes, hyperbole and statements of opinion – made by one of the most famous comedians of our time in a comedic setting – are actionable defamation.

Finally, it is black letter law that a slander plaintiff must plead either special damages or language that is slanderous per se, but Lapine has failed to do either.  Lapine cannot set forth any statements made by Seinfeld that charge her with a serious crime, impute her chastity, suggest that she has a loathsome disease or injure her in her trade or business.  And rather than specify a single harm that was caused by Seinfeld's humor, Lapine relies on generic boilerplate language that is wholly insufficient to avoid dismissal.

The New York Court of Appeals has recognized the need for prompt resolution of defamation cases lacking merit, "since the '[t]hreat of being put to the defense of a lawsuit may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself.'"  *Karaduman v. Newsday Inc.*, 51 N.Y.2d 531, 545 (1980) (citation omitted).  This action is a perfect example of such a case: forcing Seinfeld to defend against this baseless action brought for improper purposes would have a chilling effect on comedic license and free expression of opinion.  Lapine has no valid claim against Seinfeld and, accordingly, the Sixth Claim of the Amended Complaint should be dismissed with prejudice.

## ALLEGATIONS AND BACKGROUND

For the purposes of this motion only, the well-pleaded allegations of the Amended

Complaint are presumed to be true.  Defendant Jerry Seinfeld, a well-known comedian, is

married to defendant Jessica Seinfeld.  FAC ¶ 14.  From 1989 to 1998, Mr. Seinfeld was the star

of *Seinfeld*, a comedy sitcom and one of the most popular programs in television history.  *Id.*[2]

Lapine is the author of *The Sneaky Chef: Simple Strategies for Hiding Healthy Foods in

Kids' Favorite Meals* ("*The Sneaky Chef*").  *Id.* ¶ 1.  *The Sneaky Chef* features Lapine's allegedly

"original methods for combining ingredients . . .  that children typically resist . . .  with dishes

that children typically crave."  *Id.* ¶ 19.  *The Sneaky Chef* was published by Running Press in

April 2007.  *Id.* ¶ 23.

_____

[2] The original complaint filed by Lapine alleged that Mr. Seinfeld was a "well-known comedian," *see* Snyder Decl. Ex. A ¶ 5, and Mr. Seinfeld admitted to that obvious fact in his answer.  *See* Snyder Decl. Ex. B ¶ 5.  In a transparent attempt to deflect attention from the comedic nature of the challenged statements, Lapine changed the word "comedian" to "actor" in her Amended Complaint.  FAC ¶ 14.  We respectfully request that the Court take judicial notice of the fact that Mr. Seinfeld is a well-known comedian, that *Seinfeld* was a comedy sitcom, that the *Late Show with David Letterman* is a late night talk show hosted by comedian David Letterman and that *E! News Live* is an entertainment gossip program.  *See, e.g.*, *Willis v. Home Box Office*, 2001 WL 1352916, at *2 (S.D.N.Y. Nov. 2, 2001) (judicial notice of the fact that talent agents are commonly perceived as unethical); *Ali v. Playgirl, Inc.*, 447 F. Supp. 723, 727 & n.8 (S.D.N.Y. 1978) (judicial notice that Muhammad Ali was regularly identified as "the Greatest"); *G. Ricordi & Co. v. Paramount Pictures, Inc.*, 92 F. Supp. 537, 540 (S.D.N.Y. 1950) (judicial notice of the fame of the opera *Madame Butterfly* and those who created it); *B.V.D. Licensing Corp. v. Body Action Design*, 846 F.2d 727, 728 (Fed. Cir. 1988) (judicial notice of the fact that the B.V.D. trademark is "at least widely, if not universally known"); *Polygram Records, Inc. v. Superior Ct. of Napa County*, 170 Cal. App. 3d 543, 546 n.1 (Cal. App. 1st Dist. 1985) (judicial notice of the fact that Robin Williams is a well-known comedian with a "reputation for specializing in impromptu or improvisational humor"); *see also* Snyder Decl. Ex. H ("Jerry Seinfeld," *Encyclopedia Britannica* (2008)); Snyder Decl. Ex. I ("Seinfeld," *Encyclopedia Britannica* (2008); Snyder Decl. Ex. J ("David Letterman," *Encyclopedia Britannica* (2008)).  The Amended Complaint also incorrectly alleges that Seinfeld aired from 1990 to 1998.  We respectfully request that the Court take judicial notice of the fact that *Seinfeld* first aired on July 5, 1989.  *See* Snyder Decl. Ex. I.

Around May 2007, while in the midst of a national marketing campaign promoting her cookbook, Lapine allegedly learned that Mrs. Seinfeld and her publisher, HarperCollins Publishers, Inc. ("HarperCollins"), planned to publish *Deceptively Delicious: Simple Secrets to Getting Your Kids Eating Good Food* ("*Deceptively Delicious*"), a cookbook authored by Mrs. Seinfeld that Lapine alleges bears similarities to *The Sneaky Chef*. *Id.* ¶ 27. *Deceptively Delicious* was published in early October 2007 to favorable reviews and quickly became a commercial success, climbing to the top of the *New York Times* Best-Seller List. *Id.* ¶¶ 3, 34. Immediately following the publication of *Deceptively Delicious*, Lapine and her camp made statements to the press impugning the originality of Mrs. Seinfeld's book, generating attention for Lapine's book that was the obvious intention of this publicity stunt.[3]

On October 29, 2007, Mr. Seinfeld appeared on the *Late Show* to promote *Bee Movie*, an animated movie that Seinfeld co-wrote, produced and starred in, which was opening the following week.[4] According to Lapine, Seinfeld allegedly used this appearance to "launch a

---

[3]  *See* Snyder Dec. Ex. K ("How Another Seinfeld Scored Her Own Big Hit," *The Wall Street Journal*, Oct. 19, 2007).

[4]  Mr. Seinfeld respectfully requests that the Court incorporate by reference the video and complete transcript of Mr. Seinfeld's October 29, 2007 appearance on the *Late Show* and October 29, 2007 appearance on *E! News*. *See* Snyder Decl. Exs. D-G. It is well-settled that, when ruling on a motion to dismiss, a court may incorporate by reference items that, although not physically attached to the complaint, are relied upon by the plaintiff and that are integral to the complaint. *Dworin v. Deutsch*, 2008 WL 508019, at *2 (S.D.N.Y. Feb. 22, 2008). Courts ruling on motions to dismiss defamation claims routinely incorporate and review the entire context in which the allegedly defamatory statement appears. *See id.* (incorporating by reference entire book and news article relied upon by plaintiff in defamation complaint); *see also Geary v. Goldstein*, 1996 WL 447776, at *2-3 (S.D.N.Y. Aug. 8, 1996) (taking into account not only the segment of the show at issue but the entire program in which the segment appeared because predicating liability upon "misimpressions garnered by a 'channel-surfing' viewer is too dangerous to the rights of media speakers"). *Cf. Blackwell v. Carson*, 1994 WL 395544, at *2 n.2 (Cal. App. 2d Dist. Apr. 9, 1994) (judicial

[Footnote continued on next page]

malicious, premeditated and knowingly false and defamatory attack" on Lapine. *Id.* ¶ 36. During his approximately fifteen (15) minute appearance on the *Late Show* – which was comprised of comic banter between Seinfeld and Mr. Letterman and punctuated repeatedly with laughter from the live studio audience – Seinfeld spoke about the opening of *Bee Movie*, made self-deprecating remarks about his role as a father and joked about "stealing" extra newspapers out of the *USA Today* box. *See* Snyder Decl. Exs D and E.[5]

Well into Seinfeld's appearance on the *Late Show*, Mr. Letterman congratulated Seinfeld on his wife's cookbook, which prompted a comedic exchange regarding what Seinfeld sarcastically termed the "cookbook controversy." FAC ¶ 38. After describing the genesis of his wife's book, Seinfeld stated that another unnamed book about vegetables – which his wife had never seen, read or used – came out at the same time. *Id.* Seinfeld joked that the author of the other book – whom Seinfeld never identified – became "angry and hysterical" and accused his wife of "vegetable plagiarism." *Id.* In obvious comic tone, Seinfeld joked about "a Watergate-style break-in . . . at HarperCollins because how else could [his wife] have known chickpeas and cauliflower." Snyder Decl. Exs. D and E.

---

[Footnote continued from previous page]
notice of videotape of Johnny Carson's monologue from *The Tonight Show*, which contained allegedly defamatory statements); *Int'l Audiotext Network, Inc. v. Am Tel. & Tel. Co.*, 62 F.3d 69, 71-72 (2d Cir. 1995) (incorporating by reference agreement upon which litigation was based); *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (same).

[5] As the Court will plainly see, the challenged statements were a smaller part of a broader comic routine by the one of the country's most well-known comedians. Mr. Seinfeld's entire appearance on the *Late Show* was laden with hyperbole and outlandish comedic comments about topics ranging from the "paranoia" and "hostility" surrounding cell phone features to the fact that fathers are like a "day-old helium balloon, just floating, not shiny anymore." *See* Snyder Decl. Exs. D and E. Comedians routinely employ hyperbolic and outlandish statements, which are the backbone of humor, and courts routinely protect such indispensable comedic devices. *See, e.g.*, *Buttons v. Nat'l Broad. Co., Inc.*, 858 F. Supp 1025, 1028 (C.D. Cal. 1994).

Seinfeld and Mr. Letterman also joked that one of the "fun facts of celebrity life" is that "wackos will wait in the woodwork to pop out at certain moments of your life to inject a little adrenaline into your life experience." FAC ¶ 38. In jest, Seinfeld alluded to Mr. Letterman's "well-documented" "wackos," but at no point did Seinfeld state, as alleged in the Amended Complaint, that Lapine "was similar to the 'wackos' who had victimized Letterman in two widely publicized and harrowing episodes several years ago," *id.* ¶ 37, nor did he discuss any details regarding Mr. Letterman's "wackos."[6] Toward the end of this comedic exchange, Seinfeld humorously observed that the unnamed author was a "three-named woman" and joked, to the laughter of the audience, that "many of the three-named people do become assassins." *Id.* ¶ 38.

On the same day, an interview with Seinfeld promoting *Bee Movie* appeared on the television entertainment program *E! News   Id.* ¶ 41. During the *E! News* interview, Seinfeld was

---

[6] In the Amended Complaint, Lapine mischaracterizes and distorts many of Mr. Seinfeld's statements on the *Late Show* and *E! News*, as the transcripts of those interviews confirms. First, Mr. Seinfeld never stated or implied that Lapine was a "celebrity stalker," as repeatedly alleged in the Amended Complaint. *See* FAC ¶¶ 5, 6, 37, 39, 42, 44. The Court will plainly see that Mr. Seinfeld did not once use the word "stalker" or any similar term, even in reference to Mr. Letterman's "wackos." Furthermore, Mr. Seinfeld never stated or implied, as Lapine falsely alleges, that she was "similar to the 'wackos' who had victimized Letterman" or drew any comparisons between the two. *See* FAC ¶¶ 5, 37, 40. Second, Mr. Seinfeld never stated that Lapine was a "liar," an "extortionist," or "falsely concocted accusations of plagiarism," as repeatedly alleged in the Amended Complaint. *See* FAC ¶¶ 5, 6, 37, 39, 41, 42, 44. To the extent Lapine argues that Mr. Seinfeld compared her to a former classmate who had sued him for $100 million, she is wrong: Mr. Seinfeld clearly stated that she was "*another kind* of nut." FAC ¶ 41 (emphasis added). The Court must look not at Lapine's mischaracterizations of Mr. Seinfeld's words but rather must look at the words in context and give them a reasonable meaning. *Sobek v. Quattrochi*, 2004 WL 2809989, at *2-3 (S.D.N.Y. Dec. 8, 2004) (where a plaintiff's allegations directly contradict evidence contained in the documents relied upon by plaintiff, the documents control, and the allegations need not be accepted as true); *James v. Gannet Co.*, 40 N.Y.2d 415, 421 (N.Y. 1976) (refusing to accept plaintiff's characterization of defendant's allegedly defamatory statements). In any event, as discussed in detail below, even if Mr. Seinfeld's words were reasonably susceptible to such characterizations, the law is clear that statements describing someone as an extortionist, liar or stalker are not actionable.

prompted by the interviewer to discuss the "controversy" brewing over his wife's cookbook.  *Id.*

To the laughter of the host, Seinfeld continued his comic themes from the *Late Show*, joking that,

"[a]s a celebrity, [he] enjoy[s] the fact that whenever you do something, some nut job comes out

of the woodwork and gets hysterical."  *Id.*  As an example, Seinfeld described a former classmate

who alleged Seinfeld "stole the whole TV series from him" and sued him for "100 million

dollars."  *Id.*  Seinfeld then joked about an unnamed cookbook author, "another kind of nut" who

"thinks she invented vegetables" and accused his wife of "stealing her mashed up carrots."  *Id.*

On January 7, 2008, Lapine and her company, The Sneaky Chef, Inc. filed a complaint

("Complaint") against Jerry and Jessica Seinfeld.  The Complaint alleged, *inter alia*, a single

claim against Seinfeld for slander and slander per se based on his hyperbolic, comic statements

of opinion on the *Late Show* and *E! News*.  *See* Snyder Decl. Ex A.  Without any specification,

Lapine alleged that Seinfeld's statements "caused and are continuing to cause [her] severe

damage" and sought unspecified compensatory and punitive damages "in an amount to be

determined at trial."  *Id.* ¶¶ 36; 68-69.  The Amended Complaint filed by Lapine on April 17,

2008 pleads no new claims against Seinfeld, nor does it clarify the nature of the allegedly "severe

damage" suffered by Lapine as a result of Seinfeld's allegedly slanderous statements.  FAC

¶¶ 46, 87-92.

## STANDARD ON THIS MOTION

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates dismissal of a complaint

that fails to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  To

survive dismissal, a plaintiff must meet the standard of "plausibility."  *See Bell Atl. Corp. v.*

*Twombly*, 127 S. Ct. 1955, 1965 (2007).  Although the Court must accept as true all factual

statements alleged in the complaint, "the claim may still fail as a matter of law . . . if the claim is

not legally feasible."  *Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384, 391 (S.D.N.Y.

2007).  A complaint that consists of "'[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.'"  *Actman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted); *see also Leeds v. Meltz*, 85 F.3d 51, 52 (2d Cir. 1996) ("Bald assertions and conclusions of law will not suffice.").

Courts routinely dismiss defamation claims under Rule 12(b)(6) where, as here, the challenged statements are protected by the Federal and/or New York Constitution.  *See, e.g.*, *Levin v. McPhee*, 119 F.3d 189, 196-97 (2d Cir. 1997); *Torain v. Liu*, 2007 WL 2331073, at *4 (S.D.N.Y. Aug. 16, 2007), *aff'd*, 2008 WL 2164659 (2d Cir. May 22, 2008); *Weinstein v. Friedman*, 1996 WL 137313, *12-20 (S.D.N.Y. March 26, 1996); *Brian v. Richardson*, 87 N.Y.2d 46, 54 (1995); *Held v. Pokorny*, 583 F. Supp. 1038, 1042 (S.D.N.Y. 1984); *Roth v. United Federation of Teachers*, 787 N.Y.S.2d 603, 611-12 (Sup. Ct. Kings Co. 2004).  Because the allegations in the Amended Complaint "could not raise a claim of entitlement to relief," the Amended Complaint should be dismissed.  *Bell Atl. Corp.*, 127 S. Ct. at 1966-67.

## ARGUMENT

The Amended Complaint should be dismissed with prejudice under Rule 12(b)(6) for at least three independent reasons.  <u>First</u>, the challenged statements are statements of opinion that do not imply assertions of objective fact, and thus are absolutely protected under the First Amendment and Article 1, Section 8.[7]  <u>Second</u>, the challenged statements are at most rhetorical hyperbole and vigorous epithets made for comic effect, which are absolutely protected by the First Amendment and Article 1, Section 8.  <u>Third</u>, it is black-letter law that a slander plaintiff

---

[7] New York law governs Lapine's state law claims, as Lapine herself concedes in the Amended Complaint.  *See* Amended Complaint at 7 (alleging that Mr. Seinfeld's conduct constituted "slander under New York law"); *Held*, 583 F. Supp. at 1041 n.18 (S.D.N.Y. 1984) (New York law governs defamation action where plaintiff is a New York citizen, the alleged publication took place in New York and the injury allegedly occurred in New York).

must plead either special damages or language that is slanderous per se; Lapine has failed to do either.

## I.

### THE CHALLENGED STATEMENTS ARE ABSOLUTELY PROTECTED UNDER BOTH THE FEDERAL AND NEW YORK CONSTITUTIONS.

Lapine's claim against Seinfeld must be dismissed as a matter of law because the statements at issue are absolutely protected by the First Amendment to the United States Constitution *and* Article 1, Section 8 of the New York Constitution as statements of rhetorical hyperbole and as statements of opinion.[8]

Because a claim for defamation must be based on a false statement of fact, the dispositive issue under both federal and New York law is "whether a reasonable [viewer] could have concluded that [the defendant] conveying facts about [the plaintiff]." *Levin*, 119 F.3d at 196-97 (2d Cir. 1997) (citations omitted) (affirming motion to dismiss defamation claim); *see also Immuno, A.G. v. Moor-Jankowsi*, 77 N.Y.2d 235, 243 (1991) (the key inquiry is whether the challenged statements "would reasonably appear to state or imply assertions of objective fact" about the plaintiff); *Brian*, 87 N.Y.2d at 51 (a defamation action "cannot be maintained unless it is premised on published assertions of *fact*") (emphasis in original). Where an expression is one of opinion as opposed to a statement of fact, it receives "full constitutional protection" under

---

[8] The First Amendment provides, in pertinent part: "Congress shall make no law . . . abridging the freedom of speech, or of the press." Article 1, Section 8 of the New York Constitution states: "Every citizen may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press. In all criminal prosecutions or indictments for libels, the truth may be given in evidence to the jury; and if it shall appear to the jury that the matter charged as libelous is true, and was published with good motives and for justifiable ends, the party shall be acquitted; and the jury shall have the right to determine the law and the fact."

New York and federal law. *Torain v. Liu*, 2008 WL 2164659, at \*1 (2d Cir. May 22, 2008). The determination of whether a challenged statement constitutes actionable fact or non-actionable opinion is a question of law for the Court under both New York and federal law. *See Mr. Chow of New York v. Ste. Jour Azur S.A.*, 759 F.2d 219, 224 (2d Cir. 1985); *Torain v. Liu*, 2007 WL 2331073, at \*2.

The First Amendment provides broad protection for statements of rhetorical hyperbole and opinion such as those at issue here, but the Federal Constitution sets the *minimum* standard of protection for defamation defendants. It is well-recognized that the New York Constitution affords even *greater* protection to defamation defendants by affording statements of opinion – including statements of rhetorical hyperbole – *absolute* protection from defamation suits. *See, e.g.*, *Immuno A.G.*, 77 N.Y.2d at 249 (the "protection afforded by the guarantees of free press and speech in the New York Constitution is often broader than the minimum required by" the Federal Constitution); *Roth*, 787 N.Y.S.2d at 608 ("statements of opinion are absolutely privileged and shielded from claims of defamation under article I, § 8 of the New York State Constitution, no matter how vituperative or unreasonable the opinions may be") (citations omitted).[9] Seinfeld's statements qualify for protection under both the First Amendment and the

---

[9] Although the Court of Appeals and the Second Circuit have made clear that federal law and state law analyses differ, many courts nonetheless combine the two into a single analysis and equate rhetorical hyperbole with opinion. *See, e.g.*, *Polish American Immigration Relief Committee, Inc. v. Relax*, 189 A.D.2d 370, 374 (1st Dept. 1993) (description of organization as a "madhouse" and its employees as "thieves" and "false do-gooders" were "rhetorical hyperbole and vigorous epithet[s], and thus constitute non-actionable expressions of opinion under Federal or State constitutional standards"); *Indep. Living Aids v. Maxi-Aids, Inc.*, 981 F. Supp. 124, 128 (E.D.N.Y. 1997) (use of the word "liars" constituted defendant's "personal opinion and rhetorical hyperbole, rather than objective fact and, thus, was constitutionally protected").

broader New York standard and thus the Sixth Claim of the Amended Complaint should be dismissed with prejudice.

**A.    The Challenged Statements Are Absolutely Protected Statements Of Opinion Under The Federal and New York Constitutions.**

The Supreme Court has made clear that statements of opinion that do not imply assertions of objective fact are absolutely protected as statements of opinion. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990). And for decades, an unbroken line of the New York Court of Appeals case law has mandated even broader protection under Article 1, Section 8 of the New York Constitution for expressions of opinion. That court recently reaffirmed that "[e]xpressions of opinion . . . are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." *Mann v. Abel*, 10 N.Y.3d 271, 279 (N.Y. Mar. 25, 2008).

In determining whether a statement is fact or non-actionable opinion, this Court should consider the following factors:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal to readers that what is being read or heard is likely to be opinion, not fact.

*Id.*; *see also Torain*, 2008 WL 2164659 at *1. This inquiry must be made from the perspective of an "ordinary," "reasonable" viewer of the programs at issue. *Mr. Chow*, 759 F.2d at 224, 229; *see also Horne v. Matthews*, 1997 WL 598452, at *2 (S.D.N.Y. Sept. 25, 1997) ("In determining whether the plaintiff has been defamed, the court must test the statement by its effect upon the average and ordinary reader to whom the publication is addressed."). The "dispositive inquiry" is "whether a reasonable [viewer] could have concluded that [the statements] were conveying facts about the plaintiff." *Levin*, 119 F.3d at 196 (affirming dismissal of libel claim where allegedly defamatory statements were expressions of opinion, not actionable assertions of fact).

In this inquiry, courts look "at the content of the whole communication, its tone and apparent purpose . . . to determine whether a reasonable person would view [it] as expressing or implying *any* facts." *Immuno A.G.*, 77 N.Y.2d at 249, 254 (emphasis in original). Lapine ignores this well-established principle and attempts to isolate specific words and phrases spoken by Seinfeld, ignores the humorous context of the statements and urges the Court to adopt a tortured and absurd reading that would render satirical statements of pure opinion to be slanderous statements of fact. The Court should reject this inappropriate attempt to evade the absolute protection afforded to statements of opinion such as the challenged statements.

### 1.     The Humorous And Light-Hearted Context Of The Challenged Statements Belies Any Defamatory Meaning.

Because context is critical to the determination of whether a statement is protected opinion, the Court should begin its analysis with a consideration of the context of Seinfeld's statements. *See Immuno A.G.*, 77 N.Y.2d at 254 ("statements must first be viewed in their context in order for courts to determine whether a reasonable person would view them as expressing or implying *any* facts"). Courts are required to consider both the "immediate context" of the statements and "the larger context in which the statements were published, including the nature of the particular forum." *Brian*, 87 N.Y.2d at 51. Here, any ordinary viewer of Seinfeld's statements would have understood them to be statements of opinion, not objective fact, given their immediate context – a comedy routine on light-hearted television programs – as well as their broader context – the "cookbook controversy" involving Seinfeld's wife.

Seinfeld, a well-known comedian, made the vast majority of the challenged statements during a comedic dialogue with Mr. Letterman on the *Late Show*, a late-night talk show hosted by a comedian and known for its humorous and often irreverent and satirical content. The challenged statements were a smaller portion of a much longer comedy routine that touched on

14

topics ranging from the "paranoia" and "hostility" surrounding cell phone features to the fact that fathers are like a "day-old helium balloon, just floating, not shiny anymore." *See* Snyder Decl. Exs. D and E.  The audience laughed repeatedly throughout the entire back-and-forth between the two comedians, including during the comedic exchange regarding the "cookbook controversy."  Mr. Letterman also laughed repeatedly and himself stated that the controversy was "ridiculous," joked that "people have been mashing up vegetables since the beginning of time" and sarcastically questioned whether the unnamed author thought that "she's the first one to prepare and eat food."  The remaining challenged statements were made during a similarly lighthearted and humorous interview on *E! News*, an entertainment program known for its coverage of celebrity gossip.

Viewers of both programs expect statements of hyperbole, speculation and opinion, not a "rigorous and comprehensive presentation of factual matter," *Immuno A.G.*, 77 N.Y.2d at 252, and for this reason courts have repeatedly dismissed claims of defamation based on statements made in similar contexts, *see, e.g.*, *Buttons v. Nat'l Broad. Co.*, 858 F. Supp. 1025 (C.D. Cal. 1994) (dismissing defamation claim based on a statement made by late-night talk show host because it was "clear from the context that the statement was not intended as and would not be reasonably understood as an assertion of fact"); *Blackwell*, 1994 WL 395544, at *1-2 (dismissing defamation claim brought by "fashion maven" Richard Blackwell based on a remark made by Johnny Carson during his monologue on an episode of the *Tonight Show* because of, *inter alia*, the humorous context in which it appeared); *Polygram Records, Inc.*, 170 Cal. App. 3d at 556

(dismissing defamation claim based on jokes made by a comedian during a monologue at a nightclub).[10]

> **2.    The Nature Of The Challenged Statements Further Establishes That Mr. Seinfeld Was Merely Expressing Humorous Opinion, Not Making Statements Of Objective Fact.**

In determining whether the challenged statements are protected opinion, the Court must also look at the language itself to determine whether it has "a precise meaning which is readily understood" and whether it is "capable of being proven true or false." *Mann*, -- N.E.2d --, 2008 WL 762262, at *1.  The nature of the statements alleged to be slanderous here make clear that Seinfeld was merely expressing his humorous opinion, not making statements of objective fact. Any other reading of Seinfeld's jokes would require the kind of "strained or artificial construction" that the New York Court of Appeals has rejected.  *See Dworin*, 2008 WL 508019, at *4 (citations omitted); *Sack on Defamation*, § 5.5.2.7.1 at 5-112 ("Humor is usually understood to be humor and to convey no serious, objective factual allegations about its target. Although perhaps annoying or embarrassing, humorous statements will have no substantial impact on reputation and therefore ought not be held defamatory.").

Seinfeld's allegedly defamatory statements about Lapine – *i.e.*, that she was "angry," "hysterical," a "nutjob" and a "wacko" – are "indefinite, ambiguous and incapable of being

---

[10] *Cf. Mr. Chow*, 759 F.2d at 227 ("[r]estaurant reviews are also the well recognized home of opinion and comment); *Brian*, 87 N.Y.2d at 51-52 (holding that dismissal of defamation claim was appropriate because readers of the "letters to the editor" or "Op Ed" page of a newspaper expect hyperbole, speculation, diversified forms of expression and opinion, not fact); *Myers v. Boston Magazine*, 380 Mass. 336, 342 (1980) (affirming dismissal of libel claim where statement that plaintiff sportscaster was "enrolled in a course for remedial speaking" appeared in the "Best and Worst" section of magazine because a reasonable reader could "only approach the article with a measure of skepticism and an expectation of amusement"); *Kneivel v. ESPN*, 393 F.3d 1068, 1077 (9th Cir. 2005) (holding that statement that plaintiff was a "pimp," which appeared on a webpage that was "lighthearted, jocular and intended for a youthful audience" was not defamatory in that context).

objectively characterized as true or false." *Hollander v. Cayton*, 145 A.D.2d 605, 606 (2d Dep't 1998) (affirming dismissal of defamation claim based on statements that plaintiff was "immoral" and "unethical").  Such statements simply cannot be confirmed or denied, "except upon reasonable differences of opinion." *Covino v. Hagemann*, 627 N.Y.S.2d 894, 897 (Sup. Ct. Richmond Co. 1995) (granting motion to dismiss defamation claim in part because a description of someone as "racially insensitive" is incapable of being proven true or false); *see also Dworin*, 2008 WL 508019, at *5 (dismissing defamation claim because the term "morale problems" was "indefinite and ambiguous, and . . . not capable of being objectively characterized as true or false"); *Kane v. Comedy Partners*, 2003 WL 22383387, at *9 (S.D.N.Y. Oct. 16, 2003) (description of show as "offensive" was not precise or capable of being proven true or false); *Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 836, 849-50 (S.D.N.Y. 2000) (dismissing defamation claims because descriptions of allegations as "absurd," "ridiculous," and "meritless" lacked "precise meanings" and were not "susceptible of being proven false."); *Mercado v. Shustek*, 309 A.D.2d 646, 647 (1st Dep't 2003) (remark by defendant, likening plaintiff to a figure in the entertainment business of dubious repute, did "not have a precise meaning" and could not "be objectively characterized as true or false").

Seinfeld's humorous observation that Lapine is a "three-named woman" and that "many of the three-named people do become assassins" was clearly a joke, but in any event is not capable of being proven true or false. *Finkelstein v. Wachtel*, 2003 WL 1918309, at *7 (S.D.N.Y. 2003) (predictions of future events obviously cannot be "proven to be either true or false at the time that they were uttered" and thus do not support a claim for defamation). Moreover, the obviously humorous nature of this particular remark – that a children's cookbook author was destined to become an "assassin" simply because she uses three names – itself created

a context that guaranteed that no reasonable person could have believed Seinfeld's other joking statements were meant to be taken as statements of fact either.  Seinfeld's statements are absolutely protected statements of opinion under both the First Amendment and Article 1, Section 8.

**B.**     **The Federal and New York Constitutions Also Provide Absolute Protection For Rhetorical Hyperbole And Vigorous Epithets Like The Challenged Statements.**

The claim against Mr. Seinfeld should be dismissed for the related but independent reason that the challenged statements are "rhetorical hyperbole" and "vigorous epithets."  An established line of Supreme Court precedent holds that such statements are absolutely protected by the First Amendment, thus excluding from the category of actionable defamation the hyperbolic, "imaginative expressions" at issue in this case.  *See Old Dominion Branch No. 496, National Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 286 (1974).  As the Federal Constitution sets the minimum standard of protection for such statements, and New York law provides even broader protection than the First Amendment, New York law likewise bars Lapine's claims based on Seinfeld's obviously hyperbolic and comedic statements.  *See 600 West 115th St. Corp.*, 80 N.Y.2d 130, 145 (1992) (holding that a statement that qualifies for protection under the federal test also qualified under the looser New York test).[11]

In *Greenbelt Cooperative Publishing Ass'n., Inc. v. Bresler*, 398 U.S. 6 (1970), the Supreme Court reversed a judgment for slander and defamation on the ground that a newspaper's use of the term "blackmail" to describe a real estate developer's negotiating position was "no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the

---

[11] As Judge Sack has noted, "[c]ommon law tradition has combined with constitutional principles to clothe the use of epithets, insults, name-calling, and hyperbole with virtually impenetrable legal armor."  Sack on Defamation, § 2.4.7 at 2-44.

developer's] negotiating position extremely unreasonable." *Id.* at 14.  The language used and the circumstances surrounding the statements led the Court to hold that it was "simply impossible" to believe that anyone who read the term "blackmail" could have believed that the plaintiff was truly being charged with a criminal offense.  *Id.*

The Supreme Court reaffirmed this principle in *Old Dominion Branch*, an action brought under the Virginia "insulting words" statute based upon the defendant labor union's characterization of a non-union employee as a "scab" and a "traitor" with "rotten principles." *Old Dominion Branch*, 418 U.S. at 267, 283.  The Court held that such epithets "cannot be construed as representations of fact," *id.* at 284, but were merely "rhetorical hyperbole, a lusty and imaginative expression of contempt felt by union members towards those who refuse to join," *id.* at 286.  Because no reader of the newsletter "would have understood the newsletter to be charging the appellees with committing the criminal offense of treason," *id.* at 286, the words in question were not actionable.  *See also Milkovich*, 497 U.S. at 21 (even if a challenged statement expresses or implies factual assertions, it is not actionable if it is couched in "loose, figurative, or hyperbolic language;" such language "negate[s] the impression that the writer was seriously maintaining" facts about the plaintiff); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988) (First Amendment precludes recovery under state emotional distress action for ad parody that "could not reasonably have been interpreted as stating actual facts about the public figure involved.").

The New York Court of Appeals is in full accord with Supreme Court precedent in holding that the First Amendment provides absolute protection for "rhetorical hyperbole" and "vigorous epithets."  *See Immuno A.G.*, 77 N.Y.2d at 245 (the First Amendment provides absolute protection to loose, figurative and hyperbolic statements, even if they contain or imply

19

assertions of provably false fact); *600 West 115th St. Corp. v. Von Gutfeld*, 80 N.Y.2d at 139

("loose, figurative or hyperbolic" speech negates "the impression that an apparently verifiable

assertion was intended" and is not actionable).  In determining whether statements are protected

by the First Amendment, the Court of Appeals has instructed that a court should look to the

"general tenor" of the statements and the existence of "loose, figurative, or hyperbolic language,"

as well as the circumstances in which the words were spoken.  *600 West 115th St. Corp.*, 80

N.Y.2d at 141 (citing *Milkovich*, 497 U.S. at 21).

    Lapine's slander claim is absolutely barred by *Greenbelt* and its progeny.  Seinfeld's

satirical use of the words "assassin," "angry," "hysterical," "wacko" and "nutjob" exemplify

precisely the type of rhetorical hyperbole and vigorous epithets that the U.S. Supreme Court and

the New York courts have consistently protected.  The unabashedly humorous "tenor" of the

comments and the "loose" and "hyperbolic" language employed by Seinfeld negate any

impression that a verifiable factual assertion was intended.  *See, e.g.*, *Ram v. Moritt*, 205 A.D.2d

516, 517 (2d Dep't 1994) (statement that doctor was a "liar," a "cheat" and a "debtor" in the

presence of patients in the doctor's waiting room constituted rhetorical hyperbole); *Roth*, 787

N.Y.S.2d at 611-12 (holding that statements such as "Principal from Hell" or "Satan" were

protected because they were nothing more than exaggerated hyperbole); *see also Huggins v.

Povitch*, 1996 WL 515498, at *8 (Sup. Ct. N.Y. Co. Apr. 19, 1996) (rhetorical hyperbole

"denotes opinion rather than fact" and thus is protected); *Tel. Sys. Int'l, Inc. v. Cecil*, 2003 WL

22232908, at *3 (S.D.N.Y. Sept. 26, 2003) (statement that plaintiff was "ripping him off" was

"figurative and hyperbolic, and not capable of being disproved" and accordingly was protected).

    Furthermore, the circumstances in which Seinfeld made these statements – a jocular late-

night talk show and an entertainment gossip program – make this an even stronger case for

20

protection than the decisions cited above.  No reasonable viewer of these programs could have seriously believed that Seinfeld was charging Lapine, a cookbook author who was complaining about another author's cookbook, as a potential "assassin" or mentally unstable person "who thinks she invented vegetables."  *See 600 West 115th St. Corp.*, 80 N.Y.2d at 143 (noting as relevant to the First Amendment inquiry "the skepticism a reasonable listener" would bring to the context in which the words were spoken).  Rather, the "imprecise language" and "unusual setting" would signal to any viewer that Seinfeld was not relaying actual facts about. Lapine but rather was using exaggerated hyperbole as part of a satirical comedic performance.

The obvious legal deficiencies of the claim against Seinfeld are perhaps best illustrated by the long line of case law rejecting defamation claims based on comparisons to some of the most reviled figures ever, even when made against a serious, as opposed to obviously comedic, backdrop:

- Comparison of plaintiffs to serial killer **Jeffrey Dahmer** was not defamatory because no reasonable viewer could have thought plaintiffs were similar to a mass murderer. *United States Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1293 (11th Cir. 2001).

- Comparison of individual to **Adolf Hitler** and comment that individual had a **"reputation for slaughtering people"** were mere hyperbole, not statements of fact. *Baxter v. State of Tenn. Dep't of Corr.*, 831 F.2d 293, 1987 WL 44459, at *4 (6th Cir. 1987).

- Reference to plaintiff as the **"surgery Nazi"** was rhetorical hyperbole as well as an expression of opinion incapable of being proven true or false, and thus was not actionable as a matter of law.  *Wanamaker v. VHA, Inc.*, 19 A.D.3d 1011, 1012 (4th Dep't 2005).

- Statement that a political opponent may be a missing **"Nazi war criminal"** could only have been understood as an opinion and thus was not actionable.  *Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir. 1987).

- Reference to plaintiff as being as well known as **"John Gotti"** was "clearly understood as conjecture" and not capable of being proven true or false.  *Komarov v. Advance Magazine Publishers, Inc.*, 691 N.Y.S.2d 298, 301 (Sup. Ct. N.Y. Co. 1999).

- Statements such as **"Principal from Hell"** and **"Satan"** were nothing more than exaggerated hyperbole. *Roth*, 787 N.Y.S.2d at 611-12.

- Humorous association of plaintiff with a group of **"assassins, murderers [and] blackmailers"** was not defamatory. *Lambertini v. Sun Printing & Publ'g Ass'n*, 111 A.D. 437, 441-42 (2d Dep't 1906).

Although it is difficult to imagine more loathsome figures than Adolf Hitler and Jeffrey Dahmer, comparisons to those individuals – in non-comedic settings – have been protected. Seinfeld's relatively mild comedic statements – especially against the comedic backdrop of the television shows involved – are innocuous in contrast.

Similarly, courts have repeatedly dismissed defamation claims based on statements nearly identical to Seinfeld's jokes that Lapine was "angry," "hysterical," a "nut job" and "waiting in the woodwork" to "spring out" and "go wacko":

- Statements made by city council member at a press conference that plaintiff was a **"lunatic"** and a **"sick pedophile loser"** were not defamatory. *Torain v. Liu*, 2007 WL 2331073, at *2-3.

- Description of organization as a **"madhouse"** and its members as "thieves" and "false do-gooders" "constitute[d] nonactionable expressions of opinion under Federal or State constitutional standards." *Polish Am. Immigration Relief Comm., Inc.*, 189 A.D.2d at 374.

- Statement that plaintiff, a physician's assistant, had a **"mental breakdown"** qualified as personal opinion and hyperbole, which is not actionable. *Lloyd v. Cardiology & Internal Medicine of Long Island, PLLC*, 2007 WL 2410853, at *6 (Sup. Ct. Nassau Co. Aug. 23, 2007).

- Statement that claimant **"went berserk,"** even when viewed out of context, was not defamatory. *Brill v. Brenner*, 308 N.Y.S.2d 218, 222 (Civ. Ct. N.Y. County 1970).

- Description of plaintiff as **"wacko"** and **"twisted"** and suffering from **"bizarre paranoia"** not actionable. *Leidholdt v. L.F.P. Inc.*, 860 F.2d 890, 894 (9th Cir. 1988).

- Statements by radio talk-show host that described State trooper as a **"nut," "absolute barbarian"** and **"merciless"** were not actionable. *Fleming v. Benzaquin*, 390 Mass. 175, 181 (1983).

22

- Description of plaintiff as a **"lunatic"** was, in context, an expression of opinion, not fact, and hence was not actionable. *Loughman v. Mahoney*, 20 Mass. L. Rep. 169, 2005 WL 3489894, at *2 (Mass. Super. Ct. Nov. 3, 2005).

* * * * * *

In sum, any ordinary viewer of the programs at issue would conclude that Seinfeld's statements – made in a comic tone, with hyperbolic language, in contexts known for expressions of humor and caustic wit – were not conveying actual facts about Lapine, but rather were rather nothing more than "rhetorical hyperbole," "vigorous epithets" and statements of opinion made by a comedian.

## I.

### THE CLAIM AGAINST MR. SEINFELD SHOULD ALSO BE DISMISSED BECAUSE THE CHALLENGED STATEMENTS ARE NOT SLANDEROUS PER SE AND LAPINE HAS FAILED TO PLEAD SPECIAL DAMAGES

Although the federal and state constitutional bars to Lapine's slander claim alone mandate dismissal of her Sixth Claim for Relief, the claim must be dismissed for the independent reason that Lapine fails to allege slander per se or plead special damages. To state a claim for slander, a plaintiff must establish that either the challenged statements (1) fall within the four narrow categories of slander per se or (2) caused special damages, which must be pled in a specific, non-conclusory fashion. *See, e.g.*, *Plonka v. Brown*, 108 Fed. Appx. 31, 31 (2d Cir. 2004) (affirming dismissal of slander claim because plaintiff alleged neither special damages nor slander per se), *cert. denied*, 542 U.S. 1148 (2005); *Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (1985) (same). The Amended Complaint fails to set forth any statements that constitute slander per se <u>and</u> fails to allege any cognizable special damages. For this separate and independent reason, the Sixth Claim should be dismissed with prejudice.

**A.      The Allegedly Defamatory Statements Are Not Slanderous Per Se.**

Slander per se is limited to statements that (i) charge plaintiff with a serious crime;

(ii) tend to injure plaintiff in her trade, business or profession; (iii) suggest that plaintiff has a

loathsome disease; or (iv) impute unchastity to a woman. *See, e.g.*, *Dooner v. Keefe, Bruyette &*

*Woods, Inc.*, 2003 WL 135706, at *6 (S.D.N.Y. Jan. 17, 2003); *Harris v. Hirsh*, 228 A.D.2d 206,

208 (1st Dep't 1996).  It is for the Court to determine whether the complained of statements are

actionable per se.  *See Ithaca College v. Yale Daily News Pub. Co., Inc.*, 85 A.D.2d 817, 818 (3d

Dep't 1981).  If a statement does not fall into one of these four narrow categories of slander per

se, the slander claim must be dismissed absent a specific showing of special damages.

None of Seinfeld's statements impute Lapine's chastity, suggest that she has a loathsome

disease, charge her with a serious crime or injure her in her profession.  *See, e.g.*, *Lloyd v.*

*Cardiology & Internal Medicine of Long Island, PLLC*, 2007 WL 2410853, at *6 (Sup. Ct.

Nassau Co. Aug. 23, 2007) (granting motion to dismiss defamation claim because statement that

plaintiff had a "mental breakdown" did not implicate her professional activities or qualifications

as a physician's assistant); *Kersul v. Skulls Angels, Inc.*, 495 N.Y.S.2d 886, 890 (Sup. Ct. Queens

Co. 1985) (granting motion to dismiss slander claim because description of plaintiff as "crazy"

did not constitute slander per se and special damages were not pled); *Kaye v. Prisma Corp.*, 172

A.D.2d 287, 288 (1st Dep't 1991) (dismissing slander claim because mere intent or capability to

commit a criminal act is insufficient to constitute slander per se) (citing Restatement 2d of Torts,

§ 571); *Liberman v. Gelstein*, 80 N.Y.2d 429 (N.Y. 1992) (dismissing slander claim and holding

that statement that plaintiff landlord "threatened to kill me and my family" did not constitute

slander per se).  Accordingly, the statements at issue here do not constitute slander per se.

**B.    Lapine's Allegation That She Has Suffered Unspecified Damages In An Amount To Be Proven At Trial Does Qualify As Special Damages.**

Because the statements are not actionable as slander per se, Lapine's claim fails and must be dismissed unless she has sufficiently alleged special damages. *See, e.g.*, *Ferlito v. County of Suffolk*, 2007 WL 4180670, at *4 (S.D.N.Y. Nov. 17, 2007) (dismissing complaint that did not allege slander per se or special damages); *Aronson*, 65 N.Y.2d at 594 (same). She has not.[12]

Special damages are "the loss of something having economic or pecuniary value which must flow directly from the injury to reputation by defamation; not from the effects of defamation." *Idema v. Wager*, 120 F. Supp. 2d 361, 368 (S.D.N.Y. 2000) (citations omitted). It is well-settled that special damages must be fully and accurately defined "with sufficient particularity to identify actual losses." *Id.* The Amended Complaint does not come close to satisfying this test.

Lapine does not specify a single "actual loss" suffered as a result of the challenged statements because she cannot. Instead, she asserts, without support or specification, that, as a proximate result of Seinfeld's allegedly slanderous statements, she has "suffered injury, including pecuniary loss, in an amount to be determined at trial." FAC ¶ 91. It is black letter law that such general and conclusory allegations of harm and resort to buzz words and boilerplate language of this type are insufficient. *See, e.g.*, *Minoli v. Evon*, 1996 WL 288473, at *9 (E.D.N.Y. May 24, 1996) (claim of damages in "an amount to be determined at trial" is insufficient to plead special damages); *Berman v. Medical Soc. of State of N.Y.*, 23 A.D.2d 98, 100 (1st Dep't 1965)

---

[12] It is not surprising that Lapine has failed to allege any specific damages given that she apparently filed this lawsuit not to redress any injury, but rather to stimulate interest in and purchases of *The Sneaky Chef*. As reputable news sources have noted, "sales of [Lapine's] book" were in fact "lifted by Ms. Seinfeld's fame." "How Another Seinfeld Scored Her Own Big Hit," *The Wall Street Journal*, Oct. 19, 2007 (Snyder Decl. Ex. K).

(dismissing defamation claim where plaintiff pled round figures of claimed damages with no attempt at specific itemization); *Jaliman v. Selendy*, 801 N.Y.S.2d 235 (Sup. Ct. Westchester Co. 2005) (dismissing complaint because alleged damage to plaintiff's "good name, reputation and credit" in an "amount to be determined at trial" did not qualify as special damages); *Kersul*, 495 N.Y.S.2d at 890 (holding that a general allegation of a dollar amount in round figures does not satisfy the special damages requirement). Nor does Lapine's bald assertion that she is somehow entitled to "an award of punitive damages in an amount to be determined at trial," FAC ¶ 92, bring her into the realm of special damages. *See, e.g.*, *Donner*, 2003 WL 135706, at *5 (pleading round numbers of damages of $2 million and punitive damages of $5 million is inconsistent with a claim of "special damages"); *Newsday, Inc. v. C. L. Peck Contractor, Inc.*, 87 A.D.2d 326 (1st Dep't 1982) (boilerplate allegations of impairment to business reputation and conclusory allegations of malice are insufficient to establish damage).

In sum, Lapine has not suffered special damages and the complained of statements do not constitute slander per se. For this separate and independent reason, Lapine's single claim against Mr. Seinfeld must be dismissed.

## CONCLUSION

For all of these reasons, Mr. Seinfeld respectfully requests that the Court dismiss the

Sixth Claim of the Amended Complaint with prejudice.

Dated: New York, New York
        June 17, 2008

GIBSON, DUNN & CRUTCHER LLP

By: _____
Orin Snyder (OS-3122)
Theodore J. Boutrous, Jr.
    (*Pro Hac Vice Pending*)
Laura Browning (LB-9931)

200 Park Avenue, 47th Floor
New York, New York 10166-0193

Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Defendant Jerry Seinfeld*

100430757_13.DOC