GIBSON, DUNN & CRUTCHER LLP
ORIN SNYDER (OS-3122)
LAURA BROWNING (LB-9931)
200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MISSY CHASE LAPINE and THE SNEAKY   :
CHEF, INC.,   :
  :
  :
      Plaintiffs,   :
  :
     v.   :   *ORAL ARGUMENT REQUESTED*
  :
JESSICA SEINFELD, JERRY SEINFELD,   :   08-CV-128 (LTS) (RLE)
HARPERCOLLINS PUBLISHERS, INC., and   :
DEPARTURE PRODUCTIONS, LLC,   :
  :
      Defendants.   :
  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW OF DEFENDANTS
## JESSICA SEINFELD, HARPERCOLLINS PUBLISHERS, INC. AND DEPARTURE
## PRODUCTIONS, LLC IN SUPPORT OF THEIR MOTION TO DISMISS

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................. 1

ALLEGATIONS IN THE COMPLAINT ................................................................... 3

STANDARD ON THIS MOTION ............................................................................. 4

ARGUMENT ............................................................................................................. 6

I.     THE COPYRIGHT CLAIM SHOULD BE DISMISSED ................................... 6

    A.    The Elements of a Copyright Infringement Claim. ................................. 6

    B.    Lapine Has Manufactured "Similarities" in the Amended Complaint .... 8

    C.    The Vast Majority of Allegedly Similar Elements Are Both Not
         Protectable and Not Similar. ................................................................ 10

        1.    The Idea of Hiding Healthy Food in Children's Food. ............ 10

            (a)    Not Protectable. ...................................................... 10

            (b)    Not Similar ............................................................. 13

        2.    The Allegedly Similar Stock Themes and Elements. .............. 14

            (a)    Not Protectable. ...................................................... 14

            (b)    Not Similar ............................................................. 16

        3.    The Allegedly Similar Words and Fragments. ....................... 17

            (a)    Not Protectable. ...................................................... 17

            (b)    Not Similar ............................................................. 19

        4.    The Allegedly Similar Recipes. ............................................. 20

            (a)    Not Protectable. ...................................................... 20

            (b)    Not Similar ............................................................. 21

    D.    The "Overall Look and Feel" of the Two Works Is Entirely Dissimilar. ............ 22

            (a)    The Design and Styling of the Two Works. ................................. 24

            (b)    The Organization of the Two Books ............................................. 25

i

**Table of Contents**
**(Continued)**

Page

II.   LAPINE'S FEDERAL AND NEW YORK TRADEMARK CLAIMS MUST
      BE DISMISSED AS A MATTER OF LAW. ................................................... 26

      A.   The Elements of a Trademark Infringement Claim. .............................. 27

      B.   The Substantial Dissimilarity Between the Books and "Marks" Defeats
           Lapine's Trademark Claims As a Matter of Law. ................................. 28

III.  LAPINE'S CLAIM OF INJURY TO BUSINESS REPUTATION FAILS AS
      A MATTER OF LAW. ................................................................................ 32

IV.   LAPINE DOES NOT STATE A CLAIM UNDER LANHAM ACT § 43(a). ................. 33

V.    LAPINE DOES NOT STATE A CLAIM FOR BREACH OF IMPLIED
      CONTRACT. ............................................................................................ 34

      A.   Lapine's Unsolicited Submission of Unoriginal Ideas Did Not Form an
           Implied Contract. ............................................................................ 35

      B.   The Lack of Substantial Similarity Between the Works Establishes as
           a Matter of Law that HarperCollins Did Not Use Any Ideas Expressed
           In the Book Manuscript. .................................................................. 36

VI.   LAPINE DOES NOT STATE A CLAIM FOR "MISAPPROPRIATION AND
      UNFAIR COMPETITION." ......................................................................... 36

CONCLUSION ................................................................................................... 39

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abdelhamid v. Altria Group, Inc.*,
515 F. Supp. 2d 384 (S.D.N.Y. 2007) ...................................................................... 5

*Actman v. Kirby, McInerney & Squire, LLP*,
464 F.3d 328 (2d Cir. 2006) .................................................................................... 5

*Adams v. Warner Bros.*,
2007 WL 1959022 (E.D.N.Y. June 29, 2007) ................................................... 8, 24

*Arden v. Columbia Pictures Indus., Inc.*,
908 F. Supp. 1248 (S.D.N.Y. 1995) ...................................................................... 12

*Attia v. Soc'y of the N.Y. Hosp.*,
201 F.3d 50 (2d Cir. 1999),
*cert. denied*, 351 U.S. 843 (2000) ........................................................................... 8

*Bayer Co. v. United Drug Co.*,
272 F. 505 (S.D.N.Y. 1921) .................................................................................. 34

*Bell Atl. Corp. v. Twombly*,
127 S. Ct. 1955 (2007) ............................................................................................ 5

*Bell v. Blaze Magazine*,
2001 WL 262718 (S.D.N.Y. Mar. 16, 2001) ..................................................... 8, 19

*Bose Corp. v. Linear Design Labs, Inc.*,
467 F.2d 304 (2d Cir. 1972) .................................................................................. 32

*Boyle v. Stephens, Inc.*,
1998 WL 80175 (S.D.N.Y. Feb. 25, 1998),
*aff'd*, 21 Fed. Appx. 76 (2001) ........................................................................ 8, 19

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*,
973 F.2d 1033 (2d Cir. 1992) ......................................................................... 32, 34

*Buckman v. Citicorp*,
1996 WL 34158 (S.D.N.Y. Jan. 30, 1996),
*aff'd*, 101 F.3d 1393 (2d Cir. 1996) ....................................................................... 8

*CK Co. v. Burger King Corp.*,
1994 U.S. Dist. LEXIS 13934 (S.D.N.Y. Sept. 30, 1994),
*aff'd*, 122 F.3d 1055 (2d Cir. 1995) ..................................................................... 24

**Table of Authorities**
**(Continued)**

Page(s)

*Contractual Obligation Prods., LLC v. AMC Networks, Inc.*,
    2006 U.S. Dist. LEXIS 16402 (S.D.N.Y. 2006)..................................................... 35

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003).................................................................................... 34, 35

*Debitetto v. Alpha Books*,
    7 F. Supp. 2d 330 (S.D.N.Y. 1998) .......................................................... 11, 16

*Denker v. Uhry*,
    820 F. Supp. 722 (S.D.N.Y. 1992) ........................................................... 11, 12

*Diamond Direct, LLC v. Star Diamond Group, Inc.*,
    116 F. Supp. 2d 525 (S.D.N.Y. 2000) ............................................................. 11

*Duffy v. Penguin Books USA, Inc.*,
    4 F. Supp. 2d 268 (S.D.N.Y. 1998) .......................................................... 11, 15

*Durham Indus., Inc. v. Tomy Corp.*,
    630 F.2d 905 (2d Cir. 1980) .............................................................................. 7

*Eden Toys, Inc. v. Marshall Field & Co.*,
    675 F.2d 498 (2d Cir. 1982) ............................................................................ 24

*Favia v. Lyons P'ship*,
    1996 WL 194306 (S.D.N.Y. Apr. 3, 1996) ..................................................... 19

*Gen. Foods Corp. v. Ito Yokado Co.*,
    219 U.S.P.Q. 822 (T.T.A.B. 1983) .................................................................. 31

*Globalaw Ltd. v. Carmon & Carmon*,
    452 F. Supp. 2d 1 (D.D.C. 2006) .................................................................... 28

*Historical Truth Prods. v. Sony Pictures Entm't*,
    1995 U.S. Dist. LEXIS 17477 (S.D.N.Y. Nov. 22, 1995).............................. 10

*Hoehling v. Universal Studios*,
    618 F.2d 972 (2d. Cir. 1980) .......................................................................... 16

*Hogan v. DC Comics*,
    48 F. Supp. 2d 298 (S.D.N.Y. 1999) .................................................... 7, 11, 25

*Hudson v. Universal Studios, Inc.*,
    No. 04-6997, slip op. (S.D.N.Y. Sept. 25, 2007)............................................ 37

*In re Giordano*,
    200 U.S.P.Q. 52 (T.T.A.B. 1978) ................................................................... 34

**Table of Authorities**
**(Continued)**

Page(s)

*Integrative Nutrition, Inc. v. Acad. of Healing Nutrition*,
  476 F. Supp. 2d 291 (S.D.N.Y. 2007) ...................................................... 39

*Jean v. Bug Music*,
  2002 WL 287786 (S.D.N.Y. Feb. 27, 2002) .............................................. 19

*Katz v. Modiri*,
  283 F. Supp. 2d 883 (S.D.N.Y. 2003) ...................................................... 34

*Kaufman & Fisher Wish Co., Ltd. v. F.A.O. Schwartz*,
  184 F. Supp.2d 311 (S.D.N.Y. 2001),
  *aff'd*, 51 F. App'x 335 (2d Cir. 2002) ...................................................... 28, 31

*Kellogg Co. v. Toucan Golf, Inc.*,
  337 F.3d 616 (6th Cir. 2003) .................................................................... 31

*Lambing v. Chocolatier*,
  1998 WL 58050 (6th Cir. Feb. 6, 1998) .................................................... 21

*Laureyssens v. Idea Group, Inc.*,
  964 F.2d 131 (2d Cir. 1992) ...................................................................... 7

*Le Book Publ'g, Inc. v. Black Book Photography, Inc.*,
  418 F. Supp. 2d 305 (S.D.N.Y 2005) ........................................ 6, 8, 28, 29, 30, 32

*Leibowitz v. Cornell Univ.*,
  445 F.3d 586 (2d Cir. 2006) ...................................................................... 38

*Mallery v. NBC Universal, Inc.*,
  2007 WL 4258196 (S.D.N.Y. Dec. 3, 2007) .............................................. 10, 24

*Murray v. Nat'l Broad. Co.*,
  844 F.2d 988 (2d Cir. 1988) ...................................................................... 36

*Nabisco, Inc. v. Warner-Lambert Co.*,
  220 F.3d 43 (2d Cir. 2000) ........................................................ 28, 30, 32, 33

*Narell v. Freeman*,
  872 F.2d 907 (9th Cir. 1989) .................................................................... 19

*Nat'l Basketball Ass'n  v. Motorola, Inc.*,
  105 F.3d 841 (2d Cir. 1997) .................................................................... 38, 39

*Nelson v. PRN Prods., Inc.*,
  873 F.2d 1141 (8th Cir. 1989) .................................................................. 8

**Table of Authorities**
**(Continued)**

Page(s)

*New Sensor Corp. v. CE Distribution LLC,*
303 F. Supp. 2d 304 (E.D.N.Y. 2004),
*aff'd*, 2004 U.S. App. LEXIS 26870 (2d Cir. Dec. 23, 2004)....................29

*Nichols v. Universal Pictures Corp.,*
45 F.2d 119 (2d Cir. 1930) ....................................................................11

*Nora Beverages, Inc. v. Perrier Group of Am., Inc.,*
269 F.3d 114 (2d Cir. 2001) ...........................................................28, 32

*Ollie v. Domino's Pizza, Inc.,*
1997 U.S. Dist. LEXIS 12781 (S.D.N.Y. 1997)....................................10

*Orange County Choppers, Inc. v. Olaes Enters.,*
497 F. Supp. 2d 541 (S.D.N.Y. 2007) ..................................................39

*Paco Sport, Ltd. v Paco Rabanne Perfumes,*
2000 WL 1721126 (2d Cir. Nov. 16, 2000)..........................................34

*Pampered Chef v. Magic Kitchen,*
12 F. Supp. 2d 785 (D. Ill. 1998)..........................................................26

*Paul v. Haley,*
183 A.D.2d 44 (2d Dep't 1992).................................................35, 36, 37

*Playtex Prods. v. Georgia-Pacific Corp.,*
390 F.3d 158 (2d Cir. 2004) ..................................................................32

*Polaroid Corp. v. Polarad Elecs. Corp.,*
287 F.2d 492 (2d Cir. 1961) ..................................................................28

*Publ'ns Int'l, Ltd. v. Meredith Corp.,*
88 F.3d 473 (7th Cir. 1996) ..................................................................21

*Riverhead Paints Plus, Inc. v. PPG Indus., Inc.,*
2 U.S.P.Q. 2d (BNA) 2035 (E.D.N.Y. Jan. 13, 1987) .........................29

*Rodriguez v. Casa Salsa Rest.,*
260 F. Supp 2d 413 (D.P.R. 2003)..........................................................8

*Scholastic Inc. v. Speirs,*
28 F. Supp. 2d 862 (S.D.N.Y. 1998),
*aff'd*, 199 F.3d 1323 (2d Cir. 1999) ......................................................28

*Sinicola v. Warner Bros.,*
948 F. Supp. 1176 (E.D.N.Y. 1996) .................................................12, 16

**Table of Authorities**
**(Continued)**

Page(s)

*Sobek v. Quattrochi Cardinal Mgmt., Inc.,*
   2004 U.S. Dist. LEXIS 24584 (S.D.N.Y. Dec. 9, 2004) ...................................................... 6, 9

*Sobhani v. @radical.media, Inc.,*
   257 F. Supp. 2d 1234 (C.D. Cal. 2003) ...................................................... 6

*Solow Bldg. Co., LLC v. Nine West Group, Inc.,*
   2001 U.S. Dist. LEXIS 8848 (S.D.N.Y. June 29, 2001) ...................................................... 29

*Streetwise Maps Inc. v. Vandam, Inc.,*
   159 F.3d 739 (2d Cir. 1998) ...................................................... 6, 7, 24, 28, 29, 33, 34

*Tabachnik v. Dorsey,*
   2005 U.S. Dist. LEXIS 14267 (S.D.N.Y. July 15, 2005),
   *aff'd,* 2007 U.S. App. LEXIS 28950 (2d Cir. Dec. 13, 2007)...................................................... 5

*Tisi v. Patrick,*
   97 F. Supp. 2d 539 (S.D.N.Y. 2000) ...................................................... 26, 27

*Velez v. Sony Discos,*
   2007 WL 120686 (S.D.N.Y. Jan. 16, 2007) ...................................................... 7

*Walker v. Time Life Films, Inc.,*
   615 F. Supp 430 (S.D.N.Y. 1985),
   *aff'd,* 784 F.2d 44 (2d Cir. 1986) ...................................................... 6, 7, 9, 10, 15, 40

*Warner Bros., Inc. v. Am. Broad. Co., Inc.,*
   654 F.2d 204 (2d Cir. 1981) ...................................................... 10

*Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.,*
   210 F. Supp. 2d 147 (E.D.N.Y. 2002) ...................................................... 25

*Williams v. Crichton,*
   84 F.3d 581 (2d Cir. 1996) ...................................................... 6, 7, 10, 11, 15

*Williams v. UMG Recordings, Inc.,*
   281 F. Supp. 2d 1177 (C.D. Cal. 2003) ...................................................... 35

*Willis v. Home Box Office,*
   2001 WL 1352916 (S.D.N.Y. Nov. 5, 2001),
   *aff'd,* 2003 U.S. App LEXIS 4063 (2d Cir. Mar. 7, 2003)...................................................... 5

*Zambito v. Paramount Pictures Corp.,*
   613 F. Supp. 1107 (E.D.N.Y. 1985) ...................................................... 16

**Table of Authorities**
**(Continued)**

Page(s)

*Zikakis v. Staubach Retail Servs.*,
  2005 U.S. Dist. LEXIS 21105 (S.D.N.Y. Sept. 22, 2005)................................................... 36, 39

**Statutes**

15 U.S.C. § 1114 ........................................................................................................ 28

17 U.S.C. § 102 .................................................................................................... 11, 38

17 U.S.C. § 301(a) ..................................................................................................... 38

N.Y. Gen. Bus. Law § 360-k ...................................................................................... 29

N.Y. Gen. Bus. Law § 360-l ....................................................................................... 33

N.Y. Gen. Bus. Law §§ 360-a - 360-j ........................................................................ 29

**Rules**

Fed. R. Civ. P. 11 ................................................................................................... 4, 10

Fed. R. Civ. P. 12(b)(6) .................................................................... 1, 2, 5, 7, 8, 29, 40

**Treatises**

4 Melville Nimmer & David Nimmer, *Nimmer on Copyright* § 13.03[A][1][c] ........................... 24

J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:59 .............................. 29

**Regulations**

37 C.F.R. § 202.1 .......................................................................................... 18, 21, 24

U.S. Copyright Office Circular 34 (Feb. 2006) ........................................................... 21

Defendants Jessica Seinfeld, HarperCollins Publishers L.L.C. (incorrectly sued as HarperCollins Publishers, Inc.) and Departure Productions, LLC (collectively, "Defendants") respectfully move to dismiss the First, Second, Third, Fourth, Fifth, Seventh and Eighth Claims for Relief in the First Amended Complaint ("Amended Complaint" or "FAC") filed by Missy Chase Lapine and The Sneaky Chef, Inc. (collectively, "Lapine") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

**PRELIMINARY STATEMENT**

This lawsuit is a malicious attempt by Lapine to capitalize on Jessica Seinfeld's best-selling cookbook *Deceptively Delicious*. Lapine's baseless claim that *Deceptively Delicious* infringes her book *The Sneaky Chef* is based on three fundamental misrepresentations. First, Lapine falsely claims that she invented the idea of hiding fruits and vegetables in children's meals, a concept that appears in both books. In truth, countless prior works utilized this very same unprotectable idea before Lapine published her book, including the 1971 book *Confessions of a Sneaky Organic Chef . . . Or, How to Make Your Family Healthy When They're Not Looking!*, the 2005 book *The Art of Hiding Vegetables: Sneaky Ways to Feed Your Children Healthy Food* and the 2006 book *Sneaky Veggies: How to Get Vegetables Under the Radar & Into Your Family*. Second, in a shameless effort to manufacture "similarities," Lapine distorts the two books, often by fabricating words and recipes that do not exist in the works. Even worse, Lapine recycled these allegations in the Amended Complaint after Defendants specifically warned that these same misrepresentations in her original complaint violated Rule 11. Third, Lapine conceals the significant dissimilarities between the two books. *Deceptively Delicious* not only looks and feels entirely different than *The Sneaky Chef* in every respect, the two books are in fact dissimilar in the very respects alleged to be similar by Lapine. When this Court compares the true contents of the works, Lapine's trumped-up claims collapse like a house of cards.

1

Using inflammatory rhetoric made for the tabloids, the Amended Complaint insinuates that Jessica Seinfeld used her celebrity to somehow harm Lapine. The opposite is true. Lapine has targeted Mrs. Seinfeld and her husband, the well-known comedian Jerry Seinfeld, with this opportunistic lawsuit for the improper purpose of generating publicity for Lapine and her book.[1]

Lapine's claims for copyright infringement, trademark infringement, injury to business reputation, unfair competition, breach of implied contract and misappropriation fail to state a claim and should all be dismissed with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The copyright claim boils down to a ludicrous claim of exclusive rights in (1) the wholly unoriginal idea of improving kids' nutrition by hiding healthy foods in children's meals; (2) entirely banal, mundane and inevitable words and phrases, such as "begging," "power struggle" and "thirty minutes or less;" (3) ingredients contained in everyday recipes and dishes such as chocolate-chip cookies and grilled cheese sandwiches; (4) stock elements and themes found in any family cookbook; and (5) the "look and feel" of dissimilar cookbooks. To assist the Court, Appendix A to this brief is an interactive exhibit that addresses Lapine's laundry-list of allegations, one-by-one, and demonstrates that each fails as a matter of law.

Lapine's federal and state trademark claims suffer from a similar deficiency: the marks at issue (a detailed, color illustration of Mrs. Seinfeld and a line-drawn, black-and-white caricature of a chef on Lapine's book) are obviously <u>dissimilar</u> and thus not actionable. Lapine's remaining tag-along claims fall with her deficient copyright and trademark claims, and should also be dismissed with prejudice.

---

[1]    Simultaneously with this motion, Mr. Seinfeld is moving to dismiss the legally deficient slander claim brought against him by Lapine, which is based on Mr. Seinfeld's comedic portrayal of the "cookbook controversy" on the *Late Show with David Letterman* and *E! News Live*.

## ALLEGATIONS IN THE COMPLAINT

Although Defendants vigorously deny Lapine's allegations, the Court must, for the purposes of this motion only, accept as true the well-pleaded allegations in the Amended Complaint.

## The Parties

Jessica Seinfeld is a cookbook author and the wife of Jerry Seinfeld, allegedly "an enormously wealthy and well-known actor" and the "star of *Seinfeld*, one of the most popular programs in television history." FAC ¶ 3, 14 (attached as Exhibit CC to the Declaration of Orin Snyder, executed on June 17, 2008 ("Snyder Decl." or "Snyder Declaration")).[2] *Deceptively Delicious: Simple Secrets to Getting Your Kids Eating Good Food* ("*Deceptively Delicious*" or "DD"), a cookbook authored by Mrs. Seinfeld containing healthy family recipes prepared with hidden vegetables, was published by HarperCollins Publishers, L.L.C. ("HarperCollins") in early October 2007. *Id.* ¶ 3, 33. *Deceptively Delicious* received positive reviews and quickly became a commercial success, climbing to the top of the *New York Times* Best-Seller List. *Id.* ¶¶ 3, 34.[3] Departure Productions, LLC holds the copyright to *Deceptively Delicious*. *Id.* ¶ 16.

Missy Chase Lapine, who formerly worked at Eating Well and Gourmet magazines, is the author of The Sneaky Chef: Simple Strategies for Hiding Healthy Foods in Kids' Favorite

---

[2]  All references to Exhibits (or "Ex.") herein shall be to Exhibits to the Snyder Declaration, unless otherwise stated.

[3]  Although not directly relevant to this motion, Lapine and her publishers initiated a press campaign attacking Mrs. Seinfeld following the publication of *Deceptively Delicious*, which continued through the filing of the original complaint in January 2008, in order to fabricate and sensationalize alleged similarities between the books and generate publicity for *The Sneaky Chef*. Although Lapine's book was released in April 2007, her multiple-week run on the *New York Times* Best-Seller List did not begin until October 2007, not coincidentally, the very same week as the release of Mrs. Seinfeld's book, after Lapine and her representatives began making false and damaging claims about *Deceptively Delicious*. The very week Lapine's book fell off the Best-Seller List, Lapine filed her suit – not coincidentally, this was shortly in advance of the launch of her follow-up book, *The Sneaky Chef – How to Cheat on Your Man (In the Kitchen)*.

Meals ("The Sneaky Chef" or "SC").  Id. ¶¶ 1, 17.  The Sneaky Chef, which was published by

Running Press in April 2007, features Lapine's allegedly "unique and innovative approach" of

"camouflaging" fruits and vegetables in "unhealthy" children's food.  Id. ¶¶ 1, 23.  The Sneaky

Chef, Inc. is the co-owner with Lapine of all rights to the trademark "Sneaky Chef" and the

accompanying image trademark.  Id. ¶ 24.

**This Action**

On January 8, 2008, Lapine filed this lawsuit against Mr. and Mrs. Seinfeld, alleging

claims for copyright infringement, trademark infringement and injury to business reputation

against Mrs. Seinfeld, and a single claim against Mr. Seinfeld for slander and slander per se.  *See*

Ex AA.  Defendants answered the complaint on February 22, 2008, denying the allegations

against them.  *See* Ex BB.  The answer set forth in detail the numerous inaccuracies and

misrepresentations contained in the complaint, putting Lapine and her counsel on clear notice of

their Rule 11 violations.  *Id.* ¶ 24.  Nonetheless, these demonstrably false allegations were

reproduced wholesale when Lapine filed the Amended Complaint on April 18, 2008, which

added HarperCollins and Departure Productions, LLC as defendants to the copyright, trademark,

unfair competition and injury to business reputation claims.  FAC ¶ 33.  The Amended

Complaint included a new claim against all Defendants (except Mr. Seinfeld) for unfair

competition under the Lanham Act, as well as claims solely against HarperCollins for breach of

implied contract, misappropriation and unfair competition.

**STANDARD ON THIS MOTION**

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates dismissal of a complaint

that fails to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  To

survive dismissal, a plaintiff must meet the standard of "plausibility" and set forth factual

allegations "sufficient to raise a right to relief above the speculative level."  *Bell Atl. Corp. v.

Twombly*, 127 S. Ct. 1955, 1965 (2007).  Although the Court must accept as true all factual

statements alleged in the compliant, "the claim may still fail as a matter of law . . . if the claim is not legally feasible." *Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384, 391 (S.D.N.Y. 2007). A complaint which consists of "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Actman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted).

In determining whether a complaint should survive a Rule 12(b)(6) motion, "documents attached to the pleadings, documents referenced in the pleadings, and documents integral to the pleadings may be considered." *Tabachnik v. Dorsey*, 2005 U.S. Dist. LEXIS 14267, *6 (S.D.N.Y. July 15, 2005), *aff'd*, 2007 U.S. App. LEXIS 28950, *1, 3 (2d Cir. Dec. 13, 2007). The Court "may also take judicial notice of facts within the public domain and public records if such facts and records are 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Tabachnik*, 2005 U.S. Dist. LEXIS 14267 at *6-7 (quoting Fed. R. Evid. 201(b)(2)). In particular, the Court may take judicial notice of and consider previously published works in a copyright infringement action for purposes of its substantial similarity analysis. *See, e.g.*, *Willis v. Home Box Office*, 2001 WL 1352916, at *2 (S.D.N.Y. Nov. 5, 2001) (judicial notice that many prior works contain characters that are unethical, from a variety of businesses, including talent agents), *aff'd* 2003 U.S. App LEXIS 4063 (2d Cir. Mar. 7, 2003); *Walker v. Time Life Films, Inc.*, 615 F. Supp 430, 438 (S.D.N.Y. 1985) (judicial notice that "members of the New York Police Department are often portrayed as Irish, smokers, drinkers, and third or fourth generation police officers"), *aff'd*, 784 F.2d 44, 50 (2d Cir. 1986); *cf. Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 747-48 (2d Cir. 1998) (observing that prior works had used similar elements); *Sobhani v. @radical.media, Inc.*, 257 F. Supp. 2d 1234 (C.D. Cal. 2003) (judicial notice of *Cast Away* and the general characteristics of

Jack-in-the-Box commercials).[4]  To the extent that allegations in the pleadings directly

contradict the evidence contained in the documents relied on by a claimant, the documents

control, and the allegations should not be accepted as true.  *See, e.g.*, *Sobek v. Quattrochi*

*Cardinal Management, Inc.*, 2004 U.S. Dist. LEXIS 24584, *6-7 (S.D.N.Y. Dec. 9, 2004);

*Walker*, 615 F. Supp at 434.

## ARGUMENT

### I.    THE COPYRIGHT CLAIM SHOULD BE DISMISSED.

The copyright infringement claim is ripe for dismissal because the Amended Complaint

disregards the most basic principles of copyright law.  Lapine seeks exclusive rights in ideas,

concepts, words and recipes that are not subject to copyright protection and cannot be considered

in determining whether one work has infringed the other.  Even worse, Lapine pretends that <u>she</u>

invented these unoriginal elements when, in truth, they appear in countless prior works whose

existence Lapine conceals from the Court.  Finally, Lapine misrepresents the two works in a

desperate effort to manufacture similarities and ignores the significant differences between the

works.  Lapine's First Claim for Relief fails as a matter of law.  *See* Appendix A.

### A.    The Elements of a Copyright Infringement Claim.

To prevail on her claim of copyright infringement, Lapine must establish (1) ownership

of a valid copyright and (2) unauthorized copying of protectable material.  *See, e.g.*, *Williams v.*

*Crichton*, 84 F.3d 581, 587 (2d Cir. 1996); *Le Book Pub., Inc. v. Black Book Photography, Inc.*,

---

[4]  Although the Court may properly consider the prior works under Rule 12(b)(6), this motion may be treated as one for summary judgment under Rule 56 in the event the works are deemed outside the pleadings.  Fed. R. Civ. P. 12(d); *see Mallery v. NBC Universal, Inc.*, 2007 U.S. Dist. LEXIS 88960, *6-7 (S.D.N.Y. Dec. 3, 2007).  In either case, discovery is neither necessary nor appropriate for the resolution of the motion.  *See id.*; *Flaherty v. Filardi*, 388 F. Supp. 2d 274, 283-284 (S.D.N.Y. 2005) (discovery not necessary to resolve Rule 56 motion to dismiss copyright claim based on the absence of substantial similarity).

418 F. Supp. 2d 305, 309 (S.D.N.Y 2005).  To satisfy the "unauthorized copying" element of her infringement claim, Lapine must prove both actual copying and "substantial similarity" between her work and Defendants', *i.e.*, that the portion copied amounts to an "'improper' or 'unlawful' appropriation."  *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 139-40 (2d Cir. 1992) (citation omitted).

To avoid Rule 12(b)(6) dismissal, Lapine must establish that Defendants' purported copying amounts to an improper appropriation by demonstrating that "substantial similarity to protected material exists between the two works."  *Laureyssens*, 964 F.2d at 140 (emphasis added).  The test for substantial similarity is generally the so-called "ordinary observer test," *i.e.*, whether an "average lay observer would . . . recognize the alleged copy as having been appropriated from the copyrighted work."  *Hogan v. DC Comics*, 48 F. Supp. 2d 198, 309 (S.D.N.Y. 1999) (citation omitted); *Streetwise Maps, Inc.*, 159 F.3d at 747.  However, where, as here, the allegedly infringed work contains protectable and non-protectable elements, the Court is required to conduct a "more discerning" test that "extract[s] the unprotectable elements from ... consideration and ask[s] whether the *protectable elements, standing alone,* are substantially similar."  *Velez v. Sony Discos*, 2007 WL 120686, at *7 (S.D.N.Y. Jan. 16, 2007) (citation omitted) (emphasis in original); *see also Laureyssens*, 964 F.2d at 140.

Thus, in determining whether *Deceptively Delicious* is substantially similar to *The Sneaky Chef*, only those portions of *The Sneaky Chef* that are original and qualify for copyright protection can be considered.  *See, e.g.*, *Williams*, 84 F.3d at 588.  Furthermore, determination of substantial similarly requires "detailed examination of the works themselves," not merely the elements that Lapine cherry-picks out of the works to create the appearance of actionable similarity.  *See, e.g.*, *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 49 (2d Cir. 1986).  Finally, substantial similarity does not exist where the works are sufficiently dissimilar.  *See, e.g.*, *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir. 1980) ("numerous differences

7

tend to undercut substantial similarity"); *Attia v. Society of the New York Hosp.*, 201 F.3d 50, 57-58 (2d Cir. 1999), *cert. denied*, 351 U.S. 843 (2000) (dissimilarities between works at issue made clear that no substantial similarity existed).

It is well-established that a district court may determine whether the works at issue are substantially similar on a Rule 12(b)(6) motion.  If the Court determines that no reasonable jury could find that the works are substantially similar, or concludes that the similarities pertain only to unprotected elements of the work, the Court should dismiss the action because, as a matter of law, there is no copyright infringement.  *See, e.g.*, *Buckman v. Citicorp,* 1996 WL 34158, at *3 (S.D.N.Y. Jan. 30, 1996), *aff'd* 101 F.3d 1393 (2d Cir. 1996).

Applying these bedrock principles, courts in this Circuit routinely dismiss meritless copyright infringement claims on Rule 12(b)(6) motions where, as here, no substantial similarity exists. *See, e.g., Adams v. Warner Bros.*, 2007 WL 1959022, at *5 (E.D.N.Y. June 29, 2007); *Le Book Pub., Inc.*, 418 F. Supp. 2d at 310; *Bell v. Blaze Magazine,* 2001 WL 262718, at *3 (S.D.N.Y. Mar. 16, 2001); *Boyle v. Stephens, Inc.,* 1998 WL 80175, at *4 (S.D.N.Y. Feb. 25, 1998), *aff'd* 21 Fed. Appx. 76 (2001); *Buckman,* 1996 WL 34158 at *3.  *Accord Nelson v. PRN Productions, Inc.*, 873 F.2d 1141, 1143-1144 (8th Cir. 1989); *Rodriguez v. Casa Salsa Restaurant*, 260 F. Supp 2d 413, 420-21 (D.P.R. 2003).

**B.    Lapine Has Manufactured "Similarities" in the Amended Complaint.**

Paragraph 33 of the Amended Complaint purports to set forth the substantial similarities between the two works, but an alarming number of the allegations are <u>entirely falsified or wildly distorted</u>:

- Lapine alleges that both works "explain that the author is not a professional chef, just a mother."  FAC ¶ 33(d).  This is not true.  *The Sneaky Chef* states that Lapine is "certified in the master techniques of cooking," is "on the Culinary Arts faculty of The New School," and "offers workshops, cooking classes, and coaching."  SC at 43 and back cover.

- Lapine alleges that both works characterize the author's discovery as an "***epiphany***."  FAC ¶ 33(e) (emphasis in original).  Neither work characterizes anything as an "epiphany."

- Lapine alleges that *The Sneaky Chef* states "It got our **whole family** eating together in peace." FAC ¶ 33(f) (emphasis in original). *The Sneaky Chef* does not contain this phrase.

- Lapine alleges that both works contain a "list of which foods children will most often and least often eat without a fight." FAC ¶ 33(q). *Deceptively Delicious* contains no such list.

- Lapine alleges that both works contain a recipe for Chocolate Chip Cookies with White Bean Puree. FAC ¶ 33(v). *Deceptively Delicious* contains no such recipe.

- Lapine alleges that both works suggest adding the same specific fruit or vegetable puree to eleven recipes and the Amended Complaint presents a chart that purports to represent this fact. FAC ¶ 33(v). This is an outright misrepresentation. First, the vast majority of these eleven recipes do <u>not</u> call for the same specific fruit or vegetable puree. Second, in many instances, the puree highlighted by Lapine is one of several options that the recipe suggests. *See* Ex. R.

- Lapine alleges that both works contain introductions "calling attention to the growing problem of childhood obesity" in American children. FAC ¶ 33(a). Neither introduction references childhood obesity.

- Lapine alleges that both works suggest that "forbidden foods" such as "candy" should not be forbidden. FAC ¶ 33(h). *Deceptively Delicious* never states that candy is a "forbidden food" or that "candy" should not be forbidden.

- Lapine alleges that "[b]oth works discuss how the author overcame the guilt of tricking her kids into eating healthy food." FAC ¶ 33(d). *Deceptively Delicious* does not discuss "over[coming]" any guilt.

- Lapine alleges that both works "address arguments against 'sneaking' vegetables into children's dishes and then systematically refute each one." FAC ¶ 33(g). *Deceptively Delicious* does not systematically refute arguments against sneaking vegetables.

These misrepresentations set forth in Paragraph 33 of the Amended Complaint are outrageous – and cannot be accepted as true. Under controlling law, the Court must review the actual works at issue, not Lapine's misrepresentations of them. *Sobek*, 2004 U.S. Dist. LEXIS 24584, at *9 (dismissing breach of contract claim because terms of agreement – which contradicted the allegations in the complaint – failed to support the claim); *Walker*, 615 F. Supp. at 434 (in determining substantial similarity, "the works themselves supersede and control contrary allegations and conclusions, or descriptions of the works as contained in the pleadings"). Lapine's attempt to deceive this Court is all the more egregious because she regurgitated these misrepresentations wholesale in the Amended Complaint after Defendants' Answer specifically placed her and her counsel on notice of these Rule 11 violations. Ex. BB ¶

24. Lapine's manufactured "similarities" must be ignored.  *See, e.g.*, *Historical Truth Prods. v. Sony Pictures Ent.*, 1995 U.S. Dist. LEXIS 17477, at *35 (S.D.N.Y. Nov. 22, 1995) (rejecting copyright claim that "rests on misrepresentations about the two works and on uncopyrightable ideas and scenes-a-faire").

**C.    The Vast Majority of Allegedly Similar Elements Are Both Not Protectable and Not Similar.**

Lapine's copyright claim is based upon a nine-page laundry list of alleged "similarities" between the works at issue.  FAC ¶ 33.[5]  This jumble of alleged similarities cherry-picked from the two works reduces to claims of exclusive rights to (1) the wholly unoriginal idea of improving kids' nutrition by hiding healthy foods in children's meals; (2) entirely mundane and inevitable words and phrases, such as "begging," "power struggle" and "thirty minutes or less;" (3) ingredients contained in everyday recipes and dishes such as chocolate-chip cookies and grilled cheese sandwiches; (4) stock elements and themes of any family cookbook; and (5) the "look and feel" of dissimilar cookbooks.  These claims fail as a matter of law.

**1.    The Idea of Hiding Healthy Food in Children's Food.**

(a)  <u>Not Protectable.</u>

Lapine claims exclusive rights in the unoriginal idea of hiding healthy foods in children's meals.  No matter how Lapine phrases it – "concept," "methodology," "philosophy," "premise," or "approach" – this "idea" is not protectable by copyright law.  *See* FAC ¶¶ 32, 33, 52.

---

[5]  Lapine's laundry-list approach is consistently disregarded as "inherently subjective and unreliable, particularly where the list emphasizes random similarities scattered throughout the works."  *Williams*, 84 F.3d at 590 (quotations omitted); *see Walker*, 784 F.2d at 50 (noting the "difficulty of comparing unified artistic works on the basis of such scattered analogies"); *Mallery v. NBC Universal, Inc.*, 2007 WL 4258196, at *22-23 (S.D.N.Y. Dec. 3, 2007); *Ollie v. Domino's Pizza, Inc.*, 1997 U.S. Dist. LEXIS 12781, *2-4 (S.D.N.Y. 1997) (same); *cf. Warner Bros., Inc. v. American Broadcasting Co., Inc.*, 654 F.2d 204, 210(2d Cir. 1981) (rejecting plaintiff's effort to "alter[] the actual sequence of construction of plaintiffs' work in order to achieve a juxtaposition that makes for greater similarity with defendants' [work]").

Because there are only a limited number of ideas and subject matters to depict in creative works, copyright law does not protect ideas, but only their unique expression. *Williams*, 84 F.3d at 587; *see also* 17 U.S.C. § 102(b) (no copyright protection for "any idea, procedure, process, system, method of operation, concept, principle or discovery"). "[I]deas themselves, even if original in their conception, are free for the taking." *Diamond Direct, LLC v. Star Diamond Group, Inc.*, 116 F. Supp. 2d 525, 529 (S.D.N.Y. 2000). Thus, there is no infringement where, as here, the alleged similarities involve ideas, themes or concepts.[6]

Applying these established legal principles, courts in this Circuit consistently reject infringement claims based on allegedly similar ideas in books, television shows, films and the like. *See, e.g.*, *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 122 (2d Cir. 1930) (quarrel between a Jewish and Irish father, the marriage of their children, the birth of grandchildren and a reconciliation); *Hogan*, 48 F. Supp. 2d at 310-11 (half-vampire/half-human on a quest to discover his origins); *Debitetto v. Alpha Books*, 7 F. Supp. 2d 330, 334 (S.D.N.Y. 1998) (dog owner's reference manual containing statements of scientific facts and procedures for caring for a dog); *Duffy v. Penguin Books USA, Inc.*, 4 F. Supp. 2d 268, 273 (S.D.N.Y. 1998) (book related to style and fashion for plus-sized women including idea that women's bodies come in one of four types); *Sinicola v. Warner Bros.*, 948 F. Supp. 1176, 1186 (E.D.N.Y. 1996) (story of a villain, linked to organized crime, who commits a homicide and then is pursued and vanquished by a close friend or relative of the victim before other characters who were hoping to capture the villain for their own purposes); *Arden v. Columbia Pictures Industries, Inc.*, 908 F. Supp. 1248, 1259 (S.D.N.Y. 1995) (man trapped in a repeating day); *Denker*, 820 F. Supp. at 731-36 (elderly,

---

[6] Similarly, "facts are not copyrightable, regardless of the effort expended in their discovery." *Denker v. Uhry*, 820 F. Supp. 722, 729 (S.D.N.Y. 1992). Thus, Lapine's allegations that both works unremarkably discuss childhood obesity, the connection between good nutrition and children's behavior and the dangers of too much sugar in diet – which are clearly statements of fact – are not actionable. FAC ¶¶ 33(a) and 33(b).

white Jewish person who, in the face of advancing age and the resulting loss of independence, requires the assistance of a black helper and, after initial resistance, develops a friendship with the helper).

The idea of sneaking pureed vegetables into children's meals and the associated concepts and methodologies to which Lapine claims a monopoly do not qualify for copyright protection. In wholly redundant fashion, Lapine rephrases and repackages this same unprotectable idea throughout the Amended Complaint, but no matter how she characterizes it, her claims fail. *See* FAC ¶ 33(b) (camouflaging pureed healthy food inside children's favorite foods); FAC ¶ 33(e) (putting sprinkles on food to enhance its appeal); FAC ¶ 33(f) (hiding "good-for-you" food in dishes that kids naturally love); FAC ¶ 33(p) (an "approach" to cooking healthy food for children); FAC ¶ 33(s) (hiding healthy food to remove "stress" around the table); FAC ¶ 33(e) (the benefits of nutritional camouflage); FAC ¶ 33(h) (the notion that forbidden foods are more alluring to children); FAC ¶ 33(t) (suggestions for incorporating purees into store-bought foods).

These ideas, concepts and methodologies would not be protectable even if Lapine had herself invented them, as she falsely claims.   In fact, the approach Lapine claims to be her "innovative solution" (FAC ¶ 1) is found in a multitude of works published before *The Sneaky Chef*.   Numerous books, magazines, newspapers and online articles have utilized the very same themes, ideas and processes that Lapine claims to be "unique and innovative" (FAC ¶ 18), including:

- Jane Kinderlehrer, *Confessions of a Sneaky Organic Cook . . . Or, How to Make Your Family Healthy When They're Not Looking!*, (Rodale 1971).
- Karen Bali and Sally Child, *The Art of Hiding Vegetables: Sneaky Ways to Feed Your Children Healthy Food*, (White Ladder 2005).
- Chris Fisk, *Sneaky Veggies: How to Get Vegetables Under the Radar & Into Your Family*, (Sterling 2006).
- "Hide and Go Sneak: Ten Ways To Add Fruits and Veggies to Your Child's Diet," *The Food Network*, August 11, 2004, *available at http://www.foodnetwork.com/food/lf_kids/article/ 0,1904,FOOD_16382_3103342,00.html*.

- Melissa Clark, "Sneak It In: Squash" and "Sneak It In: Sweet Potato," *Cookie Magazine,* July/Aug. 2006 and Oct./Nov. 2006.

- "25 Surprising Ways to Sneak More Fruits And Veggies Into Your Child's Diet," *Parents Magazine*, Vol. 75, Issue 7 (2000).

- Nava Atlas, "Getting Sneaky," *Vegetarian Times*, Nov./Dec. 2004.

- Joy Bauer, "The Sneaky Gourmet: 15 Ways to Disguise Vegetables," *The Complete Idiot's Guide to Total Nutrition* (1999).

*See also* Exs. C-G (collecting additional prior works); Appendix A.  This extensive body of

works involving similar ideas, themes and processes confirms the obvious: concealing fruits and

vegetables in children's meals and the associated philosophies, methodologies and approaches

are not original and certainly not owned by Lapine.  No one has the right, under copyright law or

otherwise, to monopolize such basic and unprotectable ideas.  *See* Appendix A.

(b) Not Similar.

Not only is Lapine's allegedly novel idea unoriginal and unprotectable, the two works

express the idea of hiding healthy foods in children's meals differently, which provides an

independent ground for dismissal.  Broadly, the general approach to hiding healthy food adopted

by each book differs significantly.  *Deceptively Delicious* adopts a breezy, light tone – the

primary purpose of which is to offer easy recipes for busy parents worried about their children's

nutritional intake without a fight around the dinner table. *The Sneaky Chef* takes a more didactic

approach.  It goes to greater length to explain how and why parents should adopt this approach to

recipes, in the name of better nutrition, to take advantage of children's gullibility regarding

ingredients.  *See, e.g.*, SC at 34.  The different looks of the two books also reflect these different

approaches, with *The Sneaky Chef* presenting a more serious (and text-heavy) appearance that

replicates its more educational stance, while *Deceptively Delicious* is a more colorful book,

which matches the less-is-more style of its content.

More specifically, *Deceptively Delicious* focuses on a single method of sneaking healthy

food into children's meals: the use of pureed fruits and vegetables.  *The Sneaky Chef*, by contrast,

13

provides twelve separate methods for "sneaking healthy foods into our little ones," which range from combining refined and unrefined products to substituting nutritious liquid for water when boiling food. *See* SC at 63-92. Unlike *Deceptively Delicious*, *The Sneaky Chef* contains a number of recipes that use no purees whatsoever but rather highlight the book's other "sneaky" methods. *See, e.g.*, SC at 140, 178, 181, 182 and 203. Furthermore, *Deceptively Delicious* adopts an entirely different (and far simpler) approach to purees than *The Sneaky Chef*. Mrs. Seinfeld's purees all contain a single fruit or vegetable, while Lapine's purees require more complex recipes and typically include three or four ingredients. Indeed, the works do not have a single puree recipe in common. *See* DD at 28-30; SC at 96-103 and 112-114; *see also infra* Sections I(C)(2)(b), I(C)(3)(b) and I(C)(4)(b) (discussing additional differences of expression between the two works). Simply put, no ordinary fact-finder – much less a more discerning fact-finder – could conclude that the books are substantially similar.

> ### 2.    The Allegedly Similar Stock Themes and Elements.
>
> #### (a)  Not Protectable.

Just as Lapine does not own the unoriginal idea of hiding healthy food in children's meals, she also cannot base her copyright claim on the following stock themes and elements that naturally and predictably flow from the decision to write a cookbook about hiding healthy food in children's meals:

- An introduction by a doctor.  FAC ¶ 33(a).
- Personal anecdotes of mealtime struggles.  FAC ¶ 33(c).
- Explanatory passages regarding nutrition.  FAC ¶ 33(i).
- Directions for preparing and using purees.  FAC ¶ 33(i).
- Staples of a well-stocked kitchen, including "staple" foods and tools.  FAC ¶¶ 33(p) & 33(q).
- A caricature of a chef and images of carrots.  FAC ¶ 33(j).

Copyright law does not protect such *scenes a faire*, *i.e.*, themes and elements which necessarily or predictably follow from the initial choice of situation or subject matter, *see*

14

*Williams*, 84 F.3d at 587, and courts routinely reject copyright claims based on such natural or inevitable themes and elements.  In a closely analogous situation, this Court rejected a copyright infringement claim based on alleged similarities between two style manuals for plus-sized women, both of which used four categories to describe the shape of a woman's body and contained sections discussing hair, makeup and accessories, directions for taking one's measurements, discussions of the effect of clothing color and texture on appearance and statements urging the reader to recognize her own style preferences.  *Duffy*, 4 F. Supp. 2d at 272-74.  All the similarities between the books related to unprotectable ideas, facts and *scenes a faire* – elements that one would expect in a style manual for plus-sized women.  *Id*; *see also Williams*, 84 F.3d at 587 (electrified fences, automated tours, dinosaur nurseries and uniformed workers in a story about a dinosaur zoo); *Walker*, 784 F.2d at 50 (drunks, prostitutes, vermin, derelict cars, foot chases, morale problems of policemen and Irish cops in a story about policemen in the South Bronx); *Hoehling v. Universal Studios*, 618 F.2d 972, 979 (2d. Cir. 1980) (in a German beer hall, common German greetings during the era and the German national anthem in a work concerning the Hindenburg zeppelin disaster); *Debitetto*, 7 F. Supp. 2d at 334-45 (chapters dealing with common parasites, poison and insects in dog care manual); *Sinicola*, 948 F. Supp. at 1189-90 (sympathetic mob bosses, respected avengers, corrupt cops, mob hangouts in neighborhood business, shots fired at dead bodies and meat cleavers used as weapons in a story about the Mafia); *Zambito v. Paramount Pictures Corp.*, 613 F. Supp. 1107, 1112 (E.D.N.Y. 1985) (hidden treasure in snake-infested cave, using fire to repel the snakes, birds frightening an intruder in a jungle and a weary traveler seeking solace in a tavern, in a story about an archaeologist searching for artifacts).

These cases are dispositive.  A cookbook advocating healthy eating will inevitably contain nutritional information, directions for preparing healthy meals and an introduction or preface by a doctor.  In fact, <u>any</u> cookbook would necessarily contain a list of staple ingredients

and tools to have in the kitchen and directions for preparing food. And because *Deceptively Delicious* is focused on getting children to eat healthy food, personal anecdotes about mealtime struggles and picky eaters are obvious and inevitable.

The repeated appearance of such stock devices and elements in numerous books and articles pre-dating *The Sneaky Chef* and *Deceptively Delicious* further demonstrates the inevitability of these elements and confirms that they are predictable, unoriginal and not protectable. *See* Exs. H-L (collecting prior works); Appendix A.

(b) <u>Not Similar.</u>

The allegedly similar stock themes and elements – which are, as a matter of law, not protectable – are also expressed entirely differently in each book, providing a separate ground for dismissal. *Deceptively Delicious*'s explanations about nutrition appear almost exclusively in the form of tips from a well-known nutritionist, both in a long explanatory segment in the beginning of the book, *see* DD at 32-41, and in smaller tips interjected throughout the recipes, *see, e.g.*, DD at 91, 96. By contrast, *The Sneaky Chef*'s nutritional information – which is not attributed to any nutritionist – largely appears in boxes alongside her "Make Ahead" recipes. *See, e.g.*, SC at 99, 113. In addition, while *Deceptively Delicious* devotes four entire pages to "equip[ping] your kitchen," *see* DD at 18-21, *The Sneaky Chef* gives kitchen tools only superficial treatment, just briefly mentioning them in her "staples to buy" list. *See* SC at 61. Furthermore, the list of pantry "staples" differs significantly between the two books. *Compare* DD 22-23 *with* SC 58-61. The directions for preparing healthy meals also differs extensively between the two books; for example, *Deceptively Delicious* contains a section on teaching readers how to cook "the basics" – rice, pasta, chicken and beef – that does not appear in *The Sneaky Chef*. *See* DD at 31. And *The Sneaky Chef* devotes substantial attention – in fact, entire recipes – to incorporating healthful foods into pre-packaged foods. *See, e.g.*, SC at 150, 157. *Deceptively Delicious* includes no such recipes, and in fact only notes this method in passing as a

way to "save time."  *See* DD at 199.  The doctor's introductions are not only misrepresented but also wholly dissimilar: *The Sneaky Chef*'s introduction covers different topics and includes a "Q and A" section that does not appear in *Deceptively Delicious.  Compare* DD at 8-9 with SC at 15-17.  Finally, the anecdotes of mealtime struggles are dissimilar.   Lapine includes a long-winded story about a visit by her brother to a family dinner, *see* SC at 22-24, and extensive examples of attempted persuasion, *see* SC at 20-22.  *Deceptively Delicious* devotes just a single, generalized paragraph to the subject.  *See* DD at 10.  In sum, the total dissimilarity of the stock themes and elements further precludes Lapine's infringement claim.

**3.    The Allegedly Similar Words and Fragments.**

(a)  Not Protectable.

Like so many unsuccessful copyright plaintiffs before her, Lapine randomly plucks a handful of isolated words and phrases from the two works – both of which exceed two hundred pages – in an effort to manufacture substantial similarity.  *See* FAC ¶ 33.[7]  This old trick fails entirely.

---

[7]    Tellingly, Lapine fails to cite any page numbers from the books in her Amended Complaint to enable the Court to find the alleged similarities.  This sleight-of-hand is carried over from the original complaint, and is clearly not an oversight but rather another deliberate attempt to misrepresent the works.  Indeed, many of the allegedly similar "phrases" are in fact cut-and-pasted together from different parts of the works.  *See, e.g.*, FAC ¶ 33(c) (alleged "phrase" "*begging*, pleading, threatening and bribing," as well as "*coercing kids to eat* what's on their plates" cut-and-pasted from pages 22 and 24 of *The Sneaky Chef* ); FAC ¶ 33(d) (alleged phrase "this method has brought *peace to our family table*," that "[i]n many families, the dinner table becomes a battleground and meal time is a *power struggle*" and that "I couldn't use logic, but I couldn't afford to *give up* either" cut-and-pasted from pages 24 and 53 of *The Sneaky Chef*; the allegedly similar "phrase" in *Deceptively Delicious* is cobbled together from pages 10, 11 and 13 of *Deceptively Delicious*); FAC ¶ 33(r) (alleged phrase "[Y]ou will find the Make-Ahead . . . are your best friends . . . once you have these purees and blends in your refrigerator or freezer, *simply grab a spoonful and mix it into the recipes as called for*," and that with respect to "the scratch recipes, you'll spend *less than thirty minutes* for each one" is cobbled together from pages 95 and 125 of *The Sneaky Chef*; the allegedly similar "phrase" in *Deceptively Delicious* is cobbled together from pages 11 and 17 of *Deceptively Delicious*).

It is hornbook law that "short phrases or single words do not exhibit the minimal creativity required for copyright protection." *Boyle*, 1998 WL 80175, at \*2 (citation omitted); *see* 37 C.F.R. § 202.1(a) (words and short phrases not subject to copyright protection). Here, the few words and phrases that do appear in both works are trite, banal and not actionable. *See, e.g.*, FAC ¶ 33(c) ("begging" and "coercing"); ¶ 33(d) ("power struggles" and "give up"); FAC ¶ 33(g) ("loving deceit"/"loving deception"); FAC ¶ 33(p) ("staple"); FAC ¶ 33(r) ("steaming" and "food processor" and "packaging" and "1/4 cup baggies" and "freezing" and "thirty minutes"), FAC ¶ 33(s) ("sneak" and "stress"). Courts routinely reject copyright claims based on such common words and phrases. *See, e.g.*, *Jean v. Bug Music*, 2002 WL 287786, at \*6 (S.D.N.Y. Feb. 27, 2002) (lyrical excerpt "'clap your hands" not protectable); *Boyle,* 1998 WL 80175, at \*4 (word "series" to describe a mutual fund is not protectable); *Favia v. Lyons P'shop*, 1996 WL 194306, at \*4 (S.D.N.Y. Apr. 3, 1996) (phrase "I love you, you love me" not protectable); *Alexander v. Haley*, 460 F. Supp. 40, 46 (S.D.N.Y. 1978) (rejecting plaintiff's attempt to extract "scattered passages" from the two books, such as "poor white trash," to establish similarity); *Narell v. Freeman*, 872 F.2d 907, 911 (9th Cir. 1989) (descriptions of family relationships as a "staggering network," a muddy street as a "cow path," or a riverbank as "crawling with alligators" are not subject to copyright protection).[8]

In addition, Lapine's allegations involve words and short phrases that are predictable or inevitable in works on the subject of cooking for children. The descriptions of mealtime battles with children as a "power struggle" that require "begging" and "coercing" or make you want to "give up" are not protectable or unique expressions, but rather fundamental words and phrases

---

[8]    Lapine also ignores well-settled law in claiming that *Deceptively Delicious*'s subtitle "Simple Secrets to Get Your Kids Eating Good Food" infringes *The Sneaky Chef's* subtitle "Simple Strategies for Hiding Healthy Foods in Kids' Favorite Meals." FAC ¶ 33(k). *See, e.g., Bell*, 2001 U.S. Dist. Lexis at \*11 (rejecting claim of substantial similarity between titles "Hip

*(footnote continued on following  page)*

that copyright law does not protect.  Lapine's allegations of similarity based on cooking

instructions are also laughable – cookbooks necessarily use such stock terms as "freezing,"

"steaming" and "packaging."  There is no other way to describe these processes.  Not

surprisingly, prior cookbooks and other works include the same or similarly inevitable words and

phrases that Lapine alleges are protectable and infringe her work.  *See* Ex. S-Z (collecting

references from prior works); Appendix A.

> (b) <u>Not Similar.</u>

The majority of the phrases highlighted by Lapine are not only unprotectable, they are

also substantially <u>dissimilar</u>, as the phrases themselves demonstrate.  For example, Lapine

falsely alleges that the phrase in *The Sneaky Chef* "[t]here are many foods that kids won't go near

in their virgin condition, but after ten seconds in the blender, those same broccoli stalks they

made a face at yesterday are now eaten without a fight" is similar to the phrase in *Deceptively*

*Delicious* "I have become an expert at hiding vegetable purees and other healthful additional –

foods my kids wouldn't touch otherwise – in all of their favorite dishes."  FAC ¶ 33(e).  But the

phrases share no similarities other than the unprotectable idea of healthy food in children's

meals.  Lapine's remaining allegations of similar phrases likewise fail.  *See* FAC ¶ 33(k)

(comparing "Simple Secrets to Get Your Kids Eating Good Food" to "Simple Strategies for

Hiding Healthy Food in Kids' Favorite Meals"); FAC ¶ 33(r) (comparing "[Y]ou will find the

Make-Ahead . . . are your best friends . . . once you have these purees and blends in your

refrigerator or freezer, simply grab a spoonful and mix it into the recipes as called for" with

"You will quickly learn to prepare, cook, puree, and portion the purees.  Then the purees will be

available to use when they're called for, just like any other ingredient in my recipes.");  FAC

---

*(footnote continued from previous page)*

Hop Behind the Walls" and "Hip Hop Behind Bars" because "there is no copyright protection for
titles").

¶ 33(s) (comparing the phrase "[P]arental control does not have to come in the form of a constant battle" to the phrase "It empowers you to exert some legitimate control over what your children eat, without inviting the usual fights."); FAC ¶ 33(u) (comparing "[L]et's put these clever methods into action," with "[Y]ou're ready for action.").

The dissimilarity of the words and short phrases highlighted by Lapine confirms that her copyright claim based upon these words fails as a matter of law.

### 4.     The Allegedly Similar Recipes.

#### (a) Not Protectable.

Lapine does not claim that a single one of the more than seventy (70) recipes that appear in each work is the same.  Instead, Lapine plucks eleven recipes out of each book and points to the unremarkable fact that they share a common ingredient.  FAC ¶ 33(v).  For example, Lapine alleges that both works suggest adding cauliflower to Mac 'n Cheese.  *Id.*  This claim is frivolous. The law is clear that even <u>entire</u> recipes, in the form of "lists of required ingredients and the directions for combining them to achieve the final products," are not protectable under copyright law.  *See Publications Int'l, Ltd. v. Meredith Corp.*, 88 F.3d 473, 480 (7th Cir. 1996) (vacating entry of preliminary injunction because the "identification of ingredients necessary for the preparation of each dish" was not protectable); *Lambing v. Chocolatier*, 1998 WL 58050, at *1 (6th Cir. Feb. 6, 1998) (affirming dismissal of copyright claim because "recipes are functional directions for achieving a result and are excluded from copyright protection"); 37 C.F.R. § 202.1(a) ("mere listing of ingredients or contents" not protectable); Copyright Office Circular 34 ("Copyright Office cannot register claims to exclusive rights in . . . [m]ere listings of

ingredients, as in recipes, labels, or formulas.").  Thus, Lapine's allegation that a handful of recipes in the two works contain <u>one</u> similar ingredient fails as a matter of law.[9]

Furthermore, it is not at all surprising that the books contain a certain number of recipes for similar kids' meals.  Nearly every cookbook for children includes such staples as chocolate chip cookies, brownies, chicken strips and macaroni and cheese.  To the extent these dishes share any ingredients, it is similarly unremarkable: for many of the listed dishes, there is only one fruit or vegetable whose color and/or texture makes it such that it could be effectively concealed in the dish.  For example, it is not at all surprising that both books hide sweet potato in a grilled cheese sandwich, or avocado in chocolate pudding, as prior recipes confirm.  *See* Ex. Q (collecting similar recipes); Appendix A.

(b) <u>Not Similar.</u>

Lapine also disregards the obvious and numerous dissimilarities between the eleven recipes she highlights in a highly misleading chart contained in the Amended Complaint.  *See* FAC ¶ 33(v).  Most obviously, the vast majority of the eleven recipes do not call for the inclusion of the specific puree alleged in the Amended Complaint.  In the rare instance that they do, the allegedly similar puree is just one of several options that can be included in the dish.  The specific dissimilarities between the recipes at issue are set forth in detail in Exhibit R to the Snyder Declaration.

More broadly, the allegedly similar recipes are dissimilar in the following respects:

- *Deceptively Delicious* often uses numerous different puree options to be added to a particular dish.  *Compare* DD at 49 (calling for the addition of "banana or pineapple or sweet potato or carrot or butternut squash puree, or canned pumpkin" to "French Toast") *with* SC at 136 (calling for the addition of "Orange Puree" to "Fortified French Toast").

---

[9]  As discussed above, some of the allegedly similar recipes are in fact misrepresented in the first place.  For example, both works do not contain a recipe for Chocolate Chip Cookies containing White Beans.  FAC ¶ 33(v).

- *Deceptively Delicious* uses only single-vegetable purees. *The Sneaky Chef* almost exclusively calls for purees made with a combination of ingredients and named for their color. *Compare* DD at 156 (calling for the addition of "carrot puree" and "spinach puree" to "Brownies") *with* SC at 240 (calling for the addition of "Purple Puree" – a combination of spinach, blueberries, lemon juice and water – to "Brainy Brownies").

- *Deceptively Delicious* uses greater amounts of pureed vegetables than *The Sneaky Chef*: the difference is often at least 2:1. *Compare* DD at 75 (calling for the addition of "1 cup broccoli or spinach or sweet potato or beet puree" to Chicken Nuggets) *with* SC at 196-197 (calling for the addition of "1/4 to 1/2 cup Orange Puree" to "Crispy Chicken Tenders").

- *Deceptively Delicious* often uses different cooking methods than *The Sneaky Chef*. *Compare* DD at 104, 107 (calling for stovetop preparation for Mac 'n Cheese) *with* SC at 148 (calling for oven baking of Mac 'n Cheese).

Tellingly, Lapine does not allege that the remaining sixty-plus recipes that appear in each book are substantially similar. Nor could she; these ignored recipes are entirely different. For example, *Deceptively Delicious* includes recipes for "Banana Bread," "Coffee Cake," "Baked Egg Puffs," "Rice Balls," "Aloha Chicken Kebabs," "Waffle Sandwiches," "Tortilla Cigars," "Doughnuts" and "Banana Pudding Pie." None of these recipes appear in *The Sneaky Chef*, which contains numerous recipes that do not appear in *Deceptively Delicious*, including "Breakfast Ice Creams," "Breakfast Cookies and Milk," "Complete Corn Muffins," "Pigs in Healthy Blankets," "Tricky Taco Soup," "Franks and Beans" and "No Harm Chicken Parm."

The total dissimilarity of the recipes provides an independent basis for dismissal based upon allegedly similar recipes.

**D.     The "Overall Look and Feel" of the Two Works Is Entirely Dissimilar.**

Knowing that copyright law does not afford protection to ideas, *scenes a faire*, words, phrases and recipes, Lapine throws in a catch-all allegation about the "overall look and feel" of the two works in a last-ditch (and equally unsuccessful) effort to sustain her copyright claim. FAC ¶ 32 and 33. Specifically, Lapine alleges that the following random elements suggest that the books have a similar look and feel:

- Recipes printed on a page with border around the text. FAC ¶ 33(l).
- Line-drawn cartoon graphics. FAC ¶ 33(m).

22

- Use of full-color photographs to show the recipes.  FAC ¶ 33(m).
- Inclusion of "icons" with each recipe.  FAC ¶ 33(n).
- Use of a different font color for purees from the color used for other ingredients.  FAC ¶ 33(o).
- An organizational structure that includes nutritional information and puree recipes at the beginning of the work, followed by recipes in the latter part of the work.  FAC ¶ 33(i).

These allegations fail to state a claim under black-letter copyright law.[10]  While the Court may take into account the "total concept and feel" of the two works, alleged similarity in "total concept and feel" cannot blur the line between unprotectable idea and protected expression.  *CK Co. v. Burger King Corp.*, 1994 U.S. Dist. LEXIS 13934, *8-9 (S.D.N.Y. Sept. 30, 1994) (warning that "[a]ccepting an overly broad scope for protectable 'total concept and feel' threatens the basic principle of copyright law: that concepts and ideas may not be copyrighted, and that only a particular expression of an idea may be copyrighted."), *aff'd*, 122 F.3d 1055 (2d Cir. 1995); *see also* 4 M. Nimmer & D. Nimmer, *Nimmer on Copyright*, § 13.03[A][1][c] ("The touchstone of 'total concept and feel' threatens to subvert the very essence of copyright, namely the protection of original expression.").  Thus, a cherry-picked assortment of similarities cannot support a finding of a "common aesthetic appeal." *Mallery*, 2007 WL 4258196, at *8 (holding that a "scattershot" listing of "generalized similarities in characterization . . . visual elements . . . and plot points" cannot support a finding of substantial similarity).

Furthermore, as demonstrated below, the differences between the works – which are ubiquitous here – preclude any actionable claim of similar "look and feel."  *See, e.g.*, *Streetwise Maps, Inc.*, 159 F.3d at 748 (dissimilar total concept and overall feel of two laminated street maps, including different use of colors and icons, precluded finding of substantial similarity); *Eden Toys, Inc. v. Marshall Field & Co.*, 675 F.2d 498, 500-01 (2d Cir. 1982) (numerous

---

[10] It is beyond dispute that such trivial elements are, by themselves, not protectable.  *See, e.g.*, *Pampered Chef*, 12 F. Supp. 2d at 792 (subject matter of a photograph not protectable); 37

*(footnote continued on following page)*

differences between snowmen, including size of red buttons, color of scarves and distance between eyes precluded a finding of substantially similar "look and feel"); *Adams*, 2007 WL 1959022, at *5 (granting motion to dismiss where the "total concept and feel" of the respective works, including the style of drawings, was "vastly different"); *Well-Made Toy Mfg. Corp. v. Goffa Intern. Corp.*, 210 F. Supp. 2d 147, 171 (E.D.N.Y. 2002) (no finding of infringement where, *inter alia*, dolls had different "color and fabric patterns," which "contribute to each's distinct feel"); *Hogan*, 48 F. Supp. 2d at 311 (books not substantially similar in "total concept and feel" where artwork and coloring were different).

(a) The Design and Styling of the Two Works.

Aesthetically, the two books could not be more different. *The Sneaky Chef* is a classic trade paperback format and uses only two colors – black and orange – throughout the text. *Deceptively Delicious*, by contrast, is a spiral-bound hardcover printed on thicker stock paper and uses every color imaginable. *Deceptively Delicious* has a decidedly "retro" feel, from its plaid pink-and-green cover to the "fifties-esque" images of Mrs. Seinfeld and her family; *The Sneaky Chef* does not.

The few isolated elements that Lapine identifies regarding design and styling are specious, entailing such ubiquitous and trivial matters as the use of borders around text (notwithstanding the *dissimilarity*, acknowledged by Lapine, of the particular borders used in the two books); the use of "icons" (notwithstanding the dissimilarity, acknowledged by Lapine, of icons used in the books);[11] and the use of different font colors – not even the same "different

---

*(footnote continued from previous page)*

C.F.R. § 202.1 (mere variations of typographic ornamentation, lettering or coloring not protectable).

[11] Each recipe in *The Sneaky Chef* is labeled with icons that refer to the specific "sneaky" method used. The meaning of the icons is not immediately evident if one has not memorized them: a bag of popcorn, for example, refers to Method Nine, which advocates using "low-cal,

*(footnote continued on following page)*

font colors" – for different ingredients listed in recipes.  FAC ¶¶ 33(l), 33(n) and 33(o).  Lapine

also cannot establish actionable similarity based on the depictions of a chef and carrots in both

works.  FAC ¶ 33(j).  Not only are such elements unremarkable in a cookbook, they are also not

similar, as Lapine implicitly acknowledges.  *Id.*

Lapine's allegation of substantial similarity based on the use of "full-color photographs"

and "line-drawn graphics" in both cookbooks is also frivolous.  FAC ¶ 33(m).  The graphics and

photographs in the two books have no similarity other than their unprotectable subject matter;

*i.e.*, fruits, vegetables and dishes made from them.  *See Pampered Chef v. Magic Kitchen*, 12 F.

Supp. 2d 785, 792 (D. Ill. 1998) (subject matter of a photograph not protectable).  The different

color photographs are also used entirely differently within the books.  *The Sneaky Chef*'s

finished-dish color photos all appear together in a single section, with each photo accompanied

by a caption giving Lapine's fanciful name for the dish, and a list of the "Sneaky Ingredients."

*See* SC 161-68.   In *Deceptively Delicious*, color photographs of the finished dishes appear

throughout, with nearly every recipe accompanied by a full-page finished-product shot on the

opposite page.  The styling and shooting of the photographs themselves are also different: the

photos in *The Sneaky Chef* have a "homey" feel, while those in *Deceptively Delicious* are more

sophisticated and polished.

(b)  The Organization of the Two Books.

Lapine's sole allegation regarding the organization of the books fails to establish an

actionable similar "overall look and feel" between the works.  FAC ¶ 33(i).  The inevitable

---

*(footnote continued from previous page)*

nutritious 'fillers'" as a way to cut calories.  *See* SC at 92.  *Deceptively Delicious*, by contrast,
uses vegetable icons that indicate the different purees contained in a recipe: a carrot and a sweet
potato accompany Meatball Soup, for example, to represent the carrot and sweet potato purees
that are part of the dish.  *See* DD at 72.  The icons and their differing level of complexity again
match the different voice of each book and represent the different general approach of each
author.

placement of an introduction, nutritional information and cooking basics near the front of a cookbook, and recipes and indexes in the back, cannot support a viable allegation of substantial similarity.  *See*, *e.g.*, *Tisi v. Patrick*, 97 F. Supp. 2d 539, 543 (S.D.N.Y. 2000) (structural similarities between two songs – including introduction, verse, chorus and bridge section – are not significant when they are "uniformly shared with most popular rock music"); *Arden*, 908 F. Supp. at 1260 (any similarities in structure resulted from the unprotectable idea of a repeating day and thus were likewise not protectable).  In fact, significant structural *differences* between the works preclude a finding of similarity.  *See id.* (allegedly infringed song contained a "lengthy distorted rock guitar intro" not found in the allegedly infringing song).  For example, as the table of contents for each book makes clear, the books contain different selections of different recipes, arranged entirely differently.  *The Sneaky Chef* divides its recipes into "Make-Ahead Recipes," "Breakfast Recipes," "Lunch Recipes," "Snacks," "Dinner," "Treats" and "Drinks."  *Deceptively Delicious* contains just three categories of recipes: "Breakfast Recipes," "Mealtime Recipes" and "Dessert Recipes."

Simply put, no ordinary fact-finder – much less a more discerning fact-finder – could conclude that the books are substantially similar in look, feel or otherwise.

## II.    LAPINE'S FEDERAL AND NEW YORK TRADEMARK CLAIMS MUST BE DISMISSED AS A MATTER OF LAW.

In her Second and Fourth Claims for Relief, Lapine alleges that the portraits of a plain-clothed, pony-tailed Jessica Seinfeld that appear on the cover and spine of *Deceptively Delicious* infringe Lapine's line-drawn image mark of a toque-wearing chef and Lapine's word mark. Lapine's trademark infringement claim is based on the ludicrous notion that consumers somehow will be confused between marks and works that could not be more different, and which no sane consumer – much less numerous prudent purchasers – could confuse or fail to distinguish. Accordingly, Lapine's Second and Fourth Claims for Relief fail as a matter of law.

26

A.    **The Elements of a Trademark Infringement Claim.**

To avoid dismissal of her trademark infringement claim, Lapine must establish that she has a valid mark that is entitled to protection and that Defendants' use of an allegedly similar mark is likely to cause confusion as to the source or sponsorship of Lapine's product. *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000).[12]  "To establish likelihood of confusion, a probability of confusion, not just a mere possibility, must exist." *Streetwise Maps*, 159 F.3d at 743.  The trademark claim thus must be dismissed unless "a large number of purchasers likely will be confused as to the course of the goods in question." *Id.*

Likelihood of confusion is ordinarily assessed according to the eight factors set forth in *Polaroid Corp. v. Polaroid Electronics Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).  However, the inquiry must "focus on the ultimate question of whether consumers are likely to be confused"; and while no single factor is necessarily dispositive, "any one factor may prove to be so." *Nora Beverages, Inc. v. Perrier Gp. of America, Inc.*, 269 F.3d 114, 119 (2d Cir. 2001).  The Second Circuit has made clear that the "similarity of marks" factor standing alone "can be dispositive" in determining whether there exists a likelihood of confusion. *Nabisco, Inc.*, 220 F.3d at 46; *see Le Book Pub., Inc.*, 418 F. Supp. 2d at 311 (lack of similarity between marks was dispositive and mandated dismissal of trademark claim).[13]

---

[12] Because Section 32 of the Lanham Act only protects marks that are federally registered, and because Lapine has conceded that her purported image mark has not been federally registered (FAC ¶ 60), any claim with respect to the image mark brought under Section 32 is precluded.  *See, e.g.*, *Globalaw Ltd. v. Carmon & Carmon*, 452 F. Supp. 2d 1, 25 (D.D.C. 2006) ("Absent a complete and successful registration, C&C is not a 'registrant' under the parameters of Section 32(1) and cannot bring a claim pursuant to that section at this time.").  *See also* Ex. DD.

[13] *See also Kaufman & Fisher Wish Co., Ltd. v. F.A.O. Schwartz*, 184 F. Supp. 2d 311, 323 (S.D.N.Y. 2001), *aff'd*, 51 Fed. Appx. 335 (2d Cir. 2002); *Scholastic Inc. v. Speirs*, 28 F. Supp. 2d 862, 871-72 (S.D.N.Y. 1998), *aff'd*, 199 F.3d 1323 (2d Cir. 1999); *cf Resource Developers, Inc. v. Statue of Liberty-Ellis Island Foundation, Inc.*, 926 F.2d 134, 141 (2d Cir. 1991) (rejecting trademark claim as a matter of law where products or marks were so dissimilar that no question of fact is presented).

The analysis of whether marks are substantially similar requires the court to "appraise the overall impression created by [the marks] and the context in which they are found." *Streetwise Maps Inc.*, 159 F.3d at 744; *see also Riverhead Paints Plus, Inc. v. PPG Industries, Inc.*, 2 U.S.P.Q. 2D (BNA) 2035 (E.D.N.Y. Jan. 13, 1987) (the court should view the marks in the context of the products' packaging).  Where "a visual comparison of the marks by the court reveals that they are not substantially similar," a finding of non-infringement is warranted. *Riverhead Paints Plus, Inc.*, 2 U.S.P.Q.2D (BNA) 2035, at *7.  If, as here, "the goods are sold side by side, … then it is reasonable to compare the marks in this way."  J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:59.

A court may determine if there is a likelihood of confusion as to source as a matter of law on a Rule 12(b)(6) motion to dismiss.  *See, e.g.*, *Le Book Pub., Inc.*, 418 F. Supp. 2d at 312 (dismissing trademark infringement claim where there was no likelihood of confusion); *Solow Bldg. Co., LLC v. Nine West Group, Inc.*, 2001 U.S. Dist. LEXIS 8848 (S.D.N.Y. June 29, 2001) (same).  A trademark claim that fails to create an issue of fact as to the essential element of likelihood of confusion under the Lanham Act is also fatal to the common law trademark claim under New York law and must be dismissed.  *See New Sensor Corp. v. CE Distribution LLC*, 303 F. Supp. 2d 304, 317 (E.D.N.Y. 2004), *aff'd* 2004 U.S. App. LEXIS 26870 (2d. Cir. Dec. 23, 2004).[14]

## B.    The Substantial Dissimilarity Between the Books and "Marks" Defeats Lapine's Trademark Claims As a Matter of Law.

Lapine's trademark claim alleges that Defendants' use on the cover of *Deceptively Delicious* of "a line-drawn caricature of a female chef preparing food, winking, while hiding

---

[14]  Lapine's state law trademark claim fails for an additional and independent reason.  To prevail on her claim under § 360-k, Lapine must establish that her mark is "registered under this title."  N.Y. Gen. Bus. Law § 360-k.  Plaintiffs' failure to plead (and the apparent absence of) a

*(footnote continued on following  page)*

carrots behind her back" and on the spine of *Deceptively Delicious* of a "line-drawn image of

female holding a finger to her lips as if to say 'shhh'" is confusingly similar to her word

trademark, "The Sneaky Chef," and image trademark of a line drawn, winking chef with a finger

to his lips.  FAC ¶ 62.  As the Court can plainly see, the "similarity of the marks" factor is

dispositive here: the books and marks at issue are so dissimilar that, as a matter of law, there can

be no confusion as to source.  *See Nabisco*, 220 F.3d at 46-47 (dissimilarity of the marks alone

was sufficient to dispose of trademark claim); *Le Book Pub., Inc.*, 418 F. Supp. 2d at 312

(dismissing trademark claim where the "cumulative effects of the dissimilarity of the marks and

the form, look and feel of the directories dispels any confusion consumers might have"):



No real analysis is needed to dispose of the meritless trademark claims.  Nonetheless, a

more detailed, side-by-side comparison confirms the conclusion compelled by the naked eye and

common sense: there can be no confusion as to source.  The drawings of Jessica Seinfeld on the

cover and spine of *Deceptively Delicious* are in an entirely different, more realistic style, and

---

*(footnote continued from previous  page)*

New York registration under New York General Business Law §§ 360-a-j bars Lapine's Fourth
Claim for Relief as a matter of law.

create an entirely different impression than The Sneaky Chef name and design mark.[15]  The only elements shared between the two are a wink and a carrot, in the case of the *Deceptively Delicious* cover; and a finger held to the lips in the case of the spine illustration.  These elements are descriptive of the books' common theme – shared with countless other works – of hiding vegetables in children's food.  *See* Ex C.  Plaintiffs cannot claim confusion based on such weak and commonly used elements, particularly where the elements and the overall images in question are so utterly dissimilar.  *See*, *e.g.*, *General Foods Corp. v. Ito Yokado Co.*, 219 U.S.P.Q. 822 (T.T.A.B. 1983) (rejecting theory that "any bird is likely to be confused with any other bird," and finding no likely confusion between different bird picture marks); *Kaufman & Fisher Wish*, 184 F. Supp. 2d at 323 (holding that "no reasonable factfinder could conclude that there is any likelihood of confusion" where plaintiff's doll was "conventional" looking, while defendants' was "cartoonish"); *Kellogg Co. v. Toucan Golf, Inc.*, 337 F.3d 616 (6th Cir. 2003) (affirming registration of toucan design, which resembled a real toucan and thus was not substantially similar to plaintiffs' "anthropomorphic" toucan).

The "overall impression" of the two marks in their very different contexts confirms that no confusion is possible.  The front-cover "Jessica" image appears standing next to a pink kitchen counter which holds a gray bag of flour, a wood cutting board on which orange carrots and green mint leaves lie, a gray mixing bowl nearly full of brownie batter and a gray baking pan containing baked brownies.  A significant portion of *The Sneaky Chef*'s cover, on the other hand, is given over to captioned photographs of real food ("Cauliflower masked in mac & cheese!";

---

[15]  Notably, the color blue claimed by Lapine as a feature of their mark, and used for the broad border on the front and back covers of Lapine's book, appears nowhere on the covers of *Deceptively Delicious*, whose dominant pink and cream colors (and retro plaid design) have no counterpart in *The Sneaky Chef*'s design.  Lapine's claimed color orange, used for the word SNEAKY in Lapine's title as well as the author's name and back-cover heading, is used on *Deceptively Delicious* only for the color of the carrots – as carrots appear in the real world – and not as a distinctive source indicator.

"Blueberries hidden in cupcakes!"; "Spaghetti & meatballs with 8 hidden vegetables!"), that are

utterly dissimilar in look and feel to the uncaptioned line-drawn carrots and brownies on the

*Deceptively Delicious* cover.  Furthermore, on both the cover and spine of *Deceptively Delicious*,

the image of Mrs. Seinfeld appears alongside her name, which Lapine acknowledges is

"enormously … well-known," as well as the name of "one of the most popular programs in

television history."  FAC ¶ 14.  The Second Circuit has repeatedly rules that "the presence of a

distinct brand name may weigh against a finding of confusing similarity" particularly where, as

here, the "marks" in question are far from identical.  *Playtex Prods. v. Georgia-Pacific Corp.*,

390 F.3d 158, 164-165 (2d Cir. 2004).[16]  No reasonable person seeing Jessica Seinfeld's name

on her book could be confused about its source.

      The strikingly different overall appearances of the books also preclude likely confusion.

As discussed *supra* Sections I(C) and I(D), the two books could not be more different.  *The*

*Sneaky Chef* is a classic trade paperback format and uses only two colors – black and orange –

throughout the text.  *Deceptively Delicious*, by contrast, is a spiral-bound hardcover printed on

thicker stock paper and uses every color imaginable.  *The Sneaky Chef* uses a color scheme

dominated by cool, bright blue, stark white, and orange, and the predominant dark-brown-to-

black, which stands in sharp contrast to the warm buff and pink, and "comfortable" plaid, of the

*Deceptively Delicious* package.  No reasonable consumer could be confused between two books

so entirely dissimilar in look and feel.  *See, e.g.*, *Le Book Pub., Inc.*, 418 F. Supp. 2d at 312

(granting motion to dismiss where "cumulative effects of the dissimilarity of the marks and the

form, look and feel of the directories dispels any confusion consumers might have"); *Nabisco,*

*Inc.,* 220 F.3d at 47 ("differences between the parties' products and in the commercial

---

[16] *See also Bose Corp. v. Linear Design Labs, Inc.*, 467 F.2d 304, 310 (2d Cir. 1972) ("there
is hardly likelihood of confusion or palming off when the name of the manufacturer is clearly

*(footnote continued on following  page)*

presentation of their marks creates distinct marketplace impressions" and dispels any likelihood of confusion).

In sum, whether viewed side by side or apart, in context or out of context, no reasonable fact-finder could find confusing similarity between Lapine's word and image marks and the illustrations of a pony-tailed Jessica Seinfeld that appear, adjacent to her name, on the cover and spine of *Deceptively Delicious*. The overall impression created by the parties' works and "marks" is so different that, as a matter of law, the trademark claim cannot stand. Accordingly, the Second Claim for Relief must be dismissed. *Streetwise Maps*, 159 F.3d at 743 (affirming dismissal of copyright claim where there was no likelihood that "a large number of purchasers likely will be confused as to the source of the goods in question").

## III. LAPINE'S CLAIM OF INJURY TO BUSINESS REPUTATION FAILS AS A MATTER OF LAW.

Lapine's throw-away cause of action for injury to business reputation under New York's General Business Law § 360-1 also fails as a matter of law.[17]  In her Fifth Claim for Relief, Lapine alleges that Mrs. Seinfeld uses a "confusingly similar trademark" and thus "injures and creates a likelihood of injury to [Lapine]" because "[a]ny adverse reaction by the public to Jessica Seinfeld and the quality of her products and the nature of her business will injure the business reputation of plaintiffs and the goodwill that they enjoy[.]".  FAC ¶¶ 84-85.  Lapine thus alleges "blurring by tarnishment," which occurs "where a trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with the

---

*(footnote continued from previous page)*

displayed."); *Nabisco*, 220 F.3d at 46 (same); *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1045-46 (2d Cir. 1992) (same); *Nora Beverages*, 269 F.3d at 123 (same).

plaintiff's unrelated goods." *Katz v. Modiri*, 283 F. Supp. 2d 883, 901 (S.D.N.Y. 2003) (citations omitted).[18]

Lapine has entirely failed to allege that Mrs. Seinfeld's products are shoddy, unwholesome or unsavory, or that the public has had any "adverse" reaction to Mrs. Seinfeld's products, nor could she. Accordingly, the Fifth Claim for Relief must be dismissed. *See, e.g.*, *Katz*, 283 F. Supp 2d at 901; *Paco Sport, Ltd. v Paco Rabanne Perfumes*, 2000 WL 1721126, at *7 (2d Cir. Nov. 16, 2000).[19]

## IV.    LAPINE DOES NOT STATE A CLAIM UNDER LANHAM ACT § 43(A).

Lapine's cause of action for unfair competition under Section 43(a) of the Lanham Act is foreclosed by binding Supreme Court precedent. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). In *Dastar*, the Supreme Court held that the right to copy creative works, with or without attribution, is the domain of copyright, not of trademark or unfair competition. *Id.* at 37 (holding that the Lanham Act only protects "the producer of . . . tangible

---

*(footnote continued from previous page)*

[17] The relief sought under Plaintiffs' Fifth Claim – recovery of damages and profits – is unavailable under the provision cited, N.Y. Gen. Bus. Law § 360-1. Plaintiffs conspicuously do not seek the only relief available under that provision, an injunction.

[18] It is ironic that Lapine claims that Mrs. Seinfeld's best-selling book could injure Lapine's business reputation. Mrs. Seinfeld's book, of course, has only increased awareness, and boosted sales, of Lapine's book. *See* Snyder Decl. Ex EE.

[19] Furthermore, New York's anti-dilution status only protects "extremely strong marks." *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1049 (2d Cir. 1992). Lapine's word mark ("The Sneaky Chef") and design mark depicting a caricature chef hiding a carrot, are descriptive, not inherently distinctive, in relation to literary works about hiding vegetables and fruit in prepared food. *See, e.g.*, *In re Giordano*, 200 U.S.P.Q. 52 (T.T.A.B. 1978) (picture of chef's head a weak mark for restaurants; no confusing similarity). Third-party use of the dominant term "sneaky" and its visual analogies in identical goods significantly weakens the mark. *See Streetwise Maps*, 159 F.3d at 744 (finding mark weakened by extensive use of the words "street" and "wise" in names used by manufacturers of other products); *see also* Ex. Y (collecting prior works). Lapine's own genericized use of the term "sneaky chef" throughout her book confirms its extreme weakness. *See, e.g.*, *Bayer Co. v. United Drug Co.*, 272 F. Supp 595, 511-512.

goods that are offered for sale, and not . . . the author of any idea, concept, or communication embodied in those goods").  After *Dastar*,

> a defendant's failure to credit the plaintiff on the defendant's goods is actionable only where the defendant literally repackages the plaintiff's goods and sells them as defendant's own – not where, as here, Defendants are accused only of failing to identify someone who contributed not goods, but ideas or communications . . . to Defendants' product.

*Williams v. UMG Recordings, Inc.*, 281 F. Supp. 2d 1177, 1184 (C.D. Cal. 2003).

In her Third Claim for Relief, Lapine alleges that Defendants, through statements and representations in *Deceptively Delicious*, "assign the entire credit for [*Deceptively Delicious*] to themselves, and fail to credit Lapine or her Book."  FAC ¶ 75.  This is precisely the type of claim that *Dastar* precludes.  Lapine does not claim that Defendants repackaged her physical product and sold it under their name, nor can she.  Accordingly, Lapine cannot state a claim of unfair competition under the Lanham Act, and the Third Claim for Relief fails as a matter of law.  *See, e.g.*, *Thomas Publ'g Co., LLC v. Tech. Evaluation Ctrs., Inc.*, 2007 U.S. Dist. LEXIS 55086, at *6-7 (S.D.N.Y. July 27, 2007) (same); *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, 2006 U.S. Dist. LEXIS 16402, *25-27 (S.D.N.Y. 2006) (same).

## V.    LAPINE DOES NOT STATE A CLAIM FOR BREACH OF IMPLIED CONTRACT.

In her Seventh Claim for Relief, Lapine attempts to repackage her deficient copyright claim as a claim for breach of implied contract against HarperCollins.  Specifically, Lapine claims that HarperCollins breached an alleged "implied contract" by using *The Sneaky Chef* "manuscript or its contents," as well as the "ideas" contained therein, without compensating Lapine.  FAC ¶¶ 95-97.  This claim fails as a matter of law.  Lapine's claim that HarperCollins used "the manuscript or its contents" is squarely preempted by the Copyright Act.  *See Paul v. Haley*, 183 A.D.2d 44, 54-55 (2d Dep't 1992) (implied contract claim based on the copying of expression is preempted by the Copyright Act).  And Lapine's claim that HarperCollins

misappropriated the "ideas" in her book is equally frivolous.  New York law is clear.  The "lack

of novelty in an idea is fatal to any cause of action for its unlawful use," including a claim for

breach of implied contract.  Id. at 52, 56.  Here, of course, the "idea" underlying Lapine's book –

hiding healthy food in children's meals – is wholly unoriginal and has been expressed in

countless prior works.  *See* Appendix A. The irrefutable lack of novelty of Lapine's "idea" is

fatal to the implied contact claim.  Furthermore, the absence of substantial similarity between

*The Sneaky Chef* and *Deceptively Delicious* provides an independent basis for the Court to

dismiss this tag-along claim as a matter of law.

**A.    Lapine's Unsolicited Submission of Unoriginal Ideas Did Not Form an Implied Contract.**

It is well-settled that where, as here, ideas are not novel or original, they have no value as

property, and cannot serve as consideration for any alleged promise relating to the use of those

ideas.  *Murray v. National Broadcasting Co.*, 844 F.2d 988, 995 (2d Cir. 1988).  When one

submits an unoriginal idea to another, "no promise to pay for its use may be implied, and no

asserted agreement enforced."  *Paul v. Haley*, 183 A.D.2d at 54 (rejecting claims for breach of

implied contract and misappropriation where allegedly misappropriated ideas in a manuscript

were not novel) (citation omitted).  Furthermore, even expressing a different "take" on an

unoriginal idea does not bring it into the realm of novelty.  *Id.* at 53.  The issue of novelty is

properly considered on a motion to dismiss.  *See Zikakis v. Staubach Retail Servs., Inc.*, 2005

U.S. Dist. LEXIS 21105, *10 n.3 (S.D.N.Y. Sept. 26, 2005).

As demonstrated in detail above, the idea of hiding healthy food in children's meals is

wholly unoriginal to Lapine.  Countless prior works utilized this very same unprotectable and

non-novel idea before Lapine allegedly submitted her manuscript of *The Sneaky Chef* to

HarperCollins.  *See* Snyder Decl. Ex. C; Appendix A.  As the court explained in *Paul v. Haley*,

courts apply a "stringent test" when analyzing whether an idea rises to the level of novelty and

originality required to warrant protection.  183 A.D.2d at 53.  Without a doubt, Ms. Lapine's

recycled "ideas" about incorporating healthy food into children's meals fail this stringent

standard.  Accordingly, Lapine's breach of implied contract claim fails as a matter of law.[20]

**B.      The Lack of Substantial Similarity Between the Works Establishes as a
         Matter of Law that HarperCollins Did Not Use Any Ideas Expressed In the
         Book Manuscript.**

The Seventh Claim for Relief fails for an independent reason: the works at issue are not

substantially similar as a matter of law.  As this Court has held, an implied contract claim

brought in conjunction with a copyright infringement claim "may be decided as a matter of law

without discovery where plaintiff is otherwise unable to establish substantial similarity between

the works."  *Hudson v. Universal Studios, Inc.*, No. 04-6997, slip op. (S.D.N.Y. Sept. 25, 2007)

(Lynch, J.) (citation omitted).  That is precisely the case here.  As established in Section I.C.1(b),

*supra*, there is no substantial similarity between *Deceptively Delicious* and *The Sneaky Chef*.

*See* Appendix A.  In fact, much as in *Paul v. Haley*, the numerous "striking[] differen[ces]"

between *Deceptively Delicious* and *The Sneaky Chef* highlight the absurdity of this lawsuit.  183

A.D.2d at 46-47.  Because there is no substantial similarity between the two works, there can be

no actionable allegation that HarperCollins "used" *The Sneaky Chef*, its contents, or its ideas in

violation of any alleged contract.  For this separate and independent reason, Lapine's Seventh

Claim for Relief should be dismissed.

**VI.     LAPINE DOES NOT STATE A CLAIM FOR "MISAPPROPRIATION
         AND UNFAIR COMPETITION."**

Lapine makes a last-ditch effort to sustain her baseless lawsuit by again recycling her

deficient copyright claim, this time as a claim for "misappropriation and unfair competition."

---

[20] While the implied contract claim fails for lack of consideration, the claim also fails for
lack of mutual assent.  *See, e.g., Leibowitz v. Cornell Univ.*, 445 F.3d 586, 593 (2d Cir. 2006)
(affirming dismissal of implied contract claim where plaintiff failed to allege "mutual assent of
any intent on the part of [defendant]").

But Lapine's Eighth Claim for Relief merely alleges that HarperCollins misappropriated the

contents of *The Sneaky Chef* manuscript, and thus the claim is strictly preempted by Section

301(a) of the Copyright Act.

A state law claim is preempted by the copyright law where (1) "the particular work to

which the state law claim is being applied falls within the type of works protected by the

Copyright Act" and (2) "the state law claim seeks to vindicate 'legal or equitable rights that are

equivalent' to one of the bundle of exclusive rights already protected by copyright law."

*National Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 848 (2d Cir. 1997) (citation omitted).

The first preemption prong requires only that the work for which the claim is made – in this

case, Lapine's book manuscript – "fall[] within the ambit of one of the categories of

copyrightable works." *Id.*[21]  Lapine claims HarperCollins misappropriated "techniques, recipes

and systems that were Lapine's property" and were "contained in the Book manuscript she sent to

HarperCollins."  FAC ¶¶ 103–05.  *The Sneaky Chef* manuscript constitutes a literary work and

thus plainly falls into one of the categories of works protected by the Copyright Act.  *See* 17

U.S.C. §§ 102(a)(1) ("literary works" are the subject of copyright).  Accordingly, the first prong

of the preemption test is satisfied.

The second preemption prong is satisfied where an act that would violate the state-law

right the plaintiff is asserting would also "infringe one of the exclusive rights provided by federal

copyright law."  *National Basketball Ass'n*, 105 F.3d at 850 (citation omitted).  Thus, where the

state law claim involves "acts of reproduction, adaptation, performance, distribution or display,"

and does not include any "extra elements that make it qualitatively different from a copyright

infringement claim," the state claim is preempted.  *Orange County Choppers, Inc. v. Olaes*

---

[21]  Furthermore, "[c]opyrightable material often contains uncopyrightable elements within it, but Section 301 preemption bars state law misappropriation claims with respect to uncopyrightable as well as copyrightable elements.  *National Basketball Ass'n*,105 F.3d at 849.

*Enters.*, 497 F. Supp. 541, 555 (S.D.N.Y. 2007) (citations omitted). Here, Lapine claims that HarperCollins "misappropriated Lapine's property through its use . . . in codefendants' Infringing Work . . . for the purpose of selling Lapine's property." FAC ¶¶ 105–06. Lapine's misappropriation and unfair competition claim alleges nothing more than copying and distribution of Lapine's work, acts that fall squarely within the ambit of the Copyright Act.

Moreover, Lapine's state law claim requires nothing more – no "extra element" – that makes it qualitatively different from her copyright infringement claim. The Second Circuit adopts "a restrictive view" of which extra elements transform a state law claim that is otherwise equivalent to a claim for copyright infringement into a claim that is "qualitatively different" from a copyright infringement claim. *Integrative Nutrition, Inc. v. Academy of Healing Nutrition*, 476 F. Supp. 2d 291, 296 (S.D.N.Y. 2007) (dismissing unfair competition claim as preempted). Beyond the acts of reproduction and distribution, Lapine alleges only that such acts were "done for the purpose of selling Lapine's property . . . in direct competition with Lapine." FAC ¶ 106. Of course, such an allegation – that defendant "'used [plaintiff's] property to compete against [plaintiff's] use of the same property' – is the very essence of an infringement claim." *Orange County Choppers*, 497 F. Supp. 2d at 556.[22]

Lapine's Eighth Claim for Relief is preempted by the Copyright Act and must be dismissed as a matter of law. *See, e.g.*, *NBA.*, 105 F.3d at 851 (dismissing as preempted a misappropriation claim); *Orange County Choppers*, 497 F. Supp. 2d at 556 (same); *Thomas Publ'g Co., LLC*, 2007 U.S. Dist. LEXIS 55086, at *10-13 (same); *Walker*, 615 F. Supp at 441

---

[22] Lapine's claim for misappropriation and unfair competition also fails because the ideas allegedly misappropriated are wholly unoriginal. *Zikakis v. Staubach Retail Servs.*, 2005 U.S. Dist. LEXIS 21105, at *8 (S.D.N.Y. Sept. 22, 2005) (dismissing misappropriation claim where ideas were not novel because "novelty is an essential element of the New York tort of misappropriation").

*Publ'g Co., LLC*, 2007 U.S. Dist. LEXIS 55086, at *10-13 (same); *Walker*, 615 F. Supp at 441

(dismissing as preempted claim that defendant misappropriated books' "content, ideas and

concepts").

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court dismiss the

First, Second, Third, Fourth, Fifth, Seventh and Eighth Claims for Relief under Rule 12(b)(6) of

the Federal Rules of Civil Procedure.

Dated: New York, New York
June 17, 2008

Respectfully submitted,

Orin Snyder (osnyder@gibsondunn.com)
Laura K. Browning (lbrowning@gibsondunn.com)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
(212) 351-2400

*Attorneys for Defendants*

---

*(footnote continued from previous page)*

ideas were not novel because "novelty is an essential element of the New York tort of
misappropriation").

# APPENDIX A

# ANNOTATED VERSION OF PARAGRAPH 33 OF PLAINTIFFS' FIRST AMENDED COMPLAINT

**As set forth in the following allegation-by-allegation analysis, each of Plaintiffs' allegations of substantial similarity fails as a matter of law for one (or more) of the following reasons:**

1. **FABRICATED**

2. **NOT PROTECTABLE**

3. **NOT SIMILAR**

A CD-ROM containing an electronic version of this Appendix with interactive links to the works at issue and relevant prior art is attached at the back page of this document.

The blue text in the Appendix signals an interactive link to the relevant material. To activate the link, please click on the blue text.

First Amended Complaint Paragraph 33

(a) Both the Book and the Infringing Work contain introductions written by doctors calling attention to the growing problem of obesity in American children and the difficulties inherent in

12

providing sound nutrition to resistant children, and praising the author for creative, clever and convenient solutions for parents.

13

**FABRICATED:**

- Neither the introduction to *The Sneaky Chef* nor the foreword to *Deceptively Delicious* mentions childhood obesity.

**NOT PROTECTABLE:**

- An introduction by a doctor is an unprotectable *scene a faire* that flows naturally and predictably from the decision to write a cookbook about the unprotectable idea of hiding healthy food in children's meals. **See Snyder Decl. Ex. H.**

**NOT SIMILAR:**

- The doctors' introductions in *Deceptively Delicious* and *The Sneaky Chef* are not similar. **Compare DD at 8-9 with SC at 15-17.**

First Amended Complaint Paragraph 33

(b) Both the Book and the Infringing Work state that children need to feel a semblance of control over what they eat, while calling attention to the connection between good nutrition and how children behave and achieve. Both works discuss the dangers of too much sugar in a child's diet (e.g., the sugar high and ensuing crash). Both works address these issues by recommending camouflaging carefully-selected pureed healthy foods inside children's favorite foods.

13

**NOT PROTECTABLE:**

- The idea of hiding healthy food in children's meals is a common, unoriginal and unprotectable idea that appears in countless prior works. **See Snyder Decl. Ex. C.**

- The "connection between good nutrition and how children behave and achieve" and the "dangers of too much sugar in a child's diet" are common, obvious and unprotectable facts.

**NOT SIMILAR:**

- The idea of hiding healthy food in children's meals is expressed differently in the two works. **See Motion to Dismiss at Section I.C.1.(b).**

First Amended Complaint Paragraph 33

(c) Both the Book and the Infringing Work begin with the author's personal anecdote of mealtime struggles with her own picky eaters. In fact, both works include a story about how one of the author's children is a picky eater who influenced a non-picky sibling to dislike food. Specifically, within that anecdote:

• the Book describes "*begging,* pleading, threatening, and bribing," as well as "*coercing kids to eat* what's on their plates."

13

• the Infringing Work describes "*begging* my kids to eat vegetables," as well as "*coerc[ing] them to eat* food they found disgusting."

14

**NOT PROTECTABLE:**

▪ An anecdote of mealtime struggles is an unprotectable *scene a faire* that flows naturally and predictably from the decision to write a cookbook about the unprotectable idea of hiding healthy food in children's meals. See **Snyder Decl. Ex. I.**

**NOT SIMILAR:**

▪ The anecdotes in *Deceptively Delicious* and *The Sneaky Chef* are not similar. **Compare DD at 10-11 with SC at 19-24.**

**NOT PROTECTABLE:**

▪ Words and short phrases are not subject to copyright protection.

▪ Furthermore, such words and phrases are inevitable and commonly found works of this type. See **Snyder Decl. Ex. S.**

**NOT SIMILAR:**

▪ The phrases themselves are not similar.

First Amended Complaint Paragraph 33

(d) Both the Book and the Infringing Work explain that the author is not a professional chef, just a mother who desires to have peace at the dinner table and to feed her children nutritious food. Both works discuss how the author overcame the guilt of tricking her kids into eating healthy food.

• The Book states that "this method has brought *peace to our family table*," that "[i]n many families, the dinner table becomes a battleground and meal time is a *power struggle*," and that "I couldn't use logic, but I couldn't afford to *give up* either,"

• The Infringing Work states: "I just wanted a little *peace around the dinner table*," and continues, "I want my kids to associate food and mealtimes with happiness and conversations, not *power struggles* and strife," The Infringing Work acknowledges, "[W]e just want to *give up*."

14

## FABRICATED:

- *The Sneaky Chef* states that Lapine is "certified in the master techniques of cooking," is on the "Culinary Arts Faculty of The New School," and offers "workshops, cooking classes and coaching." **See SC at 43 and Back Cover.**

- *Deceptively Delicious* does not discuss how the author overcame the guilt of tricking her kids into eating healthy food.

## NOT PROTECTABLE:

- Words and short phrases are not subject to copyright protection.

- Furthermore, such words and phrases are inevitable and commonly found in works of this type. **See Snyder Decl. Ex. T.**

## NOT SIMILAR:

- The phrases themselves are not similar.

First Amended Complaint Paragraph 33

(e) Both the Book and the Infringing Work characterize the author's solution as an **"epiphany"** and state the benefits that accompany nutritional camouflage.

- The Book explains: "There are many *foods that kids won't go near* in their virgin condition, but after ten seconds in the blender, those same broccoli stalks they made a face at yesterday are now eaten without a fight."

- The Infringing Work explains: "I have become an expert at hiding vegetables purees and other healthful additional - *foods my kids wouldn't touch* otherwise - in all of their favorite dishes."

- As an example, both the Book and the Infringing Work advocate allowing children to put *sprinkles* on their food to enhance its appeal.

15

**FABRICATED:**
- Neither work characterizes anything as an "epiphany."

**NOT PROTECTABLE:**
- The idea of hiding healthy food in children's meals is a common, unoriginal and unprotectable idea that appears in countless prior works. **See Snyder Decl. Ex. C.**
- Words and short phrases are not subject to copyright protection.
- Furthermore, such words and phrases are inevitable and commonly found works of this type. **See Snyder Decl. Ex. U.**

**NOT SIMILAR:**
- The idea of hiding healthy food in children's meals is expressed differently in the two works. **See Motion to Dismiss at Section I.C.1.(b).**
- The phrases themselves are not similar.

**NOT PROTECTABLE:**
- The idea of putting sprinkles on children's food is an unprotectable idea that appears in prior works. **See Snyder Decl. Ex. G.**

**NOT SIMILAR:**
- Lapine advocates putting sprinkles on food as a separate "sneaky method." Ms. Seinfeld does not. The only reference to sprinkles in *Deceptively Delicious* appears in a section entitled "Other Mothers Know Best." **Compare DD at 59 with SC at 90-91.**

First Amended Complaint Paragraph 33

(f) Both the Book and the Infringing Work discuss how the author succeeded in hiding "good-for-you" foods in the dishes that kids naturally love, and how the author's family is now happier.

• The Book states: "It got our *whole family* eating together in peace."

15

• The Infringing states: "[T]he *whole family* is happier and we can finally enjoy mealtimes again."

16

**NOT PROTECTABLE:**
- The idea of hiding healthy food in children's meals is a common, unoriginal and unprotectable idea that appears in countless prior works. **See Snyder Decl. Ex. C.**

**NOT SIMILAR:**
- The idea of hiding healthy food in children's meals is expressed differently in the two works. **See Motion to Dismiss at Section I.C.1.(b).**

**FABRICATED:**
- *The Sneaky Chef* does not state "It got our whole family eating together in peace."

**NOT PROTECTABLE:**
- Words and short phrases are not subject to copyright protection.
- Furthermore, such words and phrases are inevitable and commonly found in works of this type. **See Snyder Decl. Ex. V.**

**NOT SIMILAR:**
- The phrases themselves are not similar.

First Amended Complaint Paragraph 33

(g) Both the Book and the Infringing Work address arguments against "sneaking" vegetables into children's dishes and then systematically refute each one.

• The Book likens the practice to a form of *"loving deceit."*

• The Infringing Work likens the practice to a form of *"[l]oving [d]eception."*

**FABRICATED:**

- *Deceptively Delicious* does not "address" and then "systematically refute" arguments against sneaking vegetables into children's dishes.

**NOT PROTECTABLE:**

- The idea of hiding healthy food in children's meals is a common, unoriginal and unprotectable idea that appears in countless prior works. **See Snyder Decl. Ex. C.**

**NOT PROTECTABLE:**

- Words and short phrases are not subject to copyright protection.
- Furthermore, "loving deceit" and "loving deception" are common phrases, especially in the context of family relationships. **See Snyder Decl. Ex. W.**

16

First Amended Complaint Paragraph 33

(h)  Both the Book and the Infringing Work state that forbidden foods are more alluring to children and suggest that, for that reason, foods such as candy should not be forbidden.

**NOT PROTECTABLE:**

. The idea that forbidden foods are more alluring to children is an unprotectable idea that appears in countless prior works. **See Snyder Decl. Ex. F.**

**FABRICATED:**

. *Deceptively Delicious* does not state that "candy" is forbidden food or that "candy" should not be forbidden. **Compare DD at 179 with SC at 53.**

16

First Amended Complaint Paragraph 33

(i) Both the Book and the Infringing Work provide explanatory passages at the beginning of the work regarding nutrition and directions for the creation and use of the purees, with the latter portion of the work discussing the use of the purees.

**NOT PROTECTABLE:**

- Explanatory passages regarding nutrition and directions for making and using purees are unprotectable *scenes a faire* that flow naturally and predictably from the decision to write a cookbook about the unprotectable idea of hiding healthy food in children's meals. **See Snyder Decl. Ex. J.**

**NOT SIMILAR:**

- The explanatory passages regarding nutrition and directions for creation and use of the purees are dissimilar. **Compare DD 24-41 with SC 96-124.**

16

First Amended Complaint Paragraph 33

(j) The Book, on its cover, spine and first page, uses the caricature of a chef, winking, holding a finger to her lips as if saying "shhh" and hiding carrots behind her back, as well as repeatedly using a drawing of a carrot wearing sunglasses

16

making the same "shhh" gesture. In a substantially similar way, the cover of the Infringing Work uses a caricature of Jessica Seinfeld as a chef, winking, with carrots on a cutting board behind her back, as well as repeatedly using, including on its spine, first page and insert, a drawing of Jessica Seinfeld holding a finger to her lips as if saying "shhh."

17

**NOT PROTECTABLE:**

- Images of chefs and carrots are unprotectable *scenes a faire* that flow naturally and predictably from the decision to write a cookbook about the unprotectable idea of hiding healthy food in children's meals. **See Snyder Decl. Ex. K.**

**NOT SIMILAR:**

- The images themselves are not similar. **Compare Cover and Spine of SC with Cover and Spine of DD.**

First Amended Complaint Paragraph 33

(k) The subtitle of the Book, "Simple Strategies for Hiding Healthy Foods in Kids' Favorite Meals," is substantially similar to the subtitle of the Infringing Work, "Simple Secrets to Get your Kids Eating Good Food."

**NOT PROTECTABLE:**

- Subtitles, like words and short phrases, are not protected by copyright.
- Furthermore, such subtitles are inevitable in a work of this type. **See Snyder Decl. Ex. X.**

**NOT SIMILAR:**

- The two subtitles are dissimilar. For example, *Deceptively Delicious* does not mention the "hiding" that is the purpose of Lapine's simple strategies.

17

First Amended Complaint Paragraph 33

(1) In both the Book and the Infringing Work, each recipe is printed on a page with a border around the text. In the Book, the border is a straight-line box; in the Infringing Work, the border is a wavy-line box.

**NOT PROTECTABLE:**

- The inclusion of a border around the text of a recipe is trivial, ubiquitous and not protectable, as prior works confirm. **See Snyder Decl. Ex. M.**

**NOT SIMILAR:**

- The borders used in the two works are dissimilar. **Compare DD at 54 with SC at 142-143.**

17

First Amended Complaint Paragraph 33

(m)    Both the Book and the Infringing Work use line-drawn, cartoon graphics, except when showing dishes made according to recipes, they use full-color photographs.

17

**NOT PROTECTABLE:**

- The inclusion of line-drawn, cartoon graphics and full-color photographs is trivial, ubiquitous and not protectable, as prior works confirm. **See Snyder Decl. Ex. N.**

**NOT SIMILAR:**

- The cartoon graphics and full-color photographs used in the two works are dissimilar. **Compare DD at 14-15 and 66-67 with SC at 136-137 and 161-168.**

First Amended Complaint Paragraph 33

(n)  Both the Book and the Infringing Work include icons with each recipe. The Book uses icons that represent the particular

17

sneaky method used; the Infringing Work uses icons that represent the particular fruits and vegetables used.

18

**NOT PROTECTABLE:**
- The inclusion of icons with each recipe is trivial, ubiquitous and not protectable, as prior works confirm. **See Snyder Decl. Ex. O.**

**NOT SIMILAR:**
- The icons used in the two works are dissimilar. **Compare DD at 100 with SC at 92.**

First Amended Complaint Paragraph 33

(o) Both the Book and the Infringing Work, in setting forth the use of purees, use a different font color for purees from the color used for the other ingredients.

**NOT PROTECTABLE:**

- The use of a different font color to set off certain ingredients is trivial, ubiquitous and not protectable, as prior works confirm. **See Snyder Decl Ex. P.**

**NOT SIMILAR:**

- *The Sneaky Chef* uses grey font to set off purees as well as other ingredients. *Deceptively Delicious* uses different colors throughout the work to set off purees. **Compare DD at 92, 95 with SC at 146.**

18

First Amended Complaint Paragraph 33

(p) Both the Book and the Infringing Work suggest the same approach to cooking healthy food for children -- get the right tools (e.g., a small food processor), get the "*staple*" foods, make the vegetable and fruit purees once a week and refrigerate or freeze them, and then, at meal time, make the recipes using the purees to inject healthy foods into the dishes.

**NOT PROTECTABLE:**

- This "approach" to cooking healthy children's meals is a common, unoriginal and unprotectable idea that appears in countless prior works. See **Snyder Decl. Ex. D.**

- Lists of kitchen tools and staple ingredients are unprotectable *scenes a faire* that flow naturally and predictably from the decision to write a cookbook about the unprotectable idea of hiding healthy food in children's meals. See **Snyder Decl. Ex. L.**

**NOT SIMILAR:**

- The approach to cooking healthy children's meals is expressed differently in the two works. **Compare DD at 16-31 with SC at 55-61 and 93-126.**

18

First Amended Complaint Paragraph 33

(q) Both the Book and the Infringing Work next set forth the

staples of a well-stocked kitchen, including a list of which

foods children will most often and least often eat without a

fight.

**NOT PROTECTABLE:**

- "Staples of a well-stocked kitchen" are unprotectable *scenes a faire* that flow naturally and predictably from the decision to write a cookbook about the unprotectable idea of hiding healthy food in children's meals. **See Snyder Decl. Ex. I.**

**NOT SIMILAR:**

- The "staples of a well-stocked kitchen" differ between the two works. **Compare DD at 18-23 with SC at 55-61.**

**FABRICATED:**

- *Deceptively Delicious* does not include a list of foods children will most often and least often eat without a fight.

18

First Amended Complaint Paragraph 33

(r) Both the Book and the Infringing Work recommend *steaming* the vegetables, pureeing them in a *food processor, packaging* them in *1/4 cup baggies,* and then *freezing* them for later use.

• The Book states: "[Y]ou will find the Make-Ahead . . . are your best friends . . . once you have

18

these purees and blends in your refrigerator or freezer, *simply grab a spoonful and mix it into the recipes as called for."* The Book claims that with respect to ". . . the scratch recipes, you'll spend *less than thirty minutes* for each one."

• The Infringing Work states: "You will quickly learn to prepare, cook, puree, and portion the purees. Then the *purees will be available to use when they're called for,* just like any other ingredient in my recipes." The Infringing Work claims that " . . . the recipes . . . are doable in *thirty minutes or less . . ."*

19

**NOT PROTECTABLE:**
- This "approach" to cooking healthy children's meals is a common, unoriginal and unprotectable idea that appears in countless prior works. **See Snyder Decl. Ex. D.**
- Words and short phrases are not subject to copyright protection.
- Furthermore, such words and phrases are inevitable and commonly found in works of this type. **See Snyder Decl. Ex. D.**

**NOT SIMILAR:**
- The approach to cooking healthy children's meals is expressed differently in the two works. **Compare DD at 16-17 and 24-27 with SC at 93-126.**
- The phrases themselves are not similar.

First Amended Complaint Paragraph 33

(s) Both the Book and the Infringing Work talk about "*sneak*[ing]" the purees into typical kid food to remove "stress." The Book calls this being "*sneaky*," and the Infringing Work refers to it as the "*sneak it in*" technique.

• The Book states: "*[P]arental control* does not have to come in the form of a *constant battle*."

19

• The Infringing Work states: "It empowers you to exert some legitimate *control* over what your children eat, without inviting the *usual fights*."

20

**NOT PROTECTABLE:**

- The idea of hiding healthy food in children's meals is a common, unoriginal and unprotectable idea that appears in countless prior works. **See Snyder Decl. Ex. C.**

- Words and short phrases are not subject to copyright protection.

- Furthermore, such words and phrases are inevitable and commonly found in works of this type. **See Snyder Decl. Ex. Y.**

**NOT SIMILAR:**

- The idea of hiding healthy food in children's meals is expressed differently in the two works. **See Motion to Dismiss at Section I.C.1.(b).**

- The phrases themselves are not similar.

First Amended Complaint Paragraph 33

(t)  Both the Book and the Infringing Work also provide suggestions for and explanations of how purees can be incorporated into pre-packaged, store-bought foods.

**NOT PROTECTABLE:**

- The idea of incorporating healthy foods in store-bought foods is an unprotectable idea that appears in countless prior works. **See Snyder Decl. Ex. E.**

**NOT SIMILAR:**

- The idea of incorporating healthy foods in store-bought foods is expressed differently in the two works. **Compare DD at 199 with SC at 138, 150-151, 157, 222, 242 and 243.**

20

First Amended Complaint Paragraph 33

(u) Both the Book and the Infringing Work implore the reader to enthusiastically test the purees and recipes.

• The Book states, "[L]et's put these clever methods into *action*"

• The Infringing Work states, "[Y]ou're *ready for action*."

**NOT PROTECTABLE:**

. Words and short phrases are not subject to copyright protection.

. Furthermore, such words and phrases are inevitable and commonly found works of this type. **See Snyder Decl. Ex. Z.**

**NOT SIMILAR:**

. The phrases themselves are not similar.

First Amended Complaint Paragraph 33

(v) Both the Book and the Infringing Work suggest adding the same specific fruit or vegetable puree to the same dishes, as set forth below:

| Children's Dish | Hidden Puree Used in the Book | Hidden Puree Used in the Infringing Work |
|---|---|---|
| Chocolate Pudding | Avocado | Avocado |
| Chocolate Chip Cookies | White Bean | White Bean |
| Brownies | Spinach | Spinach |
| Grilled Cheese | Sweet Potato | Sweet Potato |

20

| French Toast | Sweet Potato/Carrot | Sweet Potato/Carrot |
|---|---|---|
| Mac 'n Cheese | Cauliflower | Cauliflower |
| Meat Sauce/Bolognese | Sweet Potato | Sweet Potato |
| Twice-Baked Potatoes | Cauliflower | Cauliflower |
| Chicken Tenders | Sweet Potato | Sweet Potato |
| Peanut Butter and Jelly Muffins | Carrot | Carrot |
| Green Eggs | Spinach | Spinach |

21

**FABRICATED:**
- *Deceptively Delicious* does not suggest adding white beans to Chocolate Chip Cookies.

**NOT PROTECTABLE:**
- Recipes are not protectable.
- Numerous prior works contain similar recipes. **See Snyder Decl. Ex. Q.**

**NOT SIMILAR:**
- None of the allegedly similar recipes are similar. **See Snyder Decl. Ex. R.**