GIRARDI | KEESE
Howard B. Miller (Admitted *Pro Hac Vice*)
Amanda L. McClintock (Admitted *Pro Hac Vice*)
Joseph G. Gjonola (Admitted *Pro Hac Vice*)
1126 Wilshire Boulevard
Los Angeles, CA. 90017
Tel:  (213) 977-0211
Fax: (213) 481-1554

SEEGER WEISS LLP
Christopher A. Seeger (CS-4880)
David R. Buchanan (DB-6368)
One William Street, Suite 10
New York, NY 10004
Tel:  (212) 584-0757
Fax: (212) 584-0799

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MISSY CHASE LAPINE and THE SNEAKY CHEF, INC.<br><br>Plaintiffs,<br><br>v.<br><br>JESSICA SEINFELD, JERRY SEINFELD, HARPERCOLLINS PUBLISHERS, INC., and DEPARTURE PRODUCTIONS, LLC,<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <u>ORAL ARGUMENT</u><br><u>REQUESTED</u><br><br>08-CV-128 (LTS) (RLE) |

## MEMORANDUM OF LAW OF PLAINTIFFS

### IN OPPOSITION TO MOTION TO DISMISS OF DEFENDANTS JESSICA SEINFELD, HARPER COLLINS PUBLISHERS, INC AND DEPARTURE PRODUCTIONS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ………………………………………………… 1

STATEMENT OF FACTS ALLEGED …………………………… 2

    A.    Lapine Conceives of, Researches, and Creates Her Book….. 2

    B.    Lapine Publishes the Book and Obtains Copyright and Trademark Protection …………………………………..….. 3

    C.    Defendants Copy and Publish Plaintiffs' Work as Their Own……………………………………………………... 4

DISCUSSION…………………………………………………… 5

I.    THE COMPLAINT ALLEGES SUFFICIENT SIMILARITIES BETWEEN THE WORKS TO ESTABLISH A CLAIM FOR COPYRIGHT INFRINGEMENT…………………………………… 5

    A.    *The Sneaky Chef* Is an Original Literary Work That Qualifies for Copyright Protection …………………………………. 5

    B.    The Elements of Copyright Infringement…………………….. 6

    C.    There Are Substantial Similarities Between the Cookbooks Beyond the Mere Idea of Hiding Vegetables in Children's Favorite Foods…………………………………………... 9

        1.    Similar Expressions of Ideas …………………………. 9

        2.    Similar Organization, Pattern, Structure, and Sequence 10

        3.    Similar Titles………………………………………….. 13

        4.    Similar Artwork on Cover, Spine and First Page……... 13

        5.    Similar Language……………………………………… 14

        6.    Similar Use of Purees in Recipes……………………... 18

        7.    Other Similarities……………………………………… 19

| | D. | Substantial Similarity is a Triable Question of Fact | 19 |

| II. | THE COMPLAINT ALLEGESE A SUFFICIENT LIKELIHOOD OF CONFUSION TO ESTABLISH A CLAIM FOR TRADEMARK INFRINGEMENT | 21 |

| | A. | Likelihood of Confusion is a Factual Question Not Properly Resolved in a Motion to Dismiss | 21 |

| III. | PLAINTIFFS HAVE STATED A VALID CLAIM FOR UNFAIR COMPETITION UNDER SECTION 43(A) OF THE LANHAM ACT | 28 |

| IV. | PLAINTIFFS HAVE STATED A VALID CLAIM FOR INJURY TO BUSINESS REPUTATION | 30 |

| V. | PLAINTIFFS HAVE STATED A VALID CLAIM FOR BREACH OF IMPLIED CONTRACT | 32 |

| | A. | Plaintiffs Have Pled the Elements of an Implied-in-Fact Contract | 32 |

| | B. | Under New York Law, The Implied Contract Claim Does Not Require The Same Type of Novelty of Ideas as a Property-Based Misappropriation Claim | 33 |

| | C. | The Idea for the Cookbook Was Sufficiently Novel Even Applying the Higher Standard for a Property-Based Misappropriation Claim | 35 |

| | D. | The Implied Contract Claim is Not Preempted | 36 |

| VI. | PLAINTIFFS' CLAIM FOR UNFAIR COMPETITION AND MISAPPROPRIATION IS NOT PREEMPTED BY THE COPYRIGHT ACT | 37 |

| CONCLUSION | | | 38 |

## TABLE OF AUTHORITIES

CASE                                                                    Page(S)

*A.A. Hoehling v. Universal City Studios, Inc.*
    618 F. 2d 972 (2d Cir. 1980)................................................. 8, 12


*Acorn Structures, Inc. v. Swantz,*
    846 F.2d 923, 926 (4th Cir. 1988)....................................... 37


*American International Group, Inc. v. London American International Corporation Limited,*
    664 F.2d 348, 351 (2d Cir. 1981)....................................... 22


*Apfel v. Prudential-Bache Securities, Inc.,*
    81 N.Y.2d 470, 478, 616 N.E.2d 1095 (N.Y. 1993)................... 33


*Arica Institute, Inc. v. Palmer,*
    970 F.2d 1067, 1073 (2d Cir. 1992)..................................... 11, 17


*Atkins v. Fischer,*
    331 F.3d 988, 995 (D.C. Cir. 2003)..................................... 20


*Barbour v. Head,*
    178 F. Supp. 2d 764 (S.D. Tex. 2001)................................. 6


*Clausen v. Eslinger,*
    455 F. Supp. 2d 256 (S.D.N.Y. 2006).................................. 29


*Cognotec Servs., Ltd. v. Morgan Guar. Trust Co. Of New York,*
    862 F. Supp. 45, 50 (S.D.N.Y. 1994)................................... 20


*Computer Assocs. Int'l, Inc. v. Altai, Inc.,*
    982 F.2d 693, 716 (2d Cir. 1992)....................................... 36-37


*DC Comics, Inc. v. Reel Fantasy, Inc.,*
    696 F.2d 24, 26 (2d Cir. 1982).......................................... 22


*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
    539 U.S. 23 (2003)......................................................... 28-29


*Downey v. General Foods Corp.,*
    37 A.D.2d 250, 256-58, 323 N.Y.S.2d 578 (N.Y. App. Div. 1971). 32

<u>CASE</u>                                                                        <u>Page(S)</u>

*Feist Publications, Inc. v. Rural Tel. Serv. Co.,*
    499 U.S. 340 (1991)……………………………………………....    6

*FragranceNet.com, Inc. v. FragranceX.com, Inc.,*
    493 F. Supp. 2d 545, 552 n.8 (E.D.N.Y. 2007)……………………    23

*Grosso v. Miramax Film Corp.,*
    383 F.3d 965, 967-68 (9th Cir. 2004)…………………………………    36

*Hasbro, Inc. v. Lanard Toys, Ltd.,*
    858 F.2d 70, 78-79 (2d Cir. 1988)……………………………………    27

*Hogan v. DC Comics,*
    983 F. Supp. 82, 86 (N.D.N.Y. 1997)…………………………………    20

*Hormel Foods Corp. v. Jim Henson Productions, Inc.,*
    73 F.3d 497, 506 (2d Cir. 1996)………………………………………    31

*ITC Ltd. v. Punchgini, Inc.,*
    482 F.3d 135, 154 (2d Cir. 2007)……………………………………....    21

*Jada Toys, Inc. v. Mattel, Inc.,*
    518 F.3d 628, 633 (9th Cir. 2008)……………………………………    27

*Joshua Meier Co. v. Albany Novelty Mfg. Co.,*
    236 F.2d 144, 146 (2d Cir. 1956)……………………………………....    14

*Katz v. Modiri,*
    283 F. Supp. 2d 883, 900 (S.D.N.Y. 2003)…………………………    30

*Knitwaves, Inc. v. Lollytogs Ltd.,*
    71 F.3d 996 (2d Cir. 1995)……………………………………………    7-8

*Kregos v. Associated Press,*
    3 F.3d 656, 666 (2d Cir. 1993)………………………………………....    36

*Lang v. Retirement Living Pub. Co., Inc.*
    949 F.2d 576, 580 (2d Cir. 1991)………………………………….:...    22, 25

*Levy v. Kosher Overseers Ass'n of America, Inc.,*
    104 F.3d 38, 43 (2d Cir. 1997)………………………………………....    22

*Malletier v. Burlington Coat Factory Warehouse Corp.,*
    426 F.3d 532, 537 (2d Cir.  2004)……………………………………    24, 27

<u>CASE</u> <u>Page(S)</u>

*Mattel, Inc. v. Goldberger Doll Mfg. Co.,*
    365 F.3d 133, 135-36 (2d Cir. 2004)…………………………… 9

*McGhan v. Ebersol,*
    608 F. Supp. 277, 285 (S.D.N.Y. 1985)…………………………… 32, 38

*Merck & Co., Inc. v. Mediplan Health Consulting, Inc.,*
    425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006)………………………… 23

*MyWebGrocer, LLC v. Hometown Info, Inc.,*
    375 F.3d 190, 194 (2d Cir. 2004)…………………………………... 13

*Nabisco, Inc. v. Warner-Lambert Co.,*
    220 F.3d 43, 46 (2d Cir. 2000)……………………………………... 23

*Nadel v. Play-By-Play Toys & Novelties, Inc.,*
    208 F.3d 368, 376 n.5 (2d Cir. 2000)……………………………… 32-35

*National Basketball Assn. v. Motorola, Inc.,*
    105 F.3d 841, 850 (2d Cir. 1997)…………………………………... 37

*Nikon Inc. v. Ikon Corp.,*
    987 F.2d 91, 94 (2d Cir. 1993)……………………………………... 22

*Oasis Music, Inc. v. 900 U.S.A., Inc.,*
    161 Misc.2d 627, 631, 614 N.Y.S.2d 878 (N.Y. Sup. 1994)……… 38

*Papa John's Intern., Inc. v. Rezko,*
    446 F. Supp. 2d 801, 808 n.3 (N.D. Ill. 2006)……………………... 23

*Plus Products v. Plus Discount Foods, Inc.,*
    722 F.2d 999, 1004 (2d Cir. 1983)………………………………… 22

*Polaroid Corp. v. Polaroid Electronics Corp.,*
    287 F.2d 492, 695 (2d Cir. 1961)…………………………………... 22

*PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.,*
    818 F.2d 266, 271 (2d Cir. 1987)………………………………… 26

*Publications International, Ltd. v. Meredith Corp.,*
    88 F.3d 473 (7th Cir. 1996)………………………………………… 6

*Rescuecom Corp. v. Computer Troubleshooters USA, Inc.,*
    464 F. Supp. 2d 1263, 1266 (N.D. Ga. 2005)……………………… 23

<u>CASE</u>                                                          <u>Page(S)</u>

*Resource Developers, Inc. v. Statute of Liberty-Ellis Island Foundation, Inc.,*
    926 F.3d 134, 141 (2d Cir. 1991)……………………………………….     23

*Ringgold v. Black Entertainment Television, Inc.,*
    126 F.3d 70, 75 n.3 (2d Cir. 1997)……………………………………     11

*Salinger v. Random House, Inc.,*
    811 F.2d 90, 98 (2d Cir. 1987)…………………………………………     16

*Savin Corp. v. Savin Group,*
    391 F.3d 439, 459 (2d Cir. 2004)……………………………………….     26

*Shaw v. Lindheim,*
    919 F.2d 1353, 1363 (9th Cir. 1990)…………………………………...     9, 13

*Smith v. Wal-Mart Stores, Inc.,*
    537 F. Supp. 2d 1302, 1317 (N.D. Ga. 2008)………………………     26

*Softel, Inc. v. Dragon Medical and Scientific Communications, Inc.,*
    118 F.ed 955 (2d Cir. 1997)…………………………………………....     7-8

*Sparaco v. Lawler, Matusky, Skelly, Engineers LLP,*
    303 F.3d 460, 469 (2d Cir. 2002)……………………………………...     10

*Star Indus. v. Bacardi & Co.,*
    412 F.3d 373, 381 (2d Cir. 2005)……………………………………...     31

*Sunquest Information Systems, Inc. v. Park City Solutions, Inc.,*
    130 F. Supp. 2d 680, 691, n.6 (2000)……………………………………     24

*Tufenkian Import/Expert Ventures, Inc. v. Einstein Moomjy, Inc.,*
    338 F.3d 127, 134 (2d Cir. 2003). …………………………………….     8

*Twin Peaks Productions, Inc. v. Publications Intern., Ltd.,*
    996 F.2d 1366, 1372 (2d Cir. 1993)…………………………………...     11

*Two Pesos v. Taco Cabana,*
    505 U.S. 763, 768 (1992)……………………………………………...     21

*Universal City Studios, Inc. v. Nintendo Co.,*
    746 F.2d 112, 116 (2d Cir. 1984)……………………………………...     23

*Vantage Point, Inc. v. Parker Bros., Inc.,*
    529 F. Supp. 1204, 1218 (E.D.N.Y. 1981). ……………………………     33

<u>CASE</u>                                                          <u>Page(S)</u>

*Wainwright Securities, Inc. v. Wall Street Transcript Corp,*
    588 F.2d 91, 95-96 (2d Cir. 1977)......................... 9

*Warner Bros. Inc. v. American Broadcasting Companies, Inc.,*
    720 F.2d 231, 241 (2d Cir. 1983)......................... 12, 20

*Williams v. Crichton,*
    84 F. 3d 581 (2d Cir. 1996)............................... 7, 12

*Wrench LLC v. Taco Bell Corp.,*
    256 F.3d 446, 462-63 (6th Cir. 2001)..................... 35-36, 38


**Other Authorities**

Melville B. Nimmer & David Nimmer, Nimmer on
    Copyright § § 1.01[B][1][a][I] at 1-15 to 1-16......................... 37

Melville B. Nimmer & David Nimmer, Nimmer on
    Copyright § 13.03[F][5] (1996)......................... 8, 11

Zechariah Chafee, *Reflections on the Law of Copyright*,
    45 Colum.L.Rev. 503, 513 (1945)......................... 11

*McCarthy on Trademarks and Unfair Competition*
    § 24.22  (4th ed. 2000)......................... 24


**Statutes**

Lanham Act, § 43(a)(1)(A)......................... 29
Lanham Act, § 43(a)(1)(B)......................... 29-30
Lanham Act, 15 U.S.C. §§ 1114, 1125 (a)......................... 21
N.Y. Gen. Bus. Law § 360-k......................... 21
N.Y. Gen. Bus. Law § 360-1......................... 31

## INTRODUCTION

Defendants Jessica Seinfeld, HarperCollins Publishers, Inc, and Departure Productions LLC (collectively "Defendants" in this memorandum) have brought a desperate - indeed sneaky - FRCP 12(b)(6) motion. The facts alleged in the complaint for the purposes of this motion are assumed to be true. Yet Defendants constantly refer to materials outside the complaint, which are not properly subject to judicial notice, and, while misstating the basis for Plaintiffs' claims, ask the court to make fact determinations that are not part of this motion.

Lapine's cookbook is protected because of its particular expression of ways of sneaking vegetables into children's food through instructions for making and storing a variety of vegetable purees in advance, and then using them in recipes specially created for the purpose of hiding the pre-made purees in children's favorite dishes. As defendants themselves acknowledged in their infringing book, *Deceptively Delicious*, this "is an innovative approach to feeding our children healthful foods at an early age without added stress for either parents or children." *Deceptively Delicious* at 9.

As alleged in the complaint, Lapine twice submitted her manuscript for *The Sneaky Chef* to defendant HarperCollins for publication. HarperCollins purported to reject her proposal, but then pilfered Lapine's original concepts and the protected material in her manuscript to create and publish *Deceptively Delicious*. The startling similarities between *The Sneaky Chef* and *Deceptively Delicious* go beyond the mere idea of

1

sneaking vegetables into children's foods, and they could not possibly be coincidental. The claims for relief asserted in the complaint state causes of action that cannot be resolved on the pleadings. As the very motion of the Defendants makes clear, they do involve factual issues to be determined on proper procedure by the trier of fact. Accordingly, the motion to dismiss should be denied.

## STATEMET OF FACTS ALLEGED

### A. Lapine Conceives of, Researches, and Creates Her Book

Plaintiff Missy Chase Lapine is a former publisher of Eating Well magazine. Before that, she worked at Gourmet magazine. She is certified in the master techniques of healthy cooking and was training in classical cooking techniques at the Institute of Culinary Education. First Amended Complaint ("FAC") at 7 ¶ 17.

Around 2002, Lapine began researching methods for getting children to eat healthier foods. Spending her energy, time, and money, Lapine conducted numerous taste tests, focus groups and interviews, and consulted extensively with leading nutritionists, pediatricians, and chefs. She ultimately developed an original method for camouflaging healthy vegetable purees in dishes that children typically crave, such as brownies, pizza and pancakes. FAC at 7-8 ¶¶ 18-19.

Lapine prepared a manuscript of her book, *The Sneaky Chef: Simple Strategies for Hiding Healthy Foods in Kids' Favorite Meals* (hereafter "*The Sneaky Chef*" or "SC"). The book set forth Lapine's views on nutrition, child-rearing and American eating habits, as well as her explanation of the purees, instructions on how to make and store the purees,

2

and recipes specially created for using the purees in children's favorite dishes.  FAC at 2
¶ 1 & 8 ¶ 20.

In February 2006, Lapine sent a 139-page proposal, which included extensive
chapters from the book manuscript, to  Defendant HarperCollins.  Four days later, Harper
Collins rejected the proposal.  In May 2006, Lapine again submitted her book proposal to
HarperCollins, including extensive chapters from the manuscript.  HarperCollins rejected
her second proposal, but retained possession of the materials submitted by Lapine.  FAC
at 2 ¶ 2 & 8-9 ¶ 21.

### B.  Lapine Publishes the Book and Obtains Copyright and Trademark Protection

In June 2006, Perseus, another book publisher, accepted Lapine's proposal for the
book.  Perseus released the book in April 2007.  The reviews were extremely positive.
Within three weeks of publication, the book became a New York Times bestseller.  FAC
at 9 ¶¶ 22-23.  Lapine owns the copyright to *The Sneaky Chef*.  FAC at 29-30 ¶¶ 49-51.

The Sneaky Chef, Inc. is the co-owner with Lapine of all rights to the trademarks
and is engaged, together with Lapine, in developing and marketing books, DVD's and
other products that are based on Lapine's methods and concepts.  The Sneaky Chef, Inc.
filed applications with the United States Patent and Trademark Office for trademark
registration of the word trademark "Sneaky Chef" and the image trademark that appears
on and in the book and on plaintiffs' Web site.  This image is a line drawing of a chef
hiding carrots behind her back, winking, and holding a finger to her lips as if to say
"shhh."  FAC at 3 ¶ 3 & 9 ¶ 24.

During a book tour and marketing campaign, the "The Sneaky Chef" word and image trademarks became well known and famous. The public began to associate those trademarks with Lapine's ideas and work embodied in her book. Word of mouth began to spread about Lapine's book and technique. The trademarks helped people identify Lapine's work. FAC at 9-10 ¶¶ 25-26.

### C. Defendants Copy and Publish Plaintiffs' Work as Their Own

HarperCollins took Lapine's property as embodied in her manuscript, and used Lapine's work in publishing defendant Jessica Seinfeld's cookbook, *Deceptively Delicious: Simple Secrets to Get Your Kids Eating Good Food* (hereafter "*Deceptively Delicious*" or "DD"). FAC at 3 ¶ 3, 5 ¶ 8, 10-21 ¶¶ 27-33. Around May 2007, Lapine learned that HarperCollins was planning to publish *Deceptively Delicious*. After seeing an eight-page promotional brochure for *Deceptively Delicious*, Lapine observed blatant similarities between the two cookbooks, including, among other things, their cover design and content, and the use of a winking chef image similar to *The Sneaky Chef* trademark. Lapine brought these similarities to the attention of HarperCollins. However, HarperCollins denied that *Deceptively Delicious* was copied from Lapine's work. FAC at 10-11 ¶¶ 27-29.

HarperCollins published *Deceptively Delicious* with only minor changes from the promotional flyer. The flyer originally depicted the winking female chef with carrots held behind her back, exactly like the chef in *The Sneaky Chef* image trademark. On the book cover, however, the carrots were moved from the chef's hand to a cutting board behind

her back.  The book's subtitle was also slightly changed from "Sneaky Secrets to Get

Your Kids Eating Good Food" to "Simple Secrets to Get Your Kids Eating Good Food."

FAC at 11-12 ¶ 31.

*Deceptively Delicious* copied Lapine's expression of the idea of preparing

vegetable purees in advance for storage and use in a variety of recipes specially designed

for the purpose of concealing vegetables in children's favorite foods.  As discussed more

fully in this brief, there are substantial similarities between *Deceptively Delicious* and *The

Sneaky Chef*, including, but not limited to, the title and subtitle, the artwork, the structure,

organization, pattern and sequence, the language used, the use of purees in similar types

of recipes, and the overall look and feel.  FAC at 12-21 ¶ 33.

Defendants attempts to have the court consider other works beside the Lapine's

copyrighted work and the infringing work - as thought this were a patent case involving

prior art -  is improper on this motion and, in addition, does not provide any defense to the

infringement by Defendants.

## DISCUSSION

### I.

### THE COMPLAINT ALLEGES SUFFICIENT SIMILARITIES BETWEEN THE WORKS TO ESTABLISH A CLAIM FOR COPYRIGHT INFRINGEMENT

**A. *The Sneaky Chef* Is an Original Literary Work That Qualifies for Copyright Protection**

"The *sine qua non* of copyright is originality.... Original, as the term is used in

copyright, means only that the work was independently created by the author (as opposed

to copied from other works), and that it possesses at least some minimal degree of creativity. [Citation.] To be sure, the requisite level of creativity is extremely low; even a slight amount will suffice." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).

*The Sneaky Chef* cookbook is an original literary work that qualifies for copyright protection. 17 U.S.C. § 101 (defining "literary works" broadly to include any type of book). Although individual recipes do not necessarily qualify for copyright protection, a unique collection or book of recipes plainly does. *Publications International, Ltd. v. Meredith Corp.*, 88 F.3d 473, 481 (7th Cir. 1996) (distinguishing "individual recipes" from a protected "collection of recipes" or "an entire book that contain[s] recipes"). Further, even individual recipes may be protected if they are "sufficiently expressive to exceed the boundaries of mere fact." *Barbour v. Head*, 178 F. Supp. 2d 758, 764 (S.D. Tex. 2001). As described more fully below, *The Sneaky Chef* contains original expressive elements that far exceed the boundaries of mere fact, including original artwork, language, arrangement, organization, pattern, structure, and sequence. Thus, it is a protected literary work.

## B. The Elements of Copyright Infringement

To establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 351 (1991). In the absence of direct evidence, copying is proven by showing (1) that the defendant had

access to the copyrighted work and (b) substantial similarity of protectible material in the two works. *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996).

The complaint alleges that plaintiff twice submitted her manuscript to HarperCollins, which rejected her proposal but retained the manuscript. FAC at 2 ¶ 2 & 8-9 ¶ 21. It also alleges that HarperCollins took Lapine's manuscript and used the material to create and publish *Deceptively Delicious*. FAC at 3 ¶ 3, 5 ¶ 8, 10-21 ¶¶ 27-33. Further, *The Sneaky Chef* was released in April 2007, six months before *Deceptively Delicious*. FAC at 9 ¶ 23 & 11 ¶ 30. Defendants clearly had access to plaintiff's copyrighted material.

The test for "substantial similarity" is whether the ordinary lay observer would recognize the copy as having been appropriated from the copyrighted work. *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995). "It is only when the similarities between the protected elements of plaintiff's work and the allegedly infringed work are of 'small import quantitatively and qualitatively' that the defendant will be found innocent of infringement." *Williams*, 84 F.3d at 588.

Similarities "cannot be ignored" merely because many or all of the elements that make up the work "are not protectible when considered at a lower level of abstraction." *Softel, Inc. v. Dragon Medical and Scientific Communications, Inc.*, 118 F.3d 955, 963 (2d Cir. 1997). A protected original work may be made up entirely of unprotected elements. *Id*. at 964; *Feist*, 499 U.S. at 350-51 (holding that a compilation of unprotected facts is eligible for copyright if it features an original selection or arrangement). "'By

factoring out similarities based on non-copyrightable elements, a court runs the risk of overlooking wholesale usurpation of a prior author's expression.'" *Softel*, 118 F.3d at 964 n.7 (quoting *A.A. Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 979-80 (2d Cir. 1980)).

"[W]hen applied to the context of literary works, this point becomes quite obvious: taken individually, the words that constitute a literary work are not copyrightable, yet this fact does not prevent a literary text, i.e., a collection of words, from enjoying copyright protection." *Id.* (citing 4 Melville B. Nimmer & David Nimmer *Nimmer on Copyright* § 13.03[F][5], at 13-145 n. 345.1 (1996) (*Nimmer*) (explaining that the fact that Hamlet's soliloquy can be atomized into unprotectible words does not mean that the soliloquy as a whole lacks originality for copyright purposes)). The same would hold true for an original painting. *Id.* If courts were "required to dissect [works] into their separate components, and compare only those elements which are in themselves copyrightable" then "we might have to decide that 'there can be no originality in a painting because all colors of paint have been used somewhere in the past.'" *Knitwaves, Inc. v. Lollytags Ltd.*, 71 F.3d 996, 1003 (2d Cir. 1995).

"[I]nfringement analysis is not *simply* a matter of ascertaining similarity between components viewed in isolation." *Tufenkian Import/Expert Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 134 (2d Cir. 2003). A combination of many different elements of similarity may be sufficient to constitute infringement, even if any one such element taken by itself would be trivial. 4 *Nimmer* § 13.03[A][1][b] at 13-39 n.25 (citing

cases); *see also Shaw v. Lindheim*, 919 F.2d 1353, 1363 (9th Cir. 1990) ("Even if none of

these plot elements is remarkably unusual in and of itself, the fact that both scripts contain

all of these similar events gives rise to a triable question of substantial similarity of

protected expression").

### C. There Are Substantial Similarities Between the Cookbooks Beyond the Mere Idea of Hiding Vegetables in Children's Favorite Foods

#### *(1) Similar Expression of Ideas*

Defendants argue at length that the "unoriginal idea" of hiding healthy food in

children's meals is not protectible under copyright law. They also submit numerous

excerpts from other cookbooks and cooking magazines to prove that this idea has been

around for a long time. Those materials, of course, are not properly before the Court on

this 12(b)(6) motion. But more importantly, Lapine has never claimed to have invented

the idea of camouflaging vegetables. In fact, she expressly acknowledged in her

cookbook: "The concept has been around for a while." *The Secret Chef* at 28. Thus, all

of defendants' exhibits prove a point that is simply not in dispute.

Plaintiffs are not claiming that the similarity between the cookbooks lies in the

idea of camouflaging healthy foods. "The copyright does not protect ideas; it protects

only the author's particularized expression of the idea." *Mattel, Inc. v. Goldberger Doll

Mfg. Co.*, 365 F.3d 133, 135-36 (2d Cir. 2004). "What is protected is the manner of

expression, the author's analysis or interpretation of events, the way he structures his

material and marshals facts, his choice of words, and the emphasis he gives to particular

developments." *Wainwright Securities, Inc. v. Wall Street Transcript Corp*, 588 F.2d 91,

95-96 (2d Cir. 1977). "It is only if the copier has taken the author's expression or

realization of the idea that infringement results." *Sparaco v. Lawler, Matusky, Skelly,*

*Engineers LLP*, 303 F.3d 460, 469 (2d Cir. 2002).

Here, the similarity between the two cookbooks lies in the *expression* of ideas

contained in both. *The Sneaky Chef* expresses the idea of camouflaging vegetables in

children's favorite foods by giving instructions for making vegetable purees in advance,

storing them for future use, and then using them in specially created recipes which

include the pre-made purees as ingredients. *Deceptively Delicious* expresses the same

idea in exactly the same way. This is a unique and original method of expressing the idea

of camouflaging vegetables in children's foods. Defendants' own book describes it as "an

innovative approach." *Deceptively Delicious* at 9. Other than *The Sneaky Chef* and

*Deceptively Delicious*, none of the prior works submitted by the defendants uses this

same method of expression. As demonstrated more fully below, *Deceptively Delicious*

did not copy the unprotected idea of concealing vegetables in children's favorite foods – it

copied Lapine's "particularized expression of the idea." *Mattel*, 365 F.3d at 135-36.

### *(2)  Similar Organization, Pattern, Structure, and Sequence*

The books have a similar organization, pattern, structure, and sequence. In the

same general order, both works contain: (1) a cover and title that convey the concept of

secretly getting children to eat healthy foods; (2) drawings that illustrate the same concept

on the cover, spine, and first page; (3) an introduction or foreword by a doctor

emphasizing the health benefits for children (SC 15-17; DD 8-9); (4) a personal narrative

by the author describing her family struggles getting her children to eat vegetables, her revelation about sneaking pureed vegetables into her children's food, her testing and perfection of recipes using vegetable purees in her children's favorite foods, and the effect of achieving peace at the family table (SC 19-39; DD 10-13); (4) a discussion of appliances to use in making the purees (SC 65; DD 18); (5) lists of essential ingredients to keep on hand in the kitchen (SC 55-66; DD 22-23); (6) instructions for a variety of purees to be made in advance and stored for later use (SC 64-67, 96-114; DD 24-30; and (7) a collection of individual recipes using the pre-made purees in children's favorite foods (SC 125-259; DD 45-201).

Based on the similar organization, pattern, structure, sequence, and overall concept of the cookbooks, there are sufficient allegations that defendants appropriated the fundamental essence or structure of Lapine's work. "The doctrine of 'comprehensive non-literal similarity' allows copyright protection where there is no word-for-word or literal similarity but where defendant has nonetheless appropriated the 'fundamental essence or structure' of plaintiff's work. *See* 3 *Nimmer on Copyright* § 13.03[A] at 13-24 to 25. A plaintiff succeeds on this doctrine by showing the pattern or sequence of the works is similar. *See id.* at 13-27; Zechariah Chafee, *Reflections on the Law of Copyright*, 45 Colum.L.Rev. 503, 513 (1945)." *Arica Institute, Inc. v. Palmer*, 970 F.2d 1067, 1073 (2d Cir. 1992); *see also Ringgold v. Black Entertainment Television, Inc.*, 126 F.3d 70, 75 n.3 (2d Cir. 1997); *Twin Peaks Productions, Inc. v. Publications Intern., Ltd.*, 996 F.2d 1366, 1372 (2d Cir. 1993).

It does not matter that there are some differences between the cookbooks, such as the chapter in *Deceptively Delicious* written by a nutritionist. *Deceptively Delicious* at 32-41. "If a defendant copies substantial portions of a plaintiff's sequence of events, he does not escape infringement by adding original episodes somewhere along the way." *Warner Bros. Inc. v. American Broadcasting Companies, Inc.*, 720 F.2d 231, 241 (2d Cir. 1983). Nor can defendants escape liability by pointing out that they did not copy *all* parts of *The Sneaky Chef*. "*[D]issimilarity* between some aspects of the works will not automatically relieve the infringer of liability, for 'no copier may defend the act of plagiarism by pointing out how much of the copy he has not pirated.'" *Williams*, 84 F.3d at 588 (citation omitted).

Defendants attempt to dismiss the striking similarities between the two works by labeling all of the individual components as mere "scenes a faire," that is, "'incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic.'" *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 979 (2d Cir. 1980). However, there is nothing "indispensable" or even "standard" about an introduction by a doctor, a personal narrative by the author, instructions for making and storing vegetable purees in advance, or a collection of children's food recipes specifically designed for use with the pre-made vegetable purees. None of the prior works submitted by the defendants, even if considered on this motion, contains this unique sequence or combination of elements. In particular, defendants have not identified *any* other cookbook that gives instructions for making a variety of different

vegetable purees, and then provides a separate list of recipes specifically created for use

with the purees.  This is not a "standard" or "stock theme" of cookbooks.  Further, the

original organization, pattern, and sequence of Lapine's work is not a scene a faire.  *See*

*MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 194 (2d Cir. 2004) ("Selection

or arrangement choices, ... if found sufficiently creative to be original, would not be

scenes a faire.").

### *(3) Similar Titles*

The two books have similar titles.  Lapine's work is entitled *The Sneaky Chef:*

*Simple Strategies for Hiding Healthy Foods in Kids' Favorite Meals.*  Jessica Seinfeld's

book is entitled *Deceptively Delicious*: *Simple Secrets to Get Your Kids Eating Good*

*Food.*  Although titles cannot claim copyright protection in and of themselves, courts *may*

consider titles as one relevant factor "in determining whether there is substantial similarity

of protected expression between the two works."  *Shaw v. Lindheim*, 919 F.2d 1353, 1362

(9th Cir. 1990).

### *(4) Similar Artwork on Cover, Spine, and First Page*

The cover, spine, and first page of *The Sneaky Chef* include a line drawing of a

female chef hiding carrots behind her back, winking, and holding a finger to her lips as if

to say "shhh."  The cover of *Deceptively Delicious* also has a line drawing of a female

chef, winking, with carrots on a cutting board behind her back, and on the book's spine

and first page, it has another line drawing of the same chef holding a finger to her lips as

if to say "shhh."  It cannot be coincidental that the creators of two different cookbooks

with the identical theme, released within six months of each other, independently invented images of a winking female chef, a "shooshing" gesture, and carrots hidden behind the chef's back.

Notably, the drawings were even more similar before Lapine complained to HarperCollins. The original drawing for *Deceptively Delicious* showed the chef holding the carrots behind her back, exactly like the chef depicted in *The Sneaky Chef* trademark. After Lapine's complaint, however, the carrots on the cover of *Deceptively Delicious* were moved to a cutting board behind the chef's back. "This crude effort to give the appearance of dissimilarity is itself evidence of copying." *Joshua Meier Co. v. Albany Novelty Mfg. Co.*, 236 F.2d 144, 146 (2d Cir. 1956).

### (5) Similar Language

The language used in the two books is also strikingly similar. The following chart illustrates some of the similarities.

| *The Sneaky Chef* | *Deceptively Delicious* |
|---|---|
| "Of course, all during this period I was also doing the same things other parents do: begging, pleading, threatening, and bribing." Page 22.<br><br>"In many families, the dinner table becomes a battleground and meal time is a power struggle." Page 24. | "Mealtimes were reduced to a constant pushing and pulling, with me forever begging my kids to eat their vegetables, and them protesting unhappily. Instead of laughing and having fun with my family, I was irritated and stressed as I labored to coerce them to eat food they found 'disgusting.'" Page 10. |
| "Mealtime is a period that should be fun and should foster bonding among family members. If the focus of the conversation is on coercing the kids to eat what's on | "I want my kids to associate food and mealtimes with happiness and conversation, not power struggles and strife. With a little sleight of hand, you |

| | |
|---|---|
| their plates, there is little room to ask about the rest of their day or find out how they're doing in school.... Who wants to remember mealtime as an endless fight forcing them to eat their spinach? As parents, we should be using that time to get to know our kids better and find out what's going on in their lives." Page 24. | can make the issue of what your children will and will not eat disappear from the table." Page 13. |
| "The 'hiding technique' occurred to me one day when Sammy was a toddler.... It really dawned on me when I was mixing a teaspoon of liquid penicillin into Emily's chocolate pudding, without her knowing it, to cure her strep throat." Page 28. | "Then, one evening while I was cooking dinner, pureeing butternut squash for the baby and making mac and cheese for the rest of us, I had the crazy idea of stirring a little of the puree into the macaroni." Page 10. |
| "With a dose of creativity, a guiltless willingness to be a bit sneaky (more about this later), and a certain amount of outside-the-box thinking, I was able to conceal previously rejected foods ... in many of my children's meals." Page 28. | "Feeling only a little guilty that I was tricking my children, I stirred in enough of the squash to feel satisfied that I was giving them a respectable portion of vegetables." Page 10. |
| "I began matching up list A–the kid-favorite foods–with list B– the super healthy foods." Page 28.<br><br>"You will learn to camouflage the world's healthiest foods inside of your kids' favorites." Page 29. | "I have become an expert at hiding vegetable purees and other healthful additions–foods my kids wouldn't touch otherwise–in all of their favorable foods.... I've chosen dishes that I'm confident children and parents will feel comfortable with because they're the familiar ones that kids love already ...." Page 11. |
| "It got our family eating together in peace ... and it took the stress out of mealtimes." Page 28. | "The whole family is happier, and we can finally enjoy mealtimes again." Page 11. |
| "This has brought peace to our family table ...." Page 53. | "I just wanted a little peace around the dinner table." Page 10. |
| "If you are a sneaky chef, you are being somewhat misleading, but it is a form of loving deceit." Page 38. | "That's where a little loving deception comes in handy." Page 13. |
| "The result is a double victory for families–parents get their kids to eat | "*Deceptively Delicious* enables parents to give kids what they want and what they |

| | |
|---|---|
| healthier without the battle, and kids get what they want from parents." Page 39. | need at the same time." Page 13. |
| "[P]arental control does not have to come in the form of a constant battle." Page 48. | "It empowers you to exert some legitimate control over what your children eat, without inviting the usual fights." Page 13. |
| "[I]t does no good to try to dismiss their objections and force them to do what you want." Page 38. | "Forcing your kids to eat foods they hate only reinforces their distaste." Page 13. |
| "This book is easy and practical to use. It had to be. I, like many of you out there, was a working parent and determined to keep my busy lifestyle from interfering with the raising of healthy children." Page 29. | "I'm not a professional chef–far from it–and these recipes require no training or kitchen knowledge whatsoever." Page 11. |
| "The Make-Ahead purees and blends contain most of the recognized superfoods, and those are used over and over in this book. All you have to do is frontload your week by putting a little time into preparing the Make-Aheads, and you're all set to transform ordinary recipes into healthy foods." Page 94. | "The first step is to put together a number of simple fruit and vegetable purees.... Then the purees will be available to use when they're called for, just like any other ingredient in my recipes.... I want to encourage you to spend about an hour each week preparing the purees so that you'll always have them on hand." Page 17. |

"The 'ordinary' phrase may enjoy no protection as such, but its use in a sequence of expressive words does not cause the entire passage to lose protection. And though the 'ordinary' phrase may be quoted without fear of infringement, a copier may not quote or paraphrase the sequence of creative expression that includes such a phrase." *Salinger v. Random House, Inc.*, 811 F.2d 90, 98 (2d Cir. 1987). The passage as a whole is protected if it "displays a sufficient degree of creativity as to sequence of thoughts, choice of words, emphasis, and arrangement to satisfy the minimum threshold of required creativity." *Id.* "[W]here that minimum threshold is met," a "paraphrasing" of the original by another may

"track[] the original so closely as to constitute infringement." *Id.*

Lapine's writings in *The Sneaky Chef* easily display the minimal level of creativity as to sequence of thoughts, choice of words, emphasis, and arrangement to qualify for copyright protection. The numerous similarities illustrated in the chart above demonstrate that *Deceptively Delicious* paraphrased whole passages of *The Sneaky Chef* "so closely as to constitute infringement." *Id.* The fact that these passages also contain ordinary words and phrases does not cause them to lose their copyright protection. *Id.*

At the very least, the passages as stated and alleged show substantial similarity. In *Arica Institute, Inc. v. Palmer*, 970 F.2d 1067 (2d Cir. 1992), for example, the Second Circuit found sufficient similarities between three passages to "pass the substantial similarity threshold." *Id.* at 1073-74. These passages were as follows:

| ORIGINAL WORK | INFRINGING WORK |
|---|---|
| "In essence ...; there is no conflict within the person between head, heart, and stomach ...." | "In essence we are like young children: there is no conflict between our thoughts, or our emotions, or our instincts." |
| "A contradiction develops between the inner feelings of the child and the outer social reality to which he must conform." | "A contradiction develops between the child's essential trust of the environment and the family reality, which must be obeyed." |
| "Personality forms a defensive layer over the essence ...." | "From the point of view of a psychology that includes a concept of essence, personality develops in order to protect and defend essence from injury in the material world." |

The individual passages at issue here are at least as similar as those in *Arica Institute*. Considered in their totality, they are far more similar. Thus, that defendants

copied plaintiffs' creative expression is sufficiently set forth, and is a triable issue of fact

in  subsequent parts of these proceedings.

### (6)  Similar Use of Purees in Recipes

The recipes in the cookbooks make similar uses of vegetables purees in the same

types of dishes.  The following chart shows some examples.

| Dish | Type of Puree Used by *The Sneaky Chef* | Type of Puree Used by *Deceptively Delicious* |
|---|---|---|
| Chocolate pudding | Avocado (page 242) | Avocado (page 159) |
| Brownies | Purple Puree (spinach and blueberries) (pages 96, 243) | Carrot and spinach (page 156) |
| Grilled cheese | Orange Puree (sweet potato or yam, and carrots) (pages 98, 152) | Sweet potato or butternut squash (page 135) |
| French Toast | Orange Puree (sweet potato or yam, and carrots) (pages 98, 136) | Banana or pineapple or sweet potato or carrot or butternut squash or canned pumpkin (page 49) |
| Mac 'n Cheese | White Bean Puree or White Puree (cauliflower and zucchini) or Orange Puree (sweet potato or yam, and carrots) (pages 98, 102, 112, 150-151) | Butternut squash or cauliflower (page 104) |
| Meat Sauce/Bolognese | Orange Puree (sweet potato or yam, and carrots) and White Bean Puree (pages 98, 112, 202) | Sweet potato (page 119) |
| Chicken Tenders or | Orange Puree (sweet potato | Broccoli or spinach or |

| Chicken Nuggets | or yam, and carrots) (pages 98, 196-97) | sweet potato or beet (page 75) |
| Peanut Butter and Jelly Muffins | Orange Puree (sweet potation or yam, and carrots) (pages 98, 142-43) | Carrot (page 63) |
| Eggs | Green Juice (spinach) (pages 104, 133) | Spinach (page 62) |

### (7) Other Similarities

Finally, the two cookbooks also contain the following similarities: (1) they both use icons with the recipes to represent either the "sneaky method" or the type of fruits or vegetables used (SC 92; DD 37-41); (2) they both use a different font color for the purees when listed in the ingredients for each recipe; (3) they both use a border around the text of the recipes; (4) they both use line-drawn cartoon graphics, except for full-color photographs of the dishes made using the recipes in the books; (5) they both recommend steaming the vegetables, pureeing them in a food processor or blender, packaging them in baggies, and refrigerating or freezing them for later use (SC 64-65, 95-114; DD 24-27); (6) they both suggest allowing children to put sprinkles on their food (SC 90-91; DD 59); and (7) they both discuss incorporating purees into pre-packaged, store-bought foods. (SC 222, 242, 243, 256; DD 199.)  Again, although none of these other similarities would be terribly significant in isolation, the cumulative totality of all the similarities at least raises a triable issue of fact.

### D.  Substantial Similarity is a Triable Question of Fact

19

The "lay observer" test of substantial similarity "is necessarily fact specific." *Hogan v. DC Comics*, 983 F. Supp. 82, 86 (N.D.N.Y. 1997). "Although a few courts have found on a motion to dismiss that the works in question were not substantially similar as a matter of law, a court must be cautious of making that determination at such an early stage in the proceedings. For that reason copyright cases are rarely dismissed on a 12(b)(6) motion." *Id.*; *see also Cognotec Servs., Ltd. v. Morgan Guar. Trust Co. Of New York*, 862 F. Supp. 45, 50 (S.D.N.Y. 1994) ("A motion to dismiss is not the proper procedural mechanism to make this factual inquiry.").

In fact, even on summary judgment, which this motion is not, "This issue of substantial similarity in a copyright infringement case 'is customarily an extremely close question of fact,' as to which 'summary judgment has traditionally been frowned upon.'" *Atkins v. Fischer*, 331 F.3d 988, 995 (D.C. Cir. 2003). Even summary judgment may be granted only where the similarity between two works concerns only non-copyrightable elements, or where no reasonable jury could find that the two works are substantially similar under the applicable "lay observer" test. *Warner Bros., Inc. v. American Broad. Cos.*, 720 F.2d 231, 240 (2d Cir. 1983). And we are some way from a motion for summary judgment.

For the reasons stated above, defendants pending motion cannot meet any applicable standard.

## II.

**THE COMPLAINT ALLEGES A SUFFICIENT LIKELIHOOD OF CONFUSION TO ESTABLISH A CLAIM FOR TRADEMARK INFRINGEMENT**

Defendants assert that the trademark infringement claims should be dismissed based solely on the alleged dissimilarities between *The Sneaky Chef* image trademark and the marks used on *Deceptively Delicious*. According to defendants, there is no likelihood of confusion as a matter of law. However, likelihood of confusion is a factual question not properly resolved in a motion to dismiss. Based on the totality of relevant factors identified by the Second Circuit case law – most of which are simply ignored by the defendants – the marks do establish a likelihood of confusion.[1]

**A. Likelihood of Confusion is a Factual Question Not Properly Resolved in a Motion to Dismiss**

"Whether or not there is a likelihood of confusion is a question of fact as to the probable or actual actions and reactions of prospective purchasers of the goods or services

---

[1] The second and fourth claims for relief assert trademark infringement claims under sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and under N.Y. Gen. Bus. Law § 360-k. Section 43(a) of the Lanham Act protects unregistered trademarks. *Two Pesos v. Taco Cabana*, 505 U.S. 763, 768 (1992); *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 154 (2d Cir. 2007).

of the parties." *American International Group, Inc. v. London American International Corporation Limited*, 664 F.2d 348, 351 (2d Cir. 1981). "This determination depends on a number of factual variables ...." *DC Comics, Inc. v. Reel Fantasy, Inc.*, 696 F.2d 24, 26 (2d Cir. 1982). The Second Circuit has adopted the following non-exclusive list of factors - all questions of fact that cannot be decided on a motion to dismiss – and developed by Judge Friendly in *Polaroid Corp. v. Polaroid Electronics Corp.*, 287 F.2d 492, 695 (2d Cir. 1961): (1) the strength of the plaintiff's mark, (2) the similarity between the marks, (3) the proximity of the products in the marketplace, (4) the likelihood that the plaintiff will bridge any gap between the products in the marketplace, (5) actual confusion, (6) the defendant's intent in adopting its mark, (7) the quality of defendant's product, and (8) the sophistication of the buyers.

"This list ... is not exhaustive, nor is any one factor determinative. Each factor must be balanced with the others to determine the likelihood of confusion." *Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 94 (2d Cir. 1993); *see also Levy v. Kosher Overseers Ass'n of America, Inc.*, 104 F.3d 38, 43 (2d Cir. 1997) (same); *Lang v. Retirement Living Pub. Co., Inc.*, 949 F.2d 576, 580 (2d Cir. 1991) (same); *Plus Products v. Plus Discount Foods, Inc.*, 722 F.2d 999, 1004 (2d Cir. 1983) (same).

"The likelihood of confusion test is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss." *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 412 (S.D.N.Y. 2006); *see also Papa John's Intern., Inc. v. Rezko*, 446 F. Supp. 2d 801, 808 n.3 (N.D. Ill. 2006) (same); *Rescuecom Corp. v. Computer Troubleshooters USA, Inc.*, 464 F. Supp. 2d 1263, 1266 (N.D. Ga. 2005) (same); *FragranceNet.com, Inc. v. FragranceX.com, Inc.*, 493 F. Supp. 2d 545, 552 n.8 (E.D.N.Y. 2007) (same).[2]

### B. The Marks Are Easily Similar Enough That Plaintiffs Could Establish a Likelihood of Confusion Under the Remaining *Polaroid* Factors

Defendants completely ignore all but one of the *Polaroid* factors for determining likelihood of confusion. Focusing solely on the "similarity of the marks" factor, defendants assert that the marks are so *dissimilar* that, as a matter of law, plaintiffs could not establish a trademark infringement claim on any conceivable set of facts. However, the marks have obvious, distinctive similarities, and the other relevant *Polaroid* factors would also support a finding of likely confusion. In these circumstances, the Court cannot dismiss the trademark claims as a matter of law without giving plaintiffs an

---

[2]Defendants cite several Second Circuit cases holding that dissimilarity of the marks alone may be dispositive in certain cases. However, defendants cite no Second Circuit case that has done so in the context of a motion for dismiss before the plaintiff has even had an opportunity to marshal and present evidence on all of the *Polaroid* factors. *See Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000) (summary judgment); *Resource Developers, Inc. v. Statute of Liberty-Ellis Island Foundation, Inc.*, 926 F.3d 134, 141 (2d Cir. 1991) (summary judgment); *Universal City Studios, Inc. v.*

opportunity to present evidence on all of the *Polaroid* factors.

The marks in question are noticeably similar. The similarities include: (1) a winking female chef; (2) the use of the "shooshing" gesture; and (3) carrots hidden behind the chef's back.

The Second Circuit has emphasized that the "similarity of the marks" test "does not require an *identity* of marks... [A] significant similarity in appearance ... is all that is needed. Even if a consumer can differentiate between two products, the question is whether, and to what degree, the look of the junior user's product calls to mind the senior user's product." *Malletier*, 426 F.3d at 538 n.3. Here, though the drawings are not identical, the winking chef on the cover of *Deceptively Delicious* with carrots behind her back distinctly "calls to mind" the winking chef on the cover of *The Sneaky Chef* with a carrot behind her back. Likewise, the "shooshing" gesture on the spine and first page of *Deceptively Delicious* strongly "calls to mind" the "shooshing" gesture on the spine and first page of *The Sneaky Chef*.

Notably, a *lesser* degree of similarity is required where the goods directly compete with each other in the same market, as they do here. *Sunquest Information Systems, Inc. v. Park City Solutions, Inc.*, 130 F. Supp. 2d 680, 691, n.6 (2000) (citing 3 *McCarthy on Trademarks and Unfair Competition* § 24.22 (4th ed. 2000)). This concept is related to the *Polaroid* "proximity in the marketplace" factor. "To the extent the goods (or trade

*Nintendo Co.*, 746 F.2d 112, 116 (2d Cir. 1984) (summary judgment).

24

names) serve the same purpose, fall within the same general class, or are used together,

the use of similar designations is more likely to cause confusion." *Lang v. Retirement*

*Living Publishing Co.*, 949 F.2d 576, 582 (2d Cir. 1991).

Given that these two cookbooks have exactly the same theme and compete for the

same group of consumers in the same retail market, it cannot be determined as a matter of

law on a motion to dismiss that there is no likelihood of confusion arising from the

obvious similarities between these marks. For example, someone who could not

remember the name of Lapine's cookbook might well describe it to another potential

consumer as having a cover drawing of a winking chef with carrots hidden behind her

back. This would not distinguish it from *Deceptively Delicious.* Or someone quickly

browsing the spines of the books at a bookstore might confuse the two based on the

similar "shooshing" gesture at the top of the spines. Since the central theme of both

cookbooks is using vegetable purees in children's favorite dishes, and they compete in the

same retail market, even the slightest similarity between the marks could cause confusion.

In addition to the similarities of the marks and their proximity in the marketplace,

plaintiffs could also present evidence to support a finding of likely confusion under the

most important of the other *Polaroid* factors. First, the complaint itself alleges that *The*

*Sneaky Chef* is a strong mark. The strength of the mark turns on its tendency to identify

the goods as coming from a particular source. *Lang v. Retirement Living Publishing Co.,*

*Inc.*, 949 F.2d 576, 581 (2d Cir. 1991). The complaint specifically alleges that the "The

Sneaky Chef" trademarks became well known and famous during Lapine's book tour and marketing campaign; the public began to associate those trademarks with the ideas and work embodied in Lapine's book; and the trademarks helped people identify Lapine's work. FAC at 3 ¶ 3, 10 ¶ 26 & 32 ¶ 61.

Second, plaintiffs could present evidence of actual confusion. "Actual consumer confusion often is demonstrated through the use of direct evidence, e.g., testimony from members of the buying public, as well as circumstantial evidence, e.g., consumer surveys or consumer reaction tests." *PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.*, 818 F.2d 266, 271 (2d Cir. 1987); *see also Smith v. Wal-Mart Stores, Inc.*, 537 F. Supp. 2d 1302, 1317 (N.D. Ga. 2008) ("A claimant may present anecdotal evidence of marketplace confusion, and surveys, when appropriately and accurately conducted and reported, are also widely and routinely accepted as probative of actual confusion."). "'There can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion.'" *Savin Corp. v. Savin Group*, 391 F.3d 439, 459 (2d Cir. 2004) (citation omitted). Plaintiffs should not have their case thrown out of court on a motion to dismiss without being given an opportunity to present evidence of actual confusion through consumer testimony or consumer surveys.

Third, plaintiffs could also present evidence that the relevant market includes unsophisticated consumers. "[U]nsophisticated consumers aggravate the likelihood of confusion. [Citation.] This is especially true when the competing products' marks are

26

similar and the inexpensive products are in competitive proximity." *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 78-79 (2d Cir. 1988).

Finally, plaintiffs could establish that the defendants acted in bad faith. The complaint specifically alleges that Lapine submitted her manuscript to HarperCollins for publication, and HarperCollins twice declined her proposal but then stole her material for use in *Deceptively Delicious*. FAC at 3 ¶ 3, 5 ¶ 8, 10-21 ¶¶ 27-33. This would easily support a finding of bad faith.

In analyzing similarity of the marks, courts must consider "the 'totality of factors that could cause confusion among prospective purchasers.'" *Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2004) (citation omitted). The Ninth Circuit has recently cautioned judges strongly against dismissing trademark infringement claims based solely on their own subjective perceptions of the similarity or dissimilarity of the marks. *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 633 (9th Cir. 2008) (holding that district court erred by relying on "dissimilarity of the marks alone" in granting summary judgment). "[T]he potential for a judge to elevate his or her own subjective impressions of the relative dissimilarity of the marks over evidence of, for example, actual confusion, is great. And where the subjective impressions of a particular judge are weighed at the expense of other relevant evidence, the value of the multi-factor approach ... is undermined." *Id*.

For all the foregoing reasons, plaintiffs could establish a likelihood of confusion if

27

permitted to present evidence on the totality of the *Polaroid* factors, and the trademark

infringement claims should not be dismissed at the pleadings stage based solely on this

Court's subjective perception of the similarity or dissimilarity of the marks.

## III.

### PLAINTIFFS HAVE STATED A VALID CLAIM FOR UNFAIR COMPETITION UNDER SECTION 43(A) OF THE LANHAM ACT

Plaintiffs' third claim for relief alleges unfair competition in violation of § 43(a) of

the Lanham Act. 5 U.S.C. § 1125(a). Specifically, it alleges that the defendants falsely

attempted to pass off *Deceptively Delicious* as being entirely the product of their own

work and invention. Defendants assert that this claim is barred as a matter of law by the

Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S.

23 (2003). They are mistaken.

Section 43(a)(1) has two distinct subsections. Section 43(a)(1)(A) prohibits

representations in commerce which are "likely to cause confusion, or to cause mistake, or

to deceive as to the affiliation, connection, or association of such person with another

person, or *as to the origin*, sponsorship, or approval of his or her goods, services, or

commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A) (emphasis added).

Section 43(a)(1)(B) prohibits misrepresentations in commercial advertising or promotion

of the "*nature, characteristics, qualities*, or geographic origin of his or her or another

person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B) (emphasis

added).

28

In *Dastar*, the Supreme Court held that the language of § 43(a) is broad enough to encompass "reverse passing off," which means misrepresenting someone else's goods or services as one's own. *Dastar*, 529 U.S. at 27 n.1 & 30-31. However, the Court concluded that the phrase "origin of goods" as used in § 43(a)(1)(A) "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept or communication embodied in those goods." *Id*. at 37. Thus, the Court ruled that no Lanham Act claim under § 43(a)(1)(A) could be asserted against a defendant who allegedly took ideas, concepts, or communications from the Crusade television series, made modifications, and then produced its own series of videotapes incorporating those ideas, concepts, or communications. *Id*. at 31.

In so ruling, however, the Court emphasized that it was not foreclosing claims under § 43(a)(1)(B) based on misrepresentations in advertising or promotion as to the nature, characteristics or qualities of a product. The Court stated: "If ... the producer of a video that substantially copied the Crusade series were, in advertising or promotion, to give purchasers the impression that the video was quite different from that series, then one or more of the respondents might have a cause of action-not for reverse passing off under the 'confusion ... as to the origin' provision of § 43(a)(1)(A), but for misrepresentation under the 'misrepresents the nature, characteristics [or] qualities' provision of § 43(a)(1)(B)." *Id*. at 38.

In *Clausen v. Eslinger*, 455 F. Supp. 2d 256 (S.D.N.Y. 2006), this Court applied

29

*Dastar* to a claim that the defendant had falsely credited himself, rather than the plaintiff, with being the producer of a film in its credits and promotional materials.  Referring to *Dastar*'s discussion of § 43(a)(1)(B), the Court stated: "The *Dastar* Court explicitly left open the possibility that some false authorship claims could be vindicated under the auspices of this section's prohibition on false advertising.... Here, plaintiff has pleaded that the film's credits and promotional materials wrongly credit defendant as being producer. [Citation.] As such, plaintiff has alleged a misrepresentation and therefore has stated a claim *under section 43(a)(1)(B)*." *Id.* at 261-62 (emphasis added).

As in *Clausen*, plaintiffs have alleged that *Deliciously Deceptive*'s advertising and promotion falsely credit Ms. Seinfeld with the idea of the cookbook and all of the work to create it.  FAC at 35-36 ¶¶ 74-75.  Thus, plaintiffs have stated a valid claim under § 43(a)(1)(B) of the Lanham Act.  *Id.*

## IV.

### PLAINTIFFS HAVE STATED A VALID CLAIM FOR INJURY TO BUSINESS REPUTATION

Plaintiffs' fifth claim for relief alleges injury to business reputation under N.Y. Gen. Bus. Law § 360-l.  This "anti-dilution statute provides broader protection than trademark and unfair competition laws." *Katz v. Modiri*, 283 F. Supp. 2d 883, 900 (S.D.N.Y. 2003).  "To establish a dilution claim under New York law, a plaintiff must establish (1) ownership of a distinctive mark capable of being diluted and (2) likelihood of dilution." *Id.*

30

There are two distinct theories of dilution under New York law: blurring and tarnishment. *Id.* at 900-01. "'[D]ilution by blurring may occur where the defendant uses or modifies *the plaintiff's trademark* to identify *the defendant's goods and services*, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product.'" *Hormel Foods Corp. v. Jim Henson Productions, Inc.*, 73 F.3d 497, 506 (2d Cir. 1996) (citation omitted). Dilution by tarnishment occurs when the trademark is "'linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context ....'" *Id.* at 507 (citation omitted).

Defendants claim that plaintiffs have failed to allege facts sufficient to state a claim of dilution *by tarnishment*. However, the complaint clearly alleges dilution by blurring, not by tarnishment. FAC at 32-33 ¶¶ 62-63 & 37-38 ¶¶ 84-86. Because defendants' motion does not even discuss the operative theory of dilution, it should be denied. Further, as previously noted, the complaint also alleges that *The Sneaky Chef* trademark is distinctive in that it is widely associated with Lapine's ideas and the work embodied in her cookbook and it has acquired a secondary meaning. FAC at 3 ¶ 3, 10 ¶ 26 & 32 ¶ 61. *See Star Indus. v. Bacardi & Co.*, 412 F.3d 373, 381 (2d Cir. 2005) (plaintiff can establish a mark as distinctive by showing that the mark is "inherently distinctive," i.e., intrinsically capable of identifying its source, or by demonstrating that the mark has acquired "secondary meaning"). Thus, the complaint alleges the necessary elements of a claim for dilution under N.Y. Gen. Bus. Law § 360-l.

31

**V.**

## PLAINTIFFS HAVE STATED A VALID CLAIM FOR BREACH OF IMPLIED CONTRACT

### A. Plaintiffs Have Pled the Elements of an Implied-in-Fact Contract

Under New York law, a plaintiff whose ideas have been used by another may sue

for breach of an implied-in-fact contract not to use the ideas without compensation. *See,*

*e.g., Downey v. General Foods Corp.,* 37 A.D.2d 250, 256-58, 323 N.Y.S.2d 578 (N.Y.

App. Div. 1971) (citing cases). Such an implied-in-fact contract "must be inferred from

the facts and circumstances of each case, including such factors as the specific conduct of

the parties, industry custom, and course of dealing." *Nadel v. Play-By-Play Toys &*

*Novelties, Inc.,* 208 F.3d 368, 376 n.5 (2d Cir. 2000). "A determination as to the

existence of such an implied agreement must be made by the trier of fact ...." *McGhan v.*

*Ebersol,* 608 F. Supp. 277, 285 (S.D.N.Y. 1985).

Plaintiffs' seventh claim for relief alleges that "because HarperCollins is a

publisher, and Lapine an author, manuscript submission for review and potential

publishing created an implied contract, wherein HarperCollins agreed to accept, and did

accept, the manuscript for limited purposes, consistent with their respective position."

FAC at 39 ¶ 95. It further alleges: "Given the relative position of the parties (publisher

and author) and the circumstances (author submitting manuscript for consideration of

publication), Lapine's submission of the Book manuscript ... was performed with the

understanding and expectation, fully and reasonably understood by HarperCollins, that

Lapine would be reasonably compensated if HarperCollins made use of the Book manuscript, or Lapine's ideas, recipes, or other matter it contained." FAC at 39-40 ¶ 96. It further alleges that HarperCollins breached this implied contract by using the manuscript and the ideas contained therein without compensating Lapine. FAC at 40 ¶¶ 97-98.

These allegations are clearly sufficient to state a claim for breach of an implied-in-fact contract based on industry custom and the mutual understanding of the parties. "[T]he existence of such a custom, ... as well as the terms of any contract that might be implied, are issues of fact which would require resolution at trial." *Vantage Point, Inc. v. Parker Bros., Inc.*, 529 F. Supp. 1204, 1218 (E.D.N.Y. 1981).

**B.  Under New York Law, The Implied Contract Claim Does Not Require The Same Type of Novelty of Ideas as a Property-Based Misappropriation Claim**

Defendants claim that the ideas they lifted from *The Sneaky Chef* are not sufficiently novel to support an implied contract claim. However, defendants have confused the different standards of novelty applicable to contract-based claims and misappropriation of property claims. Under controlling New York law, a different and much lesser level of novelty is required for a contract-based claim. *Nadel*, 208 F.3d at 374-78; *Apfel v. Prudential-Bache Securities, Inc.*, 81 N.Y.2d 470, 478, 616 N.E.2d 1095 (N.Y. 1993). "Contract-based claims require only a showing that the disclosed idea was

33

novel *to the buyer* in order to find consideration. Such claims involve a fact-specific

inquiry that focuses on the perspective of the particular buyer. By contrast,

misappropriation claims require that the idea at issue be original and novel in absolute

terms." *Nadel*, 208 F.3d at 380 (emphasis added).

The "novelty to the buyer" standard for contract-based claims applies to implied-

in-fact contracts. *Nadel*, 208 F.3d at 376-77 & n.5, 379-80, 381-82. This "standard

comports with traditional principles of contract law. While an idea may be unoriginal and

non-novel in a general sense, it may have substantial value to a particular buyer who is

unaware of it and therefore willing to enter into contract to acquire and exploit it." *Id.* at

377.

This case is a perfect illustration. The idea of publishing a cookbook about

sneaking healthy vegetables into children's favorite foods by creating special recipes

designed for use with pre-made vegetable purees obviously had great value to

HarperCollins. Whatever its novelty in a more general sense, HarperCollins capitalized

on the idea by stealing it from Lapine and repackaging it in *Deceptively Delicious* under

the name of a celebrity who was in a better position to promote sales of the book. Given

the obvious value of the idea to HarperCollins, for the purpose of determining whether

there was an implied-in-fact contract to pay for the use of Lapine's idea, it makes no

difference whether the idea may have existed somewhere else in the public domain.

"[T]he notion that an unoriginal idea may still be novel (and valuable) to a particular

buyer is not itself a novel proposition." *Nadel*, 208 F.3d at 377.

Defendants have made no effort to establish that the ideas they used from *The Sneaky Chef* were unoriginal *to them*. This cannot be determined from the pleadings because it is "a fact-specific inquiry that focuses on the perspective of the particular buyer." *Nadel*, 208 F.3d at 380. In their moving papers, defendants focus all of their efforts on demonstrating that these ideas were not novel because they were allegedly well-known *to others*. Because this is simply the wrong legal standard for this type of contract-based claim, *Nadel*, 208 F.3d at 380, the motion to dismiss the implied contract claim must be denied. *See also Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 462-63 (6th Cir. 2001) (New York law "requires only novelty to the defendant" for implied contract claims).

### C. The Idea for the Cookbook Was Sufficiently Novel Even Applying the Higher Standard for a Property-Based Misappropriation Claim

Even if defendants were applying the correct legal standard, however, they have still failed to demonstrate that the idea for this particular type of cookbook was in fact unoriginal under the higher novelty standard for a property-based misappropriation claim. As previously explained, the originality of the idea did not lie in the concept of sneaking healthy foods into children's foods, as defendants would like to pretend. What was original was the far more specific and innovative concept of publishing a cookbook with instructions for making and storing vegetable purees in advance, followed by recipes designed specially for using the pre-made purees as ingredients in children's favorite

dishes.  This *was* a novel concept under any standard.  Defendants have failed to demonstrate otherwise.

### D.  The Implied Contract Claim is Not Preempted

"A state cause of action is preempted by federal copyright laws if the subject matter of the state-law right falls within the subject matter of the copyright laws and the state-law right asserted is equivalent to the exclusive rights protected by federal copyright law." *Kregos v. Associated Press*, 3 F.3d 656, 666 (2d Cir. 1993).  However, "if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie within the general scope of copyright, and there is no preemption." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716 (2d Cir. 1992) (quotation marks & citation omitted).

Plaintiffs' claim for breach of an implied-in-fact contract *does* contain an "extra element" beyond those of a copyright claim – an implied promise to pay for any use of the ideas and material she submitted to HarperCollins.  Under settled authority, this type of implied contract claim is not preempted by the Copyright Act.  *Grosso v. Miramax Film Corp.*, 383 F.3d 965, 967-68 (9th Cir. 2004) (holding plaintiff's "claim for breach of an implied-in-fact contract is not preempted by the Copyright Act, because it alleges an extra element"– an "implied promise to pay"); *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 455-58 (6th Cir. 2001) (finding no preemption of implied-in-fact contract claim – "[t]he

extra element is the promise to pay"); *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926

(4th Cir. 1988) (finding no preemption of claim for breach of implied contractual

agreement to pay for architectural plans); *see also* 1 *Nimmer* § 1.01[B][1][a][I] at 1-15 to

1-16 (contractual promise to pay supplies "extra element" necessary to avoid preemption).

## VI.

### PLAINTIFFS' CLAIM FOR UNFAIR COMPETITION AND MISAPPROPRIATION IS NOT PREEMPTED BY THE COPYRIGHT ACT

Plaintiffs' eighth claim is a common law claim for misappropriation and unfair

competition under New York law.  Defendants assert that this claim is preempted by the

Copyright Act as well.  It is not.

Unfair competition and misappropriation claims are preempted by the Copyright

Act *if* they are "grounded solely in the copying of a plaintiff's protected expression ...."

*Computer Associates Intern., Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992).

However, common law misappropriation claims "will survive preemption if [the] 'extra-

element' test is met." *National Basketball Assn. v. Motorola, Inc.*, 105 F.3d 841, 850 (2d

Cir. 1997).

Plaintiffs' common law claim for misappropriation does require an "extra element."

Under New York law, an essential element of plaintiffs' claim for misappropriation of

ideas is that a "requisite legal relationship must exist between the parties .... The legal

relationship ... may be either a fiduciary relationship, or based on an express contract, an

implied-in-fact contract, or a quasi-contract." *Oasis Music, Inc. v. 900 U.S.A., Inc.*, 161

Misc.2d 627, 631, 614 N.Y.S.2d 878 (N.Y. Sup. 1994); *see also McGhan v. Ebersol*, 608

F. Supp. 277, 284 (S.D.N.Y. 1985).   State law tort claims for misappropriation "are not

preempted where they require proof of a legal relationship, such as a contractual or

fiduciary relationship." *Wrench LLC v. Taco Bell Corp.*, 36 F. Supp. 2d 787, 789-90

(W.D. Mich. 1998) (citing cases).

## CONCLUSION

For all the foregoing reasons, the motion to dismiss should be denied in its

entirety.

DATED:   August 7, 2008

GIRARDI | KEESE

By:

Howard B. Miller (Admitted Pro Hac Vice)
Amanda L. McClintock (Admitted Pro Hac Vice)
Joseph C. Gjonola (Admitted Pro Hac Vice)
1126 Wilshire Boulevard
Los Angeles, CA   90017
Tel.  (213)977-0211
Fax:  (213)481-1554
hmiller@girardikeese.com
amcclintock@girardikeese.com
jgjonola@girardikeese.com


SEEGER WEISS LLP
Christopher A. Seeger (CS-4880)
David R. Buchanan (DB-6368
One William Street, Suite 10
New York, NY 10004
Tel:  (212)584-0757
Fax:  (212)584-0799
cseeger@seegerweiss.com
dbuchana@seegerweiss.com