GIRARDI | KEESE
Howard B. Miller (Admitted *Pro Hac Vice*)
Amanda L. McClintock (Admitted *Pro Hac Vice*)
Joseph G. Gjonola (Admitted *Pro Hac Vice*)
1126 Wilshire Boulevard
Los Angeles, CA. 90017
Tel: (213) 977-0211
Fax: (213) 481-1554

SEEGER WEISS LLP
Christopher A. Seeger (CS-4880)
David R. Buchanan (DB-6368)
One William Street, Suite 10
New York, NY 10004
Tel: (212) 584-0757
Fax: (212) 584-0799

*Attorneys for Plaintiffs*


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MISSY CHASE LAPINE and THE SNEAKY CHEF, INC. ) ) ) ) | |
| Plaintiffs, ) ) | ORAL ARGUMENT REQUESTED |
| v. ) ) | 08-CV-128 (LTS) (RLE) |
| JESSICA SEINFELD, JERRY SEINFELD, HARPERCOLLINS PUBLISHERS, INC., and DEPARTURE PRODUCTIONS, LLC, ) ) ) ) | |
| Defendants ) ) | |


## MEMORANDUM OF LAW OF PLAINTIFF MISSY CHASE LAPINE


## IN OPPOSITION TO MOTION TO DISMISS BY DEFENDANT JERRY SEINFELD OF THE SIXTH CLAIM OF THE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................ 1

STATEMENT OF FACTS ALLEGED ....................................... 2

    A.    Plaintiff Published *The Sneaky Chef* ............................. 2

    B.    HarperCollins and  Jessica Seinfeld Plagiarize *The Sneaky Chef*............................................................................. 3

    C.    Jerry Seinfeld Defames Plaintiff on National Television...... 3

DISCUSSION..................................................................... 8

I.    JERRY SEINFELD's DEFAMATORY STATEMENTS ARE NOT PROTECTED SPEECH.............................................. 8

    A.    Under Federal and New York Law, There is No Absolute Constitutional Protection for Defamatory Statements Couched in the Form of an Opinion............................... 8

    B.    Under Federal and New York Law, There is No Absolute Constitutional Protection for Defamatory Statements Couched in the Form of Comedy or Hyperbole................. 10

    C.    A Reasonable Viewer Would Have Construed Jerry Seinfeld's Statements as a Factual Assertion that Lapine Had Fabricated Allegations of Plagiarism Against His Wife.. 13

II.    THE COMPLAINT ALLEGES A RECOGNIZED FORM OF SLANDER PER SE UNDER NEW YORK LAW...................... 17

CONCLUSION.................................................................... 19

## TABLE OF AUTHORITIES

### CASES

**PAGE(s)**

*600 W. 115th St. Corp. v. Von Gutfeld,*
    80 N.Y.2d 130 (1992) ………………………………………..    9

*Accord Eposito-Hilder v. SVX Broadcasting, Inc.*
    236 A.D. 186 (N.Y. App. Div. 1997)…………………………………    11

*Chalpin v. Amordian Press*
    128 A.D. 2d 81 (N.Y. App. Div. 1987)…………………………………    10, 15

*Foster v. Churchill*
    87 N.Y.2d 744 (1996)…………………………………………………    13

*Frank v. National Broadcasting Co.,*
    119 A.D.2d 252 (N.Y. App. Div. 1986) ………………………………..    1, 11, 13-15

*Gertz v. Welch*
    418 U.S. 323 (1974)……………………………………………………    15

*Gross v. New times Co.*
    82 N.Y. 2d 146  (1993)………………………………………………    9, 12

*Immuno, A.G. v.. Moor-Jankowsi*
    77 N.Y. 2d 235 (N.Y. 1991)…………………………………………..    9

*James v. Gannet Co.,*
    40 N.Y.2d 415 (N.Y. 1976)……………………………………………    12-13, 15

*Karl V. Donaldson, Lufkin & Jenrette Securities Corp.,*
    78 F. Supp. 2d 393 (E.D.Pa. 1999)…………………………………..    10

*Kneival v. ESPN*
    393 F. 3d 1068 (9th Cir. 2005)………………………………………..    10

*Levin v. McPhee*
    119 F. 3d 189 (2d Cir. 1997)…………………………………………..    9

*Liberman v. Gelstein*
    80 N.Y. 2d 429 (N.Y. 1992)……………………………………………    18

*Milkovich v. Lorain Journal Co.,*
    497 U.S. 1, 18 (1990)…………………………………………………… 8, 13, 15

*Netzer v. Continuity Graphic Associates, Inc.*
    963 F.Supp. 1308 (S.D.N.Y. 1997)…………………………………... 11

*Parks v. Steinbrenner*
    131 A.D. 2d 60 (N.Y. Sup. 1987)……………………………………. 10, 15

*Pring v. Penthouse Intern., Ltd.*
    695 F. 2d 438 (10th Cir. 1982)……………………………………… 10

*Rodriguez v. Panayiotou*
    314 F.3d 979 (9th Cir. 1990)……………………………………….. 11

*Salomone v. MacMillan Publishing Co, Inc.*
    411 N.Y.S. 2d 105 (N.Y. Sup. 1978)………………………………… 12

*Silsdorf v. Levine*
    59 N.Y.2d 8 (1983)…………………………………………………... 10, 15

*Steinhilber v. Alphonese*
    68 N.Y.2d 283 (1986)………………………………………………... 10, 17

*Supan V. Michelfeld*
    97 A.D.2d 755 (N.Y. App. Div. 1983)……………………………….. 18

*Unelko Corp. v. Rooney*
    912 F.2d 1049 (9th Cir. 1990)……………………………………….. 11-12, 14-16

*Yesner v. Spinner*
    465 F. Supp. 48  (E.D.N.Y. 1991)…………………………………… 18

## INTRODUCTION

Even a comedian with the reputation of a Jerry Seinfeld does not enjoy a 007 license to slander. "[T]he danger implicit in affording blanket protection to humor or comedy should be obvious, for surely one's reputation can be as effectively and thoroughly destroyed with ridicule as by any false statement of fact. 'The principle is clear that a person shall not be allowed to murder another person's reputation in jest.'" *Frank v. National Broadcasting Co.*, 119 A.D.2d 252, 257, 506 N.Y.S.2d 869 (N.Y. App. Div. 1986) (citations omitted).

Whether couched as opinion, humor, or rhetorical hyperbole, defamatory statements by a comedian are actionable where a reasonable listener could conclude that he was asserting or implying false facts about the plaintiff. If the challenged statements are reasonably susceptible to such a defamatory interpretation, their true meaning is a question of fact for the jury to resolve at trial.

Jerry Seinfeld's televised statements about plaintiff Missy Chapin Lapine are reasonably susceptible to a defamatory interpretation. He did not negate the unmistakable message he conveyed to the television viewers – that Lapine had fabricated opportunistic allegations of plagiarism against his wife solely because of the Seinfelds' celebrity status and the fact that their cookbooks happened to come out (in his words) "at the same time." Mr. Seinfeld's false claim that Lapine had fabricated allegations of plagiarism was not a protected expression of opinion, nor were the equally false statements of fact he made in support of this false accusation. Under New York law, these defamatory statements are a recognized form of slander per se for false statements

1

relating to the plaintiff's conduct of her trade, business, or profession.  In this FRCP

12(b)(6) motion to dismiss the allegations of the complaint at issue are accepted as true.

Accordingly, Lapine has stated a viable claim for slander.

**STATEMENT OF FACTS ALLEGED**

**A.  Plaintiff Publishes *The Sneaky Chef***

Plaintiff Missy Chase Lapine is the former publisher of *Eating Well* magazine and,

before that, worked at *Gourmet* magazine.  Lapine is certified in the master techniques of

healthy cooking and was trained in classical cooking techniques by the Institute of

Culinary Education.  Lapine serves on the Culinary Arts Faculty of The New School in

New York City; is a collaborator with the Alliance for a Healthier Generation, a

partnership between the American Heart Association and the William J. Clinton

Foundation devoted to helping schools serve healthier lunches; and serves on the

Children's Advisory Council of Morgan Stanley Children's Hospital of New York-

Presbyterian.  First Amended Complaint ("FAC") at 7 ¶ 17.

In April 2007, plaintiff Missy Chase Lapine ("Lapine"), based on years of

research, published *The Sneaky Chef: Simple Strategies for Hiding Healthy Foods in

Kids' Favorite Meals* ("*The Sneaky Chef*").  *The Sneaky Chef* achieved immediate critical

acclaim and commercial success for its unique and innovative approach to improving

children's eating habits by, among other things, camouflaging purees of carefully

selected fruits and vegetables (like spinach and sweet potato) as ingredients in children's

favorite dishes, such as cheeseburgers, grilled cheese sandwiches and brownies.  FAC at

1 ¶ 1 & 9 ¶ 23.

2

Prior to securing her book deal with publisher Running Press, an imprint of Perseus Books Group ("Perseus"), Lapine twice submitted substantial parts of her manuscript to defendant HarperCollins Publishers ("HarperCollins") for consideration. HarperCollins had possession of and read her submission. HarperCollins turned down the opportunity to publish Lapine's book on both occasions, but retained the manuscript. FAC at 2 ¶ 2 & 8-9 ¶ 21.

### B. HarperCollins and Jessica Seinfeld Plagiarize *The Sneaky Chef*

In October 2007, six months after Lapine's book was published, defendant HarperCollins and defendant Jessica Seinfeld released *Deceptively Delicious Simple Secrets to Getting Your Kids Eating Good Food* ("*Deceptively Delicious*"), which brazenly plagiarized the contents of *The Sneaky Chef*, and misappropriated the book's trademark – a caricature of a winking chef holding a finger to her lips (as if to say "shhh") and hiding carrots behind her back. HarperCollins and Jessica Seinfeld took Lapine's material and the ideas embodied in the manuscript for *The Sneaky Chef* to create and publish *Deceptively Delicious*. FAC at 3 ¶ 3, 11 ¶ 30, 12-21 ¶¶ 32 & 33.

Upon the release of *Deceptively Delicious*, Jessica Seinfeld launched a national promotional campaign, appearing on such popular television programs as The Oprah Winfrey Show and Live with Regis and Kelly. Fueled by this massive, celebrity-driven marketing campaign, *Deceptively Delicious* became a commercial success, climbing to the top of The New York Times best seller list. FAC at 3 ¶ 3, 21 ¶ 34.

### C. Jerry Seinfeld Defames Plaintiff on National Television

In light of the striking similarities between *The Sneaky Chef* and *Deceptively*

*Delicious*, numerous statements were made on the Internet and in print and television media that Jessica Seinfeld had plagiarized *The Sneaky Chef.* FAC at 3 ¶ 3, 21 ¶ 35.

On October 29, 2007, to deflect attention from the mounting public accusations of plagiarism against his wife, defendant Jerry Seinfeld used an appearance on the immensely popular CBS television program, Late Show With David Letterman, to launch a malicious, premeditated and knowingly false and defamatory attack against Lapine. Mr. Seinfeld's slanderous attack on Lapine included, among others, the following statements uttered before a national television audience:

> **David Letterman**: And speaking of mother, the mother of your child, uh, children, your wife, big cookbook, congratulations on the cookbook.
>
> **Jerry Seinfeld**: Thank you very much, yes, my wife has a very big cookbook, but -
>
> **Letterman**: What's the name of the cookbook?
>
> **Seinfeld**: -- the cookbook is called, uh, *Deceptively Delicious*, but there is cookbook controversy, now you know...
>
> **Letterman**: What do you mean?
>
> . . .
>
> **Seinfeld**: . . . . So, um, now my wife likes to cook, so she comes up with this thing where she's pureeing vegetables and she's putting them in the kid's food, and the kids, so they get like better nutrition, and she's doing this and then her friends start doing it, and then she has two sisters and they have kids, and they start doing it. So they're passing all these recipes around. So somebody says to her, you should put these recipes into a cookbook, make a cookbook.
>
> **Letterman**: Right. Excellent idea.
>
> **Seinfeld**: Because it's healthy and we, the fat kids and the obesity, and it's positive, positive thing.

**Letterman**:  It's a serious problem. Sure.

**Seinfeld**:  So she makes the cookbook, everybody is happy, it does well, seemingly an innocent sequence of events.

**Letterman**:  Mmm.

**Seinfeld**:  Now you know, having a career in show business, one of the fun facts of celebrity life is, wackos will wait in the woodwork to pop out at certain moments of your life to inject a little adrenalin into your life experience.

**Letterman**:  Yes, just a little tap to get your attention.

**Seinfeld**:  Yes, I have wackos, you have had wackos. I believe your wackos are very well documented.

**Letterman**:  Heh, yeah. Uh, yes.  That's one good thing.  You got all the paperwork.

**Seinfeld**:  Now, if you're any good as a woodwork wacko, you are patient. You wait. You pick your moment and then you spring out and go wacko. So, there's another  woman who had another cookbook.  And it was a similar kind of thing with the food, and the vegetables in the food, and uh, my wife never saw the book, read the book, used the book.

**Letterman**:  Knew nothing about it.

**Seinfeld**:  Didn't know anything about it.  But the books came out at the same time.

**Letterman**:  Mm hmm.

**Seinfeld**:  So this woman says, "I sense this could be my wacko moment."

**Letterman**:  Ahhh. Oh.

**Seinfeld**:  So she comes out and she says, and she accuses my wife, she says, you stole my mushed-up carrots. You can't put mushed-up carrots in a casserole, I put mushed-up carrots in the casserole. It's vegetable plagiarism.

5

**Letterman**: It's ridiculous.

. . .

**Letterman**: . . . . And what does this woman think, that she's the first one to prepare and eat food?

**Seinfeld**: I, I guess so. And I'm more upset, we're sorry that she is, you know, angry and hysterical, and because she's a three-name woman, which is what concerns me. She has three names.

**Letterman**: Oh, mmm.

**Seinfeld**: And you know, if you read history, many of the three-name people do become assassins.

**Letterman**: Yeah, yeah. Now, um --

**Seinfeld**: Mark David Chapman. And you know, James Earl Ray. So, that's my concern. FAC at 22-26 ¶¶ 36-40.

On the same day he appeared on Late Show With David Letterman, Jerry Seinfeld also appeared on E! News, broadcast on the E! network. Seinfeld used his appearance on that program again to make outrageously false and defamatory statements about Lapine as follows:

**Host**: Your wife has done such great philanthropy work over the years, especially with children. There's lots of controversy now around her book. Is she unfairly being criticized?

**Seinfeld**: As a celebrity, I enjoy the fact that whenever you do something; some nut job comes out of the woodwork and gets hysterical. I know the truth that nothing ever happened. I don't know if you know the story about the guy I went to college with who claimed I stole the whole TV series from him, and he sued me for 100 million dollars. So this woman is another kind of nut. You know, she thinks she invented vegetables. And she's accusing my wife of stealing her mashed-up carrots. FAC at 26-27 ¶ 41.

A reasonable person viewing Jerry Seinfeld's appearances on the Letterman show and E! News would have concluded that he was accusing Lapine of opportunistically fabricating accusations of plagiarism against his wife. The statements were textually sufficient for a listener to identify Lapine, and only Lapine, as the target. The statements of fact made and reasonably implied by Jerry Seinfeld on these shows were false. Jessica Seinfeld's book came out six months after Lapine's.  Jessica Seinfeld saw and read Lapine's cookbook before hers was published. The allegations of plagiarism against Jessica Seinfeld were true. Lapine does not suffer from any mental infirmity. Lapine did not fabricate accusations against Jessica Seinfeld to gain media attention, enrich herself or harass the Seinfelds. Lapine was not lying in wait for an opportunity to become embroiled in a controversy with any celebrity, including the Seinfelds. FAC at 6 ¶ 4, 26 ¶ 39, 27-28 ¶¶ 42-44, 38 ¶ 89.

Lapine is not a public figure, but even if Lapine were to be considered a public figure for the purposes of her defamation cause of action, Jerry Seinfeld knew that his defamatory statements about Lapine were false, and he made the statements with malice or reckless disregard of the truth. FAC at 28 ¶ 45 & 38 ¶ 90. Jerry Seinfeld's defamatory statements about Lapine have caused and are continuing to cause Lapine severe injury, including pecuniary loss. FAC at 28 ¶ 46 & 38 ¶ 91.

# DISCUSSION

## I.

## JERRY SEINFELD'S DEFAMATORY STATEMENTS ARE NOT PROTECTED SPEECH

Mr. Seinfeld argues that the slander claim must be dismissed on the pleadings because the statements he made about Lapine are protected expressions of opinion, rhetorical hyperbole, and vigorous epithets under the federal and New York constitutions. However, there is no absolute constitutional protection for defamatory statements that are couched in the form of opinions, humor, or hyberbole. Under both New York and federal law, the applicable test is whether a reasonable listener could conclude that Mr. Seinfeld was implying objective facts about the plaintiff. Considering the statements in their totality, and in light of the background and context in which they were made, a reasonable viewer would have concluded that Mr. Seinfeld was seriously accusing Lapine of making false accusations of plagiarism against his wife. The nature of Mr. Seinfeld's delivery did not negate the impression that he was making a genuine assertion of fact about Lapine. This defamatory statement of fact was not protected speech.

### A. Under Federal and New York Law, There is No Absolute Constitutional Protection for Defamatory Statements Couched in the Form of an Opinion

The First Amendment does not "create a wholesale defamation exemption for anything that might be labeled 'opinion.'" *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990). Such a rule "would ignore the fact that expressions of 'opinion' may often imply an assertion of objective fact." *Id.* For example, "[i]f a speaker says, 'In my

opinion John Jones is a liar,' he implies knowledge of facts which lead to the conclusion that Jones told an untruth.  Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact.  Simply couching such statements in terms of opinion does not dispel these implications ...."  *Id.* at 19.

Under both federal and New York law, the dispositive inquiry is not whether the statement is couched in the form of an opinion, but whether a reasonable listener could conclude that the defendant was implying facts about the plaintiff.  *Id.* at 21; *Levin v. McPhee*, 119 F.3d 189, 196-97 (2d Cir. 1997); *Gross v. New York Times Co.*, 82 N.Y.2d 146, 152, 63 N.Y.S.2d 813 (1993); *600 West 115th Street Corp. v. Gutfield*, 80 N.Y.2d 130, 139, 589 N.Y.S.2d 825 (1992).  "[S]peech earns no greater protection simply because it is labeled 'opinion.' [¶]  The key inquiry is whether the challenged expression, however labeled by defendant, would reasonably appear to state or imply assertions of objective fact.  In making this inquiry, courts cannot stop at literalism."  *Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 243, 566 N.Y.S.2d 906 (1991).

Even were expressions of "pure opinion" not actionable, New York recognizes two categories of actionable "mixed opinion" that imply assertions of objective facts. "[W]hen a defamatory statement of opinion implies that it is based upon undisclosed detrimental facts which justify the opinion but are unknown to those reading or hearing it, it is a 'mixed opinion' and actionable.... Similarly actionable as a 'mixed opinion' is a defamatory opinion which is ostensibly accompanied by a recitation of the underlying facts upon which the opinion is based, but those underlying facts are either falsely

misrepresented or grossly distorted." *Parks v. Steinbrenner*, 131 A.D.2d 60, 62-63, 520

N.Y.S.2d 374 (N.Y. Sup. 1987); *see also Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289,

508 N.Y.S.2d 901 (1986) (discussing actionable "mixed opinions"); *Silsdorf v. Levine*, 59

N.Y.2d 8, 15-16, 462 N.Y.S.2d 822 (1983) (finding statements of opinion actionable

where plaintiff alleged that facts stated by defendants in support of their opinions were

false); *Chalpin v. Amordian Press, Inc.*, 128 A.D.2d 81, 85, 515 N.Y.S.2d 434 (N.Y.

App. Div. 1987) (finding "derogatory statement of opinion" to be actionable where it

"gives the impression that it sets forth the facts upon which it is based, but those

underlying facts are either falsely misrepresented or grossly distorted").

### B. Under Federal and New York Law, There is No Absolute Constitutional Protection for Defamatory Statements Couched in the Form of Comedy or Hyperbole

Just as a defamatory statement couched as an opinion is not protected, "the fact

that a statement is an attempt at humor does not immunize the speaker against liability for

defamation." *Knievel v. ESPN*, 393 F.3d 1068, 1078 (9th Cir. 2005). The test is not

whether the statement may be "characterized as 'fiction,' humor,' or anything else ..., but

whether the charged portions in context could be reasonably understood as describing

actual facts about the plaintiff or actual events in which she participated." *Pring v.*

*Penthouse Intern., Ltd.*, 695 F.2d 438, 442 (10th Cir. 1982). "[T]he key question is

whether a reasonable member of the audience could have perceived a defamatory

meaning, or whether instead the only reasonable interpretation is the harmlessly

humorous one." *Karl v. Donaldson, Lufkin & Jenrette Securities Corp.*, 78 F. Supp. 2d

393, 397 n. 10 (E.D. Pa. 1999).

In *Unelko Corp. v. Rooney*, 912 F.2d 1049 (9th Cir. 1990), for example, the court held that statements made by Andy Rooney on 60 Minutes were actionable, because their "humorous and satirical nature" did "not negate the impression that he was making a factual assertion" about the plaintiff. *Id.* at 1054. Similarly, in *Rodriguez v. Panayiotou*, 314 F.3d 979 (9th Cir. 2002), the court allowed a defamation action to proceed against pop star George Michael for a song describing a sexual encounter with the plaintiff, a police officer. The court reasoned that "the colorful and humorous language Michael used to speak about the incident did not 'negate the impression that [Michael] was seriously maintaining'" the officer committed a lewd act. *Id.* at 985 (citation omitted).

New York law is to the same effect. *See Netzer v. Continuity Graphic Associates, Inc.*, 963 F. Supp. 1308, 1324-25 (S.D.N.Y. 1997) (applying New York law). "As forms of expression, humor and comedy have never been held to be entitled to absolute or categorical First Amendment protection.... Indeed, the danger implicit in affording blanket protection to humor or comedy should be obvious, for surely one's reputation can be as effectively and thoroughly destroyed with ridicule as by any false statement of fact. 'The principle is clear that a person shall not be allowed to murder another person's reputation in jest.'" *Frank v. National Broadcasting Co.*, 119 A.D.2d 252, 257, 506 N.Y.S.2d 869 (N.Y. App. Div. 1986) (citations omitted). "[T]he defense of humor will not immunize the authors of a malicious or abusive attack upon a plaintiff's character or reputation." *Id.* at 261-62. *Accord Esposito-Hilder v. SVX Broadcasting, Inc.*, 236 A.D.2d 186, 191, 665 N.Y.S.2d 697 (N.Y. App. Div. 1997).

Similarly, a speaker cannot escape liability for defamation merely by using hyperbole or epithets. Even where the statements contain some non-actionable hyperbole, they are still actionable when the statements taken as a whole and viewed in context could reasonably be construed to imply false facts about the plaintiff. *Unelko Corp.*, 912 F.2d at 1053-54. In other words, "the court will not pick out and isolate particular phrases but will consider the publication as a whole." *James v. Gannett Co.*, 40 N.Y.2d 415, 419, 386 N.Y.S.2d 871 (1976). The background and context of the speech is also important; the same word or phrase might be considered non-actionable hyperbole in some circumstances, but not in others. *Gross*, 82 N.Y.2d at 155; *600 West 115th Street Corp.*, 80 N.Y.2d at 140-41.

In general, "the question of whether a particular statement is nonactionable humor or compensable libel should appropriately be left to the judgment of a jury... [O]nly a jury should make the ultimate determination as to whether the use of a name for poking fun is within legitimate limits or is so inexcusably over the line as to warrant damages." *Salomone v. MacMillan Publishing Co., Inc.*, 97 Misc.2d 346, 352, 411 N.Y.S.2d 105 (N.Y. Sup. 1978). "If the contested statements are reasonably susceptible of a defamatory connotation, then 'it becomes the jury's function to say whether that was the sense in which the words were likely to be understood by the ordinary and average reader.'" *James v. Gannnett Co.*, 40 N.Y.2d 415, 420, 386 N.Y.S.2d 871 (1976). The issue may be decided as a matter of law only where no reasonable person could have believed the speaker was implying actual facts about the plaintiff, such as statements "so

extremely nonsensical and silly that there is no possibility that any person hearing them could take them seriously." *Frank*, 119 A.D.2d at 261.

### C. A Reasonable Viewer Would Have Construed Jerry Seinfeld's Statements as a Factual Assertion that Lapine Had Fabricated Allegations of Plagiarism Against His Wife

The message of Jerry Seinfeld's statements on the Letterman show and E!News was unmistakable. In no uncertain terms, Mr. Seinfeld was accusing Lapine of fabricating opportunistic allegations of plagiarism against his wife solely because of the Seinfelds' celebrity status and the fact that the two cookbooks happened to come out (in his words) "at the same time." Any reasonable viewer would have understood that Mr. Seinfeld *was* making an assertion of objective fact about Lapine. Because Mr. Seinfeld's statements contained a "provably false factual connotation," *Milkovich,* 497 U.S. at 20, they are not protected as "pure opinion" under either federal or New York law.

Defamation is defined as "the making of a false statement which tends to 'expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.'" *Foster v. Churchill*, 87 N.Y.2d 744, 751, 642 N.Y.S.2d 583 (1996) (citation omitted). "In analyzing the words to ascertain whether a question of fact exists for resolution upon trial, the court will not pick out and isolate particular phrases but will consider the publication as a whole.... The publication will be tested by its effect upon the average reader.... The statement complained of will be 'read against the background of its issuance' with respect to 'the circumstances of its publication.'" *James*, 40 N.Y.2d at 419-20 (citations omitted).

Applying this standard, any reasonable viewer of Mr. Seinfeld's television appearances would have understood that he was using his considerable skills to make a genuine assertion of fact about Lapine.   As alleged in the complaint, the statements were made against the background of public allegations that his wife had in fact plagiarized Lapine's book.  In other words, Mr. Seinfeld was addressing a real life controversy about his wife's cookbook, and the topic was not merely the "obvious figment[] of a comic imagination." *Frank*, 119 A.D.2d at 260.

Viewing the statements against this background, Mr. Seinfeld's message would have been clear to any reasonable viewer.  On the Letterman show, Mr. Seinfeld began by describing how his wife independently came up with the concept and recipes for *Deceptively Delicious* and then decided to publish a cookbook in what he described as an "innocent sequence of events."  Clearly, Mr. Seinfeld was purporting to give a truthful account of how his wife's cookbook came to fruition.  Further, Mr. Seinfeld specifically asserted that his wife never saw or read *The Sneaky Chef* and did not know anything about it before publishing *Deceptively Delicious*.  Mr. Seinfeld went on to describe Lapine as a "wacko" who came out of the "woodworks" to accuse his wife of "vegetable plagiarism" just because their cookbooks happened to come out "at the same time" and Lapine "sense[d] this could be [her] wacko moment."

It would have taken an extraordinarily dense viewer not to understand that Mr. Seinfeld was accusing Lapine of making false and opportunistic allegations of plagiarism against his wife.  Like the statements made by Andy Rooney on 60 minutes in *Unelko Corp.*, any "humorous and satirical nature" of Mr. Seinfeld's remarks did "not negate the

impression that he was making a factual assertion" about the plaintiff. *Unelko Corp.*, 912 F.2d at 1054. As a matter of law, these remarks are "reasonably susceptible of a defamatory connotation ...." *James*, 40 N.Y.2d at 420. They were designed to expose Lapine to public contempt, ridicule, aversion or disgrace, and to induce the public to believe that she had made crazy and opportunistic allegations of plagiarism against Mrs. Seinfeld. As noted, "one's reputation can be as effectively and thoroughly destroyed with ridicule as by any false statement of fact." *Frank*, 119 A.D.2d at 257. The fact that Seinfeld may have been trying to make his audience laugh at Lapine's expense does not give him blanket protection for defaming her in the process.

Mr. Seinfeld's defamatory accusations against Lapine were not a protected expression of pure opinion. Mr. Seinfeld did not even purport to be stating a personal opinion, he purported to be telling the true facts regarding the allegedly false accusation of plagiarism against his wife. "[T]here is no constitutional value in false statements of fact." *Gertz v. Welch*, 418 U.S. 323, 340 (1974). Further, even if Mr. Seinfeld were merely voicing an opinion neither New York nor federal law protects a derogatory statement of opinion that sets forth the underlying facts upon which it is supposedly based, but falsely misrepresents or grossly misstates those facts. *Silsdorf*, 59 N.Y.2d at 15-16; *Parks*, 131 A.D.2d at 62-63; *Chalpin*, 128 A.D.2d at 85. "[I]f those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact." *Milkovich*, 497 U.S. at 19.

The complaint specifically alleges that the supporting facts recited by Mr. Seinfeld on the Letterman show *were* false. It alleges that *The Sneaky Chef* came out six months

before *Deceptively Delicious* (not "at the same time" as claimed by Mr. Seinfeld); that

Mrs. Seinfeld *did* see and read *The Sneaky Chef* before she published *Deceptively*

*Delicious* (directly contrary to what Mr. Seinfeld asserted); and that Mrs. Seinfeld *did* in

fact plagiarize *The Sneaky Chef*. FAC at 4 ¶ 4, 11 ¶ 30, 12 ¶ 32, 26 ¶ 39, 28 ¶ 44, 30 ¶

52. Further, the complaint alleges that Mr. Seinfeld acted with knowledge or reckless

disregard of the falsity of these facts. FAC at 28 ¶ 45 & 38 ¶ 90. Having asserted

provably false facts to support his defamatory accusations against Lapine in front of a

national television audience, Mr. Seinfeld cannot now hide behind the protection of the

First Amendment by any claim – which is after all also a question of fact - that he was

just trying to be funny.

Mr. Seinfeld's statements on E!News are also actionable. Again, any reasonable

viewer would have understood that Mr. Seinfeld was accusing Lapine of making false

allegations of plagiarism against his wife. Mr. Seinfeld stated: "I know the truth that

nothing ever happened.... [T]his woman is another kind of nut. You know, she thinks she

invented vegetables. And she's accusing my wife of stealing her mashed-up carrots."

FAC at 26-27 ¶ 41. As with his statements on the Letterman show, Mr. Seinfeld's

delivery did "not negate the impression that he was making a factual assertion" about

Lapine and the allegations of plagiarism. *Unelko Corp.*, 912 F.2d at 1054.

By telling the E!News audience "I know the truth that nothing ever happened,"

Mr. Seinfeld also implied that he was aware of undisclosed facts to support his claim that

Lapine's allegations of plagiarism were false. "When ... the statement of opinion implies

that it is based upon facts which justify the opinion but are unknown to those reading or

hearing it, it is a 'mixed opinion' and is actionable." *Steinhilber*, 68 N.Y.2d at 289.

For all the foregoing reasons, Mr. Seinfeld's statements are not protected speech.

Any reasonable viewer would have understood that Mr. Seinfeld was making a genuine

assertion of objective fact about Lapine by accusing her of fabricating allegations of

plagiarism against his wife. That accusation, and the supporting "facts" recited by Mr.

Seinfeld on the Letterman show and implied on E!News, are readily capable of being

proven true or false. Indeed, the truth of Lapine's allegations of plagiarism is the very

subject of the other claims asserted in this lawsuit. If plaintiff sustains her burden on

those claims, she will have proven that Mr. Seinfeld's accusation was defamatory and her

allegations of plagiarism are true. Further, the supporting facts stated by Mr. Seinfeld on

the Letterman show – that his wife independently came up with the idea for *Deceptively*

*Delicious* and had no prior knowledge of *The Sneaky Chef* – are clearly capable of being

proven false as well. These are not opinions, they are provably false assertions of fact.

In these circumstances, there is no constitutional impediment to plaintiff's claim for

slander.

## II.

### THE COMPLAINT ALLEGES A RECOGNIZED FORM OF SLANDER PER SE UNDER NEW YORK LAW

Mr. Seinfeld also asserts that the slander claim should be dismissed because the

challenged statements are not slanderous per se and Lapine has failed to plead special

damages. However, the complaint *does* allege a recognized form of slander per se for defamatory statements relating to the plaintiff's business, trade, or occupation.

A false statement that impugns the plaintiff's integrity and alleges misconduct, unfitness, dishonesty or fraud in connection with her business, trade, or profession is slander per se under New York law. *Yesner v. Spinner*, 465 F. Supp. 48, 52 (E.D.N.Y. 1991); *Supan v. Michelfeld*, 97 A.D.2d 755, 757, 468 N.Y.S.2d 384 (N.Y. App. Div. 1983). To constitute this form of slander per se, the defamatory statement must allege something incompatible with the proper conduct of the plaintiff's business, trade, or profession, and it must be made with reference to a matter of significance and importance for that purpose, rather than a more general reflection upon the plaintiff's character or qualities. *Liberman v Gelstein*, 80 N.Y.2d 429, 435-36, 590 N.Y.S.2d 857 (1992).

As alleged in the complaint, Lapine is a cookbook author and a cooking professional whose work is devoted to healthy cooking for children. FAC at 7-9 ¶¶ 17-21. Jerry Seinfeld's accusation that Lapine made a false and opportunistic claim of plagiarism against another author whose cookbook competes in exactly the same market clearly alleges dishonesty or fraud in connection with Lapine's business, trade, or profession. Such a false claim of plagiarism is incompatible with the proper conduct of an author's business, it refers to a matter of significance and importance for that purpose, and it is not just a general reflection upon Lapine's character and qualities. *Id*. Accordingly, the complaint alleges an actionable form of slander per se under New York law.

## CONCLUSION

For all the foregoing reasons, Defendant Jerry Seinfeld's motion to dismiss the sixth claim for slander should be denied.

DATED:  August 7, 2008

GIRARDI | KEESE

By: _[signature]_
Howard B. Miller (Admitted Pro Hac Vice)
Amanda L. McClintock (Admitted Pro Hac Vice)
Joseph C. Gjonola (Admitted Pro Hac Vice)
1126 Wilshire Boulevard
Los Angeles, CA  90017
Tel.  (213)977-0211
Fax:  (213)481-1554
hmiller@girardikeese.com
amcclintock@girardikeese.com
jgjonola@girardikeese.com

SEEGER WEISS LLP
Christopher A. Seeger (CS-4880)
David R. Buchanan (DB-6368
One William Street, Suite 10
New York, NY 10004
Tel: (212)584-0757
Fax: (212)584-0799
cseeger@seegerweiss.com
dbuchana@seegerweiss.com