GIBSON, DUNN & CRUTCHER LLP
ORIN SNYDER (OS-3122)
THEODORE J. BOUTROUS, JR. (*Pro Hac Vice*)
LAURA BROWNING (LB-9931)
200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
*Attorneys for Defendant Jerry Seinfeld*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| MISSY CHASE LAPINE and THE SNEAKY CHEF, INC., | : <br> : <br> : <br> : |
| Plaintiffs, | : <br> : *ORAL ARGUMENT REQUESTED* |
| v. | : <br> : 08-CV-128 (LTS) (RLE) |
| JESSICA SEINFELD, JERRY SEINFELD, HARPERCOLLINS PUBLISHERS, INC., and DEPARTURE PRODUCTIONS, LLC, | : <br> : <br> : <br> : |
| Defendants. | : <br> : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW OF DEFENDANT JERRY SEINFELD
IN FURTHER SUPPORT OF HIS MOTION TO DISMISS
THE SIXTH CLAIM OF THE FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ............................................................................................................ 2

I.     EVEN IF LAPINE'S LATEST MISCHARACTERIZATION OF
       SEINFELD'S STATEMENTS IS ACCEPTED, THOSE STATEMENTS
       ARE NOT ACTIONABLE............................................................................... 2

       A.     Seinfeld Never Accused Lapine Of "Fabricating Opportunistic
              Allegations Of Plagiarism"................................................................... 2

       B.     Seinfeld's Statements Are Absolutely Protected Statements Of
              Humorous Opinion, "Rhetorical Hyperbole" And "Vigorous Epithets" ............... 4

       C.     Seinfeld's Statements Are Protected Pure Opinion—Not Actionable
              "Mixed Opinion"—Because They Are Not Based On Falsely Stated
              Or Implied Defamatory Facts About Lapine ........................................ 11

       D.     Plaintiff's Failure To Allege Slander Per Se Is Fatal........................... 14

CONCLUSION........................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

## Cases

Anti-Monopoly, Inc., v. Hasbro, Inc.,
    958 F. Supp. 895 (S.D.N.Y. 1997), aff'd, 130 F.3d 1101 (2d Cir. 1997), cert.
    denied, 525 U.S. 813 (1998) ............................................................................... 10

Aronson v. Wiersma,
    65 N.Y.2d 592 (1985) ................................................................................... 14, 15

Bakal v. Weare,
    583 A.2d 1028 (Me. 1990) ................................................................................... 8

Bilal El-Amine v. Avon Prods.,
    293 A.D.2d 283 (1st Dep't 2002) ......................................................................... 8

Brian v. Richardson,
    87 N.Y.2d 46 (1995) ............................................................................................ 8

Buttons v. Nat'l Broad. Co.,
    858 F. Supp. 1025 (C.D. Cal. 1994) .................................................................... 7

CACI Premier Technology v. Rhodes,
    -- F.3d --, 2008 WL 2971803 (4th Cir. Aug. 5, 2008) ...................................... 10

Chalpin v. Amordian Press,
    128 A.D.2d 81 (1st Dep't 1987) ..................................................................... 12, 13

Cianci v. New Times Pub. Co.,
    639 F.2d 54 (2d Cir. 1980) ............................................................................. 7, 12

Costanza v. Seinfeld,
    693 N.Y.S.2d 897 (Sup. Ct. N.Y Co. 1999), aff'd 279 A.D.2d 255 (1st Dep't
    2001) .................................................................................................................... 7

Dworin v. Deutsch and Deutsch Inc.,
    2008 WL 508019 (S.D.N.Y. Feb. 22, 2008) ........................................................ 8

Frank v. National Broadcasting Co.,
    119 A.D.2d 252 (2d Dep't 1986) ......................................................................... 6

Gotbetter v. Dow Jones & Co., Inc.,
    259 A.D.2d 335 (1st Dep't 1999) ..................................................................... 1, 8

# TABLE OF AUTHORITIES
## [Continued]

Page(s)

*Greenbelt Coop. Pub. Ass'n, Inc. v. Bresler*,
  398 U.S. 6 (1970) ............................................................................................ 9

*Huggins v. Povitch*,
  1996 WL 515498 (Sup. Ct. N.Y. Co. Apr. 19, 1996) ......................................... 8, 10

*Immuno A.G. v. Moor-Jankowski*,
  77 N.Y.2d 235 (1990) .................................................................................... *passim*

*James v. Gannett Co.*,
  40 N.Y.2d 415 (1976) ........................................................................................ 3

*Jaszai v. Christie's*,
  279 A.D.2d 186 (1st Dep't 2001) ..................................................................... 13

*Kamalian v. Reader's Digest Assn., Inc.*,
  29 A.D.3d 527 (2d Dep't 2006) ........................................................................ 12

*Lenz Hardware, Inc. v. Wilson*,
  263 A.D.2d 632 (3d Dep't 1999), *aff'd*, 94 N.Y.2d 913 (2000) ................................ 4

*Levin v. McPhee*,
  119 F.3d 189 (2d Cir. 1997), *cert. denied*, 500 U.S. 954 (1991) ............................. 5

*Levittown Norse Assoc. v. Joseph P. Day Realty Corp.*,
  150 A.D.2d 263 (1st Dep't 1989) ..................................................................... 15

*Lloyd v. Cardiology & Internal Medicine of Long Island, PLLC*,
  13 Misc.3d 1129(A), 2007 WL 2410853 (Sup. Ct. Nassau Co. Aug. 23, 2007) ...................... 14

*Mann v. Abel*,
  10 N.Y.3d 271 (2008) ......................................................................................... 5

*MapInfo Corp. v. Spatial Re-Engineering Consultants*,
  2006 WL 2811816 (N.D.N.Y Sept. 28, 2006) ........................................................ 15

*Mignott v. Kreidman*,
  7 Misc.3d 1021(A), 2005 WL 1118074 (Sup. Ct. N.Y. Co. Mar. 15, 2005) ............................. 4

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990) ....................................................................................... 1, 7, 10

*Mr. Chow v. Ste. Jour Azur S.A.*,
  759 F.2d 219 (2d Cir. 1985) ............................................................................... 5

**TABLE OF AUTHORITIES**
**[Continued]**

Page(s)

*Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*,
418 U.S. 264 (1974)......................................................................................................... 9

*Ortho Pharm. Corp. v. Cosprophar, Inc.*,
828 F. Supp. 1114 (S.D.N.Y. 1993), *aff'd*, 32 F.3d 690 (1994) ............................... 10

*Parks v. Steinbrenner*,
131 A.D.2d 60 (1st Dep't 1987) ................................................................. 11, 12, 13

*Plonka v. Brown*,
108 Fed. Appx. 31 (2d Cir. 2004), *cert. denied*, 543 U.S. 1148 (2005) ................... 14

*Ram v. Moritt*,
205 A.D.2d 516 (2d Dep't 1994) ............................................................................. 10

*Rodriguez v. Panayiotou*,
314 F.3d 979 (9th Cir. 2002) ............................................................................... 6, 7

*Roth v. United Federation of Teachers*,
5 Misc.3d 888 (Sup. Ct. Kings. Co. 2004)............................................................. 9, 10

*Scholastic, Inc. v. Stouffer*,
124 F. Supp. 2d 836 (S.D.N.Y. 2000) ...................................................................... 8

*Shea v. Angulo*,
1994 WL 86374 (S.D.N.Y. Mar. 16, 1994) ............................................................ 15

*Silsdorf v. Levine*,
59 N.Y.2d 8 (1983), *cert. denied*, 464 U.S. 831 (1983) ......................................... 12

*Sobek v. Quattrochi*,
2004 WL 2809989 (S.D.N.Y. Dec. 8, 2004) ............................................................ 4

*Standing Comm. on Discipline of the U.S. Dist. Court v. Yagman*,
55 F.3d 1430 (9th Cir. 1995) ................................................................................ 12

*Stein v. Trager*,
36 Misc.2d 227 (Sup. Ct. Erie Co. 1962) ............................................................... 14

*Steinhilber v. Alphonse*,
68 N.Y.2d 283 (1986)........................................................................................... 8

*Tel. Sys. Int'l, Inc. v. Cecil*,
2003 WL 22232908 (S.D.N.Y. Sept. 26, 2003)...................................................... 10

**TABLE OF AUTHORITIES**
**[Continued]**

Page(s)

*Unelko Corp. v. Rooney*,
    912 F.2d 1049 (9th Cir. 1990), *cert. denied*, 499 U.S. 961 (1991)............................................ 6

*Village Nurseries v. Greenbaum*,
    101 Cal. App. 4th 26 (2002) ...................................................................................................... 4

**Other Authorities**

RESTATEMENT (SECOND) OF TORTS § 566, cmt. c.......................................................................... 12

## PRELIMINARY STATEMENT

In a dramatic retreat, Lapine's opposition brief abandons wholesale the sweeping and inflammatory allegations of defamation against Jerry Seinfeld in the Amended Complaint. Rather than target the series of outlandish jokes told by Seinfeld on the *Late Show* and *E! News*, as she did in her pleading, Lapine now reverses course by arguing that Seinfeld actually defamed her by "accusing [her] of fabricating opportunistic allegations of plagiarism against his wife." Opp. at 13. But this last-ditch effort to salvage her defamation claim is just as baseless as the prior iteration. *For one thing, Seinfeld never made this statement.*

For another thing, any reasonable viewer watching Seinfeld's appearance on the *Late Show* and *E! News* would come to one conclusion: Seinfeld's actual statements were mere opinion—not fact. Such statements are absolutely protected under the First Amendment and the New York Constitution. *See, e.g.*, *Gotbetter v. Dow Jones & Co., Inc.*, 259 A.D.2d 335, 335 (1st Dep't 1999) (statement calling plaintiff's suit "'baseless' is not actionable because [it] is merely an opinion"). Indeed, no reasonable viewer would have thought that Seinfeld, a comedian who frequently mocks the litigiousness of society, was professing to deliver a factual statement about the legal merits of a plagiarism allegation when he joked about Lapine's allegations during comedic interviews laced with jokes about wide-ranging topics. The humorous context and the statements themselves made clear that he was expressing his opinion in a humorous, hyperbolic way. The First Amendment protection for such statements is meant to "provide[ ] assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990).

Allowing Lapine's re-packaged defamation claim to proceed would have sweeping, and disturbing, ramifications. Not only would it chill comedians around the country from making

jokes about lawsuits, but it would also create a whole new genre of defamation claims targeting legal commentary, as well as statements by persons who are simply defending themselves from what they believe to be baseless public charges of wrongdoing.  For all of these reasons, this Court should dismiss Lapine's defamation claim with prejudice.

**ARGUMENT**

**I.**

**EVEN IF LAPINE'S LATEST MISCHARACTERIZATION OF
SEINFELD'S STATEMENTS IS ACCEPTED, THOSE STATEMENTS
ARE NOT ACTIONABLE**

Lapine's reconstituted allegations of slander rest entirely on yet another gross mischaracterization of Seinfeld's statements.  She argues that Seinfeld "accus[ed] Lapine of fabricating opportunistic allegations of plagiarism against his wife."  Opp. at 13.  This claim fails for at least three reasons.  First, Seinfeld never made such a statement.  Second, even if he did, this statement constitutes absolutely protected opinion—not an actionable statement of so-called "mixed opinion."  Third, this statement plainly does not constitute slander per se.

**A.      Seinfeld Never Accused Lapine Of "Fabricating Opportunistic Allegations
Of Plagiarism"**

Despite Lapine's stubborn insistence otherwise, Seinfeld never accused her of "fabricating opportunistic allegations of plagiarism."  Opp. at 13.  Seinfeld's appearance on the *Late Show* involved a purely comedic, hyperbolic exchange about what Seinfeld sarcastically dubbed the "cookbook controversy."  FAC ¶ 38.  Without identifying Lapine, Seinfeld joked that the author of another cookbook accused his wife of "vegetable plagiarism."  *Id.*  In the comic, sarcastic style for which Seinfeld is famous, he joked about "a Watergate style break-in . . . at HarperCollins because how else could [his wife] have known about chickpeas and cauliflower."  Snyder Decl. Exs. D and E.  Seinfeld also joked about the "fun facts of celebrity life," including the fact that "wackos will wait in the woodwork to pop out at certain moments in your life to

2

inject a little adrenaline into your life experience." FAC ¶ 38. Seinfeld humorously observed that the unnamed author was a "three-named woman" and, while the audience laughed, joked that "many of the three-named people do become assassins." *Id*. This exchange was part of a broader comedic routine that included outlandish jokes about the "paranoia" and "hostility" surrounding cell phones, the answering machine habits of "tribesmen in Africa," "stealing" extra copies of newspapers out of the *USA Today* box, the fact that a "non-profit" "doesn't sound like a good business," and his description of fathers as "day-old helium balloon[s], just floating, not shiny anymore." *See* Snyder Decl. Exs. D and E. On the same day, Seinfeld appeared on *E! News* to promote *Bee Movie*. He sarcastically quipped that he asked comedian Chris Rock to star in *Bee Movie* because Rock was "sitting around with nothing to do," and he joked about visiting local hot dog stands with Oprah Winfrey. *Id*. The interviewer asked him about the "controversy" surrounding his wife's cookbook. FAC ¶ 41. To the host's laughter, Seinfeld continued his comic routine from the *Late Show*, joking that "she thinks she invented vegetables" "[a]nd she's accusing my wife of stealing her mashed-up carrots." *Id*.

These hyperbolic, joking, sarcastic statements could not have been understood by a reasonable viewer to constitute an assertion that Lapine "fabricat[ed] opportunistic allegations of plagiarism." Opp. at 13. Well aware that this is the case, Lapine retreats from a discussion of Seinfeld's actual hyperbolic statements in her opposition brief, resorting instead to a patent mischaracterization of these statements. *See* Opp., Section C. This Court must look not to Lapine's mischaracterizations of Seinfeld's statements, but rather at the words themselves in context and give them a reasonable meaning. *James v. Gannett Co.*, 40 N.Y.2d 415, 419, 421 (1976) ("it is for the court to decide whether the words are susceptible of the meaning ascribed to

them").[1]  Here, based on both the immediate and broader context of the statements, a reasonable viewer could not have taken them to be anything more than Seinfeld's humorous opinion about the "cookbook controversy."

**B.    Seinfeld's Statements Are Absolutely Protected Statements Of Humorous Opinion, "Rhetorical Hyperbole" And "Vigorous Epithets"**

Perhaps the most glaring deficiency in Lapine's latest approach to alleging defamation is that *even if* Seinfeld could have been understood as implying that Lapine "fabricat[ed] opportunistic allegations of plagiarism against his wife," Opp. at 13, this is indisputably a protected statement of opinion—indeed, it is a statement of *legal opinion*, a particularly inappropriate predicate for a defamation claim.[2]  Especially because Seinfeld has lampooned litigiousness on his popular television show, in his comedy act, and in *Bee Movie,* it is ridiculous for Lapine to suggest that a reasonable viewer would have understood Seinfeld to have been acting as a legal expert who was stating as a matter of *fact* the legal ramifications of Lapine's allegations.[3]

---

[1]  *Lenz Hardware, Inc. v. Wilson*, 263 A.D.2d 632, 633 (3d Dep't 1999) (same), *aff'd*, 94 N.Y.2d 913 (2000); *see also Sobek v. Quattrochi*, 2004 WL 2809989, at *2-3 (S.D.N.Y. Dec. 8, 2004) (where a plaintiff's allegations "directly contradict evidence contained in the documents relied upon by a plaintiff, the documents control, and the allegations need not be accepted as true").

[2]  *See infra* n.9; *cf. Village Nurseries v. Greenbaum*, 101 Cal. App. 4th 26, 36-37 (2002) (discussing "judgmental immunity doctrine," which "immunizes attorneys from [malpractice] liability" arising out of their opinion where facts raise "debatable point[s] of law" and there is no one correct answer); *Mignott v. Kreidman*, 7 Misc.3d 1021(A), 2005 WL 1118074, at *2 (Sup. Ct. N.Y. Co. Mar. 15, 2005).

[3]  To the contrary, this Court can take judicial notice of the fact that Seinfeld's statements about the "cookbook controversy" and "vegetable plagiarism" are of a piece with his general mockery of the overly litigious nature of our society.  *See, e.g.*, TV.com, Synopsis of *Seinfeld* Episode 112, *The Postponement*, available at http://www.tv.com/seinfeld/the-postponement/episode/2352/summary.html (describing episode where the character "Kramer
[Footnote continued on next page]

4

In determining whether a statement is actionable fact or non-actionable opinion, this Court must ask "whether the statement[] [is] capable of being proven true or false" and "whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers and listeners that what is being read or heard is likely to be opinion, not fact."  *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008) (citations omitted).[4]  Clearly, whether a person is making an opportunistic allegation of "vegetable plagiarism" and "stealing her mashed-up carrots" is not capable of being proven true or false.  Moreover, based on "the content of the whole communication, its tone and apparent purpose," *Immuno A.G. v. Moor-Jankowski*, 77 N.Y.2d 235, 250 (1990), a "reasonable [viewer] could [not] have concluded that [the statements] were conveying facts about the plaintiff," *Levin v. McPhee*, 119 F.3d 189, 196 (2d Cir. 1997) (citations omitted), *cert. denied*, 500 U.S. 954 (1991).

Seinfeld's statements were made in the humorous and lighthearted context of a comedic dialogue with Mr. Letterman on the *Late Show* and were part of a larger comedic routine

---

[Footnote continued from previous page]
'tries' to sneak in a gourmet coffee [to the theater], spills it and his lawyer says he has a case"); TV.com, Synopsis of *Seinfeld* Episode 113, *The Maestro*, available at http://www.tv.com/seinfeld/the-maestro/episode/2353/ summary.html ("Kramer's out of court settlement in his lawsuit against the coffee house, free coffee at any location around the world, gets him 'hopped up on the caffeine.'"); A.O. Scott, Movie Review, *A Drone No More: No Hive For Him!*, N.Y. TIMES, Nov. 2, 2007 (describing the plot of *Bee Movie* as "[w]hen [main character] Barry discovers that honey is sold in supermarkets, and that it is harvested from captive bees held in smoky, shoddy fake hives, he sues the human race, going after some of its notorious bee abusers," including celebrities "Ray Liotta, who sells his own brand of honey, and Sting, whose name is obviously offensive to bees").

[4] Although Lapine attempts to argue that the determination of whether a statement is protected opinion or actionable fact should be made by the jury, Opp. at 12, it is hornbook law that this is a legal question for the Court to decide.  *See, e.g.*, *Mr. Chow v. Ste. Jour Azur S.A.*, 759 F.2d 219, 224 (2d Cir. 1985).

covering a range of topics.[5]  Punctuated by audience laughter, Mr. Letterman laughed too,

declaring the controversy "ridiculous," and joking that people have been "mashing up vegetables

since the beginning of time."  *See* Snyder Decl. Exs. D and E.  The remainder of the statements

were made in a humorous and lighthearted interview on a celebrity gossip program, *E! News*, in

which Seinfeld joked about visiting local hot dog stands with Oprah Winfrey and about Chris

Rock "sitting around with nothing to do."  *Id*.  Viewers of both programs could not reasonably

have expected a "rigorous and comprehensive presentation of factual matter."  *Immuno A.G.*, 77

N.Y.2d at 253.[6]  Rather, Seinfeld's statements were exactly the sort of hyperbole, speculation,

and opinion that has consistently been held not to constitute defamation.[7]

---

[5]  Lapine misleadingly relies on dicta from *Frank v. National Broadcasting Co.*, 119 A.D.2d 252, 261-62 (2d Dep't 1986), arguing that humor alone will not "immunize the authors of a malicious or abusive attack upon a plaintiff's character or reputation."  Opp. at 11.  But Seinfeld does not contend that the humorous nature of his statements *alone* immunizes him from liability.  Rather, the statements are not actionable because of the *full context* in which they were made, including, among other things, that they were part of a broader comedic routine and were made on a late-night talk show and celebrity gossip program from which viewers would expect hyperbole, speculation, and opinion—not a rigorous presentation of facts.  *See Immuno A.G.*, 77 N.Y.2d at 253.  Moreover, *Frank* itself supports the conclusion that Seinfeld's statements are not actionable.  Despite Lapine's selectively quoted dicta, *Frank* held that statements made on *Saturday Night Live* were not actionable in part because "they were a small comic part of a larger and obviously comic entertainment program."  119 A.D.2d at 261.  And Lapine's failure to address a single case cited by Seinfeld in which courts dismissed defamation claims arising out of comedic statements made on late-night talk shows and in similar contexts, Br. at 15-16 (citing cases), is a glaring omission.

[6]  Lapine's reliance on *Unelko Corp. v. Rooney*, 912 F.2d 1049 (9th Cir. 1990), *cert. denied*, 499 U.S. 961 (1991), Opp. at 11, is misplaced.  There, the court held that Andy Rooney's statement that a particular consumer product "did not work," was not protected opinion but rather a statement of fact.  But that statement was made in the broader context of a serious news program, *60 Minutes*, and in the immediate context of legitimate reviews of other consumer products.  *See id.* at 1052-54.  Andy Rooney's humorous touch did not alter their essential nature as fact-based consumer product reviews, and reasonable viewers could have interpreted them as such.  *See id*. at 1055.  This, obviously, is not the case here.  Likewise, Lapine cites *Rodriguez v. Panayiotou*, 314 F.3d 979 (9th Cir. 2002), Opp. at 11, but *Rodriguez* is also easily distinguishable.  There, the defendant accused the plaintiff of illegal

[Footnote continued on next page]

Lapine attempts to argue that Seinfeld's statements were likely to be construed as factual assertions because they "were made against the background of public allegations that his wife has in fact plagiarized Lapine's book" and were "addressing a real life controversy about his wife's cookbook." Opp. at 14. This argument is exactly backward. Precisely because of this controversy, a reasonable viewer could *not* have understood Seinfeld's statements to be anything but his own biased opinion. *See Immuno A.G.*, 77 N.Y.2d at 254 (statements in a letter to the editor held to be protected opinion where the "letter itself related to a public controversy" and would therefore have been interpreted as a partisan viewpoint, not a statement of fact); *Costanza v. Seinfeld*, 693 N.Y.S.2d 897, 900 (Sup. Ct. N.Y. Co. 1999), *aff'd* 279 A.D.2d 255 (1st Dep't 2001) (dismissing defamation allegation because the statement that the plaintiff who filed a lawsuit was a "'flagrant opportunist' in the context of the circumstances under which it was

---

[Footnote continued from previous page]

conduct. *Rodriguez*, 314 F.3d at 983-84. It is well-established that such statements are an exception to the rule protecting opinion. *See, e.g.*, *Cianci v. New Times Pub. Co.*, 639 F.2d 54, 63 (2d Cir. 1980). In addition, the defendant's "statements asserted the precise factual nature of his accusation," and "charged [the plaintiff] with the specific and objectively verifiable acts of genital exposure and masturbation," which were "provably false factual assertions of what [the plaintiff] was accused of having committed." *Rodriguez*, 314 F.3d at 987. Seinfeld did no such thing; in sharp distinction to the statements at issue in *Rodriguez*, his "loose, figurative, or hyperbolic language" "negate[d] the impression" that he was making factual statements. *Milkovich*, 497 U.S. at 21. Moreover, *Rodriguez* actually *supports* Seinfeld's argument that a statement regarding whether or not a person plagiarized another's work is protected opinion—not actionable fact. *See* 314 F.3d at 986 (holding that the defendant's statements that the plaintiff committed entrapment were "opinion statements, and not statements of fact").

7  *See, e.g.*, *Buttons v. Nat'l Broad. Co.*, 858 F. Supp. 1025, 1028 (C.D. Cal. 1994) (defamation claim based on comments by a late-night talk show host dismissed because "it [was] clear from the context that the statement was not intended as and would not be reasonably understood as an assertion of fact"); *see also Immuno A.G.*, 77 N.Y.2d at 253 (focusing on the context of the communication and holding that it was protected opinion because "[t]he common expectation of a letter to the editor is not that it will serve as a vehicle for the rigorous and comprehensive presentation of factual matter but as one principally for the expression of individual opinion").

uttered is a statement of opinion"). When Seinfeld spoke about the "cookbook controversy" involving his wife, he made it clear that he was not a "disinterested observer," further supporting the obvious conclusion that the challenged statements "could not have been understood by a reasonable [viewer] as assertions of fact that were proffered for their accuracy." *Brian v. Richardson*, 87 N.Y.2d 46, 53 (1995). Statements made in such an obviously personal context can only be viewed as opinion.[8] Moreover, courts repeatedly hold that statements about whether allegations of wrongdoing have merit are quintessential statements of opinion.[9]

This Court should therefore reject Plaintiff's attempt to "[i]solat[e] [the] challenged speech" and "extract[] its express and implied factual statements, without [reference to] the full context in which they were uttered." *Immuno A.G.*, 77 N.Y.2d at 255. "[A] reasonable person

---

[8] *See, e.g.*, *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 294 (1986) (affirming dismissal of defamation claim based in part on the fact that the statement was "prepared and played as part of [a] union's effort to punish a former member" supports finding of opinion); *Dworin v. Deutsch and Deutsch Inc.*, 2008 WL 508019, at *4 (S.D.N.Y. Feb. 22, 2008) (dismissing libel claim where statements about "a man with whom [defendant] was engaged in a bitter power struggle" could only be viewed by a "reasonable reader" as conveying defendant's "own biased opinion"); *Huggins v. Povitch*, 1996 WL 515498, at *7 (Sup. Ct. N.Y. Co. Apr. 19, 1996) (dismissing claims where allegedly defamatory statements about former husband were made as part of the "give and take of a television talk show" and could not have be taken as objective fact because it was "obvious to the viewer" that the remarks were "likely to reflect a certain personal bias"); *see also Bakal v. Weare*, 583 A.2d 1028, 1030 (Me. 1990) ("the contested language of [the] letter, particularly when read in the context of . . . the ongoing public dispute, does not convey a defamatory message to a reasonable reader").

[9] *See, e.g.*, *Gotbetter*, 259 A.D.2d at 335 (statement calling plaintiff's suit "'baseless' is not actionable because [it] is merely an opinion"); *Bilal El-Amine v. Avon Prods.*, 293 A.D.2d 283, 283 (1st Dep't 2002) ("the statement by defendant to the media that plaintiff's claim against it was without merit constituted mere opinion, and was therefore nonactionable"); *Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 836, 850 (S.D.N.Y. 2000) (because "statements that Stouffer's claims are 'absurd,' 'ridiculous,' or 'meritless' neither have precise meanings, as they may signify different things to different individuals; nor, because of their relative meanings, are they susceptible of being proven false" they are "conjecture, hypothesis, or speculation, which signals the [observer] that what is said is opinion, and not fact") (citations omitted).

encountering [the statements] in context" would undoubtedly have understood them to be statements of opinion.[10]  *Id*.  And because "statements of opinion are absolutely privileged and shielded from claims of defamation . . ., no matter how vituperative or unreasonable the opinions may be," Seinfeld's statements are plainly not actionable.  *Roth v. United Federation of Teachers*, 5 Misc.3d 888, 897 (Sup. Ct. Kings. Co. 2004).

In addition, although Lapine attempts to avoid Seinfeld's actual statements in favor of her own mischaracterization of them, she cannot escape the fact that they are clearly "rhetorical hyperbole" and "vigorous epithets" entitled to absolute protection under the First Amendment. Seinfeld's satirical use of the words "assassin," "angry," "hysterical," "wacko," and "nutjob" is precisely the type of rhetorical hyperbole and use of vigorous epithets that the U.S. Supreme Court and the New York courts have consistently protected.[11]  Well aware that her defamation

---

[10]  Lapine fails to distinguish the numerous cases cited by Seinfeld for the unassailable proposition that "context is critical to the determination of whether a statement is protected opinion."  Br. at 14; *see* Br. at 14-16 (citing cases); *see also, e.g.*, *Immuno A.G.*, 77 N.Y.2d at 254.  Apart from lifting generic quotations from a handful of cases—whose holdings actually undermine her claims, *see, e.g., supra* n. 5—Lapine does nothing to demonstrate how the context of Seinfeld's statements could possibly lead a reasonable viewer to interpret them as anything other than pure opinion.  Lapine ignores both the broader context of the *Late Show* and *E! News* and the immediate context of Seinfeld's comedic, hyperbolic statements.  *See* Br. 14-16 (citing cases).

[11]  *See, e.g.*, *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 283-84, 286 (1974) (characterization of non-union employee as "scab" and a "traitor" with "rotten principles" was not actionable because such epithets "cannot be construed as representations of fact," but are merely "rhetorical hyperbole" protected by the First Amendment); *Greenbelt Coop. Pub. Ass'n, Inc. v. Bresler*, 398 U.S. 6, 14 (1970) (use of term "blackmail" to describe real estate developer's negotiating position was "no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the developer's] negotiating position extremely unreasonable"); *Immuno A.G.*, 77 N.Y.2d at 244 ("rhetorical hyperbole" and "vigorous epithets" are absolutely protected by the First Amendment). Again, Lapine fails to distinguish—or even address—a *single* case cited by Seinfeld for the black-letter law that "rhetorical hyperbole" and "vigorous epithets" such as Seinfeld's statements are absolutely protected.  *See* Br. at 16-18 (collecting cases).  Rather, Lapine's

[Footnote continued on next page]

claim is barred by long-standing precedent, Lapine abandons the allegations in her Amended

Complaint, which hinged on a distorted mischaracterization of Seinfeld's hyperbole and

epithets.[12]  Lapine's revised defamation allegations in her opposition brief rely solely on

Seinfeld's alleged opinion regarding the validity of Lapine's plagiarism claims against his wife.

But because the comic "tenor" of Seinfeld's comments and his "loose" and "hyperbolic"

language undoubtedly negate any impression that a verifiable factual assertion was intended, re-

writing her Amended Complaint will not save Lapine's ill-fated suit.[13]

　　　　Any other conclusion would have dire consequences for free expression, chilling

comedians from telling jokes about lawsuits, creating a new species of defamation claims

targeting legal commentary, and punishing persons who are simply defending themselves from

---

[Footnote continued from previous page]
　　attempt to re-write her Amended Complaint—coupled with her telling silence on this point—
　　all but concede that her defamation claim is meritless.

[12]  *Cf., e.g., Anti-Monopoly, Inc., v. Hasbro, Inc.,* 958 F. Supp. 895, 907 & n.11 (S.D.N.Y. 1997)
　　("[T]he failure to provide argument on a point at issue constitutes abandonment of the
　　issue."), *aff'd*, 130 F.3d 1101 (2d Cir. 1997), *cert. denied*, 525 U.S. 813 (1998); *Ortho
　　Pharm. Corp. v. Cosprophar, Inc.,* 828 F. Supp. 1114, 1129 (S.D.N.Y. 1993), *aff'd*, 32 F.3d
　　690 (1994).

[13]  *See, e.g., CACI Premier Technology v. Rhodes*, -- F.3d --, 2008 WL 2971803, at *19 (4th Cir.
　　Aug. 5, 2008) (calling military contractors "killers" and "mercenaries" and stating that
　　"anyone wishing to torture, kill, or murder should go to work for one of the contractors" was
　　protected use of "hyperbole and exaggeration"); *Ram v. Moritt*, 205 A.D.2d 516, 517 (2d
　　Dep't 1994) (calling a doctor a "liar," "cheat," and "debtor" is not actionable); *Roth*, 5
　　Misc.3d at 898  ("Principal from Hell" and "Satan" are protected statements).  *See also
　　Milkovich*, 497 U.S. at 21 (even if a statement expresses or implies factual assertions, it is not
　　actionable if it is couched in "loose, figurative, or hyperbolic language" because "such
　　language "negate[s] the impression that the writer was seriously maintaining" facts about the
　　plaintiff); *Tel. Sys. Int'l, Inc. v. Cecil*, 2003 WL 22232908, at *3 (S.D.N.Y. Sept. 26, 2003)
　　(statement that plaintiff was "ripping him off" was protected because it was "figurative and
　　hyperbolic, and not capable of being disproved"); *Huggins*, 1996 WL 515498, at *8
　　(rhetorical hyperbole is protected because it "denotes opinion rather than fact").

what they believe to be baseless public charges of wrongdoing.  The First Amendment and New York law forbid this result.  Accordingly, the claim should be dismissed.

**C.    Seinfeld's Statements Are Protected Pure Opinion—Not Actionable "Mixed Opinion"—Because They Are Not Based On Falsely Stated Or Implied Defamatory Facts About Lapine**

In an effort to skirt the inescapable conclusion that Seinfeld's statements are absolutely protected opinion—not factual assertions—Lapine attempts to cast those statements as actionable "mixed opinion" that misstate the facts on which they are based or imply the existence of undisclosed facts.  Opp. at 15-17.  This argument goes nowhere.

None of the alleged "facts" that form the basis of Seinfeld's alleged opinion that Lapine's lawsuit is meritless were grossly misstated.  Lapine argues that Mr. Seinfeld's statements on the *Late Show* that the "books came out at same time," FAC ¶ 38, and that Ms. Seinfeld did not see and read *The Sneaky Chef* before she published *Deceptively Delicious*, *id*., were false and somehow convert his non-actionable statements of opinion into actionable defamation.[14]  Opp. at 15-16.  But these statements are not false misrepresentations or gross distortions of the facts.  *See Parks v. Steinbrenner*, 131 A.D.2d 60, 62-63 (1st Dep't 1987).  According to Lapine's own Amended Complaint, *The Sneaky Chef* came out in April 2007, and in May 2007, Ms. Seinfeld and HarperCollins were already marketing *Deceptively Delicious*.  FAC ¶ 23, 27.  Because *Deceptively Delicious* was already being publicly marketed by at least May 2007, only one month after Lapine's book was released, it was certainly not a gross distortion of the facts to state that the "books came out at the same time."

---

[14] Lapine also alleges that Mr. Seinfeld falsely denied that Ms. Seinfeld plagiarized *The Sneaky Chef*.  Opp. at 16.  But Mr. Seinfeld never made any such statement.  And even if he did, such a statement could only be interpreted as his biased opinion.  *See supra* Sections I.A & I.B.

Moreover, these are not the sort of "substantial and material misrepresentation[s] of fact" that have been held to make statements of opinion actionable. *Chalpin v. Amordian Press*, 128 A.D.2d 81, 86 (1st Dep't 1987). An opinion based on facts that are "substantially true" is a protected pure opinion. *Kamalian v. Reader's Digest Assn., Inc.*, 29 A.D.3d 527, 528 (2d Dep't 2006). And "[a] statement of opinion based on fully disclosed facts can be punished *only* if the stated facts are themselves false *and demeaning*." *Standing Comm. on Discipline of the U.S. Dist. Court v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995) (emphasis added); *Cianci*, 639 F.2d at 65 (opinions are actionable only "when they convey false representations of defamatory fact" or imply the existence of undisclosed defamatory facts); RESTATEMENT (SECOND) OF TORTS § 566, cmt. c ("A simple expression of opinion based on disclosed . . . nondefamatory facts is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is.").[15] The allegedly false statements at issue here are not only *not* defamatory facts about Lapine, they have nothing to do with her whatsoever: They are merely statements about Ms. Seinfeld and her book and thus cannot serve as the basis for Lapine's defamation claim.

Nor are Seinfeld's statements actionable as mixed opinion based on undisclosed facts. In her opposition brief, Lapine butchers the controlling law by failing to mention a necessary

---

[15] Although Lapine relies on *Silsdorf v. Levine*, 59 N.Y.2d 8, 15-16 (1983), *cert. denied*, 464 U.S. 831 (1983), Opp. at 15, that case has no application here. *Silsdorf* held that a statement of opinion was actionable where it was based on a litany of falsely misstated or grossly distorted *defamatory* facts about the plaintiff. *Id*. at 14-16. The facts at issue all concerned actions taken or not taken by the plaintiff that related to a charge that he was a corrupt official. *Id*. at 14-16. Lapine's reliance on *Parks*, 131 A.D.2d at 62-63, Opp. at 10, 15, is similarly misplaced. *Parks* held that statements by Yankees' owner, George Steinbrenner, disparaging an umpire were constitutionally protected pure opinion based on their broader and immediate context. *Id*. at 64-66.

element of so-called "mixed opinion" claims based on undisclosed facts:  In order for such a statement to be actionable, it must imply the existence of undisclosed *derogatory* facts about the plaintiff.  *Parks*, 131 A.D.2d at 62, 66.[16]  Seinfeld's statement, "I know the truth that nothing ever happened," FAC ¶ 41, plainly does not imply that Seinfeld's alleged opinion about Lapine's lawsuit is "based on some undisclosed derogatory facts, unknown to the reader, which support [that] opinion[]."  *Parks*, 131 A.D.2d at 66.  If anything, the statement relates to facts about Seinfeld's wife and what she may or may not have done—not to facts about Lapine.  Moreover, this statement does not imply that it is stating or referring to any facts.  Because it is "vague" and "ambiguous" and "not capable of being objectively characterized as true or false, [it] must be classified as protected opinion."  *Jaszai v. Christie's*, 279 A.D.2d 186, 188 (1st Dep't 2001) ("I have no reason to take this man seriously" is pure—not mixed—opinion).

Under Lapine's theory, every plaintiff claiming defamation based on a statement of constitutionally protected opinion could nonetheless survive a motion to dismiss by simply alleging that the defendant misstated or implied the existence of undisclosed facts—no matter how insubstantial, immaterial, or non-defamatory—in connection with the statement of opinion. But if the "exception to immunity from liability [for mixed opinions]" were held to apply under these circumstances, this "narrow exception would swallow up the constitutional rule."  *Jaszai*, 279 A.D.2d at 188.  And the "chilling effect of protracted litigation" would undermine "the cherished constitutional guarantee of free speech."  *Immuno A.G.*, 77 N.Y.2d at 256.  Because Seinfeld's statements of opinion neither implied the existence of derogatory facts about Lapine

---

[16]  *See also Chalpin*, 128 A.D.2d at 85 (statements are mixed opinion if they "imply[] that the author knows certain facts, unknown to his audience, which support his opinion and are *detrimental* to the person about whom he is speaking") (emphasis added).

nor grossly misstated derogatory facts about her, those statements constitute absolutely protected pure opinion.  Lapine's defamation claim should therefore be dismissed with prejudice.

**D.    Plaintiff's Failure To Allege Slander Per Se Is Fatal**

In her opposition brief, Lapine does not even *attempt* to argue that she has pleaded special damages.  *See* Opp. at 17-18.  Because Lapine has clearly failed to plead such damages, she must plead slander per se to state a viable claim.  *See, e.g.*, *Plonka v. Brown*, 108 Fed. Appx. 31, 31 (2d Cir. 2004), *cert. denied*, 543 U.S. 1148 (2005); *Aronson v. Wiersma*, 65 N.Y.2d 592, 594-95 (1985).  Lapine rests her allegation of slander per se *only* on her contention that Seinfeld's statements relate to her "business, trade, or occupation."  Opp. at 18.  Specifically, Lapine argues that "Seinfeld's accusation that [she] made a false and opportunistic claim of plagiarism against another author" is "incompatible with the proper conduct of [her] business [as an author and cooking professional]."  *Id*.  This strained argument should be summarily rejected.

First, as explained above, Seinfeld never accused Lapine of bringing false accusations of plagiarism.  *See supra* Section I.A.  His statements were pure "rhetorical hyperbole" and "vigorous epithets" that were not made in reference to Lapine's profession as a chef, cookbook author, and nutritionist and in no way strike at her professional competence.[17]  At most, Seinfeld's statements were simply "general reflection[s] upon [Lapine's] character or qualities," which does not constitute slander per se.  *Aronson,* 65 N.Y.2d at 594 (citations omitted).

---

[17]  *See, e.g.*, *Aronson,* 65 N.Y.2d at 594 (statement that a plaintiff was neglectful in her job as a linguist did not "defame [her] in her trade, business, or profession" because it was a general reflection on her character or qualities); *Lloyd v. Cardiology & Internal Medicine of Long Island, PLLC*, 13 Misc.3d 1129(A), 2007 WL 2410853, at *6 (Sup. Ct. Nassau Co. Aug. 23, 2007) (statement that plaintiff had a "mental breakdown" did not implicate her professional activities or qualifications as a physician assistant); *Stein v. Trager*, 36 Misc.2d 227, 228-29 (Sup. Ct. Erie Co. 1962) (statements by professor that research fellow was a "psychopath," "anti-social," "immoral" and a "liar" were not slanderous per se).

14

Second, even if Seinfeld had stated that Lapine's allegations of plagiarism were meritless, this statement also does not constitute slander per se. *See Shea v. Angulo*, 1994 WL 86374, at *3 (S.D.N.Y. Mar. 16, 1994) (statements that the plaintiff has filed "nuisance suits" against other money managers "does not tend to injure plaintiff in his trade or business as a stock broker").[18] At worst, it "relates to a general reflection upon [her] character or qualities," and is not "incompatible with the proper conduct of her business." *Aronson*, 65 N.Y.2d at 594.

## CONCLUSION

For all of these reasons, this Court should dismiss the Sixth Claim of the Amended Complaint with prejudice.

Dated: New York, New York
       August 27, 2008

GIBSON, DUNN & CRUTCHER LLP

By: _____
Orin Snyder (OS-3122)
Theodore J. Boutrous, Jr. (*Pro Hac Vice*)
Laura Browning (LB-9931)

200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

*Attorneys for Defendant Jerry Seinfeld*

---

18 *Cf. MapInfo Corp. v. Spatial Re-Engineering Consultants*, 2006 WL 2811816, at *15 (N.D.N.Y Sept. 28, 2006) ("a claim that a company is 'litigious' does not constitute defamation per se"); *Levittown Norse Assoc. v. Joseph P. Day Realty Corp.*, 150 A.D.2d 263, 264 (1st Dep't 1989) (a statement asserting that a party has been sued "cannot reasonably be interpreted to disparage that party's professional ability, or attribute to it any wrongdoing").