UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MISSY CHASE LAPINE and
THE SNEAKY CHEF, Inc.,

        Plaintiffs,

    -v-                                No.  08 Civ. 128 (LTS)(RLE)

JESSICA SEINFELD, et al.,

        Defendants.
-------------------------------------------------------x

**OPINION AND ORDER**

APPEARANCES:

SEEGER WEISS LLP
  By:  Christopher Adam Seeger, Esq.
       David R. Buchanan, Esq.
One William Street, 10th Floor
New York , NY 10004

GIRARDI & KEESE
  By:  Howard B Miller, Esq.
      Joseph Gjonola, Esq.
1126 Wilshire Boulevard
Los Angeles, CA 90017

*Attorneys for Plaintiffs*

GIBSON, DUNN & CRUTCHER LLP
  By:  Orin Snyder, Esq.
200 Park Avenue
48th floor
New York , NY 10166
    – and –
  By:  Theodore J. Boutrous , Jr., Esq.
333 South Grand Avenue
Los Angeles , CA 90071

MENAKDER and HERRMANN
  By:  Richard Glen Menaker, Esq.
     Cheryl Lynette Davis, Esq.
10 East 40th Street
New York , NY 10016

*Attorneys for Defendants*

LAURA TAYLOR SWAIN, United States District Judge

Plaintiffs Missy Chase Lapine ("Lapine") and The Sneaky Chef, Inc. (collectively "Plaintiffs"), bring this action for copyright infringement, trademark infringement and unfair competition pursuant to 17 U.S.C. §§ 101 et seq. and Sections 32 and 43(a) of the Lanham Act against Defendants Jessica Seinfeld ("Seinfeld"), HarperCollins Publishers, L.L.C.[1] ("HarperCollins"), and Departure Productions, LLC ("Departure") (collectively the "Cookbook Defendants"), alleging that a cookbook by Defendant Jessica Seinfeld that features healthy and appealing children's cuisine infringes Plaintiff Lapine's rights in her thematically similar, earlier-published cookbook. Plaintiff Lapine also asserts a number of state law claims against the Cookbook Defendants[2] and brings a claim for defamation against Defendant Jerry Seinfeld ("Jerry Seinfeld") (collectively with Cookbook Defendants, "Defendants"). The Cookbook Defendants moved to dismiss the First through Fifth, Seventh and Eighth Claims for Relief in the Amended Complaint ("Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Defendant Jerry Seinfeld moved, separately, to dismiss the Sixth Claim for Relief. The Court converted the motions to dismiss to motions for summary judgment by Order dated September 18, 2008, and the parties thereafter made additional submissions. The Court has jurisdiction of Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331, 1338, and 15 U.S.C. § 1121 and has supplemental jurisdiction of Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 and 1338(b).

---

[1]     Sued as HarperCollins Publishers, Inc.

[2]     Plaintiff Lapine asserts causes of action for trademark infringement under NY GBL § 360k against Seinfeld, HarperCollins and Departure; injury to business reputation under NY GBL § 360-1 against Seinfeld, HarperCollins, and Departure; breach of implied contract against HarperCollins; and misappropriation and unfair competition against HarperCollins.

In connection with the expanded motion practice, Plaintiffs requested a 60-day continuance in which to take certain depositions, Plaintiffs interposed hearsay objections to certain of Defendants' evidentiary submissions, and Defendants moved to strike certain elements of Plaintiffs' statement pursuant to S.D.N.Y. Local Civil Rule 56.1 as improper legal argument, immaterial to the instant motion practice, or both, and to strike certain of Plaintiffs' exhibits as hearsay. The Court heard oral argument on, and denied, Plaintiffs' application for discovery in December 2008.

The Court has reviewed thoroughly all of the parties' submissions in connection with the pending motions and, for the reasons explained below, sustains Plaintiffs' evidentiary objections to the extent that none of the objected-to material has been considered for the truth of matters disputed by Plaintiffs, has carefully distinguished between legal argument and factual matters in determining the material undisputed facts, has not considered for their truth the factual assertions in the exhibits to which Defendants have objected, and grants Defendants' motions for summary judgment with respect to Plaintiffs' First through Fifth Claims for Relief. The Court declines, in light of the dismissal of all of Plaintiffs' federal claims against the Cookbook Defendants and the lack of any other basis for the exercise of original jurisdiction of Plaintiffs' state law defamation claim, to exercise supplemental jurisdiction of Plaintiffs' Sixth Claim for Relief. That claim, which is brought by Plaintiff Lapine against defendant Jerry Seinfeld only, turns on factual and legal issues distinct from those involved in the federal and other state claims; disposition of that distinct state law claim here would not be supported by significant considerations of judicial economy. The Court likewise declines to exercise supplemental jurisdiction of Plaintiffs' Seventh and Eighth Claims for Relief, which sound in  state law

doctrines of implied contract and misappropriation.  Resolution of those claims turns on questions of the nature, notoriety and originality of ideas that are distinct from the similarity and confusion questions that are at the core of Plaintiff's First through Fifth Claims.

<u>BACKGROUND</u>

The following material facts are undisputed unless otherwise noted.

Plaintiff Lapine, the author of the allegedly infringed cookbook, was trained in classical cooking techniques at the Institute of Culinary Education, received a certification in the master techniques of healthy cooking from the New School Culinary Arts, N.Y., is a member of Parenting Magazine's team of experts, and served on the Culinary Arts faculty of the New School Culinary Arts, in New York City.  (Lapine Decl. in Opp. at ¶ 6.)  Additionally, according to her cookbook, Lapine "offers Sneaky Chef workshops, cooking classes and coaching to teach families how to eat healthier."  (Snyder Decl., Ex. B, <u>The Sneaky Chef</u>.)  Plaintiff Lapine has not, however, worked as in any way a professional nutritionist or a professional chef. (<u>See</u> Lapine Decl. in Opp. at ¶ 57.)

Lapine worked on her cookbook full time for two years.  (Lapine Decl. in Opp. at ¶ 16.)  According to Lapine, her goal was to write a book that offered parents a way to get vegetables into their children with minimal effort, minimal disruption to the family's cooking and kitchen routine, and with no fight from the children over eating vegetables.  (<u>Id.</u> at ¶ 12.)  Plaintiff Lapine submitted her cookbook proposal, including extensive chapters from the cookbook, to HarperCollins February 2006.  (Lapine Decl. in Opp. at ¶ 20.)  The proposal was rejected, but the written work was not returned.  (<u>Id.</u>)  With the assistance of a literary agent, Plaintiff Lapine again submitted her proposal to HarperCollins in May 2006.  (<u>Id.</u> at ¶ 21.)

Lapine's proposal was again rejected.  (Id.)

Plaintiff Lapine's cookbook, The Sneaky Chef: Simple Strategies for Hiding Healthy Food in Kids' Favorite Meals ("The Sneaky Chef") was published in April 2007 by Running Press, an imprint of Perseus Books Group.  (Defs' 56.1 Stmt at ¶ 6; Pls' 56.1 Stmt at ¶ 6; Snyder Decl., Ex. B, The Sneaky Chef.)[3]  Plaintiff Lapine appeared on a number of television programs and engaged in other marketing activities to promote the cookbook.  (Lapine Decl. in Opp. at ¶ 28.)  The Sneaky Chef appeared on the New York Times best seller list for the week of April 22, 2007.  (Id. at ¶ 25; id., at Ex. 6.)

The allegedly infringing work, Deceptively Delicious: Simple Secrets to Get Your Kids Eating Good Food ("Deceptively Delicious"), was published in October 2007, by Collins, an imprint of HarperCollins.  (Defs' 56.1 Stmt at ¶ 7; Pls' 56.1 Stmt at ¶ 7; Snyder Decl., Ex. A, Deceptively Delicious.)  Defendant Jessica Seinfeld, who is credited as the author of the allegedly infringing cookbook, is the wife of Jerry Seinfeld, a well-known comedian.  (Defs' 56.1 Stmt at ¶ 5; Pls' 56.1 Stmt at ¶ 5; Snyder Decl., Ex. A, Ex. CC ¶ 3.)  In her cookbook, Seinfeld is described as a mother of three and the founder of a (non food-related) non-profit organization.  (Snyder Decl., Ex. A, at back cover.)  Seinfeld asserts in her book that she is not a professional chef and states that she enlisted the aid of a chef in preparing her recipes for the cookbook.  (Snyder Decl., Ex. A at 11.)  Deceptively Delicious reached number one on the New York Times

---

[3]     The Court's citation to "56.1 Statements" refer to those statements addressing the claims against the Cookbook Defendants.  All citations of the parties' 56.1 statements incorporate the evidence cited therein.  The term "Snyder Decl." refers to the "Declaration of Orin Snyder in Support of the Converted Motion of Defendants Jessica Seinfeld, HarperCollins Publishers, Inc. and Departure Productions LLC for Summary Judgment."

best seller list.  (Defs' 56.1 Stmt at ¶ 8; Pls' 56.1 Stmt at ¶ 8.)

Both cookbooks "recommend camouflaging carefully-selected pureed healthy food inside children's favorite meals."  (Defs' 56.1 Stmt at ¶ 25 (quoting Compl. at ¶ 33(b)); Pls' 56.1 Stmt at ¶ 25; Snyder Decl., Ex. A, B.)  Both books describe the author's struggle to get her children to eat healthy food and how she first began to hide healthy food in food her children enjoyed (Snyder Decl., Ex. B, at 19-28; Snyder Decl., Ex. A, at 10-11.)  Each cookbook includes a foreword or introduction by one or more doctors.  (Snyder Decl., Ex. B, at 15; Snyder Decl., Ex. A, at 8.)  Deceptively Delicious also includes a section by a nutritionist.  (Snyder Decl., Ex. A, at 32.)  Both cookbooks include lists of various items, including food staples and kitchen tools that the reader should have on hand.  (Snyder Decl., Ex. B, at 55-61; Snyder Decl., Ex. A, at 18-23.)

The Sneaky Chef includes thirteen different methods for "sneaking healthy food into our little ones."  (Snyder Decl., Ex. B, at 63.)  One of the thirteen methods is "Puree."  (Id. at 64.)  Each method is associated with a particular icon.  (See, e.g., id. at 92.)[4]  Lapine describes how to use each method and identifies the health benefits of each method.  (Id. at 64-91.)  The Sneaky Chef includes a chapter of "Make-Ahead Recipes," which include a number of purees and juices, as well as frozen bananas, "better breading" and a flour blend.  (Id. at 96-122.)

Deceptively Delicious focuses on one method of sneaking healthy food into kid-friendly food: pureeing.  (Snyder Decl., Ex. A, at 16, 24.)  Seinfeld devotes several pages to

---

[4]        These icons range from the intuitive (a food processor representing the "puree" method) to symbols that only someone familiar with the text could identify (an artichoke for "identify foods kids are likely to enjoy straight up" and what appears to the Court to be a small child in a pot, for "use foods that hide well").  (Snyder Decl., Ex. B, at 92.)

"how-to" puree vegetables and fruits.  (<u>Id.</u> at 28-30.)  The book also includes a page on cooking

basics (rice, pasta, chicken and beef).  (<u>Id.</u>)

       Each cookbook includes an extensive recipe section.  In <u>The Sneaky Chef</u>, recipes

are grouped into five categories: breakfast, lunch, snacks, dinner, treats.  (Snyder Decl., Ex. B, at

127-259.)  Each recipe includes "nutrition highlights" under the recipe name, the applicable

icon(s), and comments on the recipe.  (<u>Id.</u>)  The regular recipe ingredients are listed in orange and

the "sneaky" ingredients (which include not only the make-ahead recipes, but also other

"healthy" ingredients such as ground almonds, ricotta cheese and evaporated low-fat milk (<u>see,</u>

<u>e.g.,</u><u>id.</u> at 128, 140, 170)) are printed in gray.  Several pages of color photos of the prepared

recipes are included in the cookbook.  (<u>Id.</u> at 161-168.)

       In <u>Deceptively Delicious</u>, the recipes are divided into three sections – breakfast,

mealtime and dessert.  (<u>See</u> Snyder Decl., Ex. A, at 7, 47-201.)  Each recipe includes a drawing

of the fruit or vegetable used in the included puree, and the hidden fruit or vegetable is listed

under the recipe name.  (<u>Id.</u>)  The recipes generally include a short comment or tip from the

author.  (<u>Id.</u>)  Some recipes list an additional benefit next to the number of servings – for

example, that it is packable or contains no meat.  (<u>See</u>, <u>e.g.</u>, <u>id.</u> at 75, 91.)  There is a color

photograph of the prepared food next to almost every recipe and many of the recipes include the

picture of a member of the "Kitchen Cabinet" (Seinfeld's family) and his or her comments.  (<u>See</u>,

<u>e.g.</u>, <u>id</u>. at 14-15, 57.)  At the end of the recipe section is a short section on the benefits of various

vitamins and minerals, daily recommended allowances and what foods contain the vitamins.  (<u>Id.</u>

at 202-204.)  _____

<u>DISCUSSION</u>

<u>Plaintiffs' Objection to Evidence and Defendants' Motion to Strike</u>

Plaintiffs object to certain evidence that Defendants have presented in connection with their converted motions for summary judgment, arguing that it is inadmissible hearsay under Federal Rule of Evidence 802.  (<u>See</u> Docket Entry No. 71.)  The Court has carefully reviewed the evidence that Plaintiffs have identified and find that Plaintiffs' objections are meritorious.  Plaintiffs' objections are sustained to the extent that the Court has not considered any of the objected-to portions of evidence for the truth of the matters asserted therein.

Defendants have moved to strike Plaintiffs' statement of "Additional Material Facts" for failure to comply with Local Civil Rule 56.1 and to strike exhibits 4, 5, and 6 of the Declaration of Joseph Gjonola as impermissible hearsay.  Defendants' motion is granted to the extent that the Court has disregarded elements of Plaintiffs' Rule 56.1 statement that constitute legal argument rather than facts and has, similarly, considered the parties' contentions as to materiality in identifying the undisputed material facts.  The challenged exhibits have not been considered in light of the Court's decision not to exercise supplemental jurisdiction of the defamation claim.

<u>Defendants' Summary Judgment Motions</u>

Summary judgment in favor of a moving party is appropriate where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is material "if it 'might affect the outcome of the suit under the governing law,'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable

jury could return a verdict for the nonmoving party.'"  Holtz v. Rockefeller & Co., 258 F.3d 62,

69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The

non-moving party "must do more than simply show that there is some metaphysical doubt as to

the material facts. . . . [T]he nonmoving party must come forward with specific facts showing

that there is a genuine issue for trial."  Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002)

(quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)

(alteration in original)).  "[M]ere conclusory allegations, speculation or conjecture" will not

provide a sufficient basis for a non-moving party to resist summary judgment.  Cifarelli v. Vill.

of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).  The evidence is viewed in the light most favorable to

the nonmoving party and all reasonable inferences are drawn in its favor.  Rubens v. Mason, 527

F.3d 252 (2d Cir. 2008).

####         Copyright Infringement Claim

Plaintiff brings a claim pursuant to 17 U.S.C. §§ 101 et seq., contending that

Deceptively Delicious infringes her copyright in The Sneaky Chef.  The Cookbook Defendants

argue that the copyright infringement claim must be dismissed because the two works are not

substantially similar.

"To prove infringement, a plaintiff with a valid copyright must demonstrate that:

(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a

substantial similarity exists between the defendant's work and the protectible elements of

plaintiff's."  Hamil America Inc. v. GFI, 193 F.3d 92, 99 (2d Cir. 1999) (internal quotation marks

omitted).  "To satisfy the second element of an infringement claim – the 'unauthorized copying'

element – a plaintiff must show both that his work was actually copied and that the portion

copied amounts to an improper or unlawful appropriation." Id. (internal quotations and citations omitted); see also Walker v. Time Life Films, Inc., 784 F.2d 44, 48 (2d Cir. 1986) ("[c]opying may be inferred where a plaintiff establishes that the defendant had access to the copyrighted work and that substantial similarities exist as to protectible material in the two works.").

        Not all copying constitutes copyright infringement; the copying must amount to an improper or unlawful appropriation. As the Second Circuit has repeatedly recognized, "[i]t is an axiom of copyright law that the protection granted a copyrightable work extends only to the particular expression of an idea and never to the idea itself." Reyher v. Children's Television Workshop, 533 F.2d 87, 90 (2d Cir. 1976). Furthermore, "[s]imply because a work is copyrighted does not mean every element of that work is protected." Boisson v. Banian, Ltd, 273 F.3d 262, 268 (2d Cir. 2001). Summary judgment is appropriate in an action for copyright infringement where the similarity concerns only non-copyrightable elements of plaintiff's work or if no reasonable factfinder could find the works substantially similar. Boisson, 273 F.3d at 268.[5]

        In determining substantial similarity, courts usually apply the "ordinary observer test." Hamil America Inc., 193 F.3d at 100. Under this test, "an allegedly infringing work is considered substantially similar to a copyrighted work if the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same." Boisson, 273 F. 3d at 272. Defendants, however, urge the Court to apply a "more

---

      [5]     In determining the viability of Defendants' motion in respect of Plaintiffs' copyright claim, the Court focuses solely on the legal question of substantial similarity as applied to the undisputed material fact, primarily the content of the works themselves. The Court construes the evidence of access and copying, as it must in this summary judgment context, in the light most favorable to Plaintiff.

discerning" test. "Under certain circumstances, when the works at issue contain considerable elements from the public domain that are unprotectible by copyright, the usual 'ordinary observer' test becomes 'more discerning.'" Velez v. Sony Discos, No. 05 Civ. 615, 2007 WL 120686, at *7 (S.D.N.Y. Jan. 16, 2007). Under this "more discerning" test, the court "must attempt to extract the unprotectible elements from our consideration and ask whether the protectible elements, standing alone, are substantially similar." Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1002 (2d Cir. 1995). However, the Second Circuit has instructed courts, in applying the latter test, "not to dissect the works at issue into separate components and compare only the copyrightable elements." Boisson, 273 F. 3d at 272. Doing so would take the test to the extreme by breaking down original works to their basic composite parts and render copyright protection nearly meaningless. Id. The Court need not reach the question of whether application of the "more discerning" test is proper, however, as the Court finds that Plaintiffs have failed to establish substantial similarities between the two works under the ordinary observer test.

          Regardless of which variation is used – the ordinary observer or the more discerning ordinary observer – the substantial similarity analysis is to be "guided by comparing the 'total concept and feel' of the contested works." Id. at 272 (citing Knitwaves, 71 F. 3d at 1003); see, e.g., Streetwise Maps, Inc. v. Vandam, Inc., 159 F.3d 739, 748 (2d Cir. 1998) (focusing "on the overall manner in which Streetwise selected, coordinated, and arranged the expressive elements in its map, including color, to depict the map's factual content," the court was left with "sufficiently different impressions" and found no substantial similarity); Williams v. Crichton, 84 F.3d 581, 587 (2d Cir. 1996) (in evaluating alleged infringement of a literary work including both copyrightable and noncopyrightable elements, the court "examine[s] the

similarities in such aspects as the total concept and feel, theme, characters, plot, sequence, pace, and setting of the [two works]").  The total concept and feel inquiry is particularly appropriate where the works being compared are less complex than the average literary work, such as children's books.  Reyher, 533 F.2d at 91.  And, while the Second Circuit has noted that the test is not appropriate for every factual scenario, the Second Circuit has repeatedly used the test in the context of visual designs and literary narratives.  Lynx Ventures, LLC v. Miller, 45 Fed. Appx. 68, 70 (2d Cir. 2002) (total concept and feel test not appropriate in a case involving verbatim and wholesale copying of original text; Second Circuit had applied the test to visual designs and literary narratives).

        Nor will identifying some dissimilarity between the original and the allegedly infringing work automatically preclude liability.  Williams v. Crichton, 84 F.3d at 588 ("We also must recognize that dissimilarity between some aspects of the works will not automatically relieve the infringer of liability, for no copier may defend the act of plagiarism by pointing out how much of the copy he has not pirated." (internal quotations omitted)); see also  Warner Bros., Inc. v. American Broadcasting Cos., 720 F.2d 231, 241-42 (2d Cir. 1983) (discussing role of dissimilarities in infringement analysis).  The Second Circuit has repeatedly recognized that, in evaluating the "'substantial similarity' between two works, '[t]he key . . . is . . . the similarities rather than the differences.'"  Attia v. Society of New York Hosp., 201 F.3d 50, 57 (2d Cir. 1999), quoting Novelty Textile Mills, Inc. v. Joan Fabrics Corp., 558 F.2d 1090, 1093 n. 4 (2d Cir. 1977).  However, dissimilarity can be important in determining substantial similarity.  Id. at 58.  "[N]umerous differences tend to undercut substantial similarity."  Durham Industries, Inc. v. Tomy Corp., 630 F.2d 905, 913 (2d Cir. 1980) ("As a matter of logic as well as law, the more

numerous the differences between two works the less likely it is that they will create the same aesthetic impact so that one will appear to have been appropriated from the other.").

Furthermore, in determining whether there is substantial similarity between the works as to protectible elements, it must be remembered that "'scenes a faire,' that is, scenes that necessarily result from the choice of a setting or situation" are not protectible. Walker, 784 F.2d at 50. Neither are "'stock' themes commonly linked to a particular genre." Id.; see also American Direct Marketing v. Azad Intern., Inc., 783 F. Supp. 84, 95 (E.D.N.Y. 1992) ("Material or themes commonly repeated in a certain genre are not protectible by copyright," nor are "so-called scenes à faire.") Thus, similarities as to such elements, which "follow naturally from a work's theme rather than an author's creativity" are not illustrative of the substantial similarity necessary to give rise to copyright infringement liability.

Plaintiffs acknowledge that individual recipes do not necessarily qualify for copyright protection. (Pls' Opp. at 6, citing Publications International, Ltd. v. Meredith Corp., 88 F. 3d 473, 481 (7th Cir. 1996.)); see also 17 U.S.C.A. § 102(b) (excluding from copyright protection "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work"); 37 C.F.R. § 202.1 (including as an example of works not subject to copyright "mere listing of ingredients or contents"). Nor do Plaintiffs argue that Deceptively Delicious incorporates the text of specific recipes from The Sneaky Chef, although they do contend that several of the recipes in Deceptively Delicious match recipe types with specific purees in the same manner as does The Sneaky Chef (e.g., recommending avocado puree as a chocolate pudding ingredient, and spinach puree as an ingredient in brownies). Instead, Plaintiffs argue

principally that the cookbook is subject to copyright protection as a compilation evidencing some

originality.  See Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 348 (1991);

see also MyWebGrocer, LLC v. Hometown Info, Inc., 375 F.3d 190, 193 (2d Cir. 2004)

("compilation of non-protectible facts is copyrightable if it features an original selection or

arrangement of facts, so that the selection or arrangement possesses at least some minimal degree

of creativity"); CK Co. v. Burger King Corp., 122 F.3d 1055, at *2 (2d Cir. 1995) (district court

properly recognized "that the arrangement and combination of otherwise unprotectable elements

may be copyrightable, if the arrangement and combination is itself original and protectable.").

Plaintiffs also acknowledge that the idea of camouflaging vegetables in children's

favorite foods is not copyrightable.  (Pls' Opp. at 10.)  Instead, Plaintiffs argue that The Sneaky

Chef constitutes Lapine's copyrightable expression of the idea of hiding vegetables "by giving

instructions for making vegetable purees in advance, storing them for future use, and then using

them in specially created recipes which include the pre-made purees as ingredients," and that

Deceptively Delicious infringes that expression.  (Id.)

As the Second Circuit has repeatedly recognized, "[i]t is an axiom of copyright

law that the protection granted a copyrightable work extends only to the particular expression of

an idea and never to the idea itself."  Reyher, 533 F.2d at 90.  The difficulty of distinguishing

between an idea and an expression has long been recognized.  Judge Learned Hand's oft-quoted

observation from 1930 is no less applicable today:

> Upon any work . . . a great number of patterns of increasing
> generality will fit equally well, as more and more of the incident
> is left out. The last may perhaps be no more than the most general
> statement of what the [work] is about, and at times might consist
> only of its title; but there is a point in this series of abstractions
> where they are no longer protected, since otherwise the [author]

could prevent the use of his "ideas," to which, apart from their
expression, his property is never extended.

Nichols v. Universal Pictures Corporation, 45 F.2d 119, 121 (2d Cir. 1930).

Plaintiffs' characterization of instructions for making and storing vegetable purees
and then using them as an ingredient in recipes as an expression exemplifies the difficulty
described by Judge Learned Hand. Plaintiffs' description of the allegedly protected expression –
"giving instructions for making vegetable purees in advance, storing them for future use, and
then using them in specially created recipes which include the pre-made purees as ingredients,"
(Pls' Opp. at 10) – is so abstract as clearly to fall into the category of unprotectible process or
idea. It remains nothing more than the very idea that Plaintiffs recognized as unprotectible:
hiding vegetables in foods children enjoy. Plaintiffs' inclusion of process details, primarily
focused on time-saving techniques, is insufficient to transform an unprotectible idea into a
copyrightable expression of that idea. See Attia v. Society of New York Hosp., 201 F.3d at 55
("[A]n author who records an idea has no claim of copyright infringement against the taking of
the idea. And if the idea is recorded at a very general level of abstraction, there may be little or
nothing in the original work that is protected against copying.").

The overlapping subject matter of the books – hiding healthy foods in dishes that
children enjoy by including pre-made purees in popular types of kids' foods – being insufficient
to sustain a claim of copyright violation, the Court turns to Plaintiffs' particular charges of
copying to determine whether, to the extent similarities between the two works exist, such
similarities are sufficiently substantial to support a finding of copyright violation.

*The Alleged Similarities*

Plaintiffs argue that the cookbooks have a similar organization, pattern, structure,

and sequence.  (Pls' Mem. at 10.)  Plaintiffs point out that each cookbook contains, in the same

general order: (1) a cover and title conveying a concept of secretly getting children to eat healthy

foods, (2) drawings illustrating that concept on the cover, spine and first page (3) an introduction

or forward by a doctor (4) a personal narrative by the author describing her struggle, revelation,

recipe testing and effects, (5) a discussion of appliances, (6) a list of essential ingredients, (7)

instructions for making the purees in advance and storing them for later use, and (8) a collection

of individual recipes using those foods.

       Plaintiffs' alleged similarities, with respect to the individual elements and the

order of those elements, are insufficient to sustain their contention that The Sneaky Chef and

Deceptively Delicious are substantially similar within the meaning of copyright law.  The

similarities identified by Plaintiffs are the result of the similar medium of expression used

(cookbooks) or of the similar subject matter that both cookbooks address (hiding healthy foods in

kid-friendly foods).  Stock elements resulting from the initial choice of subject matter are not

protectible.  As the numerous pre-Sneaky Chef cookbooks Defendants have proffered illustrate,

lists of appliances, essential ingredients, instructions and collections of individual recipes are

stock elements of cookbooks.[6]  An introduction by a doctor, an author's narrative about her

---

[6]    See Snyder Decl., Ex. L, at 2, 4 First Meals (listing essential kitchen tools and
equipment and "pantry essentials"); id. at 6-9 Super Foods for Children (listing
"what you need," in terms of "pans, tools, & utensils," for "the pantry," "the
vegetable rack and fruit bowl," "the refrigerator," and "the freezer"); id. at 14-16,
18 The Moms' Guide to Meal Makeovers (listing "Time-saving Kitchen Tools"
and a "Meal Makeover Moms' Shopping List"); Snyder Decl., Ex. GG, at 21, 26
Joy of Cooking (including lists of foods for stocking the kitchen as well as lists of
cooking equipment and baking equipment); see also id. at 6-20 (recipes and
instructions); Snyder Decl., Ex. HH, the art of Hiding Vegetables; sneaky ways to
feed your children healthy food (including collection of recipes and instructions);
Snyder Decl., Ex. II, Sneaky Veggies: How to Get Vegetables Under the Radar &

struggle to convince her kids to eat healthy foods, and a title and artwork using words or pictures

to convey sneaking or hiding vegetables all flow naturally from the chosen subject matter: getting

kids to eat healthy foods by sneaking healthy foods in more desirable, kid-friendly foods.[7]

Furthermore, when a cookbook is based on a particular idea or theme (whether it be vegetarian

cooking, grilling, or desserts), the individual recipes in that book are certain to share that

common theme and will likely share certain similarities with recipes in other cookbooks based on

the same idea.

       Nor does the Court find that the arrangement of the aforementioned elements in

the same general order raises any genuine issues as to actionable substantial similarity of

copyrightable elements of the two works.  Beginning a cookbook with an illustrated cover,

following it with an introduction by a third-party, a narrative by the author, lists of appliances

---

       Into Your Family (same).

[7]    See Snyder Decl., Ex. H, at 4-5 Lunch Lessons: Changing the Way We Feed Our Children (foreword by Mehmet C. Oz, M.D.); id. at 7, Top 100 Baby Purees (preface by Michael Cohen, M.D.); id. at 25, Mom-a-licious (foreword by Alan Greene, M.D.); see also Snyder Decl., Ex. S, at 141 Healthy Food for Healthy Kids (discussing eating habits of sons Robert and Nicolas); id. at 8 First Meals (recognizing that "battles at mealtimes are often one of the most stressful aspects of early parenthood"); Snyder Decl., Ex. HH, at 1 the art of Hiding Vegetables (discussing how "[m]any of us struggle to get one or two portions into our fussy little darlings"); Snyder Decl., Ex. C, at 27-28 Confessions of a Sneaky Organic Cook (since using "sneaky cookery" there are no longer monthly visits to the doctor, the children come home from the dentist without cavities, everyone is in a better mood and the children do better in school); see also Snyder Decl., Ex. HH, cover, 78 the art of Hiding Vegetables (carrot and lettuce wearing sunglasses); Snyder Decl., Ex. C, at cover, 26-28,  Confessions of a Sneaky Organic Cook (back turned on family; hiding cookbook in flour canister; Snyder Decl., Ex. II, at cover Sneaky Veggies: How to Get Vegetables Under the Radar & Into Your Family (vegetables hiding behind pitcher, condiments on table); Snyder Decl., Ex. 47-8, Cookie (article entitled "Sneak It In").

and ingredients (which the Court notes are reversed in the two works), instructions about preparing common ingredients, and a list of recipes, are insufficiently creative or novel modes of expression to render the use of similar organizational structures in similar sequences actionable as a matter of copyright law.  Many of the alleged similarities are shared by cookbooks as a whole and the genre of cookbooks addressing encouraging healthy eating in children, in particular.  See, e.g., American Direct Marketing, 783 F. Supp. at 95 (E.D.N.Y. 1992) (holding that "both the similar content and the similar organization of the commercials are largely such common [unprotectible] items when one considers the genre of television commercials for direct telephone sale of consumer goods").

### *Works Viewed in Totality*

The Court has also examined the total look and feel of the two works.  (See Pls' Opp. at 11, 19; Compl. at ¶ 33.)

Lapine's cookbook is a dry, rather text-heavy work.  It includes an extensive introduction by the author in which she details her experience as a parent of picky eaters, her many attempts to change her children's behavior, the role of food in America, her "sneaky" approach, the various arguments against a sneaky approach and the benefits of using it, her food philosophy and her approach to parenting.

The Sneaky Chef does not focus on purees as the only method for sneaking in healthy foods; it includes 12 other methods.  The purees that are included in The Sneaky Chef are primarily composite purees made of several ingredients with color-oriented names.  There is a thorough discussion of each method, including the health benefits of each approach.  The discussions in the methodology section, however, are general and do not include step-by-step

directions.  An icon (line drawing on a solid colored circular background, signifying the particular "sneaky" method) is associated with each method.  The Sneaky Chef includes a section of make-ahead recipes which include instructions for making a variety of purees and juices to be hidden in healthy food.  Each make-ahead recipe also includes nutritional information.  The recipes are broken down into breakfast, lunch, snacks, dinner, treats, and drinks.  The recipes include icons, sometimes as many as nine, and often several sentences to a paragraph of text in addition to the "sneaky tips."

The Sneaky Chef is done predominantly in black, grey and shades of brownish-orange.  Other colors can be found only on the cover and in the eight-page section of color photographs of prepared dishes in the middle of the book.  The prepared-dish depictions are the only photographs in the cookbook and the drawings in the cookbook are generally limited to the icons associated with the various methods and a "shushing" carrot with a chef's hat giving "sneaky tips."  The tone of the book is less collegial than it is informative and lecturing.  The author identifies her food philosophy and approach as one that developed as part of her professional career, and identifies herself as "certified in the master techniques of healthy cooking."  The quotes sprinkled throughout the cookbook come primarily from famous or notable individuals and various inserts in the recipe sections include information or findings attributed to the American Heart Association, various university studies and journals.

Defendants' cookbook has a completely different feel and appears to be directed to a different audience.

Deceptively Delicious targets the average busy parent with little to no cooking skill or experience.  The instructions in Deceptively Delicious start at the most basic level,

instructing the reader to wash and drain the vegetables and fruits and to lay out something to collect the trimmings.  They then walk the reader through very simple step-by-step instructions. Readers are instructed on how to prep, cook and puree a variety of different fruits and vegetables. Deceptively Delicious acknowledges that some parents may not know how to cook the basics – pasta, rice, chicken and beef – and includes a short section instructing readers on how to cook these basic items.  Defendant Seinfeld identifies a long list of kitchen tools, from the basic pots and pans down to a black permanent marker for labeling purees.

Deceptively Delicious focuses primarily on adding healthy ingredients through the addition of a single fruit or vegetable in puree form.  Deceptively Delicious uses simpler puree names (usually the name of the fruit or vegetable) and identifying icons (a drawing of the fruit or vegetable), allowing the unfamiliar reader to immediately identify the added healthy ingredients in each recipe.  Many of the recipes identify a variety of different single-item purees that can be added.  The recipes fall into one of three general categories: breakfast, mealtime, or dessert.

Defendant Jessica Seinfeld does not purport to be an expert or a professional chef. There is a separate section in Deceptively Delicious on nutritional information that is attributed to a nutritionist, which includes basic information including easy nutritional guidelines. Although the cookbook includes an introduction by the author and additional tips sprinkled throughout the book, the primary focus of the book is the recipes (and basic cooking instruction). It lacks the extensive discussion of child behavior, food philosophy and parenting that Plaintiff Lapine has incorporated into her work.

The tone and feel of Deceptively Delicious is also very different.  Defendant's cookbook is bright and cheerful, full of different colors and various patterns.  There are

numerous color drawings (not just icons) throughout the text.  The cookbook is peppered with color photographs and nearly every recipe includes a full color photograph of the finished product.  The recipes generally include a sentence or two of commentary from the author. Defendant Seinfeld also extensively incorporates her family and members of the general public into her cookbook.  Family members weigh in on the recipes, sometimes engaging in a short dialogue about the food.  Other mothers share their tips about picky eaters.  The resulting feel is of a less formal, more inclusive work; the reader is one of a community of parents that includes the author.

Having carefully considered the two works, both in terms of alleged similarities and total concept and feel, the Court finds that neither the total look and feel of the two works nor the points of similarity identified by Plaintiffs is sufficient, as a matter of law, to support a finding of substantial similarity of copyrightable material between the two works.  In other words, no reasonable fact finder could conclude on this record that an ordinary lay observer would be disposed to overlook the disparities between the works and find them, in their specifics or in their totality, to have the same aesthetic appeal.  Cf. Boisson, 273 F. 3d at 272 ("an allegedly infringing work is considered substantially similar to a copyrighted work if the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same.")  Defendants are therefore entitled to judgment in their favor as a matter of law dismissing Plaintiffs' copyright infringement claims.

Trademark Claims

Plaintiffs' second claim for relief alleges trademark infringement of Plaintiffs'

word and image trademark pursuant to Sections 32 and 43(a) of the Lanham Act.  Plaintiffs also

charge, in their Fourth Claim for Relief, that the Cookbook Defendants are liable for trademark

infringement under New York General Business Law § 360k.

### *Lanham Act Trademark Infringement Claim*

To prevail on a trademark infringement claim on its Lanham Act claims, Plaintiffs

must show that they have a protectable mark and that Defendants' actions are "likely to confuse

consumers as to the source or sponsorship of [plaintiff's product]."  Nabisco, Inc. v.

Warner-Lambert Co., 220 F.3d 43, 45 (2d Cir. 2000).  The likelihood-of-confusion inquiry turns

on whether numerous ordinary prudent purchasers are likely to be misled or confused as to the

source of the product in question because of the entrance in the marketplace of defendant's

mark."  Playtex Products, Inc. v. Georgia-Pacific Corp., 390 F.3d 158, 161 (2d Cir. 2004)

(internal quotations and citations omitted).  Plaintiff must show a probability of confusion, not a

mere possibility of confusion, in order to prevail.  Nora Beverages, Inc. v. Perrier Group of Am.,

Inc., 269 F.3d 114, 121 (2d Cir. 2001)

Although courts in this Circuit addressing likelihood of confusion generally apply

the eight factors set forth in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir. 1961),

the inquiry is not a "mechanical process where the party with the greatest number of factors

weighing in its favor wins." Paddington Corp. v. Attiki Importers & Distribs., Inc., 996 F.2d

577, 584 (2d Cir.1993) (internal quotation marks and citation omitted); see also Playtex

Products., 390 F.3d at 162 (court should not treat the inquiry as a mechanical process, but should

focus on the ultimate question of whether consumers are likely to be confused); Nabisco, Inc.,

220 F.3d at 46 (same).  Additionally, the Second Circuit has cautioned that "[a]lthough no one

factor is necessarily dispositive, any one factor may prove to be so." <u>Nora Beverages, Inc.</u>, 269

F.3d at 119. "In an appropriate case, the similarity-of-marks factor may alone be dispositive."

<u>Nabisco, Inc.</u>, 220 F.3d at 46. This is one such case.

   In determining the similarity of the marks, the Court must compare the marks

themselves. <u>Nabisco, Inc.</u>, 220 F.3d at 46. However, the analysis does not end there. In

determining whether marks are confusingly similar, the Court must also "appraise the overall

impression created by the [marks] and the context in which they are found and consider the

totality of factors that could cause confusion among prospective purchasers." <u>Streetwise Maps</u>

<u>Inc.v. VanDam, Inc.</u>, 159 F. 3d 739, 744 (2d Cir. 1998) (internal quotation marks omitted). A

careful analysis of the original and allegedly infringing marks at issue here, both on their own

and in the context in which they are found, reveals little, if any, possibility of confusion. The

undisputed factual record here as to the marks in question is insufficient to sustain any triable

issue as to whether there is an actionable likelihood of confusion. Defendants are therefore

entitled as a matter of law to judgment in their favor on Plaintiff's Lanham Act claims.

    *The Marks*

   The cover of Lapine's cookbook includes the words "the SNEAKY chef," with

the words "the" and "chef" in blue and "SNEAKY" in orange. Appearing from behind the word

"SNEAKY" is a female chef. The image is a line drawing with little detail or color. The chef

appears to have long hair left loose beneath her chef's hat, is winking and holding a finger (or

thumb) to her lips. An angle appearing beneath her bent arm suggests a chef's smock. Behind

her back, she holds a single carrot. The only color in the drawing is a blue shadowing of the

chef's hat and the orange body of the carrot.

The image[8] and words appear on The Sneaky Chef's front cover (which stops about 2 inches short of the right-hand edge of the book) and on the spine of The Sneaky Chef. Also on the cover are color photographs of three different prepared dishes: "mac & cheese," cupcakes, and "spaghetti & meatballs."  A full color photograph of a woman (presumably the author) is visible on the exposed 2-inch margin of the book's second page.

A large, detailed color drawing of the head and torso of a young woman with brown hair and green eyes appears on the cover of Deceptively Delicious.  Her hair is pulled up in a ponytail and she is wearing a pink striped t-shirt and light blue pants or jeans.  She is winking at the reader and carrying a tray of brownies in front of her.  Several carrots, one of which is partially chopped, and a green vegetable sit on a cutting board and counter in front of her, as do cooked brownies, brown batter and a bag of flour.  On the spine of the book, the same woman, this time drawn without color, holds her index finger to her lips.  The dominant colors on the cover are pinks, pale yellows and greens, and a predominantly pink plaid pattern is used on the spine and adjacent margins of the front and back covers.

Except in the most abstract sense, these marks are not similar.  The line drawing that is part of Plaintiffs' mark is a much simpler drawing than those appearing on Deceptively Delicious.  Even the simpler drawing on the spine of Defendants' cookbook includes substantially more detail in the eyes, nose, mouth, hair, hand, right down to an earring in the

---

[8]    Defendants argue that Plaintiffs' Lanham Act Section 32 trademark infringement claims must be dismissed insofar as they are based on the image mark because that section only protects federally registered marks and Lapine has not successfully registered the allegedly infringed image mark.  (See e.g., Compl. at ¶ 60 (indicating that Lapine's image mark registration application was pending).) Even assuming proper registration, Plaintiffs' image trademark claim fails on the merits, for the reasons in this section.

female figure's ear.  The more colorful figure on the cover of <u>Deceptively Delicious</u> is even less similar to Plaintiffs' sketched chef.  She is drawn more realistically, with flesh-toned skin, shaded hair and clearly visible eye-color.  Additionally, the figure on <u>Deceptively Delicious</u>, unlike the figure in Plaintiffs' mark, is dressed in street clothing; nothing about her suggests that she is a professional chef.

   Although all three images convey the idea that they are hiding a secret, they do so differently.  The figure on <u>The Sneaky Chef</u> cover is extremely obvious about having a secret.  In addition to the word "SNEAKY" in the word mark, the chef image is "shushing," winking and actively hiding a carrot behind her back.  The drawings on <u>Deceptively Delicious</u> are more subtle, even in the context of the title suggesting deception.  The female figure on the cover is winking; the figure on the spine is shushing.  Neither of the figures is holding anything behind her.  The cover figure is carrying brownies in front of her.  The carrots on the <u>Deceptively Delicious</u> cover are depicted as part of the preparation and are not being actively hidden.

   Although the works deal with a similar subject matter and are both in book form, such that they are likely to be displayed near each other in a retail environment, the other aspects of the books' covers provide quite different aesthetic contexts for the marks.  <u>The Sneaky Chef</u>'s cover includes color photographs of the finished dishes and explains what is hidden in each.  <u>Deceptively Declicious</u> includes a drawing of one finished dish (different from those appearing on <u>The Sneaky Chef</u>'s cover) and shows the various stages of preparation - ingredients, batter, baked goods.  Although the drawing suggests what may be included in the finished brownies it does not provide a textual description.  The difference in overall colors, cover layout, patterns and font also reduces any similarity of the appearance of the marks.  Additionally, Jessica

Seinfeld's name is prominently displayed on the cover of <u>Deceptively Delicious</u>.  Although not itself a "brand name," the fame of the "Seinfeld" name lessens any likelihood of confusion that might have existed.  <u>See</u> <u>Playtex Prods., Inc. v. Georgia-Pacific Corp.</u>, 390 F.3d 158, 164 (2d Cir. 2004) (Second Circuit has "repeatedly found that the presence of a distinct brand name . . . weigh[s] against a finding of confusing similarity."); <u>W.W.W. Pharm. Co. v. Gillette Co.</u>, 984 F.2d 567, 571 (2d Cir. 1993) ("[W]hen a similar mark is used in conjunction with a company name, the likelihood of confusion may be lessened.").  Thus, the Court finds that these marks are not confusingly similar as a matter of law.

The many significant differences between Plaintiffs' and the allegedly infringing marks, and the contexts in which they are presented, result in distinct marketplace impressions unlikely to create any consumer confusion.  Defendants, thus, are entitled to summary judgment on Plaintiffs' trademark infringement claims.

### *New York Trademark Infringement Claim*

Defendants are entitled to summary judgment on Plaintiffs' New York state law trademark infringement claim as well.  Plaintiffs have proffered no evidence of a New York registration of their mark as required under Section 360-k, and, thus, Plaintiffs' statutory trademark claim fails for this reason.  Insofar as the Complaint can be read to assert a New York trademark claim independent of the statute, the "elements required to prevail on trademark infringement . . . claims under New York common law mirror the Lanham Act claims for trademark infringement."  <u>Tiffany (NJ) Inc. v. eBay, Inc.</u>, 576 F. Supp. 2d 463, 494 (S.D.N.Y. 2008).  Plaintiff has failed, as a matter of law, to make out a Lanham Act claim for trademark infringement and Plaintiffs' state law claim fails for the same reason.

        Lanham Act Unfair Competition Claim

        Plaintiffs' third claim for relief alleges unfair competition in violation of section

43(a) of the Lanham Act.  Section 43(a)(1) prohibits any "misleading representation of fact

which (A) is likely to cause confusion . . . as to the origin . . . of . . . goods . . . or (B) in

commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities . . .

of his or her or another person's goods."  15 U.S.C.A. § 1125(a)(1)(West 1998).  This claim, too,

fails as a matter of law.

        In Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003), the

Supreme Court defined the "origin of goods" for section 43(a) purposes, holding that the phrase

"refers to the producer of the tangible goods that are offered for sale, and not to the author of any

idea, concept, or communication embodied in those goods."  Id. at 37.[9]  To do otherwise would

place the Lanham Act in conflict with the copyright [and patent] law and "be akin to finding that

§ 43(a) created a species of perpetual patent and copyright, which Congress may not do."  Id.

The Court recognized that the Lanham Act was not intended to protect originality or creativity.

Id.

        Following Dastar, a plaintiff may be able to bring a section 43(a) violation based

on a defendant's repackaging of plaintiff's material as its own.  Id. at 31 (the claim "would

undoubtedly be sustained if Dastar had bought some of New Line's Crusade videotapes and

merely repackaged them as its own"); see also Flaherty v. Filardi, No. 03 Civ. 2167, 2009 WL

_____

        [9]        Although Dastar involved copying of uncopyrighted work, subsequent decisions
        have recognized its applicability to copyrighted work as well.  See, e.g., Atrium
        Group De Ediciones Y Publicaciones, S.L. v. Harry N. Abrams, Inc., 565 F. Supp.
        2d 505, 512-13 (S.D.N.Y. 2008) (discussing cases).

749570, at *9 (S.D.N.Y. Mar. 20, 2009) ("Had [Defendant] merely changed the cover page of the script to list himself as author and provide a new title, Plaintiff might have had a Lanham Act claim."). However, "the mere act of publishing a written work without proper attribution to its creative source is not actionable under the Lanham Act." Wellnx Life Sciences Inc. v. Iovate Health Sciences Research Inc., 516 F. Supp. 2d 270, 285 (S.D.N.Y. 2007). Plaintiffs have not alleged that Defendants took Plaintiffs' cookbook and repackaged it as their own, nor could the evidentiary record sustain such a claim because, as explained above, the works are not substantially similar.

Although Plaintiffs did not identify in the Complaint the Section 43 subdivision under which they assert their Lanham Act unfair competition claim, Plaintiffs argue that they are asserting a claim under Section 43(a)(1)(B), the false advertising subsection, and that Dastar does not foreclose that claim. This argument is unavailing. Plaintiffs' Lanham Act unfair competition claim is, at its core, the same as Plaintiffs' copyright claim – that Defendants took Plaintiff Lapine's ideas and used them in Deceptively Delicious without Plaintiffs' permission and without any attribution as to the source of the ideas and the work.

Plaintiffs' Section 43(a) claim is premised on their allegations that Seinfeld misappropriated Lapine's work in preparing Deceptively Delicious and that, consequently, Seinfeld's statements that Deceptively Delicious is the product of her own work and Defendants' claim of a copyright in that work constitute falsities because they "assign the entire credit for [Deceptively Delicious] and Lapine's property contained therein, to themselves, and fail to credit Lapine or her Book." (Compl. ¶¶ 73-75.) Plaintiffs assert that the alleged misrepresentations that are likely to cause confusion or deception "as to the origin of [Deceptively Delicious] and

Lapine's property contained therein." (Id. ¶ 76 (emphasis supplied).) This is precisely the type of claim that is precluded by Dastar, and the Court finds persuasive those decisions holding that "a failure to attribute authorship to Plaintiff does not amount to misrepresentation of the nature, characteristics, qualities, or geographic origin of . . . [Defendant's] goods." Thomas Publishing Company, LLC v. Technology Evaluation Centers, Inc., No. 06 Civ.14212, 2007 WL 2193964, at * 3 (S.D.N.Y. July 27, 2007) (alteration in original); see also Wellnx Life Sciences Inc. v. Iovate Health Sciences Research Inc., 516 F. Supp. 2d 270, 286 (S.D.N.Y. 2007) ("[A] Lanham Act claim cannot be based on false designation of authorship in [Defendant's] publications."); Antidote International Films v. Bloomsbury Publishing, PLC, 467 F. Supp. 2d 394, 399-400 (S.D.N.Y. 2006) ("the holding in Dastar that the word 'origin' in § 43(a)(1)(A) refers to producers, rather than authors, necessarily implies that the words 'nature, characteristics, [and] qualities' in § 43(a)(1)(B) cannot be read to refer to authorship. If authorship were a 'characteristic[ ]' or 'qualit[y]' of a work, then the very claim Dastar rejected under § 43(a)(1)(A) would have been available under § 43(a)(1)(B)" (alterations in original)). Thus, Plaintiffs' claims of unfair competition under the Lanham Act are dismissed.

        Injury to Business Reputation

            Plaintiffs also allege, in their Fifth Claim for Relief, an injury to Plaintiffs' business reputation under New York General Business Law Section 360-l. Under 360-l, a "[l]ikelihood of . . . dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief . . . notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." N.Y. Gen. Bus. Law § 360-l

(McKinney's 2009).  Under New York law, dilution can be the result of blurring or of

tarnishment.  New York Stock Exchange, Inc. v. New York, New York Hotel LLC, 293 F.3d

550, 557 (2d Cir. 2002).  Plaintiffs concede in their Opposition to the motion to dismiss that the

Complaint does not state a claim for dilution by tarnishment, but assert that it does state a claim

for dilution based on blurring.  (See Pls' Opp. at 31 ("However, the complaint clearly alleged

dilution by blurring, not by tarnishment.").)

    Dilution through blurring occurs "where the defendant uses or modifies the

plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the

mark will lose its ability to serve as a unique identifier of the plaintiffs' product."  Deere & Co. v.

MTD Prod., Inc., 41 F.3d 39, 43 (2d Cir. 1994) (emphasis omitted).  "[I]n order to establish

dilution by blurring, the two marks must not only be similar, they 'must be 'very' or

'substantially' similar.'"  Hormel Foods Corp. v. Jim Henson Productions, Inc., 73 F.3d 497, 506

(2d Cir. 1996), quoting Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc., 875 F.2d

1026, 1029 (2d Cir. 1989); see also Le Book Pub., Inc. v. Black Book Photography, Inc., 418 F.

Supp. 2d 305, 315 (S.D.N.Y. 2005) ("[T]he parties' marks and directories are blatantly different,

and thus plaintiff fails to meet a critical requirement of a dilution claim.").  Absent such

similarity between the marks, the Court will not apply the doctrine of dilution.  Mead Data

Central, Inc. v. Toyota Motor Sales, U.S.A., Inc., 875 F.2d 1026, 1029 (2d Cir. 1989).  As

explained above, the Court's comparison of the marks reveals that the necessary similarity is

absent.  Plaintiffs' claim for dilution therefore fails.  Defendants are entitled to summary

judgment on Plaintiffs' Fifth Claim for Relief.

## CONCLUSION

For the foregoing reasons, Defendants' converted motion for summary judgment is granted with respect to Plaintiffs' First through Fifth Claims for Relief and the Court declines to exercise supplemental jurisdiction of Plaintiffs' Sixth, Seventh and Eighth Claims for Relief. This Opinion and Order resolves docket entry nos. 37, 42, 71 and 82. The Clerk of Court is respectfully requested to enter judgment in Defendants' favor as to the First through Fifth Claims for Relief and declining to exercise supplemental jurisdiction of the Sixth through Eighth Claims for Relief and to close this case.

SO ORDERED.

Dated: New York, New York
September 10, 2009

LAURA TAYLOR SWAIN
United States District Judge